IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CARLOS A. ARREDONDO, in his capacity as Trustee of The 2000 Trust for the Grandchildren of Carlos A. Arredondo and Mari V. Arredondo, General Partner of Arredondo Properties Limited Partnership,<br><br>       Plaintiff,<br><br>v.<br><br>CAESAR A. ARREDONDO, individually and in his capacity as Trustee of The 2000 Trust for the Grandchildren of Caesar A. Arredondo and Carolyn Abad Arredondo; THE 2000 TRUST FOR THE GRANDCHILDREN OF CAESAR A. ARREDONDO AND CAROLYN ABAD ARREDONDO, in its capacity as General Partner of Arredondo Properties Limited Partnership; and ARREDONDO & CO., LLC,<br><br>       Defendants. | CIVIL ACTION FILE<br><br>NO. 3:02 CV 2200 (CFD)<br><br>Filed: November 12, 2004 |

## SECOND DECLARATION OF CARLOS A. ARREDONDO

1.    My name is Carlos A. Arredondo. I am over the age of eighteen (18) years and competent in all ways to give this Declaration. I have personal knowledge of the facts stated in this Declaration and know them to be true and correct.

2.    I am the plaintiff in this action in my capacity as trustee of The 2000 Trust for the Grandchildren of Carlos A. Arredondo and Mari V. Arredondo (the "2000 Carlos Trust"), General Partner of Arredondo Properties Limited Partnership ("APLP").

3.    My brother, Caesar A. Arredondo, and I have engaged in various real estate oriented business ventures together since 1961. Throughout the many years we have done

business together, we have almost always done business through corporations or limited liability partnerships to protect our personal assets.

4. APLP is a limited partnership that Caesar and I formed in 1980 to serve as a vehicle for investing capital for future generations of our families.

5. The General Partners of APLP in 1990 were The 1987 Trust for the Grandchildren of Caesar A. Arredondo & Carolyn Abad Arredondo, of which I was trustee, and Trust "A" for the Grandchildren of Carlos A. Arredondo and Mari V. Arredondo, of which Caesar was the trustee.

6. In 2000, the General Partners of APLP were changed to the 2000 Carlos Trust and The 2000 Trust for the Grandchildren of Caesar A. Arredondo and Carolyn Abad Arredondo (the "2000 Caesar Trust").

7. Caesar is trustee of the 2000 Caesar Trust.

8. After 1987, neither Caesar nor I had any ownership interest of any kind in APLP.

9. The 2000 Carlos Trust and the 2000 Caesar Trust are the current General Partners of APLP. The current Limited Partners of APLP are my children, Caesar's children and certain trusts, including trusts for each of our grandchildren.

10. In 1990, Caesar and I, in our roles as trustees of the General Partners of APLP, decided that APLP should develop a high end self storage business under the service mark WESTY'S as a means of generating income and assets for APLP.

11. The Westy's business was a first for APLP because APLP had never operated a retail business before.

12. APLP was concerned about potential lawsuits from customers of the Westy's business and wanted to make certain that the assets of APLP would be insulated from these suits.

Accordingly, APLP formed Westy's Port Chester Limited Partnership ("WPCLP"), a Connecticut limited partnership, on March 1, 1990, to own the first store and the land on which the store was to be built. A true and correct copy of the Agreement of Limited Partnership of Westy's Port Chester Limited Partnership is attached hereto as Exhibit 1.

13. APLP owned 99% of WPCLP and was the partnership's sole limited partner. The remaining 1% was owned by APLP's two general partners.

14. The first WESTY'S storage center was built in Port Chester, New York. APLP provided the capital for the real estate purchase, store design and store construction, and APLP applied in its own name for the necessary building permits.

15. WPCLP retained Arredondo & Co., LLC, ("A&Co."), a Connecticut limited liability corporation owned by Caesar and myself equally, to design and build the Port Chester store.

16. A&Co. did not accept a fee for the design or construction of the Port Chester store because the funding for the store was from APLP and was thus our children's money.

