1

AGREEMENT OF
LIMITED PARTNERSHIP OF
WESTY'S PORT CHESTER LIMITED PARTNERSHIP
dated as of
March 1, 1990


THIS AGREEMENT OF LIMITED PARTNERSHIP ("Agreement") is made as of the 1st day of March, 1990, by and between Westy's Self-Storage Campus, Inc., a New York corporation, as general partner (the Partnership), and Arredondo Properties Limited Partnership, a Connecticut limited partnership (the "Limited Partner"). The Limited Partner together with the General Partner shall be referred to collectively as the "Partners."


W I T N E S S E T H:


ARTICLE I - ORGANIZATION OF THE LIMITED PARTNERSHIP

Section 1.01. <u>Formation and Name of Limited Partnership</u>. The undersigned parties do hereby form a limited partnership under the name of Westy's Port Chester Limited Partnership (the "Partnership") pursuant to the Uniform Limited Partnership Act of the State of New York, Section 34-9 <u>et seq.</u>, of the New York General Statutes, Revision of 1958, as amended (the "Partnership Act").

Section 1.02. <u>Principal Office and Place of Business</u>. The mailing address and principal office and place of business of the Partnership shall be 351 North Main Street, Port Chester, New York 10573 or such other location or address as the General Partner may determine from time to time upon notice to the Partners. The Partnership may have such additional offices as the General Partner shall deem advisable.

Section 1.03. <u>Agent for Service of Process</u>. The agent for service of process for the Partnership shall be Jerome Berkman, Esq., c/o Day, Berry & Howard, One Canterbury Green, Stamford, New York, 06901, or such other Person as may be designated by the General Partner.

Section 1.04. <u>Business of the Partnership</u>.

(a) <u>Business Purposes</u>. The business of the Partnership shall be (i) to acquire, own, hold, rehabilitate, operate, maintain, manage, develop, lease, sell, mortgage,

A&Co 00474

-2-

refinance, pledge, convey, and otherwise deal with certain real property and buildings wherever situate, including that certain property, and improvements thereon, including but not limited to such property to be known as Westy's Self-Storage Campus and any easements and other rights appurtenant thereto, located at 351 North Main Street, Port Chester, New York, and any personal property located at or used in connection with the development of said real property (the "Project") and (ii) all such other business incidental to and not inconsistent with the general purposes set forth in (i) above.

(b)  No Other Business Without Mutual Consent.  No other business shall be conducted by the Partnership without the prior consent of the Limited Partner, and no Partner shall have the power to bind, to act for or to assume any obligation or responsibility on behalf of the other Partners or the Partnership except as specifically provided in this Agreement.

Section 1.05.  Term of the Partnership.  The term of the Partnership shall commence on the date of filing of a Certificate of Limited Partnership with the Secretary of the State of New York.  A copy of said Certificate of Limited Partnership shall be provided to the Limited Partners upon their request.  The term of the Partnership shall end on the first to occur of (a) December 31, 2040, (b) the sale or other final disposition of all or substantially all of the assets of the Partnership, (c) upon the unanimous written agreement of all Partners, or (d) an event of dissolution as set forth in Section 4.01(c) or Section 15.01, unless the Partnership is continued as provided in Section 15.02.

ARTICLE II – DEFINITIONS

"Adjusted Capital Account Balance" shall mean the balance, if any, in any Partner's Capital Account (i) increased by (a) such Partner's Restoration Amount, and (b) the amount such Partner is deemed obligated to restore pursuant to the penultimate sentences of Treasury Regulations Section 1.704-1T(b)(4)(iv)(f) and 1.704-1T(b)(4)(iv)(h)(5), and (ii) decreased by the items described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5) and (6).  The foregoing definition is intended to comply with the requirements of the alternate test for economic effect contained in Treasury Regulations Section 1.704-1(b)(2)(ii)(d).

"Affiliate" has the same meaning as set forth in Rule 405 promulgated under the Securities Act of 1933.

A&Co 00475

-3-

"Capital Account" means the account established for each Partner and maintained in accordance with the principles set forth in the Treasury Regulations promulgated under Code Section 704(b), which shall generally equal the Capital Contribution of each Partner increased by its distributive share of Partnership Income and decreased by Partnership distributions, its distributive share of Partnership Losses and its share of expenditures of the Partnership described in Treas. Reg. § 1.704-1(b)(2)(iv)(i).

"Capital Contributions" means the total amount of cash at any given time contributed to the Partnership by each Partner. Any reference in this Agreement to the Capital Contribution of a then Partner shall include a Capital Contribution previously made by any prior Partner in respect to the Partnership Interest of such then Partner.

