Exhibit G

# EXHIBIT G

## Errors in the Documents Related to Ownership of the WESTY Marks

The trademark related documents of the WESTY Business, and the actions of the managers and attorneys of the business related to the WESTY Marks, show that the managers and attorneys did not understand the implications of the laws of trademark ownership and how it was affected by the corporate structure they had implemented. The errors and omissions of the managers and attorneys of the business include, but are not limited to, the following:

- WCI I is listed the owner of the WESTY'S word mark and the Design of Dog mark in the trademark applications filed for the marks in 1991 even though it is undisputed that WCI I:

    (1)   was not in existence when the marks were first used in January 1991;

    (2)   never used the marks;

    (3)   had no ownership interest of any kind of the entity that used the mark;

    (4)   had no involvement of any kind with the only store then open and using the marks (Port Chester);

    (5)   had no ability to control, and did not control, the use of the marks in connection with the Port Chester store; and

    (6)   was voluntarily dissolved shortly after the registrations for the marks issued in 1992; therefore, it could not under any scenario have controlled the use of the mark from that point forward.

- WCI I was intentionally dissolved by its shareholders in 1992 without any thought as to the affect this would have on the trademark registration that had issued in the name of WCI I or on transferring its purported rights in the WESTY Marks.

- The purported license of the unidentified design from WCI I to WNY is ineffective as indefinite because the subject of the license is not identified. The license is also ineffective because it does not include any quality control provisions or restrictions on the use of the mark (whatever that mark might have been). Without such a contractual right of control, WCI I would have had no way to control the business operations of WNY. Furthermore, WNY was merely using the mark as agent for WPCLP and APLP. For WCI I to have been able to

- exercise legally enforceable control over the use of the WESTY Marks in Port Chester, the license would have to have been with APLP or WPCLP.

- WNY was administratively dissolved in 1993 by the Connecticut Secretary of State's office for neglecting to file its corporate minutes with the state. Any license to WNY would have died with this dissolution. There is no evidence of any license between WCI I (or WCI II) and WNY's successor, Westy New York, Inc.

- The USPTO cancelled the original registrations for the WESTY'S mark and Dog Design mark in 1998 because the business and its attorneys filed the wrong forms to keep the registrations alive. Instead of filing declarations of continued use, the attorneys filed statements of use, forms that are used only in connection with securing an initial registration of an application filed on an intent to use basis.

- When WCI II was formed, it was intended to be a successor to WCI I. However, there was no transfer of any assets from WCI I to WCI II, nor could there have been because, by law, any assets WCI I had would have been distributed to its shareholders upon its voluntary dissolution four years before WCI II was formed. The shareholders of WCI I, Carlos and Caesar, never assigned any trademark or other rights of any kind to WCI II.

- WCI II executed a trademark assignment agreement in December 1999 that purported to have the effect of transferring the WESTY Marks from WCI II to A&Co. This document is deficient in several regards, including that it did not include any consideration for the assignment, and it did not include any reference to the Design of Dog trademark.

- In an apparent effort to correct the absence of any consideration in the December 1999 trademark assignment from WCI II to A&Co., these two parties executed a document entitled "Bill of Sale" that purported to contain the consideration for the assignment; however, this document listed different trademarks than were listed in the original assignment.

- No written licenses were offered to any of the stores from any of the Westy entities.