IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CARLOS A. ARREDONDO, in his capacity as Trustee of The 2000 Trust for the Grandchildren of Carlos A. Arredondo and Mari V. Arredondo, General Partner of Arredondo Properties Limited Partnership,<br><br>Plaintiff,<br><br>v.<br><br>CAESAR A. ARREDONDO, individually and in his capacity as Trustee of The 2000 Trust for the Grandchildren of Caesar A. Arredondo and Carolyn Abad Arredondo; THE 2000 TRUST FOR THE GRANDCHILDREN OF CAESAR A. ARREDONDO AND CAROLYN ABAD ARREDONDO, in its capacity as General Partner of Arredondo Properties Limited Partnership; and ARREDONDO & CO., LLC,<br><br>Defendants. | CIVIL ACTION NO.:<br>3:02 CV 02200 (CFD)<br><br><br><br><br>DECEMBER 3, 2004 |

**DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 2 |
| II. | STATEMENT OF UNDISPUTED FACTS | 7 |
| III. | SUMMARY JUDGMENT STANDARD | 7 |
| IV. | ARGUMENT | 7 |
| | A. Carlos And Caesar Intended To And Did Place Ownership Of The WESTY Marks In WCI And Then A&Co. | 7 |
| | 1. It is Undisputed That Caesar and Carlos Created the WESTY Marks. | 7 |
| | 2. It is Undisputed That Caesar and Carlos Intended That WCI Own the WESTY Marks. | 8 |
| | 3. It is Undisputed That Caesar and Carlos Did Not Intend APLP to Own the WESTY Marks. | 9 |
| | 4. It is Undisputed that Caesar and Carlos Agreed That WCI Owned the WESTY Marks Between 1991 and December 1999. | 9 |
| | 5. It is Undisputed That Caesar and Carlos Intended That WCI Assign the WESTY Marks to A&Co in December 1999. | 11 |
| | B. Caesar And Carlos Legally Placed Ownership Of The WESTY Trademarks In WCI And Carlos' First Use Argument Is Baseless | 15 |
| | 1. Carlos And Caesar, As The Creators of the WESTY Trademarks And Business And As The "Leading Lights" Of The Arredondo Family Businesses, Properly Put Ownership Of The Trademarks In WCI | 16 |
| | 2. Caesar And Carlos' Complete Control Over APLP And Use Of The WESTY Trademarks Makes APLP A "Related Company" Under The Lanham Act | 18 |
| | (a) APLP Is A "Related Company" By Virtue Of Caesar and Carlos' Control | 19 |

        (b)    APLP Is A "Related Company" Through An Implied License 20

    3.    APLP's Mere Ownership Of The First Operational WESTY Facility Does Not Confer Any Rights To The WESTY Trademarks ............................................................................................23

    4.    The Equities Compel Ownership Of The WESTY Trademarks As Caesar And Carlos Decided, i.e., By WCI And Then A&Co...........................................................................................25

    5.    Neither Carlos' "Legal" Arguments Nor The Cases He Cites Supports His Position That Caesar And Carlos' Decision To Place Trademark Ownership In WCI Was "Erroneous." ................26

    6.    WCI Never Abandoned the WESTY Trademarks. .........................30

    7.    The Dissolution and Reformation of WCI Supports Summary Judgment in Defendants' Favor...................................................32

  C.    Carlos' Self-Serving Factual Assertions That Flatly Contradict His Deposition Testimony And/Or Have No Evidentiary Support Do Not Create A Genuine Issue of Material Fact. ................................................33

    1.    Self-serving Declarations Are Properly Disregarded For Summary Judgment Purposes. ......................................................33

  D.    Carlos Is Not Entitled To Recover His Attorneys' Fees. ...........................41

V.    CONCLUSION ...........................................................................................41

The defendants, Caesar A. Arredondo ("Caesar"); The 2000 Trust For The Grandchildren Of Caesar A. Arredondo And Carolyn Abad Arredondo (the "2000 Caesar Trust"); and Arredondo & Co., LLC ("A&Co.," and collectively with the other defendants, the "Defendants"), respectfully submit this Memorandum of Law in opposition to the November 12, 2004 Motion for Summary Judgment filed by the plaintiff, Carlos A. Arredondo ("Carlos").

