**EXHIBIT A**

LEXSEE 2003 US DIST LEXIS 15953

RICHARD DUNCAN, Plaintiff, v. TOWN OF BROOKFIELD, Defendant. Civil

No. 3:98CV01919(AWT)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2003 U.S. Dist. LEXIS 15953; 15 Am. Disabilities Cas. (BNA) 106

August 22, 2003, Decided

**DISPOSITION:** Defendant's supplemental motion for summary judgment was granted as to Count One. Counts Two and Three were dismissed without prejudice.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For Richard Duncan, PLAINTIFF: William G Madsen, Jacques J Parenteau, Madsen & Prestley, Hartford, CT USA. Phyllis M Divins, Kern & Wooley, Hartford, CT USA.

For Town of Brookfield, DEFENDANT: Thomas R Gerarde, Howd & Ludorf, Hartford, CT USA. Michael Peter McKeon, Roseann G Padula, Sullivan, Schoen, Campane & Connon, Hartford, CT USA. James E Kernan, Giovanna Trocchi Giardina, Kernan & Henry, Waterbury, CT USA.

For Mark D'Avola, DEFENDANT: Michael Peter McKeon, Sullivan, Schoen, Campane & Connon, Hartford, CT USA.

**JUDGES:** Alvin W. Thompson, United States District Court.

**OPINIONBY:** Alvin W. Thompson

**OPINION:**

RULING ON SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

The remaining claims of plaintiff Richard Duncan ("Duncan") are that defendant Town of Brookfield (the "Town") harassed him and terminated his employment because of his age and disability in violation of the *Americans with Disabilities Act, 42 U.S.C. 12101 et seq.* (the "ADA")§ § , and the *Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § § 46a-58 et seq.* ("CFEPA"). The plaintiff's *ADA* claim is set forth in Count One, the *CFEPA* disability discrimination claim in Count Two, and [*2] the *CFEPA* age discrimination claim in Count Three. In ruling on the initial motion for summary judgment, the court granted the defendant leave to file a supplemental motion for summary judgment on Counts One and Two limited in scope to the question of whether the plaintiff was disabled within the meaning of the term under the *ADA* and *CFEPA*, and on Count Three limited in scope to whether the minimum 40 year old age requirement under the *Age Discrimination in Employment Act, 29 U.S.C. 621 et seq.§ §* , also applies to *CFEPA*. For the reasons set forth below, the defendant's supplemental motion for summary judgment is being granted as to Count One, and the court declines to exercise supplemental jurisdiction over Counts Two and Three.

**I. FACTUAL BACKGROUND**

In July 1985, the plaintiff was hired as a custodian in the Brookfield public school system. Sometime thereafter, Duncan left the school system and began working as a Parks/Grounds Maintenance Worker for the Brookfield Parks and Recreation Department. He remained in that position until approximately July 1, 1997. At all relevant times, the plaintiff was a member of Local 136 of the International [*3] Federation of Professional and Technical Engineers, and the terms of his employment were governed by a collective bargaining agreement ("CBA") entered into by the Town and Local 136.

When Duncan began working for the Parks and Recreation Department, his supervisor was Frank Young ("Young"). Throughout the period during which Young

Case 3:02-cv-02200-CFD    Document 72-3    Filed 12/03/2004    Page 3 of 13

Page 2

2003 U.S. Dist. LEXIS 15953, *; 15 Am. Disabilities Cas. (BNA) 106

supervised the plaintiff, Duncan did not receive any disciplinary warnings or actions. Young subsequently resigned and Mark D'Avola ("D'Avola") was hired by the Town as a Grounds Maintenance Supervisor in the Parks and Recreation Department on May 15, 1995, and in that position, D'Avola took over as Duncan's immediate supervisor.

During his period of employment with the Town, Duncan filed for workers' compensation benefits several times as a result of work-related injuries. In or about November 1994, Duncan injured his back while working when he lifted a bag of "ice melt" weighing approximately one hundred pounds. This injury and subsequent re-injuries of his back caused the plaintiff severe pain whereby the plaintiff has received medical treatment and physical therapy for his back problems since that time. As a result of this injury, Duncan's physician [*4] imposed bending and lifting restrictions on him, and Duncan was required to work light duty for a limited period of time.

