IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CARLOS A. ARREDONDO, in his capacity as Trustee of The 2000 Trust for the Grandchildren of Carlos A. Arredondo and Mari V. Arredondo, General Partner of Arredondo Properties Limited Partnership,<br><br>    Plaintiff,<br><br>v.<br><br>CAESAR A. ARREDONDO, individually and in his capacity as Trustee of The 2000 Trust for the Grandchildren of Caesar A. Arredondo and Carolyn Abad Arredondo; THE 2000 TRUST FOR THE GRANDCHILDREN OF CAESAR A. ARREDONDO AND CAROLYN ABAD ARREDONDO, in its capacity as General Partner of Arredondo Properties Limited Partnership; and ARREDONDO & CO., LLC,<br><br>    Defendants. | CIVIL ACTION FILE<br><br>NO. 3:02 CV 2200 (CFD)<br><br>December 20, 2004 |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
HIS MOTION FOR SUMMARY JUDGMENT**

Despite the personal attacks and caustic tone of Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Defendants' Response"), all material facts necessary for the Court to grant Plaintiff's Motion for Summary Judgment are conceded by Defendants. When fundamental principles of trademark and corporate law are applied to these undisputed facts, the inescapable conclusion is that Arredondo Properties Limited Partnership ("APLP") is the owner of the WESTY Marks.

A. **Defendants' Response Ignores the First Use of the WESTY Marks**

Remarkably, Defendants do not rebut Plaintiff's argument that APLP is the owner of the WESTY Marks because it was the first entity to use those marks in commerce. Instead, Defendants contend that the first use doctrine is "inapplicable" here and that APLP cannot be the

owner of the WESTY Marks because, prior to 2002, Plaintiff believed that Westy's Connecticut, Inc. ("WCI I") and then Westy Connecticut, Inc. ("WCI II") owned the marks, and Plaintiff intended that the marks be transferred to Caesar. (Defendants' Response, 2.) Defendants further contend that Plaintiff is now attempting to deny these facts. (*Id.*)[1]

Plaintiff does not deny these facts, nor has Plaintiff ever denied them. However, these facts are irrelevant. As set forth in Plaintiff's opening brief, the brothers' belief in 1991 and thereafter that they could "place" the WESTY Marks wherever they wanted was a mistake, uncorrected by counsel, and cannot divest the true trademark owner of its rights.

Defendants do not contest Plaintiff's position that trademark rights were established in the WESTY'S and Design of Dog marks no later than January 1, 1991 – *more than two months before WCI I was created*. (*See* Defendants' Local Rule 56(a)(2) Stmt, Responses 24, 25.) By failing to dispute these facts, Defendants concede them for purposes of this motion. *See, e.g.,* Fed. R. Civ. Proc. 56(e); *Cooper v. Ragagalia*, No. 3:96-CV-00530 (EEB), 1999 WL 1067680 (D. Conn. Oct. 19, 1999).

If WCI I was not in existence when the WESTY Marks were adopted and first used, it is axiomatic that WCI I could not have been the original trademark owner. A review of the first use of the marks reveals that APLP was the original owner as a matter of undisputed fact and law. As set forth in full in Plaintiff's opening brief, APLP, on its own and through its subsidiary Westy's Port Chester Limited Partnership ("WPCLP"), solely funded the business and was responsible for all actions related to the formation, launch and operation of the Westy business

---

[1] Defendants cite to five alleged admissions by Plaintiff that they contend mandate denial of this motion. (Defendants' Response, 2). These alleged admissions are summarized in the above text. Plaintiff denies that he transferred the WESTY Marks to Arredondo & Co., LLC, but he admits that he agreed to assign the marks to Caesar on the mistaken belief that WCI II owned the marks. (*See* Defendants' Rule 56(a)2 Stmt, Stmt 69.)

through the first six years of its existence and the opening of the first two Westy facilities. (Plaintiff's Summary Judgment Brief, 14-17.)

In their Response, Defendants deny that APLP took any actions to launch the business, instead contending that APLP was a purely passive entity and that all actions were taken by Carlos and Caesar individually. (Defendants' Response, 3.) Defendants go so far as to contend that Plaintiff has not submitted "any admissible evidence showing that APLP actually took any of the actions that he now claims it did." (Defendants' Response, 4.) Defendants must not be reviewing the same record as Plaintiff. Plaintiff's opening brief includes substantial evidence supporting its position, including the following:

- The building and zoning permit application that APLP filed for the Port Chester store (Plaintiff's Response to Defendants' [First] Motion for Summary Judgment, Ex. A, 1, 2);
- The agreement for the purchase of the land on which the Port Chester store was opened, signed by WPCLP (Caesar Dep., Ex. 16);
- Caesar's admission in his deposition that WPCLP, with funding from APLP, paid for the construction of the Port Chester store (Caesar Tr. 97:3-15, 106:6 – 15);
- Carlos's deposition testimony that WPCLP, through funding from APLP, paid for the construction of the Port Chester store. (Carlos Tr. 117:17-19).

