

Union Tr⟨
Greenwich
One Lafaye
P.O. Box 8⟨
Greenwich,
(203) 622-8⟨



November 15, 1990

Mr. Carlos A. Arredondo
Mr. Caesar A. Arredondo
Arredondo Properties Limited Partnership
One Sound Shore Drive
Greenwich, CT  06830

Dear Carlos and Caesar,

I am pleased to inform you that Union Trust Company ("UTC") has approved the renewal of the $15,000,000.00 Unsecured Line of Credit to Arredondo Properties Limited Partnership and/or Carlos and Caesar Arredondo (the "Borrowers"), for bridge financing of commercial real estate.  The approved financing contains a sublimit of $5,000,000.00 on borrowings for short-term working capital purposes.  The approved financing is subject to the terms and conditions as outlined below and as may be further required by UTC.

### TERMS AND CONDITIONS

1.  **ADVISED LINE:**  $15,000,000.00 Unsecured Advised Line of Credit as follows:

    a.  Interest Rate:  A variable rate equal at all times to UTC's Loan Pricing Rate in effect from time to time.  The Loan Pricing Rate is not necessarily the lowest rate charged to borrowers for commercial or other types of loans.

    b.  Advances:  Each advance for real estate projects will be in the form of a promissory note with a maturity date no longer than thirty six (36) months from execution.  Loans advanced for short term working capital shall be repaid within one (1) year.  Accrued interest will be payable annually on each note outstanding.

    c.  Late Charges:  If you have not made a scheduled payment within fifteen (15) days after the due date, you agree to pay a late charge of 4% of the amount of the late payment.

    d.  Guarantee:  All borrowings under the Advised Line of Credit to Arredondo Properties Limited Partnership are to be jointly and severally guaranteed by yourselves.

on Trust Company

edondo Properties L.P.
ember 15, 1990
ie 2

e.   Expiration Date:  UTC's obligations to advance under
     this commitment shall expire on July 31, 1991.


ADDITIONAL REQUIREMENTS:  The following requirements
shall be met.

a.   The Borrowers will provide a schedule of
     investment real estate holdings on an annual basis.

b.   Personal financial statements from yourselves will
     be provided on an annual basis.


BORROWERS' REPRESENTATIONS:  This Commitment is issued
in reliance on the representations made by the Borrowers
in connection with its application for lines of credit
and any incorrectness in such representations or failure
to disclose any material fact shall terminate UTC's
obligations under this Commitment.


If this Commitment is acceptable to you, please sign at the
ice provided below and return the letter to my attention
licating the Borrowers' and Guarantors' written acceptance of
s Commitment.

I am looking forward to working with you.  Please do not
iitate to call me if you have any questions.


                    Very truly yours,

                    Kristin H. Murphy
                    Assistant Vice President


IROWERS' ACCEPTANCE

wish to bind Union Trust Company to the above commitment.

edondo Properties Limited Partnership


                    By:

e:   Nov. 29, 1990      Date:   Nov 29 1990

**Union Trust Company**

```
Arredondo Properties L.P.
November 15, 1990
Page 3
```

```
Carlos A. Arredondo
```

Date: _Nov 29, 1990_

```
Caesar A. Arredondo
```

Date: _Nov 29, 1990_

**GUARANTORS' ACCEPTANCE**

_Nov 29, 1990_

Carlos A. Arredondo

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Date

_Nov 29, 1990_

Caesar A. Arredondo

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Date



**Union Trust Company**

Greenwich Office
One Lafayette Place
P.O. Box 838
Greenwich, Connecticut 06836-0838
(203) 622-8800

December 2, 1991

Mr. Carlos A. Arredondo
Mr. Caesar A. Arredondo
Arredondo Properties Limited Partnership
One Sound Shore Drive
Greenwich, CT 06830

Dear Carlos and Caesar:

I am pleased to inform you that Union Trust Company ("UTC")
has approved the renewal of the $15,000,000.00 Unsecured Line of
Credit to Arredondo Properties Limited Partnership and/or Carlos
and Caesar Arredondo, (the "Borrowers"), for bridge financing of
commercial real estate. The approved financing contains a
sublimit of $5,000,000.00 on borrowings for short-term working
capital purposes. The approved financing is subject to the terms
and conditions as outlined below and as may be further required
by UTC.