17. In connection with later stores, after the Westy's business was established, A&Co. accepted a fee for site selection, design and construction services.

18. On March 5, 1991, Caesar and I incorporated Westy's New York, Inc. ("WNY I") as a Connecticut corporation to manage the operations of the Port Chester store and any other Westy's stores opened in New York. WNY I therefore served as another layer of insulation to protect the assets of APLP from being reached by customers of the Westy's business.

19. WPCLP retained WNY I to handle the management and operations of the Port Chester store in exchange for a management fee.

20.  WNY I was involuntarily dissolved by the Connecticut Secretary of State's Office in 1993 because of the corporation's failure to file a required organizational report within two years of incorporation.

21.  I was unaware that WNY I had been dissolved until 1996. Caesar and I continued to operate WNY I as if it were still in existence until July 29, 1996, when Caesar and I incorporated Westy New York, Inc. ("WNY II"). Thereafter, WNY II took over the management of all Westy stores located in New York.

22.  All profits from the Port Chester store have always been paid to APLP, the owner of the Westy's Business.

23.  WPCLP engaged in pre-opening advertising and marketing efforts in connection with the Port Chester store that began at least as early as January 1, 1991. These efforts included prominent signage in front of the construction site, yellow pages advertising, brochures, and advertising on a delivery van. A true and correct photograph of one of the store's delivery vans is attached hereto as Exhibit 2.

24.  The Port Chester store opened in May 1991 and remains open today.

25.  WPCLP deeded the Port Chester property and store to Port Chester Project, L.L.C., a New York limited liability company, on January 2, 1996 ("PCPLLC"). APLP owns all of the stock of PCPLLC.

26.  APLP was and is actively involved in the management and operation of the Port Chester store and each of the other Westy stores. APLP holds annual meetings during which the operations of all of the stores are reviewed and changes to the stores are discussed and approved.

ATL01/11789729v1

27. Minutes are created for each of the APLP annual meetings. All of these minutes include a review and discussion of each of the Westy stores. A true and correct copy of the minutes from APLP's 2002 annual meeting is attached hereto as Exhibit 3.

28. Westy's Connecticut, Inc. ("WCI I") was incorporated on March 8, 1991, to manage any Westy stores opened in Connecticut. A true and correct copy of the Certificate of Incorporation of WCI I is attached hereto as Exhibit 4.

29. In 1992, APLP no longer anticipated opening any Westy stores in Connecticut, so the shareholders of WCI I voluntarily dissolved the corporation through the filing of a Certificate of Dissolution with the Connecticut Secretary of State's Office filed on August 13, 1992.

30. At the time of its dissolution, the only asset that WCI I owned, or ever had owned, was $1,000 in start-up capital that Caesar and I were required to invest in the corporation to form the corporation under Connecticut law. This $1,000 in cash was distributed to Caesar and me as shareholders upon the dissolution of the corporation.

31. The second Westy's storage center was opened in Tuckahoe, New York in June 1995.

32. APLP provided all of the seed capital for the site selection and purchase, building design and construction, and initial advertising and operational expenditures for the Tuckahoe store.

33. APLP formed Tuckahoe Project LLC ("TPLLC"), a New York limited liability company, to own the Tuckahoe store and the real estate on which it was built.

34. APLP is the sole shareholder of TPLLC.

35. TPLLC hired A&Co. to perform site selection, building design and construction services for the store.

ATL01/11789729v1

36. TPLLC retained WNY I, and thereafter WNY II, to operate the store under the same management structure as the Port Chester store.