"Cash Flow" shall have the meaning provided in Section 6.03 and shall be computed separately for each fiscal year or portion thereof.

"Code" means the Internal Revenue Code of 1986, as amended.

"Consent of the Limited Partners" means, if there shall be more than one limited partner, the written consent or approval of Limited Partners whose aggregate Capital Contributions represent at least 51% of the total Limited Partner Capital Contributions.

"Entity" means any general partnership, limited partnership, corporation, joint venture, trust, business trust, cooperative or association.

"Income and Loss(es)" means taxable income or loss(es) as determined in accordance with the accounting methods followed by the Partnership for federal income tax purposes, excluding adjustments made pursuant to Section 12.04.

"Limited Partner" or "Limited Partners" means the Limited Partner designated as the Limited Partner in this Agreement or any Person who becomes a Limited Partner as provided herein, in each such Person's capacity as a Limited Partner.

"Partner" means any General Partner or Limited Partner.

"Partnership Interest" means the interest of any Partner in the Partnership.

"Partnership Minimum Gain" means the aggregate of the amount of Income, if any, with respect to each nonrecourse liability of

A&Co 00476

-4-

the Partnership, that would be realized by the Partnership if it disposed of (in a taxable transaction) the property subject to the liability in full satisfaction thereof, determined pursuant to Treasury Regulations § 1.704- 1T(b)(4)(iv)(c). A nonrecourse liability of the Partnership shall mean a liability of the Partnership for which no Partner bears the economic risk of loss with respect thereto.

"Person" means any individual or Entity, and the heirs, executors, administrators, legal representatives, successors and assigns of such Person where the context so permits.

"Restoration Amount" means (i) the outstanding principal balance of any promissory note (of which such Partner is the maker) contributed to the Partnership by such Partner, and (ii) the amount of any unconditional obligation of such Partner (whether imposed by this Agreement or by State or local law) to make subsequent contributions to the Partnership (other than pursuant to a promissory note of which such Partner is the maker).

## ARTICLE III - THE PARTNERS

Section 3.01. Names and Addresses. The names and mailing addresses of the Partners are: Westy's Self-Storage Campus, Inc., 351 North Main Street, Port Chester, New York 10573, the General Partner, and Arredondo Properties Limited Partnership, One Sound Shore Drive, Greenwich, Connecticut 06830, the Limited Partner.

## ARTICLE IV - CAPITAL CONTRIBUTIONS

Section 4.01. Initial Capital Contributions.

(a) General Partner. Upon execution of this Agreement, the General Partner shall have contributed to the Partnership cash in the amount of $100, constituting the amount of the General Partner's Capital Contribution and shall create in the General Partner an aggregate Partnership Interest of 1%. No further capital contributions shall be required of the General Partner, except that upon the dissolution and liquidation of the Partnership, the General Partner shall contribute to the Partnership an amount equal to the lesser of (i) any deficit balance in its Capital Account or (ii) the excess of 1.01% of the Capital Contributions of the Limited Partners over the amounts previously contributed as Capital Contributions by the General Partner.

A&Co 00477

-5-

(b)  Limited Partner.  The initial Capital Contribution of the Limited Partner shall be $1,000.  The interest of the Limited Partner(s) shall represent an aggregate Partnership Interest of 99%.  The Limited Partner shall not be required to make any additional Capital Contributions to the Partnership.

Section 4.02.  Capital Accounts.  The Partnership shall maintain a separate Capital Account for each Partner and shall furnish each Partner with a statement of its Capital Account as of the close of each fiscal year.

Section 4.03.  Loans of Partners and Affiliates.  A Partner or an Affiliate may lend money to and transact other business with the Partnership.  Each such loan from a Partner or an Affiliate may be made on such terms and conditions as are consistent with good business practice and shall be evidenced by a promissory note of the Partnership.

Section 4.04.  Return of Capital Contributions.  A Limited Partner may demand the return of its Capital Contribution to the Partnership only at the end of the term of the Partnership and only to the extent that Partnership funds are available therefor after the liabilities of the Partnership (including General Partner loans and fees) have been paid in accordance with Article XV.

Section 4.05.  Limited Partners' Liability.  The liability of each Limited Partner to the Partnership shall be limited to the amount of its Capital Contribution.  The Limited Partner shall not have any further personal liability in respect of the liabilities or the obligations of the Partnership, nor shall the Limited Partner be personally liable for any obligations of the Partnership, except as may be provided in the Partnership Act.

Section 4.06.  Interest.  No Partner shall receive any interest on its Capital Contribution to the Partnership.