## I.   INTRODUCTION

Carlos admitted in his deposition that: (1) he and Caesar intended to place ownership of the WESTY trademarks in WCI when they registered the marks in the name of WCI in 1991, (2) he did not even think about registering the marks in the name of APLP at that time, (3) he believed and intended that WCI and then A&Co. owned the marks for more than a decade, (4) he assumed that Caesar relied on their joint understanding that A&Co. owned the marks after Carlos left the WESTY business at the end of 1999, and (5) he never claimed trademark ownership in APLP until 2002 when his daughter Fabiola convinced him to do so. Despite these case-dispositive admissions, Carlos now moves for summary judgment claiming that there is no dispute that from 1991 to the present, APLP has owned the WESTY trademarks.

Knowing Caesar's intent to seek summary judgment, Carlos now attempts to create the appearance of a triable dispute, and thereby defeat Caesar's motion, through a summary judgment motion as faithless to the undisputed facts as it is to bedrock principles of trademark and contract law. Carlos' admissions and the undisputed evidentiary record establish that WCI and then A&Co. have owned the WESTY

-2-

trademarks. Carlos' contradictory, unsubstantiated, and newly created claims cannot defeat Caesar's summary judgment motion, which motion is based on Carlos' own words and deeds.[1]

Contrary to the picture that Carlos portrays in his motion, and as shown in Caesar's summary judgment motion, Caesar and Carlos created and funded APLP for the sole purpose of creating wealth through passive real estate investment for their children and other descendants. As a result of Caesar and Carlos' efforts, and their efforts alone, APLP's members have received more than $20,000,000 in income in the last ten years alone, simply for being the heirs of Caesar and Carlos. APLP has never had any employees or payroll, and it meets only once a year. In fact, in 1991 when Caesar and Carlos opened the first WESTY facility, none of Caesar and Carlos' children—the owners of APLP at that time—even knew that APLP existed. Carlos summed it up best when he testified during his deposition that Caesar and he "basically rule[d] APLP" and made all of APLP's decisions. Caesar and Carlos did not decide to place ownership of the WESTY trademarks in APLP, they decided to place ownership in their jointly-owned company WCI. These facts are all indisputable.

Faced with this overwhelming, indisputable evidence that is fatal to Carlos' case, it is not surprising that Carlos' motion for summary judgment rests on a series of fictions rather than facts. Foremost is the fiction that APLP, the passive investment vehicle

---

[1] It is compelling to compare the factual citations in Caesar and Carlos' motions. Whereas Caesar has predominantly cited to Carlos' deposition and numerous, undisputed documents corroborating that testimony as support for his position, Carlos almost exclusively cites to his own self-serving declaration with little or no documentary support.

intended to benefit the heirs of Carlos and Caesar, came into being without substantial "involvement" of the brothers (Pl. Mem. at 3), and in turn, that APLP conceived and started the WESTY business on its own, merely delegating to Carlos and Caesar's companies (A&Co., WCI, and WNY) the duties and burdens of management.

According to Carlos, APLP, not the brothers, "decided that it should develop a high end storage business under the service mark WESTY's" (Id. at 3) and "decided" where to locate the first WESTY facility. (Id. at 4). Carlos, however, does not even attempt to explain how this incorporeal entity, created to ensure the fortunes of Carlos and Caesar's heirs who were oblivious to its existence and purpose, "decided" to enter into the WESTY business. Nor does Carlos submit any admissible evidence showing that APLP actually took any of the actions that he now claims it did. Rather, Carlos seeks to ignore and supplant his own sworn deposition testimony in favor of the self-serving declaration that accompanies his summary judgment motion.[2] That declaration, tailored to suit Carlos's revisionist ends, lacks even a scintilla of support in the evidentiary record.

The undisputed facts set forth in Caesar's summary judgment motion speak for themselves. Carlos and Caesar, not APLP, recognized the potential of the high-end self-storage business. Carlos and Caesar, not APLP, chose the WESTY marks. Carlos and Caesar, not APLP, conceived of, developed, opened, and controlled every WESTY

---

[2] Tellingly, Carlos did not include his own deposition transcript as an exhibit to his Motion for Summary Judgment. Only two depositions were taken in this case—those of Caesar and Carlos. Caesar included copies of both his own and Carlos' depositions as summary judgment exhibits.

facility from the first to the eleventh.[3] Carlos and Caesar, not APLP, decided the who, what, where, and how's of building this successful business. Carlos and Caesar, not APLP, controlled use of the WESTY trademarks and the nature and quality of the services under those marks. And most significantly, as befitting their central role in every aspect of the WESTY business and their stature as the leading lights of the Arredondo families, Carlos and Caesar rationally and properly placed ownership of the WESTY trademark rights in their jointly held WCI. APLP's only connection to the WESTY business, consistent with APLP's passive purpose, is to own some but not all of the facilities and thereby generate wealth without active involvement in the WESTY business. Based on these undisputed facts, summary judgment should be granted in the Defendants' favor.