On August 19, 1996, Duncan was involved in an automobile accident. As a result of this accident, Duncan experienced neck and back pain and headaches. His physician gave him a series of injections in his back, placed him on a beta-blocker, and prescribed physical therapy. In addition, his physician restricted him to not lifting more than 15 pounds and to light duty work only for a set period of time. Duncan did not report to work from August 19, 1996 through November 14, 1996. When he completed treatment for the injuries he sustained in the August 19, 1996 accident, in or about November or December 1996, Duncan's treating physician released him to work without any restrictions. From November 26, 1996 through January 31, 1997, Duncan took an additional 24 sick, vacation and personal days off from work.

In or about March 1997, Duncan was diagnosed with pericarditis, an inflammation around his heart, and with a congenital heart defect manifesting itself as a hole in his heart. Duncan was also diagnosed with a ruptured ear drum in the spring of 1997. On May 5, 1997, Duncan [*5] was evaluated by Dr. Thomas Danyliw, who then wrote a letter to Heather Paton, the Town's Personnel Director at the time, informing her of his opinion that, based on his evaluation of Duncan and review of the records of testing performed at Danbury Hospital over the preceding two months, Duncan was "fit for duty for the job of grounds maintainer." (Defs.' Mem. Mot. Summ. J., Ex. P.)

On or about May 1, 1997, Heather Paton wrote a letter to Duncan informing him that his job was "in jeopardy" as a result of his repeated absences. The letter indicated that Duncan had exhausted all of his sick and vacation time as of April 28, 1997, and was considered absent without leave.

On or about May 20, 1997, the plaintiff received a letter from the Town informing him that his position had been eliminated effective July 1, 1997. The stated reason for the elimination of the position was budgetary cutbacks. At the time the decision was made to eliminate Duncan's position, Duncan was thirty-nine years old. As of July 1, 1997, the average age of the Town's employees was just over 45 years old, and 85 of the 121 people employed by the Town were older than Duncan.

The CBA provides for a grievance procedure. [*6] Duncan did not file a grievance when his employment was terminated.

Duncan's position was the only one in the Parks and Recreation Department eliminated at that time. The other full-time, permanent Parks/Grounds Maintenance Worker at that time was Richard Alexander ("Alexander"), who was not laid off. Alexander had been hired by the Town in January 1984, so he had more seniority than Duncan. In 1997, Alexander was seventy years old; he had only one eye and had previously undergone major surgery removing part of one of his lungs.

On December 30, 1997, Lynn Beardsley, Heather Paton's successor as the Town's Personnel Director, wrote to Duncan to offer him a position as a Part-Time Parks Maintenance Worker position with the Town. Three such positions had been created by the Town. The requirements for the position were listed as a high school diploma or the equivalent, the ability to lift 90 pounds, the ability to drive heavy equipment, knowledge of landscaping, basic carpentry skills and basic math skills. Duncan declined this offer of employment; his stated reason for declining the offer was that he could not lift 90 pounds and did not have a high school diploma.

On June 2, 1998, Lynn [*7] Beardsley wrote to Duncan to offer him a position, this time one of three Full Time Parks Maintenance Worker positions that had been created. This position was equivalent to the position Duncan had previously held with the Town. Duncan declined this offer; his stated reason for declining the offer was that he could no longer lift 90 pounds. On June 26, 1998, Lynn Beardsley wrote to Duncan again to inform him that in light of Duncan's documented history of restrictions on his ability to work, the Town would "employ a Workplace Evaluator, to complete a Workplace Analysis, to determine whether there are reasonable accommodations which would enable [Duncan] to perform the essential functions" of the position. (Defs.' Mem. Mot. Summ. J., Ex. U.) Enclosed with this letter was a report which indicated that the plaintiff could fulfill the requirements of the job with a

Case 3:02-cv-02200-CFD    Document 72-3    Filed 12/03/2004    Page 4 of 13

Page 3

2003 U.S. Dist. LEXIS 15953, *; 15 Am. Disabilities Cas. (BNA) 106

55 pound lifting restriction, which the Town was able to accommodate. Duncan declined this offer.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such [*8] issue warrant judgment for the moving party as a matter of law. *Fed. R. Civ. P. 56(c)*. See *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*; *Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994)*. *Rule 56 (c)* "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." See *Celotex Corp., 477 U.S. at 322*.

When ruling a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. See, e.g., *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*; *Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987)*; *Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)*. It is well-established that "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are [*9] jury functions, not those of the judge." *Anderson, 477 U.S. at 255*. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." *Gallo, 22 F.3d at 1224*.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson, 477 U.S. at 248* (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Id. As the Court observed in Anderson: "The materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. Thus, [*10] only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. See *Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990)*.