Defendants openly concede in their Rule 56(a)2 Statement many of the facts upon which Plaintiff's Motion is premised. Specifically, Defendants concede that:

- WPCLP owned the Port Chester store and the land on which it was built (Defendants' 56(a)2 Stmt, Response 10);
- WPCLP entered into a contract with Arredondo & Co. to design and build the Port Chester facility (*Id.*, Response 13);
- Carlos and Caesar had no ownership interest in WPCLP (*Id.*, Response 10);
- WPCLP was owned by APLP (*Id.*, Response 11); and
- APLP purchased the Port Chester land, applied for the zoning permits for the Port Chester facility, and provided the initial capital for the facility to WPCLP (*Id.*, Response 12).

Nevertheless, Defendants still appear to believe that Plaintiff has not submitted a sufficient quantum of evidence to support its position. So that there can be no doubt as to the evidentiary support for Plaintiff's position, Plaintiff submits herewith as Exhibit A samples of documents from among the hundreds of documents Defendant Arredondo & Co., LLC has produced in discovery in this litigation that evidence that APLP and WPCLP were solely responsible for the funding, formation, launch, and operation of the Westy business

- A letter from the law firm Powsner & Powsner addressed to APLP responding to APLP's request for legal advice regarding the distinction between tenant and licensee. (Privileged content redacted).
- A check from APLP paying Craig Pederson for design drawings for the Port Chester store, and a letter from WPCLP to its bank initiating a payment for the construction of the Port Chester store.
- The construction contract between WPCLP and Sordoni Construction Co., the general contractor of the Port Chester Store. (First five pages included)
- The filing of a Certificate of Capital Improvement with the New York State Local Sales and Use Tax division by WPCLP.
- A contract signed by Caesar as general partner of WPCLP to issue a Subcontract Change Order.
- A deposit receipt from Con Edison to WPCLP for the security deposit for electrical service at the Port Chester Store.
- A letter from Peckar & Abramson initiating arbitration proceedings between WPCLP and Sordoni Skanska Construction for the termination of Sordoni's construction contract and a letter from the American Arbitration Association regarding settlement of the arbitration.

Juxtaposed against this evidence, Defendants have failed to introduce *any* evidence that shows that Carlos and Caesar took *any* action in an individual capacity with regard to the funding, formation, launch or operation of the Westy business store. Without question, the brothers were the individuals who caused APLP and WPCLP to take the foregoing actions. Partnerships and other business entities can only act through individuals. Nevertheless, when the brothers made decisions for APLP, they made the decisions in their roles as trustees of the trusts that are the general partners of APLP for the benefit of their children and grandchildren, not for

their own benefit. Indeed, those are the only roles in which the brothers had any legal authority to act for APLP.

Defendants' deride this position as exalting form over substance and contend that APLP is no more than a "hyper-technical persona" for Carlos and Caesar. (Defendants' Response, 14.) It is not. It is a separate legal entity that Carlos and Caesar do not own that validly bought and sold property and that built a substantial self-storage business.[2]

Having used APLP's money and the limited liability shields of the APLP and WPCLP business forms to create and launch the business, Defendants cannot now disregard those entities and the rights they own because it no longer serves their purpose. Defendants' argument is tantamount to arguing that Carlos and Caesar individually own or control the real estate of the Port Chester store because they caused WPCLP to purchase the land. Defendants certainly would not take this position. No factual or legal basis exists to treat the intangible property of the Port Chester store any differently from the tangible property. Indeed, as set forth in Plaintiff's opening brief, the law is clear that when a corporation or other legal business entity uses a mark, the entity, and not the individuals that own or manage the entity, own the trademark rights that flow from this use.

Defendants cite to two cases as alleged support for their position that the Court can disregard APLP and WPCLP and find that Carlos and Caesar could "place" ownership of the mark in WCI I. (Defendants' Response, 15-29.) As an initial matter, it is unclear whether Defendants cite this authority to establish that Carlos and Caesar were the original owners of the WESTY Marks and then assigned the marks to WCI I, or that WCI I was the original trademark

---

[2] The implication of Defendants' contention that APLP was a passive entity incapable of taking action and controlling use of the WESTY Marks is that WCI I was somehow more capable of doing so. WCI I was an inactive corporation that never engaged in any business and that was intentionally dissolved slightly more than a year after it was formed. As between the two corporations, Plaintiff submits that it is clearly more plausible that APLP controlled the use of the marks than it is that WCI I did so.

owner. Plaintiff has responded to both potential arguments in full in its Response in Opposition to Defendants' Motion for Summary Judgment. Plaintiff understands that Defendants' true contention is the latter. If so, the case law Carlos and Caesar cite is of no assistance because Defendants concede that WCI I was not in existence when trademark rights were established in the WESTY Marks. The original use of the marks therefore could not inure to the benefit of WCI I, and WCI I could not have licensed and controlled APLP's use of the marks.