### TERMS AND CONDITIONS

1.  **ADVISED LINE:** $15,000,000.00 Unsecured Advised Line of
    Credit as follows:

    a.  **Interest Rate:** A variable rate equal at all times to
        UTC's Loan Pricing Rate in effect from time to time.
        The Loan Pricing Rate is not necessarily the lowest
        rate charged to borrowers for commercial or other
        types of loans.

    b.  **Advances:** Each advance for real estate projects will
        be in the form of a promissory note with a maturity
        date no longer than thirty-six (36) months from
        execution. Loans advanced for short term working
        capital shall be repaid within one (1) year. Accrued
        interest will be payable on each note outstanding.

    c.  **Late Charges:** If you have not made a scheduled payment
        within fifteen (15) days after the due date, you agree
        to pay a late charge of 4% of the amount of the late
        payment.

    d.  **Guarantee:** All borrowings under the Advised Line of
        Credit to Arredondo Properties Limited Partnership are
        to be jointly and severally guaranteed by yourselves.

**Union Trust Company**

Arredondo Properties L.P.
December 2, 1991
Page 2

  e. <u>Expiration Date:</u> UTC's obligations to advance under this commitment shall expire on July 31, 1992.

2. <u>ADDITIONAL REQUIREMENTS:</u> The following requirements shall be met:

  a. The Borrowers will provide a schedule of investment real estate holdings on an annual basis.

  b. Personal financial statements from yourselves will be provided on an annual basis.

3. <u>BORROWERS' REPRESENTATIONS:</u> This Commitment is issued in reliance on the representations made by the Borrowers in connection with their application for lines of credit and any incorrectness in such representations or failure to disclose any material fact shall terminate UTC's obligations under this Commitment.

If this Commitment is acceptable to you, please sign at the space provided below and return the letter to my attention indicating the Borrowers' and Guarantors' written acceptance of this Commitment.

I am looking forward to working with you. Please do not hesitate to call me if you have any questions.

Respectfully yours,

*Roberta P. Anderson*
Roberta P. Anderson
Assistant Vice President


<u>**BORROWERS' ACCEPTANCE**</u>

We wish to bind Union Trust Company to the above Commitment.

Arredondo Properties Limited Partnership

By: _____  By: _____
Date: _____Dec 2, 1991_____  Date: ____Dec 2, 91_____

Carlos A. Arredondo

_____ Date: ____Dec 2 91_____

**Union Trust Company**

```
Arredondo Properties L.P.
December 2, 1991
Page 3
```

Caesar A. Arredondo

Date _____ Dec 2, 1991 _____

GUARANTORS' ACCEPTANCE

_____      _____ Dec 2, 91 _____
Carlos A. Arredondo          Date

_____      _____ Dec 2, 1991 _____
Caesar A. Arredondo          Date

Ltr54



**Union Trust Company**

Greenwich Office
One Lafayette Place
P.O. Box 838
Greenwich, Connecticut 06836-0838
(203) 622-8800

December 24, 1992

Mr. Carlos A. Arredondo
Mr. Caesar A. Arredondo
Arredondo Properties Limited Partnership
One Sound Shore Drive
Greenwich, CT 06830

Dear Carlos and Caesar:

I am pleased to inform you that Union Trust Company ("UTC") has approved the renewal of the $15,000,000.00 Unsecured Line of Credit to Arredondo Properties Limited Partnership and/or Carlos and Caesar Arredondo, (the "Borrowers"), for bridge financing of commercial real estate. The approved financing contains a sublimit of $5,000,000.00 on borrowings for short-term working capital purposes. The approved financing is subject to the terms and conditions as outlined below and as may be further required by UTC.