37. TPLLC pays all profits from the store to APLP, the owner of the WESTY Business.

38. The following table sets forth the locations of Westy stores that were opened in or before 2002, the owners of the stores, the owners of the store owners, and when the stores opened:

| Location | Store Owner | Owner(s) of Store Owner | Opening Date |
| --- | --- | --- | --- |
| Port Chester, NY | Port Chester Project LLC | APLP | May 1991 |
| Tuckahoe, NY | Tuckahoe Project LLC | APLP | June 1995 |
| Norwalk, CT | Norwalk Project LLC | Carlos & Caesar | May 1997 |
| Elmsford, NY | Greenburgh Project LLC | APLP | 1997 |
| Danbury, CT | Danbury Project LLC | APLP | December 1998 |
| Milford, CT | Milford Project LLC | Carlos & Caesar | January 1998 |
| Stamford, CT | Stamford Project LLC | Carlos & Caesar | January 2000 |
| Farmingdale, NY | Babylon Project LLC | APLP | February 2000 |
| Lake Success, NY | Lake Success Project LLC | APLP | February 2001 |
| Port Chester 2, NY | Port Chester Project II LLC | APLP | April 2001 |
| Hicksville, NY | Hicksville Project LLC | APLP | January 2002 |

39. As set forth above, Caesar and I own limited liability companies that own three of the Westy's storage centers. The reason that these three stores are owned by Caesar and me, as opposed to being owned by APLP, is that we had sold real estate that we owned together and, for tax purposes, decided to engage in like-kind exchanges within a limited period of time.

40. The profits from all eight of the stores owned by APLP are paid to APLP.

41. Caesar and I formed Westy Connecticut, Inc. ("WCI II") on July 29, 1996.

ATL01/11789729v1

42. There has never been any assignment, written or oral, by Caesar, myself, or any entity at any time of any trademarks or intangible assets of any kind to WCI I or WCI II.

43. APLP adopted the following image of a West Highland White Terrier at least as early as January 1, 1991 as a design mark to identify the Westy business and its services ("the Terrier Design"):



44. On March 13, 1991, APLP's then attorney, Alan Shaver, filed applications with the U.S. Patent and Trademark Office ("USPTO") to register the WESTY'S and Terrier Design marks.

45. Caesar and I understood at the time that the 1991 applications were drafted that we could file the trademark registration applications in the name of any company that we wanted to. We elected to file the registration applications in the name of WCI I, although I do not recall why we elected to do so.

46. The applications matured to registration in 1992; however, both registrations were cancelled in 1998 for failure to file the necessary affidavit of continued use.

47. In 1997, APLP began using a smaller version of the Terrier Design that consisted of only the drawing of the head of a West Highland White Terrier ("Terrier Head design"). The following is an accurate image of the Terrier Head design:

ATL01/11789729v1



48. In December 1999, Caesar and I decided to separate our business interests, including A&Co., WCI II and WNY II. I agreed to sell my interest in A&Co. to Caesar effective January 1, 2000.

49. As a part of the separation transactions, Caesar told me that WCI II owned the WESTY Marks (which include the WESTY mark, the WESTY'S mark, and the two terrier design marks), and Caesar said that he wanted ownership of the marks.

50. I did not know who owned the marks, but, accepting without inquiry that this information was correct, I agreed to sell my interest in WCI II to Caesar, which I understood would have the effect of transferring ownership of the WESTY Marks to Caesar.

51. I never agreed to sell my interests in the marks to A&Co., and would have opposed any such transaction.

52. On December 21, 1999, I was out of the country. I have been shown a document entitled "Bill of Sale" that was signed by Caesar and that purports to sell some of the WESTY Marks from WCI II to A&Co. I never saw nor approved this document.

53. In 2002, A&Co. filed trademark registration applications in its name with the USPTO for the marks WESTY'S, WESTY, and the Terrier Head design (the "A&Co. Applications").

54. The A&Co. Applications were published for opposition in 2003.

ATL01/11789729v1

55. As trustee of the 2000 Carlos Trust, I filed oppositions to each of the A&Co. Applications, and these oppositions are currently pending. True and correct copies of the notices of opposition filed with the USPTO to oppose the A&Co. Applications are attached hereto as Exhibit 5, 6 and 7.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 12th day of November, 2004.

_____
CARLOS A. ARREDONDO