ARTICLE V - COMPENSATION OF GENERAL PARTNERS AND AFFILIATES

Section 5.01.  Reimbursement of Expenses.  The Partnership shall reimburse the General Partner and its Affiliates for and to the extent of reasonable expenses actually incurred by the General Partner and its Affiliates on behalf of or as agent for the Partnership.  Reimbursable expenses shall include expenses incurred in connection with loan closings and fundings, and fees for services rendered by the Partnership's accountants and counsel.

A&Co  00478

-6-

Section 5.02. <u>Compensation to General Partner</u>    Prior to the time that the Project is completed and is open for business to the public, the General Partner shall not be paid any fees for services rendered to the Partnership.  Thereafter, the General Partner will be paid an annual fee for its services, which fee may be based upon a percentage, not to exceed 25%, of the Operating Revenues of the Partnership.  Such fee shall be paid monthly in arrears.


ARTICLE VI - DISTRIBUTIONS OF CASH FLOW

Section 6.01. <u>Allocations Within a Class</u>.  In the event that there shall be more than one Limited Partner, distributions to the Limited Partners as a class shall be shared by each Limited Partner in the ratio of their Capital Contributions to the total Capital Contributions of all the Limited Partners.  If there shall be more than one General Partner, all distributions to the General Partners as a class shall be made equally to the General Partners.

Section 6.02. <u>Adjustment of Capital Accounts</u>.  The Capital Account of each Partner shall be charged with its allocable share of each distribution.

Section 6.03. <u>Definition of Cash Flow</u>.  "Cash Flow" shall mean the excess of Operating Revenue (as defined in Section 6.06 over the sum of:

(a)  All Operating Expenses of the Partnership (as defined in Section 6.06) excluding any expense not involving a cash expenditure, such as amortization of financing fees and other fees;

(b)  Interest payments and principal amortization on loans to the Partnership, including loans from the General Partner or its Affiliates;

(c)  Reasonable reserves for working capital, improvements or replacements, and any other contingencies of the Partnership, as determined by the General Partner in its sole discretion;

(d)  Capital expenditures unless paid by Partnership borrowings or cash withdrawal from any replacement reserve for capital expenditures; and

(e)  Amounts paid into escrow accounts or reserves for taxes, insurance and the like.

A&Co  00479

-7-

Section 6.04.  <u>Distributions of Cash Flow</u>.  Cash Flow shall be distributed 99% to the Limited Partner and 1% to the General Partner.

Section 6.05.  <u>Timing</u>.  Distributions of Cash Flow to the Partners shall be made in the sole discretion of the General Partner at such reasonable intervals as shall be determined by the General Partner and subject to any restrictions imposed by lenders to the Partnership.

Section 6.06.

(a)  <u>Definition of Operating Revenue</u>.  The Operating Revenue of the Partnership shall mean all revenues and receipts of every kind derived from operating the Project, including but not limited to income from rental of space; license, lease and concession fees and rentals, if any; wholesale and retail sales of merchandise, if any; service charges; and proceeds, if any, from business interruption or other loss of income insurance; provided however that Gross Revenues shall not include (i) interest received or accrued on any operating accounts, (ii) federal, state or municipal excise, sales or use taxes or similar governmental charges collected directly from patrons or customers or included as part of the sales price of any goods or services, or (iii) any proceeds from a Capital Transaction.

(b)  <u>Definition of Operating Expenses</u>.  The Operating Expenses of the Partnership shall include:  (i) all costs of personnel employed by the Partnership and involved in the business of the Partnership, to the extent and only for such periods as such employees shall be employed by the Partnership in the conduct of the business of the Partnership; (ii) all costs of borrowed money, real estate and personal property taxes and assessments on Partnership properties and other taxes applicable to the Partnership; (iii) legal, audit, accounting, real estate brokerage and other fees; (iv) printing, and other expenses and taxes incurred in connection with the issuance, distribution, transfer, registration and recording of documents evidencing ownership of an interest in the Partnership; (v) fees and expenses paid to the General Partner, independent contractors, mortgage bankers, brokers and servicers, leasing agents, consultants, real estate brokers, insurance brokers and other agents including Affiliates; (vi) expenses in connection with the disposition, leasing, refinancing, management and operation of the Project (including the costs and expenses of insurance premiums, all utility costs and expenses paid by the Partnership, management fees and costs of maintenance); (vii) the cost of insurance as required in connection with the business of the Partnership; (viii) expenses incurred by the Partnership or any General Partner in organizing, revising,

A&Co 00480

amending, converting, modifying or terminating the Partnership; (ix) expenses in connection with distributions made by the Partnership to and communications and bookkeeping and clerical work necessary in maintaining relations with Partners, including the cost of printing and mailing to such persons reports of the business and the meetings of the Partnership; and (x) fees and expenses reimbursed to the General Partner and its Affiliates pursuant to Article V.