As shown more fully below and in Caesar's summary judgment motion, neither the facts nor the applicable trademark and contract principles support Carlos' claim that APLP owns the WESTY marks. Carlos now stands in full retreat from his deposition testimony in which he freely admitted under oath that he and Caesar created the WESTY marks, intended that their jointly owned company WCI would own the marks, and actively took steps with the advice and assistance of counsel to achieve that result. WCI remained the legal owner of the marks until Carlos voluntarily and knowingly relinquished his rights by transferring them to A&Co. Neither WCI's dissolution in 1992

---

[3] A twelfth facility was opened in Upper Saddle River, New Jersey. Before Carlos sold his interest in A&Co. to Caesar, the property had been optioned and the initial project engineering had been done. The project was completed after Carlos sold his interest in A&Co. to Caesar.

nor the transfer of the WESTY Trademarks to A&Co. rather than to Caesar personally alters the plain fact that the brothers never believed that ownership of the WESTY marks resided in APLP, not when they coined the marks, not when the first WESTY facility opened its doors, and not when the business grew from one location to several.

In his motion, Carlos strives mightily to create the appearance of a genuine factual dispute, harnessing acronyms and unsubstantiated allegations in an attempt to obfuscate facts that Carlos freely admitted during discovery. Carlos further puts forward his newly-constructed legal theory of first use. That theory not only elevates form over substance, but it is inapplicable to the undisputed facts presented here. The law is clear. Carlos and Caesar had the right to determine ownership of the WESTY marks. The record, including federal trademark registrations and duly recorded assignments, plainly reflects Carlos' intent and actions. These words and deeds cannot be undone by Carlos's desire to placate a daughter who is disgruntled over his decision to sell his personal stake in the marks. Carlos' belated "first use" theory cannot erase or undo the brothers' ownership decisions. In short, neither Carlos' self-serving, unsubstantiated assertions, and denials that are at odds with the record, nor Carlos' newly-minted legal theories that also are at odds with the record as well as established case law, provide a basis to grant or defeat summary judgment. Accordingly, the Court should deny Carlos' Motion For Summary Judgment and enter summary judgment in favor of Defendants on all three counts in the Amended Complaint.

## II. STATEMENT OF UNDISPUTED FACTS

The Defendants' Statement of Undisputed Facts is set forth at pages 4-16 of their November 12, 2004 Memorandum of Law in support of their Motion for Summary Judgment of the same date ("the Defendants' Memorandum" or "Defs. Mem."). Defendants incorporate that Statement herein by reference.

## III. SUMMARY JUDGMENT STANDARD

The Summary Judgment Standard is set forth at pages 16-17 of the Defendants' Memorandum. Defendants incorporate that Standard herein by reference.

## IV. ARGUMENT

### A. Carlos And Caesar Intended To And Did Place Ownership Of The WESTY Marks In WCI And Then A&Co.

#### 1. It is Undisputed That Caesar and Carlos Created the WESTY Marks.

Carlos's litigation-inspired position that the passive investment vehicle APLP orchestrated the Westy business, including the choice of name, conflicts with Carlos' deposition testimony as well as the practical business realities.[4] APLP has never been an active business. It has never had any employees or payroll. (See June 24, 2004 deposition of Carlos A. Arredondo, "Carlos Tr.," 97: 2-3; a true and complete copy of that deposition is attached to the Defendants' Memorandum at Exhibit B.) Thus, contrary to Carlos' present characterization, APLP could not and did not do anything

---

[4] The Court needs to look no further than footnote 2 in Carlos' brief to understand the fallacy of Carlos' position. In that footnote, he acknowledges that as trustee of one general partner of APLP, he does not know who owns one of the WESTY facilities where the WESTY trademarks are used. It is preposterous that the trademark "owner" not know where and how its marks are being used.