When reviewing the evidence on a motion for summary judgement, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)* (quoting *Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990))*. Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant's evidence must be supported by the evidence. "Mere speculation and conjecture" is insufficient [*11] to defeat a motion for summary judgment. *Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997)* (quoting *W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990))*. Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. *Anderson, 477 U.S. at 252*.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See *Celotex Corp., 477 U.S. at 324*. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," *Weinstock, 224 F.3d at 41*, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, which must "demonstrate more than some metaphysical doubt as to the material facts . . . [and] must come forward with specific facts showing that there is a genuine issue for trial." *Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)* [*12] (quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." *Weinstock, 224 F.3d at 41*. If the nonmovant fails to meet this burden, summary judgment should be granted. The question then becomes whether there is sufficient evidence to reasonably expect that a jury could return a verdict in favor of the nonmoving party. See *Anderson, 477 U.S. at 248, 251*.

## III. DISCUSSION

Three counts remain in the plaintiff's complaint. Count One alleges that the Town harassed Duncan and terminated his employment on account of his disability, in violation of the *ADA*. Count Two alleges that the Town harassed Duncan and terminated his employment

Case 3:02-cv-02200-CFD    Document 72-3    Filed 12/03/2004    Page 5 of 13

Page 4

2003 U.S. Dist. LEXIS 15953, *; 15 Am. Disabilities Cas. (BNA) 106

on account of his disability in violation of *CFEPA*. Count Three alleges that the Town terminated Duncan's employment on account of his age in violation of *CFEPA*.

### A. Count One: Disability Discrimination under the *ADA*

The *ADA* prohibits covered employers from discriminating against an otherwise qualified employee "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge [*13] of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *42 U.S.C.A. § 12112(a)(West 1995)*. See also *Stone v. City of Mount Vernon, 118 F.3d 92, 96 (2d Cir. 1997)*. The statute defines "qualified individual with a disability" to mean "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id. at 96*.

> To make out a prima facie case under the *ADA*, a plaintiff must establish that: (1) his employer is subject to the *ADA*; (2) he was *disabled* within the meaning of the *ADA*; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.

*Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001)*(emphasis added). The court granted the defendant leave to file a supplemental motion for summary judgment on the issue of whether the plaintiff was disabled, within the meaning of that term under the *ADA*. [*14]

Under the *ADA*, the term "disability" means "(A) a physical or mental impairment that *substantially limits* one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *42 U.S.C.A. § 12102(2)(A),(B),(C)(West 1995)*(emphasis added). In turn, the EEOC has defined "substantially limits" as:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*29 CFR § 1630.2(j)(1)(2002)*. The EEOC regulations provide that the following factors should be considered in determining whether an individual is "substantially limited" in a major life activity:

> (i) The nature and severity of the impairment;
>
> (ii) The duration or expected duration of the impairment; and
>
> (iii) The *permanent* or [*15] *long term* impact, or the expected *permanent* or *long term* impact of or resulting from the impairment.

*29 CFR § 1630.2(j)(2)(2002)*(emphasis added); see also *Toyota Motor Mfg., Kentucky, Inc. V. Williams, 534 U.S. 184, 196, 151 L. Ed. 2d 615, 122 S. Ct. 681 (2002)*.

Here, Duncan has failed to show that there is a genuine issue as to whether he is disabled under the *ADA*. First, by virtue of his own admissions, Duncan fails to create a genuine issue as to whether he was substantially limited in any of his major life activities. Second, he fails to create a genuine issue as to whether he was regarded as having such an impairment. Consequently, because there is no evidence that he had a record of such impairment, Duncan cannot establish the second element of a claim under the *ADA*.

The plaintiff's November 2001 affidavit (Pl.'s Opp'n to Defs.' Mot. Summ. J., Ex. B) is inconsistent with Duncan's March 1999 deposition testimony (Defs.' Mem. Mot. Summ. J., Ex. C), and "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that ... contradicts the affiant's previous deposition [*16] testimony." *Hayes v. New York City Dep't of Corrections, 84 F.3d 614, 619 (2d Cir.1996)*(citations omitted). Duncan claims in his affidavit that from the time of his initial injury on the job in November 1994, which involved his lifting the 100 pounds of ice melt, up to the time the Town eliminated his position he "suffered from a number of serious physical impairments which were chronic, recurring, disabling, and which substantially limited [his] ability to bend, lift, squat, and stand." (Pl.'s Opp'n to Defs.' Mot. Summ. J., Ex. B, P 10.) However, in the March 1999 deposition in a state court lawsuit arising out of his August 1996 car accident, when Duncan was asked whether his doctor had awarded him a disability rating in