If Defendants' theory is the former, the theory is factually unsupportable for at least two reasons. First, the undisputed evidence of record shows that the brothers were careful to always conduct the Westy business through limited liability forms to shield their personal assets. (Carlos Decl. II, ¶ 2).[3] Thus, the brothers never individually conducted the Westy business or owned directly the assets of the Westy business. (*Id.*) All actions and ownership of the business have always been through limited liability companies and partnerships, and Defendants do not offer any evidence to the contrary. Accordingly, Carlos and Caesar could not have been the original trademark owners since they did not act in their individual capacities.[4] Second, if the brothers owned the marks individually, they would have had to assign the marks and corresponding goodwill to WCI I before WCI I could own the marks. Defendants do not allege that any such assignment ever occurred, nor is there any evidence in the record of such an assignment.

The two cases Defendants cite offer no support for a theory that the brothers were the original trademark owners. In *Pneutek, Inc. v. Scherr*, 211 U.S.P.Q. (BNA) 824, 828 (T.T.A.B.

---

[3] The arbitration documents attached as part of collective Ex. A hereto evidence that these limited liability shields worked. When the contractor of the Port Chester store sued for breach of contract, it was forced to sue WPCLP and not Carlos and Caesar individually.

[4] Another illustration of the remarkable lengths to which Defendants go to advocate that the brothers, not the corporations they used to conduct the Westy business, own the assets of the business can be found in Defendants' references to the three non-APLP facilities in existence when this suit was filed. Defendants state: "Caesar and Carlos, as individuals, jointly own three WESTY facilities, with each brother holding a 50% interest in the limited liability companies that own each facility." Defendants Response, p. 35. Defendants' statement contradicts itself.

- 6 -

1981), the founder, president, and fifty percent shareholder of a company executed an express, written license agreement with the company prior to the company's first use of the mark. No such express license exists in this case, nor have Defendants alleged that any license of any kind existed between the brothers and APLP. In *ABC Moving Co. v. Brown*, 218 U.S.P.Q. (BNA) 336, 338-39 (T.T.A.B. 1983), the Board stated in dicta only that facts may exist that prove that a principal shareholder of a company licensed a mark to the company he owns. Plaintiff does not dispute this conclusion, but those facts do not exist in this case. Neither Carlos nor Caesar had *any* ownership interest in APLP during the relevant time periods, and Defendants do not allege (or submit any evidence to support) that Carlos and Caesar, individually, licensed the WESTY Marks to APLP.

In sum, when APLP adopted and began using the WESTY Marks on January 1, 1991 or before, that use inured solely to APLP's benefit, not to WCI I's benefit or to the brothers' benefit, as a matter of undisputed fact and law. APLP was thus the original trademark owner. APLP has never assigned its rights in the marks to any third party, and Defendants do not contend otherwise; thus, APLP owns the marks today as a matter of undisputed fact and law, and the mistaken beliefs of Carlos and Caesar as to ownership of the marks cannot alter this result.

**B.     No Factual or Legal Grounds Exist to Disregard Plaintiff's Declaration**

Defendants argue that the Court should ignore the declaration Plaintiff submitted with this Motion because it is allegedly self-serving and contradicted by his deposition testimony. (Defendant's Response, 33-40.) It is no surprise that Defendants would ask the Court to ignore Plaintiff's declaration because the declaration, together with the substantial other evidence of record in this case, is fatal to Defendants' position. Nevertheless, no factual or legal basis exists to disregard Plaintiff's declaration.

Defendants' Response Brief contains a lengthy chart in which Defendants purport to illustrate examples of Plaintiff's deposition testimony contradicting his declaration testimony. *Not a single one* of these alleged examples illustrates Plaintiff contradicting his deposition testimony. *Every* alleged inconsistency is merely a situation in which Defendants contend that Carlos and Caesar were acting in an individual capacity, rather than acting (as they clearly were) in their capacities as corporate officers or general partners of the various limited liability business entities involved in the foundation and operation of the Westy business.

Rather than establishing that Plaintiff has contradicted his deposition testimony, Defendants' chart confirms that he has not. To the extent the chart evidences anything at all, it evidences only that Defendants do not agree with Plaintiff's testimony. A party's distaste for a key witness's testimony – and, in this case, the testimony of the witness whom Defendants' concede knows the most about the business forms used in the creation of the Westy business[5] – is not grounds to disregard the testimony. Defendants' contention that Plaintiff's declaration should be disregarded is therefore utterly unfounded.