### TERMS AND CONDITIONS

1.  **ADVISED LINE:** $15,000,000.00 Unsecured Advised Line of Credit as follows:

    a.  **Interest Rate:** A variable rate equal at all times to UTC's Loan Pricing Rate in effect from time to time. The Loan Pricing Rate is not necessarily the lowest rate charged to borrowers for commercial or other types of loans.

    b.  **Advances:** Each advance for real estate projects will be in the form of a promissory note with a maturity date no longer than thirty-six (36) months from execution. Loans advanced for short term working capital shall be repaid within one (1) year. Accrued interest will be payable on each note outstanding.

    c.  **Late Charges:** If you have not made a scheduled payment within fifteen (15) days after the due date, you agree to pay a late charge of 4% of the amount of the late payment.

    d.  **Guarantee:** All borrowings under the Advised Line of Credit to Arredondo Properties Limited Partnership are to be jointly and severally guaranteed by yourselves.

Union Trust Company

Arredondo Properties L.P.
December 24, 1992
Page 2

    e.   <u>Expiration Date:</u> UTC's obligations to advance under
this commitment shall expire on July 31, 1993.

2.  <u>ADDITIONAL REQUIREMENTS:</u> The following requirements shall
be met:

    a.   The Borrowers will provide a schedule of investment
real estate holdings on an annual basis.

    b.   Personal financial statements from yourselves will be
provided on an annual basis.

3.  <u>BORROWERS' REPRESENTATIONS:</u> This Commitment is issued in
reliance on the representations made by the Borrowers in
connection with their application for lines of credit and
any incorrectness in such representations or failure to
disclose any material fact shall terminate UTC's obliga-
tions under this Commitment.

If this Commitment is acceptable to you, please sign at the
space provided below and return the letter to my attention
indicating the Borrowers' and Guarantors' written acceptance of
this Commitment.

Please do not hesitate to call me if you have any questions.

Respectfully yours,

*Roberta P. Anderson*
Roberta P. Anderson
Assistant Vice President

<u>BORROWERS' ACCEPTANCE</u>

We wish to bind Union Trust Company to the above Commitment.

Arredondo Properties Limited Partnership
TRUST "A" FOR THE GRANDCHILDREN OF CARLOS & MARI ARREDONDO, GEN'L PARTNER
By: *Caesar A. Arredondo Trustee*
Date: *Dec 24, 92*

THE 1987 TRUST FOR THE GRANDCHILDREN OF CAESAR & CAROLYN ARREDONDO, GEN'L PARTNER
By: *Carlos A. Arredondo, Trustee*
Date: *Dec 24, 92*

Carlos A. Arredondo

*Carlos Arredondo*
Date: *Dec 24, 92*

**Union Trust Company**

Arredondo Properties L.P.
December 24, 1992
Page 3

Caesar A. Arredondo

Date_____ 12/24/92 _____

**GUARANTORS' ACCEPTANCE**

Carlos A. Arredondo                Date_____ Dec 24 92 _____

Caesar A. Arredondo                Date_____ 12/24/92 _____

Ltr54



**Union Trust Company**

Stamford Executive Office
300 Main Street
Post Office Box 700
Stamford, Connecticut 06904-0700
(203) 348-6211

December 22, 1993

Arredondo Properties Limited Partnership
Carlos Arredondo
Caesar Arredondo
One Sound Shore Drive
Greenwich, CT  06830

> **Re:    Proposed $15,000,000 Revolving Credit Facility to be extended to Arredondo Properties Limited Partnership and Carlos Arredondo and Caesar Arredondo by Union Trust Company**

Gentlemen:

Union Trust Company (the "Lender") has considered your request for financing and is pleased to inform you that the Lender has agreed to make available to Arredondo Properties Limited Properties (the "Partnership") and Carlos Arredondo and Caesar Arredondo (each, a "Borrower" and, collectively, the "Borrowers") a $15,000,000 Revolving Credit Facility (the "Commitment"), the terms and conditions of which are summarized in the attached Outline of Terms (the "Outline of Terms"). All terms and provisions of the Outline of Terms are hereby incorporated by reference into this letter.