ARTICLE VII - DISTRIBUTIONS UPON DISSOLUTION OF PARTNERSHIP

Section 7.01. <u>Definition of Capital Transaction</u>    "Capital Transaction" shall include any:

(a)  Sale or other disposition of any substantial part or all of the Project other than in dissolution and liquidation of the Partnership;

(b)  Financing or refinancing of any part or all of the Project;

(c)  Condemnation of any part or all of the Project;

(d)  Payment from insurance on account of a casualty to any part or all of the Project;

(e)  Capital Contributions; and

(f)  Similar items or transactions the proceeds of which are attributable to capital items.

Section 7.02. <u>Priority of Distribution</u>.  If the General Partner determines that there is cash available for distribution from a Capital Transaction or upon a dissolution of the Partnership, such cash shall be distributed in the following priority:

(a)  <u>Creditors</u>.  To the discharge, to the extent required by any lender or creditor, of debts and obligations of the Partnership, but excluding sums listed in subsequent clauses of this Section 7.02;

(b)  <u>Reserves</u>.  To fund reserves for contingent or unforeseen liabilities of the Partnership, other than in respect of items listed in subsequent clauses of this Section 7.02, to the extent deemed reasonable by the General Partner;

-9-

    (c) <u>Limited Partner Loans</u>.  To discharge Limited Partner loans (applied first to accrued interest then to principal);

    (d) <u>General Partner Loans and Fees</u>.  To discharge General Partner loans and all fees payable to the General Partner and accrued interest thereon (applied first to accrued interest then to principal);

    (e) <u>Partner Capital Accounts</u>.  To the Partners in proportion to the positive balances of the Capital Accounts of the Partners (measured after allocations pursuant to Article VIII).

ARTICLE VIII - ALLOCATION OF INCOME AND LOSSES

Section 8.01.  <u>Allocations</u>.  Each item of Income, Loss, deduction and credit of the Partnership as determined under the accounting methods followed by the Partnership shall be allocated for federal income tax purposes among the Partners as provided in this Article VIII as of the date the item of Income, Loss, deduction or credit is realized for federal income tax purposes.

Section 8.02.  <u>Operations</u>.  Subject to the special allocations set forth in Section 8.04, all Income, Loss, deduction and credit of the Partnership from any source other than a Capital Transaction shall be allocated 99% to the Limited Partner and 1% to the General Partner.

Section 8.03.  <u>Capital Transactions</u>.

    (a) <u>Allocation of Gain</u>.  Any Income realized from a Capital Transaction shall be allocated in the following manner:

    (i) to the Partners, if any, having negative Capital Account balances in an amount up to and in proportion to their respective negative Capital Account balances;

    (ii) to the Limited Partners, an amount equal to the Limited Partners' aggregate unrecovered Capital Contributions;

    (iii) to the General Partner, an amount equal to the aggregate unrecovered Capital Contributions of the General Partner; and

A&Co 00482

-10-

    (iv) the balance 99% to the Limited Partners and 1% to
the General Partner.

Allocations within a class shall be in accordance with Section
6.01.

    (b)  Allocation of Losses.  Any Losses realized from a
Capital Transaction shall be allocated in the following manner:

    (i)  to the Partners, if any, having positive Capital
Account balances in an amount up to and in
proportion to their respective positive Capital
Account balances; and

    (ii)  the balance 99% to the Limited Partners and 1% to
the General Partner.

Allocations within a class shall be in accordance with Section
6.01.

    Section 8.04.  Special Allocations.  Notwithstanding any
other provision of this Article VIII, certain items of Income and
Loss shall be allocated as follows:

    (a)  Minimum Gain Chargeback.  If there is a net decrease in
the amount of Partnership Minimum Gain during a calendar year,
each Partner will be allocated, before any other allocation is
made under this Article VIII, items of Income for such year (and,
if necessary, subsequent years) in proportion to, and to the
extent of, an amount equal to the greater of (1) the portion of
such Partner's share of such net decrease that is allocable to
the disposition of Partnership property subject to one or more
nonrecourse liabilities of the Partnership, or (2) the deficit
balance in such Partner's Capital Account (determined before any
allocation for such calendar year) in excess of the sum of such
Partner's share of Partnership Minimum Gain as of the close of
such year (determined pursuant to Treasury Regulations § 1.704-
1T(b)(4)(iv)(f)) and such Partner's Restoration Amount.