-7-

besides reap the benefits of the brothers' ideas and efforts and their generosity in creating and funding APLP. Carlos' testimony confirms this and more. Carlos acknowleged that, "Caesar came up with the name WESTY." (Carlos Tr. 97: 3-10) When Caesar originally came up with the idea of entering into the self-storage business, he considered calling it "WESTIES" after the breed of the West Highland Terriers or "Westies" he owned. (Id. 96:22-25.) Caesar then collaborated with Carlos to modify "WESTIES" name to "WESTY'S." (Id.)

Carlos further acknowledged that Caesar, assisted by a graphic artist, also created the business's West Highland Terrier logo (referred to in Pl. Mem. as the "Terrier Design" and in Defs. Mem. as the "WESTY Logo") and the other designs associated with the business. (Id. 97:11-17.)

### 2. It is Undisputed That Caesar and Carlos Intended That WCI Own the WESTY Marks.

Carlos concedes that in 1991 he and Caesar intended for WCI to own the WESTY'S name and the Terrier Design. (Carlos Tr. 148:3-7 ("Q. [D]o you recall having an intention to register the WESTY trademarks in the name of WESTY Connecticut, Inc. in 1991? A. Yes."); see also Caesar Tr. 124:12-124:25.) The brothers' intention is also reflected in the federal trademark registrations issued to WCI by the United States Patent and Trademark Office ("PTO"). (Carlos Tr. 151:10-16; 151:21-152:2.) Indeed, Carlos concedes in his motion for summary judgment that he and Caesar both understood "that they could file the applications in the name of any company they wanted to; they chose to file the applications in the name of WCI I." (Pl. Mem., p. 9.)

-8-

### 3. It is Undisputed That Caesar and Carlos Did Not Intend APLP to Own the WESTY Marks.

Carlos' idea to claim ownership of the WESTY marks by and for APLP clearly is of recent vintage. Until just shortly before this lawsuit, Carlos never claimed that he intended for APLP to be the owner of those marks, nor does he recall even considering that as a possibility in 1991. (Carlos Tr. 162:2-4.) Carlos has also never claimed that Caesar intended APLP to be the owner of the WESTY marks, nor could he legitimately assert that claim. (Caesar Tr. 124:12-124:25.) Carlos futher concedes that he did not ask to have APLP listed as the owner of the WESTY trademarks in the trademark aplications filed with the PTO. (Carlos Tr. 161:24-162:1.)

The idea that APLP should be the owner of the WESTY marks did not occur to Carlos until at least 2002 when his daughter Fabiola urged him to try to get ownership of the marks transferred to APLP. (Carlos Tr. 79:25-80:16.) Although Carlos initially told Fabiola to "leave it alone," upon her urging, Carlos met with Caesar to discuss assigning the WESTY marks to APLP. (Carlos Tr. 81:18-82:11.) Recognizing that A&Co. owned the WESTY marks, Carlos simply asked Caesar to assign ownership of the marks from A&Co. to APLP. (Carlos Tr. 82:13-21.) After Caesar declined this request, Carlos consulted a lawyer. That consultation led to this action. (Carlos Tr. 82:13-21; 195-96.)

### 4. It is Undisputed that Caesar and Carlos Agreed That WCI Owned the WESTY Marks Between 1991 and December 1999.

As shown in Caesar's motion for summary judgment, Carlos and Caesar were well-informed and willing partners in every decision concerning the ownership of the WESTY marks. Now, however, in his effort to revisit and alter past events, Carlos

-9-

depicts the structure and relationship of the brother's various business interests as if part of a corporate shell-game in which every move entailed the risk of losing the rights to the valuable WESTY marks. In particular, he attempts to spin the dissolution and eventual re-formation of WCI and WNY[5] as watershed events that somehow caused ownership of the WESTY marks to be transferred to APLP against the brothers' wishes and understanding at the time.

Carlos' actions and testimony, however, belie his present assessment of events. Carlos admits that he intended that the re-formed WCI created in 1996 would continue to operate as if "nothing had changed" from the WCI entity created in 1991 and he intended that the re-formed WCI would also own the WESTY trademarks. (Carlos Tr. 178: 11-18; 180:12-16.) To be certain that ownership of the marks remained with WCI after the corporate reformation, in 1996, Carlos specifically asked A&Co.'s attorney, Jeffrey Stephens, to confirm that WCI owned the WESTY trademarks. (Carlos Tr. 173:2-178:21.) Attorney Stephens did so and sent Carlos a memorandum dated December 18, 1996 confirming WCI's ownership of the trademarks. (Carlos Tr. 174:4-19; Caesar Aff., Ex. 10.)