Case 3:02-cv-02200-CFD   Document 72-3   Filed 12/03/2004   Page 6 of 13

Page 5

2003 U.S. Dist. LEXIS 15953, *; 15 Am. Disabilities Cas. (BNA) 106

connection with the November 1994 injury, Duncan responded "No. I was fully recovered." (Defs.' Mem. Mot. Summ. J., Ex. C, p. 32.) According to Duncan, the doctor released him at that time to return to work with no restrictions. Id. at 28. He also stated that Dr. Cohen discharged him from treatment for the 1994 injury, and it had been to "full duty, full recovery." Id. Duncan's statements at his March 1999 deposition clearly demonstrate [*17] that the plaintiff's injuries resulting from the 1994 incident were not permanent and were not long term in their impact. Moreover, when Duncan was asked whether, aside from his injuries in 1994, 1995, and 1998, he was generally a healthy man, he responded in the affirmative.

Even after Duncan was diagnosed with pericarditis, congenital heart defect, and a ruptured ear drum, Dr. Danyliw, after an evaluation of Duncan and a review of the testing at Danbury Hospital, concluded that the plaintiff was fit for duty at his job with the Town. Based on the foregoing, the court concludes that the plaintiff has failed to create a genuine issue as to whether he was substantially limited in one or more major life activities.

Nor has the plaintiff created a genuine issue as to whether the Town regarded him as having a disability within the meaning of the *ADA*. The pertinent portion of the applicable EEOC regulations define "is regarded as having such an impairment" to mean "has a physical ... impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation...." *29 CFR § 1630.2(l)(1)(2002)*. Here, there [*18] is no evidence that the Town treated Duncan during the relevant time period as having an impairment that substantially limited his major life activities.

Duncan relies upon a statement allegedly made by D'Avola to Don Joray ("Joray"), a seasonal employee the Town hired in August 1996, during Joray's job interview. Joray testified at his deposition that while he was with D'Avola discussing his interest in a full-time position, D'Avola told him that "there was [sic] people possibly leaving...." (Pl.'s Opp'n to Defs.' Mot. Summ. J., Ex. L, p. 16.) Joray testified further that D'Avola had stated "that one of the guys was getting up in age and another guy had physical problems." Id. at 16. Assuming D'Avola made this statement referring to Duncan, the fact that D'Avola perceived Duncan as having "physical problems" is not sufficient to support a conclusion that the plaintiff was treated by the Town as having an impairment that substantially limited a major life activity. On the other hand, it is undisputed that the Town was informed by Dr. Danyliw, during the very month the Town decided to eliminate the plaintiff's position, that the plaintiff was fit for duty. Based on the foregoing, [*19] the court concludes that the plaintiff has failed to create a genuine issue as to whether he was treated by the Town as having an impairment that substantially limited a major life activity.

Because there is no evidence that the plaintiff has a record of such impairment, the court concludes that the defendant has satisfied its burden of showing that there is no genuine issue as to whether the plaintiff was disabled within the meaning of the *ADA* at the time he suffered the adverse employment action, and that the evidence shows that he was not so disabled. The Town is therefore entitled to judgment as a matter of law on the plaintiff's claim under the *ADA*.

### B. Counts Two and Three: *CFEPA* Violations

The remaining claims are Counts Two and Three under *CFEPA*. As the plaintiff notes, the definition of the term "disability" under *CFEPA* is broader than the definition under the *ADA*. See *Beason v. United Technologies Corp., 337 F.3d 271 (2d Cir. 2003)*("the case law ... uniformly confirms our belief that the *CFEPA*'s definition of physical disability is broader than the *ADA*'s."). Thus, the court's ruling on Count One is not dispositive of Count Two.

The Supreme Court [*20] has counseled that a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, *as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain*, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. *Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 98 L. Ed. 2d 720, 108 S. Ct. 614 (1988)* (emphasis added). See also *Lanza v. Merrill Lynch & Co., 154 F.3d 56, 61 (2d Cir.1998)* (there are "notions of judicial economy and comity which militate against supplemental jurisdiction when the federal claims have been dismissed pre-trial."). This is particularly so where both of the remaining state law claims involve issues under *CFEPA* where the law is not yet well-developed in the state courts. Accordingly, the court declines to exercise supplemental [*21] jurisdiction over the *CFEPA* claims in Counts Two and Three.