### C. Reply to Other Issues Addressed in Defendants' Response Brief

Defendants' Response Brief contains numerous assertions of fact and law that are either incorrect or irrelevant. Plaintiff will not attempt to respond to every such assertion, but two of the assertions merit brief replies.

#### 1. APLP Owns the Marks Today Even if WCI I Owned Them Originally

Defendants contend that Plaintiff must concede that if WCI I was the original owner of the WESTY Marks that A&Co. owns the marks today. (Defendants' Response, 30.) Plaintiff does not concede this argument, nor do the facts of record support the argument. As shown in Plaintiff's opening brief, if WCI I was the original trademark owner, it would have abandoned its

---

[5] *See* Dep. of Caesar A. Arredondo, taken on June 24, 2004, at 93:21-95:24.

rights in the marks when it was dissolved. (Plaintiff's Summary Judgment Brief, 21-22.) APLP would then have become the trademark owner by virtue of its continuing ownership and control of the Port Chester facility, the only facility then in existence. (*Id.*)

Defendants' respond that the Court can ignore the brothers' intentional dissolution of WCI I and the four plus years before WCI II was formed and then find that WCI I still owned and controlled the WESTY Marks even though it did not exist. In alleged support of this position, Defendants cite to *Stetson v. Howard D. Wolf & Assocs.*, 955 F.2d 847 (2d Cir. 1992), one of the cases Plaintiff cited in its opening brief regarding the standard for trademark abandonment in the Second Circuit. *Stetson* offers no support for Defendants' position.

In *Stetson*, the manager of a singing group owned the rights to the group's name and mark, "The Diamonds," and licensed the group to use the mark on an exclusive basis. After a time, the band members stopped paying the manager royalties and refused to acquiesce with his management and booking decisions. The manager sued for specific performance. The lawsuit took five years to reach resolution. Neither the manager nor the group used the mark during this period. In subsequent litigation involving successor parties, one of the parties claimed that the manager had abandoned his rights in the mark by not using it during the litigation. The Second Circuit rejected this argument on the grounds that the manager had sued the group that was contractually obligated to use the mark for specific performance and on the grounds that the manager could not have licensed anyone else to use the mark without having breached the license agreement himself. *Id.* at 851-52.

At the very most, *Stetson* stands for the proposition that a period of non-use can be excused when a trademark owner is still in existence and sues to force a licensee to continue to use the mark. This is a far cry from the facts of this case, where WCI I was dissolved with no

intent that it be reformed. *Stetson* therefore offers no defense to Plaintiff's argument that, even if WCI I was the original trademark owner, it abandoned its rights in the marks when it was dissolved.

### 2. Plaintiff's Motivation for Filing this Lawsuit

Unable to rebut the clear facts and law that support this Motion, Defendants turn to unfounded, personal attacks on Caesar's niece, Fabiola Arredondo. Defendants contend that Fabiola hatched a plan with her lawyers to undo a deal that she does not like and then goaded her father into bringing this lawsuit. (Defendants' Response, 6; Defendants' L.R. 56(a)(1) Statement, Stmt 99.) Not one shred of evidence supports Defendants' claim. Indeed, Defendants' counsel attempted to establish this point multiple times during Plaintiff's deposition and could not. (Dep. of Carlos A. Arredondo, taken June 23, 2004, 9:16-14:12; 76:6-16; 79:25-82:11; 196:7-21.) Caesar's perceived need to paint his niece in this knowingly false light is an obvious sign that he recognizes that he cannot win this case by arguing the facts and law alone.

### C. Conclusion

For the foregoing reasons and the reasons set forth more fully in Plaintiff's opening brief, Plaintiff submits that he is entitled to summary judgment on its claim that APLP is the owner of the WESTY Marks.

_____
ROBERT P. DOLIAN (ct04278)
CUMMINGS & LOCKWOOD LLC
Four Stamford Plaza, P.O. Box 120
Stamford, Connecticut 06904-0120
Ph (203)327-1700; Fx (203) 708-5647

Counsel for Plaintiff

MARTIN J. ELGISON (ct24759)
DAVID J. STEWART (ct24757)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Ph (404) 881-7000; Fx (404) 881-7777

## CERTIFICATE OF SERVICE

I certify that on this ~~7th~~ 20th day of December, 2004, a true and correct copy of the foregoing **PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT** was served upon counsel for Defendants, by the manner indicated, addressed as follows:

> Craig A. Raabe (First Class Mail)
> ROBINSON & COLE LLP
> 280 Trumbull Street
> Hartford, CT 06103

*/s/ Robert Dolian*
Robert P. Dolian

2074134_1.doc 12/20/2004