This Commitment is expressly conditioned upon the preparation, execution and delivery of definitive legal documentation that would contain all of the terms and conditions of the contemplated transaction, which terms shall include, but not be limited to, those contained in the Outline of Terms. Such legal documentation shall also be satisfactory in form and substance to the Lender and its counsel. Further, the terms and conditions set forth herein are neither exclusive nor definitive, and may be supplemented prior to closing based upon the Lender's investigation or as disclosure of any of the Borrowers' circumstances so dictate.

No change, modification or waiver of this Commitment shall be valid and binding on the Lender unless it is in writing and signed by a duly authorized officer of the Lender.

This Commitment is not assignable by any of the Borrowers. There are no third party beneficiaries with respect to the terms hereof.



- 2 -

The Lender has made this Commitment in reliance upon the information supplied by the Borrowers to the Lender, and this Commitment is subject to the accuracy of all information, representations, exhibits and other materials submitted by the Borrowers in connection with their request for financing hereunder. Any material or substantial change thereto prior to the consummation of the transaction described herein will, at the option of the Lender, void all of the obligations of the Lender under this Commitment. The Borrowers must immediately notify the Lender of any such change. The Lender reserves the right to continue its credit investigation and to rescind this Commitment in the event of a materially adverse change in any Borrower's financial or other condition, in which case the Lender shall have no obligations under this Commitment.

Acceptance of this Commitment by the Borrowers will be indicated by their execution and return of this Commitment to the Lender no later than December 31, 1993 . Unless and until the Lender receives the fully executed Commitment and such fees on or prior to such date, the Lender shall have no obligation or liability hereunder.

By executing this Commitment, the Borrowers, jointly and severally, hereby agree to pay all costs, fees and expenses of the Lender (including the fees and disbursements of outside counsel and/or allocated costs of in-house counsel) incurred in connection with the investigation, negotiation, preparation, documentation and recordation of the transaction hereby contemplated (including this Commitment), whether or not the transaction is consummated (and irrespective of the reasons therefor).

Preparation of the Lender's legal documentation will be accomplished by the Lender's counsel, which will be Finn Dixon & Herling ("Lender's Counsel").

This Commitment shall terminate and the Lender shall have no further obligations or liabilities hereunder if the transaction contemplated herein does not close, irrespective of the reasons therefor, on or before January 31, 1994, unless extended in writing by an authorized officer of the Lender (which extension shall be at the sole and absolute discretion of the Lender). Time



- 3 -

is of the essence with respect to this Commitment.

Very truly yours,

UNION TRUST COMPANY

By: ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Name: Kristin H. Murphy
Title: Vice President

AGREED TO AND ACCEPTED BY:

ARREDONDO PROPERTIES LIMITED PARTNERSHIP

By: ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Name: CARLOS A. ARREDONDO
Title: TRUSTEE FOR THE 1987 TRUST FOR THE GRANDCHILDREN OF
CAESAR A. AND CAROLYN ABAD ARREDONDO, GENERAL PARTNER

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Carlos Arredondo, individually

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Caesar Arredondo, individually

8000\18\01ver3



## OUTLINE OF TERMS

**BORROWER:**

Arredondo Properties Limited Partnership (the "Partnership") and Carlos Arredondo and Caesar Arredondo. Each borrowing under the Facility (as defined below) will be made by either (i) the Partnership or (ii) Carlos Arredondo and Caesar Arredondo. All borrowings shall be the joint and several obligation of the Partnership and Carlos and Caesar Arredondo.

**FACILITY:**

$15,000,000 Revolving Credit Facility

The above is referred to herein as the "Facility".

**EXPIRATION DATE OF FACILITY:**

January 31, 1995 (i.e., no borrowings will be permitted after January 31, 1995)

**MATURITY DATE:**

(a) In the case of borrowings made to finance development and construction expenses for real estate projects, all borrowings made under the Facility with respect to a particular project shall mature on the date which is three years after the date of the initial borrowing with respect to such project and (b) in the case of borrowings (in an aggregate amount not to exceed $2,000,000 (the "$2,000,000 Sub-Limit")) made for tax planning purposes, each borrowing shall mature 60 days after the date of borrowing.