    (b)  Qualified Income Offset.  Notwithstanding any other
provision of this Agreement to the contrary:

    (1)  A Limited Partner shall not be allocated Losses
(or items thereof) if such allocation would cause or increase a
deficit balance in such Partner's Adjusted Capital Account
Balance as of the end of the calendar year to which such
allocation relates.  Such excess deficit balance in a Limited
Partner's Capital Account shall be referred to as the "Excess
Deficit Balance".  Any such Excess Deficit Balance that
otherwise would have been allocated to such Limited Partner but

A&Co 00483

-11-

for this Section 8.04(b)(1) shall be reallocated to the General Partner.

(2)  In determining the extent to which a loss allocation under the terms of this Agreement causes or increases an Excess Deficit Balance, such Partner's Capital Account shall be reduced for (i) allocations of loss or deduction that, as of the end of such calendar year, reasonably are expected to be made to such Partner pursuant to Section 706(d) of the Code or Treasury Regulations § 1.751-1(b)(2)(ii), and (ii) distributions that, as of the end of such calendar year, reasonably are expected to be made to such Partner to the extent they exceed offsetting increases to such Partner's Adjusted Capital Account Balance that reasonably are expected to occur during (or prior to) the calendar years in which such distributions reasonably are expected to be made (other than increases pursuant to Section 8.04(a)).

(3)  Notwithstanding (2) above, in the event that any Partner unexpectedly receives an adjustment, allocation or distribution described in Treasury Regulations § 1.704-1(b)(2)(ii)(d)(4), (5) or (6) which causes it to have a deficit Adjusted Capital Account Balance, such Partner will be subsequently allocated items of Income in an amount and manner sufficient to eliminate any Excess Deficit Balance of such Partner as quickly as possible.

(c)  Other Special Allocations.  The General Partner shall make such other special allocations of items of Income and Loss as are required to comply with the rules set forth in Treasury Regulations § 1.704-1T(b)(4)(iv), including the rules governing the allocation of partner nonrecourse deductions, as well as the rules requiring the chargeback of Income where there has been a reduction in Partner minimum gain as defined in such regulations.

(d)  In the event that Income or Loss is allocated to one or more Partners pursuant to subsections (a), (b) or (c) above, subsequent Income or Loss will first be allocated (subject to the provisions of subsections (a), (b) and (c)) to the Partners in a manner designed to result in each Partner having a Capital Account balance equal to what it would have been had the original allocation of Income or Loss pursuant to subsection (a), (b) or (c) not occurred.

Section 8.05.  General Partner's Share.  Notwithstanding any other provision of this Article VIII other than Section 8.04, the General Partner shall be allocated at least 1% of any Income and Losses to the extent not otherwise allocated to the General Partner hereunder.

A&Co  00484

-12-

ARTICLE IX - SOURCE OF DISTRIBUTIONS

Each Partner shall look solely to the assets of the Partnership for all distributions with respect to the Partnership and its Capital Contribution thereto and share of Income or Losses, and shall have no recourse therefor (upon dissolution or otherwise) against the General Partner, or any Limited Partner.  No Partner shall have any right to demand or receive property other than cash upon dissolution and termination of the Partnership.  The Partnership may distribute property to the Partners in lieu of cash to the full extent of the Limited Partners' Partnership Interests.

ARTICLE X - THE GENERAL PARTNER

Section 10.01.  Powers of the General Partner.  The General Partner shall have all the rights and powers and shall be subject to all the restrictions and liabilities of general partners in a partnership without limited partners as stated in the Partnership Act.  The General Partner shall have exclusive control of the business of the Partnership and overall responsibility for operating and managing the Property.  If there shall be more than one General Partner, the General Partners shall act by unanimous consent.

Section 10.02.  Limitations on the Powers of the General Partner.  Notwithstanding any other provision of this Article X, the General Partner shall not have the power, without the prior Consent of the Limited Partners, to take any of the following actions:

(a)  sell, exchange or otherwise dispose of all or substantially all of the Project;

(b)  lease all or substantially all of the Project, other than in the ordinary course of business;

(c)  confess a judgment against the Partnership in excess of $50,000; or

(d)  admit additional Limited Partners to the Partnership on any terms and conditions other than those set forth in this Agreement.

Section 10.03.  Exculpation.  The General Partner shall not be liable to the Partnership or to any Limited Partner for any loss in connection with the affairs of the Partnership as long as

-13-

it acts in good faith and not in breach of its fiduciary duties hereunder.

Section 10.04.  Conflicts of Interest.