Undisputed documents signed by Carlos further evidence Caesar and Carlos' intent for WCI to maintain ownership of the WESTY marks after 1996, with the company

---

[5] In 1992 and 1993, respectively, WCI and Westy's New York's ("WNY") corporate statuses with the State of Connecticut were dissolved. In July 1996, Caesar and Carlos re-formed WCI and WNY with the identical ownership interest (i.e., 50/50 for WCI and sole ownership of WNY for Caesar) that existed before the dissolution. (Pl. Stmt ¶ 6; Carlos Tr. 24:1-2.)

continuing in its original form. For example, a Connecticut tax registration application from July of 1997 bearing Carlos' signature, and signed after WCI's 1996 reformation, lists the date of incorporation for WCI as March 8, 1991. (Caesar Aff., Ex. 20.) Additionally, WCI's federal tax returns have the same tax identification number, and display the same incorporation year (1991) and the same Subchapter S election date (1991), both before and after WCI's 1996 reformation. (Caesar Aff., Ex. 21.)

Simply stated, throughout the course of dissolving and reforming WCI and WNY, Carlos' belief that WCI properly owned the WESTY marks never wavered.

### 5. It is Undisputed That Caesar and Carlos Intended That WCI Assign the WESTY Marks to A&Co in December 1999.

When Carlos decided to exit the WESTY business in late 1999 and turn it over to Caesar, he understood and approved WCI's assignment of ownership of the WESTY Trademarks to A&Co. as a part of the voluntary transactions that involved the sale of his one-half interest in A&Co. to Caesar. (Carlos Tr. 16:4-16:23.) At the meetings in which those transactions were structured, Carlos and Caesar, as equal owners of WCI and A&Co., specifically instructed their accountant, Peter Formanek, to assist with the transfer of WCI's trademarks. (Carlos Tr. 33:16-34:3; 42:24-44:19; Exhibit D to Defs. Mem., Affidavit of Peter Formanek, "Formanek Aff.," ¶¶ 4, 5.) Carlos initially understood that the WESTY Trademarks would be assigned to Caesar personally (Carlos Tr. 33:25-34:3), but it is undisputed that prior to signing the transaction documents, Attorney Jeffrey Stephens explained to Carlos that the WESTY marks would instead be owned by A&Co. (Carlos Tr. 42:12-45:5.) Thus, Carlos executed the transaction

documents fully aware of and accepting these facts and circumstances. (Carlos Tr. 45:21-46:2.)[6]

In his Motion, Carlos tries to create a triable issue through an affidavit that directly contradicts not only well-documented events but Carlos' sworn deposition testimony. For all his strained effort to depict an "alternate WESTY universe" bearing no relationship to reality, Carlos utterly has failed to create a genuine issue of material fact.

Carlos now claims that he understood that the WESTY marks would be transferred to Caesar and not A&Co. (Pl. Mem., p. 10). Amazingly, Carlos also boldly asserts that he "never agreed to sell his interests in the marks to A&Co. and would have opposed any such transaction." (Pl. Mem., p. 11 citing Second Declaration of Carlos A. Arredondo, ¶ 51.) Carlos also implies that he was unaware of the transfer of ownership to A&Co. because the assignment document was created "unbeknownst" to him while he was out of the country on December 21, 1999. (Pl. Mem., p. 11 citing Second Declaration of Carlos A. Arredondo, ¶ 52.) It is clear from his deposition, however, that Carlos knew prior to transferring his 50% interest in A&Co. that ownership of the WESTY Trademarks had already been placed in A&Co. (Carlos Tr. 16; 15-19; 42:12 – 43:17) By selling his 50% interest in A&Co. to Caesar, Carlos thus knew he would no

---

[6] Peter Formanek, the accountant involved in the sale and assignment transactions, submitted an affidavit in which he testified that at these meetings Carlos and Caesar discussed the transfer of WCI's trademarks to A&Co. and Mr. Formanek completed these transactions pursuant to the discussions. (Formanek Aff., ¶ 5.)