### III. CONCLUSION

For the reasons stated above, the defendant's Supplemental Motion for Summary Judgment [Doc. # 67] is hereby GRANTED as to Count One, and the *CFEPA* claims in Counts Two and Three are hereby DISMISSED, without prejudice. The Clerk shall close this case.

Case 3:02-cv-02200-CFD   Document 72-3   Filed 12/03/2004   Page 7 of 13

Page 6

2003 U.S. Dist. LEXIS 15953, *; 15 Am. Disabilities Cas. (BNA) 106

It is so ordered.

Dated this 22nd day of August, 2003, at Hartford, Connecticut.

Alvin W. Thompson
United States District Court

**EXHIBIT B**

LEXSEE 1999 US DIST LEXIS 10254

**DEMETRIOS L. SPELIOS, Plaintiff v. AETNA LIFE INSURANCE COMPANY and AETNA SERVICES, INC., Defendants**

3:97CV1482 (WWE)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

*1999 U.S. Dist. LEXIS 10254*

June 24, 1999, Decided
June 25, 1999, Filed

**DISPOSITION:** [*1] Defendant's Motion for Summary Judgment [Doc. No. 14] GRANTED as to the ADEA claim and provisionally DENIED as to the ERISA claim.

**LexisNexis(R) Headnotes**

**COUNSEL:** For DEMETRIOS L. SPELIOS, plaintiff: James L. Kestell, Kestell & Associates, Hartford, CT.

For AETNA LIFE INS. CO., AETNA SEVERANCE BENEFITS PLAN, defendants: Albert Zakarian, Day, Berry & Howard, Hartford, CT.

**JUDGES:** WARREN W. EGINTON, SENIOR UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** WARREN W. EGINTON

**OPINION:**

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This is an action for money damages brought pursuant to the Age Discrimination Employment Act ("ADEA"), *29 U.S.C. Sections 621*-634. The plaintiff, Demetrious Spelios ("Spelios"), brings this action against defendants Aetna Life Insurance Company and Aetna Services, Inc. ("Aetna"), alleging that Aetna terminated his employment on May 3, 1995 due to his age. He also claims that Aetna terminated his employment in order to avoid paying him severance benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendants assert that Spelios was not terminated due to his age; rather, he was terminated for falsifying company documents and instructing subordinates [*2] to do so.

Defendants have moved for summary judgment on both claims.

**STATEMENT OF FACTS**

The Statement of Facts filed by defendants is deemed uncontroverted due to plaintiff's failure to comply with Local uncontroverted due to plaintiff's failure to comply with Local Rule 9(c)(2), which requires a party opposing a motion for summary judgment to state "in separately numbered paragraphs corresponding to the paragraphs contained in the moving party's Local Rule 9(c)(1) Statement whether each of the facts recently asserted by the moving party is admitted or denied". The series of questions posed by plaintiff in his purported Local Rule 9(c) (2) does not aid or inform the Court as to his position on defendant's assertions. *Accord, Scianna v. McGuire, 1996 U.S. Dist. LEXIS 22334, 1996 WL 684400 (D. Conn. 1996)* (granting summary judgment and holding that series of questions filed by plaintiff is insufficient compliance with Local Rule (c)(2)).

On December 30, 1991, plaintiff became Assistant Claims Manager for Aetna Health Plans at Aetna's Windsor facility. Plaintiff held this position until his employment was terminated on May 3, 1995.

In this position, Spelios' responsibilities included preparing [*3] reports for the claims portion of the office which showed how many claims had not yet been processed and the oldest date of the unprocessed claims. Plaintiff testified at his deposition as to the importance of this information; in fact, one report was revised several

times in early 1995 to make it more effective, informative and accurate.

In December, 1994, in the midst of poor customer results at the Windsor facility, Aetna selected one James Juliano as the Service Center Head of the Windsor facility. Spelios applied for this position, but Aetna determined that Juliano was the preferred candidate. Juliano is also in the protected ADEA class, being 41 years old at the time. With this position filled, Spelios reported directly to Juliano. Spelios' first job performance review by Juliano was less than satisfactory.

Soon thereafter it was brought to Juliano's attention by two of his supervisors that Spelios had for some time been asking them to change the numbers on the backlog reports. Both had complied, lessening the number of reportable claims. One of the supervisors, Donna Berdick, was so concerned about this that she kept a record in her desk of the accurate numbers which should [*4] have been reported. Juliano met with the two supervisors on or about April 28, 1995, during which both supervisors reiterated their allegations.