**PURPOSE:**

(a) Any or all of the proceeds of the Facility may be used to finance development and construction expenses for real estate projects and (b) up to $2,000,000 of the proceeds of the Facility may be used in connection with tax planning by the Borrowers (i.e., to aid the Borrowers in making tax payments prior to year-end).

**INTEREST RATE:**

Outstanding principal amounts under the Facility shall accrue at the Base Rate. "Base Rate" means the rate of interest established by First Fidelity Bank, N.A., New Jersey ("First Fidelity"), from time to time as its reference rate in making loans but does not reflect the rate of interest charged to any particular class of borrowers. The Borrowers acknowledge that such Base Rate is not tied to any external rate of interest or index. The applicable interest rate will change automatically and immediately as of the date First Fidelity changes its Base Rate, without



notice to Borrowers.  Interest shall be calculated on the basis of a 360-day year for the actual days elapsed and shall be payable in arrears.

**PAYMENT OF PRINCIPAL AND INTEREST:**

<u>With respect to Real Estate-Related Borrowings:</u>

(a)  Interest payable quarterly in arrears.

(b)  All borrowings made under the Facility with respect to a particular project shall mature on the date which is three years after the date of the initial borrowing with respect to such project.

<u>With respect to $2,000,000 Sub-Limit:</u>

Principal payable in full together with all accrued interest, no later than 60 days after the date of borrowing.

All such payments of principal and interest shall be made in immediately available lawful money of the United States, and at the option of the Lender, may be made by direct charge to the Borrower's deposit account(s) with the Lender.

**DEFAULT RATE:**

The otherwise applicable interest rate on the Facility will be increased by an additional 4.0% per annum upon the occurrence and during the continuance of an Event of Default.

**LATE CHARGE:**

If any payment owing under the Facility is not paid in full within fifteen (15) days of when the same is due, the Lender may collect from the Borrower a fee on such unpaid amount equal to five percent (5%) of such amount.

**FEES:**

Facility Fee - an initial facility fee of 0.2% of the total facility ($25,000.00) payable at closing.  An additional fee may be payable, if, at the sole discretion of the Lender, the Facility is extended.

**PREPAYMENTS:**

(a)  <u>Optional Prepayment.</u>  The Facility may be prepaid in whole or in part, at any time, without prepayment penalty

**Union Trust**

- 3 -

or premium, provided that any prepayment in whole will be accompanied by payment of all accrued and unpaid interest due and all other fees, expenses and other sums due and owing. All such partial prepayments will be applied to the principal payments due in inverse order of maturity, or as the Lender otherwise determines in its sole discretion.

(b) <u>Mandatory Prepayment.</u> Borrowings under the Facility must be prepaid in full upon sale, transfer or refinancing of the real estate project with respect to which such borrowings were made.

**GUARANTOR(S):**

Carlos Arredondo and Caesar Arredondo, jointly and severally, will guarantee payment of principal and interest in connection with any and all borrowings of the Partnership. The Partnership will guarantee payment of principal and interest in connection with any and all borrowings of Carlos Arredondo and Caesar Arredondo.

**COLLATERAL:**

None.

**CONDITIONS PRECEDENT:**

Conditions as are typically required by the Lender and/or which are customary in this type of loan transaction, including, without limitation:

1.   All representations and warranties being true and correct as of the closing date and also as of the date of each borrowing under the Facility;

2.   No default, event of default or potential event of default having occurred as of the closing date and also as of the date of each borrowing under the Facility;

3.   The receipt by the Lender of all loan documents, duly executed and delivered by each obligor thereunder, and in form and substance satisfactory to the Lender;

4.   All of the loan documents being in full force and effect as of the closing date and also as of the date of each borrowing under the Facility;



- 4 -

5.    Prior to each borrowing (other than a borrowing under the $2,000,000 Sub-Limit), such due diligence information and documentation with respect to the related real estate project as the Lender shall request, including market analyses, zoning information, appraisals, environmental studies, purchase contract, etc.;