(a)  The fact that the General Partner or an Affiliate is directly or indirectly interested in or connected with any Person acting as agent for the Partnership or employed by the Partnership to render or perform a service or from which or whom the Partnership may buy merchandise or other property shall not prohibit the General Partner or the Partnership from employing such Person or from reimbursing such Person for expenses incurred and fees paid on behalf of the Partnership or from dealing with him upon reasonable terms and conditions, and neither the Partnership nor the Partners shall have any rights in or to any income or profits of such Person derived therefrom. Except as provided elsewhere in this Agreement, the General Partner shall not have any obligation to make loans or advances to the Partnership or be responsible for any guarantee under this Agreement or otherwise or to perform any of the obligations of any Affiliate, and the General Partner will have no liability for the failure of any Affiliate to perform any of its obligations.

(b)  The General Partner and its Affiliates may engage independently or with others in other business ventures of every nature and description and neither the Partnership nor any Partner shall have any rights in and to such independent ventures or the income or profits derived therefrom.

Section 10.05.  Indemnification.  The General Partner and any person performing services on behalf of the Partnership who: (1) directly or indirectly controls, is controlled by, or is under common control with the General Partner; or (2) owns or controls 10% or more of the outstanding voting securities of the General Partner; or (3) is an officer, director, partner or trustee of the General Partner; or (4) if the General Partner is an officer, director, partner or trustee, is any company for which such General Partner acts in such capacity (collectively, the "Covered Persons"), shall have no liability to the Partnership or to any Partner for any loss suffered by the Partnership which arises out of any action or inaction of the Covered Persons if the Covered Persons in good faith, determined that such course of conduct was in the best interest of the Partnership and such course of conduct did not constitute gross negligence or wilful misconduct of the Covered Persons. The Covered Persons shall be indemnified by the Partnership against any losses, judgments, liabilities, expenses and amounts paid in settlement of any claims sustained by them in connection with the Partnership, provided that the same were not the result of gross

A&Co  00486

negligence or willful misconduct on the part of the Covered
Persons.

Section 10.06.  <u>Duties</u>.  The General Partner shall devote so
much time and attention to the business and affairs of the
Partnership as is reasonably necessary and proper to further the
purposes of the Partnership.


ARTICLE XI - THE LIMITED PARTNER

Section 11.01.  <u>No Control</u>.  The Limited Partner shall not
participate in any way in the control or management of the
business of the Partnership.  The Limited Partner is not an
agent of the Partnership and has no authority to act for, or
bind, the Partnership in any matter.


ARTICLE XII - ACCOUNTING PROVISIONS

Section 12.01.  <u>Records</u>.  The books of the Partnership shall
be maintained by the General Partner and shall be kept at the
principal place of business of the Partnership and shall be open
to inspection and copying by the Partners or their duly
authorized representatives at all reasonable times.  The books
shall be kept using the accrual method of accounting.

Section 12.02.  <u>Bank Accounts</u>.  All funds of the Partnership
shall be deposited in the Partnership name in such bank or other
account or accounts or money market funds with or managed by such
financial institutions or their affiliates, as shall be
designated by the General Partner.

Section 12.03.  <u>Fiscal Year</u>.  The fiscal year of the
Partnership shall be the calendar year.

Section 12.04.  <u>Special Basis Adjustments</u>.  In the event of
a transfer of all or any part of the interest of any Partner, or
a distribution of property by the Partnership to a Partner, the
Partnership may elect, pursuant to Section 754 of the Code (or
corresponding provisions of succeeding law), to adjust the basis
of any Partnership property under Code Sections 734 and 743.
Notwithstanding anything contained in Article VIII of this
Agreement, any adjustments made pursuant to said Section 754
shall affect only the transferee of a Partnership Interest.
Each Partner shall furnish the Partnership with all information
necessary to give effect to such election.  The General Partner
reserves the right not to file for an election under Code Section
754.

A&Co 00487

-15-

ARTICLE XIII - SUCCESSOR LIMITED PARTNERS

Section 13.01. <u>Right to Assign</u>.

(a) <u>General</u>. The Limited Partner may not assign or transfer all or any part of its Partnership Interest to any Person without the consent of the General Partner, which consent may be withheld at its sole discretion.

Section 13.02. <u>Withdrawal of Limited Partner</u>. The Limited Partner shall not withdraw from the Partnership at any time without the consent of the General Partner, which consent may be withheld at its sole discretion, except upon termination and dissolution of the Partnership as provided in Article XV.

ARTICLE XIV - SUCCESSOR GENERAL PARTNERS

Section 14.01. <u>Transfer Between Partners</u>. The General Partner may not sell, assign or otherwise transfer all or any part of its Partnership Interest except to an Affiliate of the selling General Partner or, if there shall be more than one General Partner, to another General Partner. The Limited Partner hereby consents to any such transfer and the recording of an amendment to the Certificate of Limited Partnership to reflect such a transfer.