longer have any rights in the WESTY trademarks. There is no better proof than Carlos' own words. Carlos testified as follows:

> Q: And in Paragraph 2 [of the agreement for Carlos to sell his A&Co. interest to Caesar] you will see, six lines down, at the left-hand margin, it references trademark rights, do you see that?
>
> A: Yes
>
> Q: Those are the trademark rights that are at dispute in this case?
>
> MR ELGISON: Objection. Assumes facts not in evidence.
>
> MR. RAABE: I'm asking whether that is the case.
>
> MR. ELGISON: I'm objecting. It assumes facts not in evidence.
>
> A. When that came – when I saw that item, I asked, I don't remember who, I think I asked Jeff who wrote it, what is that. He said Caesar had put it into Arredondo & Co. Remember, I had said previously, take it, that Caesar he put it into Arredondo & Co.
>
> Q: "It" meaning the trademarks?
>
> A. Yes.
>
> Q: You are saying that Jeff told you that Caesar –
>
> A. Had put it into Arredondo & Co.
>
> Q: Put the trademarks into Arredondo & Co.?
>
> A. Yes.
>
> Q: When did he tell you that?

A.    It would have been the day that I received this, which would have been like January 3rd.

Q:    Before you signed it [the agreement selling his A&Co. interest to Caesar]?

A.    Yes. I read it before I signed it.

(Carlos Tr. 42: 12 – 43:17)

Carlos' testimony is fatal to his newly created theory that APLP owns the WESTY marks. Whether as an individual co-creator of the WESTY business, or in his hyper-technical persona as "Trustee of the 2000 Trust for The Grandchildren of Carlos A. Arredondo and Mari V. Arredondo, General Partner of Arredondo Properties Limited Partnership," Carlos clearly intended to part with his 50% interest in A&Co. and the WESTY Trademarks and clearly meant to give those rights to Caesar, either directly or through A&Co., the corporation Carlos knew and accepted that Caesar henceforth would control. From the testimony quoted above, it is unquestionable that Carlos knew that A&Co. would own the trademarks. "before he signed" the documents consummating the sale.

That Carlos did not intend to make APLP the new owner of the marks is equally clear. If he desired, Carlos could have tried to negotiate the transfer of the marks to APLP as he exited the WESTY business. But he did not. He never even hinted at the notion of APLP's ownership until years later in 2002 after his daughter Fabiola pressed him to do so. (Carlos Tr. 79-92) Carlos' uncorroborated and contradictory claim that he "never agreed to sell his interests in the marks to A&Co. and would have opposed any such transaction" cannot erase the abundant facts, including his own testimony, that

refute his new contention. (Pl. Mem. P. 11 citing Second Declaration of Carlos A. Arredondo, ¶ 51.) As discussed more fully below, Carlos' inconsistent, self-serving statement cannot defeat summary judgment.

Moreover, Carlos' new-created legal theory, and his summary judgment motion, elevate form over substance. Carlos attempts to undo his prior transactions and write more than a decade of history during which he clearly believed and intended that WCI owned the WESTY marks by creating a technical legal argument (which the Defendants have established is incorrect and inapplicable) that ownership in WCI was legally impossible and therefore ownership must be placed in APLP under a theory of "first use."

### B.  Caesar And Carlos Legally Placed Ownership Of The WESTY Trademarks In WCI And Carlos' First Use Argument Is Baseless

As demonstrated in Caesar's November 12, 2004 Memorandum in support of his Motion for Summary Judgment, it makes no difference in terms of trademark ownership which entity in the Arredondo universe owned or operated the "first" WESTY facility. Caesar and Carlos had three separate legal grounds supporting their decision to place ownership of the WESTY marks in WCI: (1) Caesar and Carlos created the WESTY Trademarks and WESTY business, and were the "leading lights" of the Arredondo family businesses, (2) Caesar and Carlos exercised complete control over APLP, the use of the WESTY Trademarks, and the quality of the services offered under the WESTY Trademarks, and (3) APLP is a related company of WCI through an implied license.

Carlos cannot salvage his case by couching his about-face as the product of a new legal theory. As shown below, neither Carlos' "first use" theory, his "abandonment" theory, nor any other doctrine justifies his efforts to supplant the undisputed record with his self-serving unsustainable version of the facts.