Juliano raised the issue with the Human Resources Manager, who, recognizing the severity of these allegations, contacted Richard Burns of Internal Audit to investigate.

Burns began his investigation by meeting with the two supervisors for two days. At the end of each interview, Burns asked each supervisor to review and sign statements which detailed the information gained from the interview. Each supervisor signed each report with minor changes. Berdick supplied Burns with the true data, which was attached to her report.

Burns next met with Spelios, who contended then and at his deposition that the alteration of the numbers would serve "no purpose", stating that "I would never willingly change or report information which was not true." Spelios prepared a statement which, as he testified on deposition, sufficiently stated his defenses. He further testified that he was not pressured to sign this statement and that he had signed it voluntarily.

After conducting this series of interviews, Burns reported his findings to Juliano, at which [*5] time Juliano reviewed the reports Burns had obtained, containing the evidence that Spelios had directed his supervisors to misrepresent information. Because of the serious nature of the violations by Spelios, Julian terminated plaintiff's employment immediately, by a letter to Spelios stating that Spelios' employment was terminated because of "his instruction to others to misrepresent information of weekly claim backlog reports used to measure office results." Juliano has represented that he honestly believed that Spelios had committed misconduct within the meaning the Aetna Code of Responsibility and Conduct.

Spelios appealed his termination through an extensive, three-step process established by Aeta. At the Step 1 review, his stated reason for the appeal was "miscommunications and misunderstandings concerning misconduct" of which Aetna accused him of. He further stated that he had "always had the authority to make a judgment" to change the numbers.

At this Step 1 level, Aetna's Vice President, who was Juliano's direct supervisor, conducted an investigation of Spelios' allegations. The scope of her investigation included reviewing Spelios' letter, reviewing Juliano's termination [*6] letter, reviewing the Burns' investigative file, interviewing Spelios' past supervisors, interviewing these subordinates a second time, and interviewing Juliano, the Manager of Human Resources, Burns and Spelios himself. In a letter from the Vice President to Spelios, the Vice President stated that she had concluded that Spelios' "employment was terminated for misconduct" based on his [direction to] others to misrepresent information of the weekly backlog sheets." Thus, she upheld Juliano's decision.

After the Vice-President conducted her investigation, the plaintiff, dissatisfied with the Step 1 review, requested a Step 2 review with James Hickey, Senior Vice President of Operations. In a letter to Hickey requesting this Step 2 review, Spelios wrote that his age had not been considered by Aetna in terminating him and "was exposing Aetna to a lawsuit" based on this. He testified at his deposition that this letter contained this veiled threat of ADEA litigation.

Hickey again upheld the termination, stating that "the evidence supports the misconduct termination."

Aetna provided Spelios with the Step 3 review as well, and James McLean, Executive Vice President for Health Claims, [*7] upheld the termination decision for a third time.

Since Spelios was terminated for misconduct he did not receive any severance benefits. Spelios did not contest this denial of severance payments under Aetna's Severance and Salary Continuation Benefits Plan; rather the only appeal he sought was through the Resolution process contesting his termination.

Spelios, who was then fifty-four years of age, next brought a complaint alleging age discrimination through the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission, filed on September 20, 1995 and October 20, 1995, respectively.

## LEGAL ANALYSIS

### I. The Standard of Review

In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. See also *Anderson v. Liberty Lobby, 477 U.S. 242, 256, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)* (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

If the nonmoving party has failed to make a sufficient showing on an essential [*8] element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id. at 322-23. Accord, Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d. Cir. 1995)* (movant's burden satisfied by showing if he can point to an absence of evidence to support an essential element of nonmoving party's claim).

The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party. . . ." *Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.), cert. denied, 506 U.S. 965, 121 L. Ed. 2d 359, 113 S. Ct. 440 (1992)*. "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849, 116 L. Ed. 2d 117, 112 S. Ct. 152 (1991)*. If the nonmoving party [*9] submits evidence which is "merely colorable", or is not "significantly probative," summary judgment may be granted. *Anderson, 477 U.S. at 249-50*.

The Second Circuit Court of Appeals has held that "the salutary purposes of summary judgment -- avoiding protracted, expensive and harassing trials -- apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.), cert. denied, 474 U.S. 829, 88 L. Ed. 2d 74, 106 S. Ct. 91 (1985)* (plaintiff cannot defeat summary judgment by offering purely conclusory allegations for discrimination, absent any concrete particulars.)