6.    The receipt by the Lender of such other documents as the Lender may reasonably require (including, without limitation, certified copies of organizational documents, authorities to borrow or become otherwise obligated, proof of insurance, appraisals of real and/or personal property, environmental analyses, other agreements, instruments, or indentures to which a Borrower is a party, including, without limitation, proofs, opinions of counsel and/or other professionals, guaranties and other written assurances);

7.    As of the date of any borrowing in connection with a real estate project, the receipt by the Lender of documents reasonably satisfactory to the Lender as to the absence of material environmental liabilities with respect to such project;

8.    As of the date of any borrowing, there shall be no material adverse change with respect to the financial condition, assets, liabilities, income, business or business prospects of any Borrower; and

9.    The receipt by the Lender of a satisfactory opinion of counsel to the Borrowers.

**REPRESENTATIONS**
**& WARRANTIES:**

The Borrowers shall make representations and warranties as are typically required by the Lender and/or are customary in this type of loan transaction, including, without limitation, representations and warranties as to organization, authority, use of proceeds, preparation and accuracy of financial statements, no litigation, no defaults, no material adverse change, filing of tax returns, ownership of assets, compliance with all laws, including environmental laws, no material property held by Carlos Arredondo or Caesar Arredondo, with their respective

**Union Trust**

- 5 -

wives, in the form of a joint tenancy with rights of survivorship, and any other representations and warranties that the Lender considers necessary or desirable based upon the specific facts of the proposed transaction or the Lender.

**COVENANTS:**

The affirmative covenants, negative covenants and financial covenants as are typically required by the Lender and/or which are customary in this type of loan transaction shall apply to this Facility. In addition, without limitation, the following covenants will apply:

**Affirmative Covenants of the Arredondos regarding Financial Information:**

Each of Carlos Arredondo and Caesar Arredondo shall furnish the Lender, not later than December 1 of each calendar year during the period ending on the Maturity Date, unaudited personal financial statements, including, but not limited to, a statement of assets and liabilities and income, presented in a form acceptable to the Lender.

**Affirmative Covenants of the Borrowers regarding Financial Information:**

Each of the Borrowers shall furnish to the Lender the following financial information:

(i)    an annual schedule of all real estate holdings of each of the Borrowers, including current tenant and lease information, mortgage detail and cash flow;

(ii) concurrently with the delivery of each set of financial statements described above, a certificate signed by each of the Borrowers to the effect that: (A) there has been no material adverse change in the financial condition, assets, liabilities, income, business or business prospects of each Borrower; (B) no additional indebtedness has been incurred by any of the Borrowers; and (C) no assets of any of the Borrowers have been further encumbered without the Lender's consent; and

**Union Trust**

- 6 -

(iii)    such other information respecting the operations, financial or otherwise, of any Borrower as the Lender may from time to time reasonably request.

**Other Affirmative Covenants:**

Each of the Borrowers shall:

1.    Promptly give written notice to the Lender of: (i) the occurrence of any event which would constitute an Event of Default; (ii) the commencement of any proceeding or litigation which, if adversely determined, would adversely affect the financial condition of any of the Borrowers or such Borrower's ability to conduct its or his business; or (iii) the occurrence of any material adverse change in the financial condition, assets, liabilities, income, business or business prospects of any Borrower;

2.    Keep and maintain all of their respective properties and assets in good repair, maintain insurance of the types and in amounts in accordance with prudent standards and as is customary for businesses similar to their business, and, at the Lender's request, deliver to the Lender certificates of all such insurance in effect;

3.    Pay and discharge when due all taxes, assessments or other governmental charges imposed on their respective properties, unless the same are currently being contested in good faith by appropriate proceedings and adequate reserves are maintained therefor;

4.    Operate their respective properties in compliance with all applicable orders, rules and regulations and duly file such reports as may be required or appropriate;

5.    Permit the Lender's representatives access to their respective properties and financial records (including, without limitation, federal and state tax returns of each of the Borrowers), to make extracts from and/or audit such records and to examine and discuss their respective properties, business, finances and affairs with the general

Union
Trust

- 7 -

partners and executive employees of the Partnership and the Borrowers' outside accountants;

6.    Comply with all environmental laws and promptly clean up any hazardous substances or wastes caused or permitted by any of them resulting in damage to natural resources; and

7.    The Borrowers shall provide to the Lender all due diligence reports, including environmental, zoning requirements and other information obtained or prepared by any of the Borrowers in connection with any real property proposed to be purchased by the Borrowers out of the proceeds of any loan made pursuant to the Facility.