Section 14.02. <u>Prohibited Assignment, Transfer or Withdrawal</u>. The General Partner shall not without the Consent of the Limited Partners

(i)    mortgage, pledge or hypothecate any part or all of its Partnership Interest (except in connection with a loan to the Partnership);

(ii)   make any sale, assignment or other transfer of any part or all of its Partnership Interest voluntarily or permit any such transfer by operation of law (other than pursuant to Section 14.01); or

(iii)  withdraw from the Partnership.

ARTICLE XV - DISSOLUTION AND LIQUIDATION OF THE PARTNERSHIP

Section 15.01. <u>Events of Dissolution</u>. Upon the happening of any of the following events (but under no other circumstance), the Partnership shall be dissolved:

A&Co 00488

(a)  execution of an assignment of all or substantially all of the property and business of the General Partner for the benefit of creditors;

(b)  filing of a voluntary petition under any bankruptcy or insolvency law by the General Partner;

(c)  adjudication of the General Partner as bankrupt or insolvent under any bankruptcy or insolvency laws;

(d)  appointment of a receiver for the General Partner or for the property and business of the General Partner;

(e)  the withdrawal, removal, death or other inability of the General Partner to continue in such capacity; or

(f)  the expiration of the term of the Partnership under Section 1.05.

Section 15.02.  Continuity.

(a)  If, however, at the occurrence of any such event of dissolution other than under Section 15.01(f), there remains a General Partner or Partners to whom none of Subsections (a) through (e) of Section 15.01 applies, said remaining General Partner or Partners may in its or their sole discretion elect to continue the Partnership and its business in a reconstituted Partnership.  If more than one General Partner shall remain, the decision to continue the Partnership shall be by decision of those remaining General Partner whose aggregate Capital Contributions represent at least 51% of the total remaining General Partner Capital Contributions.

(b)  The Partnership shall be dissolved if there is no remaining General Partner; provided, however, in such event, the Limited Partners, by Consent of the Limited Partners, or such approval as may be required by the Partnership Act, shall have the right and the power to admit a new General Partner or Partners and to continue the Partnership and its business in a reconstituted Partnership with the then remaining Limited Partners.  If the Limited Partners do not elect to reconstitute and continue the Partnership and its business, the business of the Partnership shall be terminated and the Partnership shall be dissolved pursuant to this Article XV.

(c)  An election to continue the Partnership under Sections 15.02(a) or (b) shall be made within 30 days of the occurrence of the event of dissolution; if no election is made within such period, the Partnership shall be dissolved.

Section 15.03. Accounting. Upon the dissolution of the Partnership in accordance with the provisions of this Agreement, the Partnership shall immediately commence winding up its affairs and the General Partner shall file a notice of dissolution or cancellation in accordance with the provisions of Article XVI. The proceeds from liquidation of Partnership assets shall be distributed and applied as set forth in Section 15.05.

Section 15.04. Winding-Up of Affairs. The surviving General Partner or Partner, or the Limited Partners if no General Partner shall remain (the "Dissolution Partners"), shall be responsible for the winding-up of Partnership affairs and for such purposes shall continue to exercise all the powers set forth in Section 10.01.

Section 15.05. Distribution Upon Dissolution. Upon the dissolution of the Partnership, the Dissolution Partners shall liquidate the Partnership's assets, and apply and distribute the proceeds, in accordance with the following:

(a) Sale of Assets. All of the assets of the Partnership may be sold at the discretion of the Dissolution Partners and any Income or Loss realized upon such sales shall be allocated to the respective Partners' Capital Accounts in accordance with Article VIII. Any assets which are not sold shall be valued at fair market value and such value shall be used to determine the potential Income or Loss thereon which shall then be allocated to the Partners' Capital Accounts in accordance with Article VIII as if such Income or Loss had actually been realized. The Capital Accounts shall be adjusted prior to any distribution under this Section 15.05.

(b) Priority of Liquidation Distribution. The proceeds of liquidation and any unliquidated Partnership assets shall be distributed in the order of priority established in Section 7.02. Any reserves established by the Dissolution Partners in the course of such distribution shall be held for so long as the Dissolution Partners shall deem necessary in a special account maintained by the Dissolution Partners for the purpose of paying contingent or unforeseen liabilities or obligations, and shall thereafter be distributed in the order of priority established in Section 7.02. For purposes of this Section 15.05, expenses of dissolution and liquidation shall be treated as debts and obligations of the Partnership.

(c) Timing of Liquidation. A reasonable time shall be allowed for the orderly liquidation of the assets of the Partnership and the discharge of its liabilities so as to enable

-18-

the Dissolution Partners to minimize losses normally attendant upon such a liquidation.