> 1. **Carlos And Caesar, As The Creators of the WESTY Trademarks And Business And As The "Leading Lights" Of The Arredondo Family Businesses, Properly Put Ownership Of The Trademarks In WCI**

The heart of Carlos' new litigation-inspired theory of trademark ownership is the doctrine of "first use"—a principle historically used to resolve who has superior rights to a mark as between two unrelated parties who independently develop and use the same trademark.[7] In essence, the doctrine asks which of the competing entities first used the trademark in a manner sufficient to create trademark rights. The first use doctrine, however, has no application in cases like this between related parties. It cannot be used to rewrite or undo the history of business dealings between two successful and savvy brothers who knew what they wanted to accomplish and who left a remarkably clear record of their actions and intentions. As shown below, Carlos' new minted legal claim, which is contrary to his stated intent and course of conduct for more than a decade, cannot be salvaged by an improper application of the "first use" doctrine.

The issue of trademark ownership among various family owned entities was addressed in <u>Airport Canteen Services, Inc. v. Farmer's Daughter, Inc.</u>, 184 USPQ 622

---

[7] Sections IV.B.1-4 reiterate verbatim the arguments made at pages 19-28 of the Defendants' Memorandum. For ease of reading, they are repeated here in opposition to Carlos' first use argument, rather than incorporated by reference.

-16-

(TTAB 1974). That cancellation action before the Trademark Trial and Appeal Board ("TTAB") involved two different parties who operated restaurants in different geographical areas under the same mark, FARMER'S DAUGHTER. The petitioner, which had used the FARMER'S DAUGHTER mark since 1964, sought to cancel the respondent's trademark registration of FARMER'S DAUGHTER for restaurant services. The grounds for cancellation included the allegation that respondent committed fraud when it applied to register a mark used by one family business but listed a second family business as the applicant and owner of the mark.

The TTAB rejected the petitioner's argument. Finding that applicant's founder had been the "leading light" of various family enterprises, the TTAB ruled that any use of the disputed mark by any of the family companies was for his benefit. Specifically, the TTAB stated:

> It is clear from the record that Mr. Guagenti has been the leading light or owner of what can be considered to be family enterprises or, if you will, corporate sales, and that, for purpose of convenience, he, at the advice of counsel or accountant, transferred ownership of his various interests to one or another of his corporations without disturbing, and that is the important fact, the continuance of operation of his different activities including that of the "FARMER'S DAUGHTER" restaurant. It is apparent that there was not nor is there any claim of adverse rights in the mark "FARMER'S DAUGHTER" by any corporation within Mr. Guagenti's organization and that, in essence, any use of the mark by any of the corporations was for the benefit of and inured to the benefit of Mr. Guagenti.

184 USPQ at 627.

The <u>Farmer's Daughter</u> holding applies with equal force here and disposes of the case as a matter of law. The "leading lights" of the Arredondo family, Caesar and

Carlos, created the WESTY business concept and the WESTY marks, then chose to rest trademark ownership in WCI, not APLP. Moreover, Caesar and Carlos exercised complete control over each and every WESTY facility, including those owned by APLP. The brothers' decision to make their jointly owned business the trademark owner was well-intentioned, well-informed, and legally correct. It cannot be undone or cast aside a decade later by Carlos' change of heart over selling his rights to Caesar, or by his daughter Fabiola's self-interest or dissatisfaction with the deal.

### 2. Caesar And Carlos' Complete Control Over APLP And Use Of The WESTY Trademarks Makes APLP A "Related Company" Under The Lanham Act

Under the Lanham Act, the federal trademark law, it is not necessary that a company seeking registration of a trademark be the first user of the mark as long as the first user is a "related company" whose use of the mark is under the applicant's control.[8] Indeed, a company can obtain and maintain a trademark registration and own proprietary trademark rights to a mark used exclusively by others provided the use is by related companies whose use of the mark is under the registrant's control.[9] In other

---

[8] Section 5 of the Lanham Act, 15 U.S.C. § 1055, which governs the use of trademarks by related companies, provides: "Where a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration, provided such mark is not used in such manner as to deceive the public. If first use of a mark by a person is controlled by the registrant or applicant for registration of the mark with respect to the nature and quality of the goods or services, such first use shall inure to the benefit of the registrant or applicant, as the case may be."

[9] The Lanham Act defines a "related company" as "any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used." 15 U.S.C. § 1127.