### II. The Age Discrimination Act

The elements of proof are the same under Title VII and ADEA. *Woroski v. Nashua Corp., 31 F.3d 105, 108-09 (2d Cir. 1994)*. A *prima facie* case under the ADEA consists of four elements:

1) that the plaintiff was in a protected class;

2) that he was qualified for the position at issue;

3) that he was discharged; and

4) that the discharge occurred under circumstances giving rise to an inference of discrimination.

*Viola v. Philips Med Sys., 42 F.3d 712, 716 (2d Cir. 1994)*. [*10] Once a party establishes his *prima facie* case, the defendant must set forth a legitimate, non-discriminatory business rationale for defendant's actions. If the employer articulates an age-neutral reason for the termination, plaintiff then bears the ultimate burden of proving that of proving that the employee's age was the real reason for the discharge. Viola, 42 3d at 716. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)*. In this Circuit:

> In an employment discrimination case, to defeat a defendant's properly supported motion for summary judgment, a plaintiff must show that there is a material issue of fact as to whether (1) the employer's asserted reason for discharge is false or unworthy of belief and (2) more likely than not the employee's age was the real reason for the discharge.

*Woroski v. Nashua Corp., 31 F.3d 105, 108-09 (2d Cir. 1994)* (emphasis in original).

### II. The Standards As Applied

In view of the *de minimus* [*11] burden on a plaintiff to establish a prima facie case, Aetna has conceded that Spelios has made out his *prima facie* case. Accordingly, the Court must next determine whether Aetna had a legitimate non-discriminatory business rationale for its decision to terminate Spelios. The Court holds that it did. Spelios directed the falsification of critical documents, which falsification was investigated thoroughly and upheld through Aetna's three-step review process. Spelios self-serving affidavit that he did not tell any subordinate to falsify data on their back-log reports or to understate the number of backlogged claims the Windsor facility in fact had is completely undermined by the more than thorough investigation by Aetna

Case 3:02-cv-02200-CFD    Document 72-3    Filed 12/03/2004    Page 12 of 13

Page 4
1999 U.S. Dist. LEXIS 10254, *

executives and its independent appeal process. His affidavit is also strikingly at odds with the statements given by the supervisors who were directed to alter the numbers.

Spelios testified at his deposition to several items of evidence which he claims support his allegations of age discrimination. He reiterates the claims in his present moving papers. First is an E-mail he received from one Catherine Pliszka, a supervisor who reported to Spelios and later replaced [*12] him after his termination, wishing him a happy birthday. In it, she wrote "Subject: Happy 50. Left you a voice mail letting you know that I didn't forget you really are officially old . . . I hear the AARP literature is really good . . . So when are you going to retire so I can take your place ?" Spelios retorted that he was not going to retire but when he was promoted, he would consider "recommending her as his replacement". Spelios, rather than taking this as the light-hearted joke it clearly is, offers it as evidence of age discrimination.

The ADEA does not make all discussion of age taboo. *Raskin v. Wyatt Co., 125 F.3d 55, 63 (2d Cir. 1997)*. There must be a nexus between the alleged age-related comments and the plaintiff's termination. The Court declines plaintiff's invitation to consider an obviously light-hearted joke from a subordinate as an inference of age discrimination. Plaintiff testified at his deposition that Juliano is the specific Aetna employee who discriminated against him. However, Juliano had no connection with this bantering exchange.

Plaintiff's next purported evidence of age discrimination is that Juliano failed to attend plaintiff's birthday party, though [*13] he had done so for other employees in the past. Such conduct is insufficient under ADEA to show that the reasons for his termination were intentionally false and pretextual, and that Spelios' age was the real reason for his termination.

Next, plaintiff notes that he was replaced by a younger person, Catherine Pliszka, as stated above. "Replacement by a younger individual, while sufficient to establish the fourth element of a *prima facie* case, does not, standing alone, indicate that defendant's reasons for terminating plaintiff are pretextual." *Strohmeyer v. Int'l Bh. of Painters & Allied Trades, 989 F. Supp. 455, 459 (W.D.N.Y. 1997), aff'd, 164 F.3d 619* [table] (2d Cir. 1998). Even plaintiff realized that Ms. Pliszka was qualified to hold the position, as evidenced by the E-mails back and forth on his birthday. Plaintiff has set forth no substantive evidence that Juliano's decision to select Ms. Pliszka for the position once held by plaintiff was age-related.

Plaintiff next sets forth as evidence of age-discrimination by Aetna, that Aetna fired "for similar reasons", *i.e.*, misconduct, a younger employee who was in her twenties. The fact that a much younger employee was [*14] also fired for falsification of documents is compelling evidence that Aetna takes such misconduct seriously and that Aetna's reaction has nothing to do with the age of the person engaged in such conduct. n1

> n1 This younger employee was reinstated as a result of the three step appeal process.