**Negative Covenants:**

The Borrowers shall not:

1.    Cause or permit (a) Carlos Arredondo or Caesar Arredondo to incur any indebtedness or place any liens on their properties except indebtedness owing to the Lender or (b) the Partnership to incur any indebtedness or place any liens on its properties except (i) indebtedness owing to the Lender, (ii) currently existing indebtedness incurred in connection with the Partnership's real estate projects or in connection with the acquisition of new real estate projects and mortgages or other similar encumbrances granted by the Partnership to secure such indebtedness and (iii) indebtedness in connection with refinancing of real estate projects and mortgages or other similar encumbrances granted by the Partnership to secure such indebtedness (provided that any outstanding loans under the Facility with respect to any such project shall be prepaid upon the consummation of such refinancing); or make any loans to others;

2.    Cause or permit any Borrower to sell or in any other way transfer or make distributions of any assets or other property with an aggregate value, with respect to each Borrower, in excess of $100,000 per year (including, without limitation, transfers by Carlos Arredondo or

Union
Trust

- 8 -

Caesar Arredondo to spouses or transfers to joint tenancies with rights of survivorship), except (i) at then-prevailing market value in the ordinary course of business; and (ii) with respect to the sale or transfer of personal property of Carlos Arredondo or Caesar Arredondo, if similar types of personal property are acquired with the proceeds of such sale or transfer;

3.    Cause or permit the Partnership to liquidate or discontinue the normal operations of the Partnership with intent to liquidate; enter into any merger or consolidation of the Partnership; or acquire all or substantially all of the assets, stock or other equity interests of another entity, except for real estate purchases in the ordinary course of business;

4.    Cause or permit any of the Borrowers to become directly, indirectly or contingently liable for the debts of others, except as an endorser of checks or drafts negotiated in the ordinary course of business and except that the Partnership may grant guarantees of debt the proceeds of which are used for the costs of the Partnership's real estate projects;

5.    Cause or permit to exist a dumping or releasing of hazardous substances or wastes resulting in damage to natural resources, unless such is in compliance with the conditions of a permit issued by the appropriate governmental authorities; or

6.    Cause or permit (a) Carlos Arredondo or Caesar Arredondo, their family members, or trusts or other entities for the benefit of Carlos Arredondo or Caesar Arredondo or their family members to cease to (i) own all of the beneficial interests in the Partnership or (ii) serve as the general partners of the Partnership or (b) Carlos Arredondo and Caesar Arredondo to cease to be trustees of the trusts which serve as the general partners of the Partnership.

**EVENTS OF DEFAULT:**    The events of default as are typically required by the Lender and/or which are customary in this type of loan transaction shall apply to the Facility. In addition, without limitation, the following events of default shall apply:



1.   (i)   Any failure to make any required payment;
     (ii)  Any performance default;

2.   Any default under any agreement for borrowed money or guaranty of borrowed money (whether to Lender or others);

3.   Any bankruptcy, receivership, insolvency, death, dissolution, reorganization;

4.   Any material misstatement or misrepresentation;

5.   Any material adverse change;

6.   Unpaid judgments; and

7.   Liens not permitted.

**MISCELLANEOUS:**    Provisions as are typically required by the Lender and/or which are customary in this type of loan transaction, including, without limitation:

1.   Waiver of jury trial.

2.   Consent to jurisdiction and service of process.

3.   Waiver of notice or hearing with respect to prejudgment remedies.

4.   Waiver of consequential, punitive, etc., damages.

5.   Costs and expenses of Lender to be paid by the Borrowers.

**GOVERNING LAW:**    The provisions of the Commitment and the transactions contemplated hereby shall be governed by and construed in accordance with, the laws of the State of Connecticut, regardless of principles of conflict(s) of laws thereunder.

8000\18\01ver3