(d)  _Timing of Dissolution_.  The Partnership shall be dissolved when all assets owned by the Partnership shall have been disposed of and the net proceeds, after satisfaction of liabilities to creditors, shall have been distributed among the Partners as aforesaid.  The establishment of any reserves in accordance with the provisions of Section 15.03(b) shall not extend the term of the Partnership.

(e)  _Return of Capital Contributions_.  The General Partner shall not be liable for the return of the Capital Contributions of the Limited Partners, or any portion thereof, or for payment of the Cumulative Preferred Return or any portion thereof.  Any such return shall be made solely from Partnership assets.


ARTICLE XVI - POWER OF ATTORNEY

The Limited Partner hereby constitutes and appoints the General Partner its true and lawful attorney in its name, place and stead to make, execute, acknowledge, swear to, file and record when necessary:

(a)  This Agreement or a Certificate of Limited Partnership filed under the laws of the State or any other jurisdiction in which the General Partner deems it advisable to file such Certificate as provided in Article I;

(b)  Any other certificate, tax return or other instrument which may be required to be filed by the Partnership under the laws of the United States, the State or any other governmental body relating to the conduct of its business and the carrying out of the intention and purpose of this Agreement; and

(c)  Any and all amendments or modifications of the instruments described in the preceding Subsections (a) and (b).

The Limited Partner shall execute all certificates and instruments as may be required by law and necessary to the conduct of the Partnership business.  It is agreed by the Limited Partner that the power of attorney granted hereunder is coupled with an interest, and it is agreed that said power of attorney is irrevocable and shall survive the assignment by the Limited Partner of the whole or any portion of its Partnership Interest.

A&Co  00491

-19-

## ARTICLE XVII - NOTICES

All notices, consents, approvals, requests, demands or other communications ("notices") which any of the parties to this Agreement may desire or be required to give hereunder, shall be in writing and shall be deemed properly given if sent by United States certified or registered mail, postage prepaid, return receipt requested, addressed, if to the Partnership, at the principal office set forth in Section 1.02 or to such other address as may be designated by the General Partner by notice to all Partners pursuant to the terms of this Section; and if to the General Partner or the Limited Partner at their respective addresses set forth in Section 3.01 or to such other addresses as may be designated by notice to the Partners.

## ARTICLE XVIII - GENERAL PROVISIONS

Section 19.01.  Applicable Law.  This Agreement shall be governed, construed and interpreted in accordance with the laws of the State of New York.

Section 19.02.  Amendments.  This Agreement may be changed, modified or amended at any time, and from time to time, by the General Partner, provided that any change that is adverse to the Limited Partner shall only become effective upon the consent of the Limited Partner.

Section 19.03.  Counterparts.  This Agreement may be executed upon an original and one or more duplicate originals, each of which may have a number of separate "subscription agreement" pages, all of which taken together shall constitute one agreement.

Section 19.04.  Successors and Assigns.  This Agreement shall inure to the benefit of and be binding upon all parties and their respective successors, heirs, devisees, assigns and legal representatives.

Section 19.05.  Entire Agreement.  This Agreement constitutes the entire agreement between the parties and supersedes all prior oral and written understandings between the parties.

Section 19.06.  Severability.  If any part of this Agreement, or the application thereof to any Person or circumstance, is for any reason held invalid or unenforceable, it shall be deemed severable and the validity of the remainder of this Agreement or the applications of such provision to other Persons or circumstances shall not be affected thereby.

A&Co 00492

-20-

Section 19.07.  <u>Information</u>.  The Partnership will use its best efforts to distribute to the Partners information necessary for the preparation of their federal income tax returns within 90 days after each December 31.

Section 19.08.  <u>Title</u>.  Title to the Project shall be held in the name of the Partnership.

Section 19.09.  <u>Tax Matters Partner</u>.  The General Partner is hereby designated as the tax matters partner of the Partnership.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

GENERAL PARTNER:

WESTY'S SELF-STORAGE CAMPUS, INC.

By
Its:          PRESIDENT

LIMITED PARTNER:

ARREDONDO PROPERTIES LIMITED PARTNERSHIP, a
     New York limited partnership

By
A General Partner: Carlos A. Arredondo, as
     trustee of The 1987 Trust for the
     Grandchildren of Caesar A. Arredondo
     and Carolyn Abad Arredondo, Carlos A.
     Arredondo, Trustee

By
A General Partner: Caesar A. Arredondo, as
     trustee of Trust "A" for the
     Grandchildren of Carlos A. Arredondo
     and Mari V. Arredondo, Caesar A.
     Arredondo, Trustee

A&Co  00493