Another instance of alleged age discrimination suggested by Spelios in his deposition was the termination of three of his supervisors during a reorganization of the Windsor facility. However, plaintiff also admitted that he did not know the ages of the individuals terminated, nor did he have firsthand knowledge of the reasons for their termination. n2 *See Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906 (2d Cir. 1997)* (granting defendant's summary judgment motion because plaintiff failed to set forth specific facts to support his allegation of "a pattern or practice of age discrimination").

> n2 Notwithstanding the ages subscribed by plaintiff's counsel to the individuals replaced in the reorganization of the Windsor facility six months after plaintiff was terminated, the Court credits the deposition testimony of plaintiff that he did not know the ages of the supervisors or why they were terminated. In an unsigned, unverified report, a statement indicates that one of the supervisory women was terminated because she "was wed to the old ways." This is not a comment on her age; rather it is a comment on her inability to alter her work output as required by the reorganization.

[*15]

The final instance of age discrimination alleged by plaintiff is the hiring of Juliano to be his supervisor. The Court agrees with defendant that this alleged claim of discriminatory hiring is time-barred. In a deferral state such as Connecticut, an ADEA claimant must bring his administrative claim of age discrimination within 300 days from the date the claimant had notice of the allegedly discriminatory action. *Delaware State College v. Ricks, 449 U.S. 250, 259, 66 L. Ed. 2d 431, 101 S. Ct. 498 (1980)*.

Aetna selected Juliano for the position of Service Center Head on December 14, 1994. Plaintiff did not file an administrative claim in this regard until October 20, 1995, or 310 days after the conduct he alleged to be an

unlawful employment action. Hence, his claim falls without the statute of limitations, which is to be strictly construed.

### IV. The ERISA Claim

The Second Count of plaintiff's amended complaint is brought pursuant to ERISA, alleging that Aetna has breached its obligations to him by "refusing to pay plaintiff the severance benefits that he was entitled to. . . ." Defendant claims summary judgment should be awarded on this claim, because plaintiff has [*16] failed to make any attempt to utilize the internal claim review procedures and therefore has failed to exhaust the plan remedies which were available to him under Aetna's Severance and Salary Continuation Benefits Plan.

In order to bring an action against a plan, the plaintiff However, in a case involving the basically the same plan at issue herein, Judge Squatrito of this Court has just held that plaintiff did have an obligation to raise a claim to the benefit committee. Judge Squatrito stated that in order to invoke the futility exception to the exhaustion requirement, a plaintiff must make "a clear and positive showing that pursuing available administrative remedies would be futile such that the purposes behind the requirement are no longer served." Ackerman v. Aetna Professional Corp. and Aetna Life and Cas. Co., No. 3:96CV1470 (D.Conn., March 29, 1999). Although the futility claim may fail in the end, nevertheless plaintiff has created a genuine issue of material fact by stating that he was never advised of Aetna's internal severance benefits appeal process. Accordingly, summary judgment as to this count is denied.

### CONCLUSION

For a plaintiff in an employment discrimination [*17] case to succeed in defeating a defendant's supported motion for summary judgment, the plaintiff must show both that the employer's asserted reason is false or unworthy of belief and that more likely than not the employee's age was the real reason for the discharge. The present plaintiff cannot overcome the well-documented fact that the reason for his termination was misconduct and that such reason is not intentionally false or unworthy of belief. Nor has plaintiff set forth any substantiated, non-conclusory reasons for the Court to accept that plaintiff's age was the real reason for his termination. unworthy of belief. Nor has plaintiff set forth any substantiated, non-conclusory reasons for the Court to accept that plaintiff's age was the real reason for his termination. Accordingly, defendant's Motion for Summary Judgment [Doc. No. 14] is GRANTED as to the ADEA claim and is provisionally DENIED as to the ERISA claim. The action is stayed until plaintiff completes the severance benefits appeal process. At the culmination of this appeal process, appropriate motions, if any, shall be filed within two (2) weeks of the final decision. Plaintiff's counsel is directed to advise the Court [*18] when the severance benefits appeal has been completed, which appeal is ordered to commence immediately.

SO ORDERED

WARREN W. EGINTON

SENIOR UNITED STATES DISTRICT JUDGE

Dated at Bridgeport, Connecticut, this 24th day of June, 1999.