

# LIMITED GUARANTY

**THIS GUARANTY** is made and entered into as of this 3rd day of March, 1998, by **CARLOS A. ARREDONDO and CAESAR A. ARREDONDO**, individuals with a mailing address c/o Arredondo & Company, One Sound Shore Drive, Greenwich, Connecticut 06830 (the "Guarantor" whether one or more) to and for the benefit of **PEOPLE'S BANK**, a banking corporation organized and existing under the laws of the State of Connecticut and having its principal place of business at 850 Main Street, in the City of Bridgeport, County of Fairfield and State of Connecticut 06604 (hereinafter referred to as "Lender").

## W I T N E S S E T H:

**WHEREAS,** Lender has issued a certain commitment ("Commitment") to Tuckahoe Project, LLC as the borrower, pursuant to the terms of which Commitment Lender has agreed to make a loan to Tuckahoe Project, LLC (the "Loan") in the principal amount of **TEN MILLION FIVE HUNDRED THOUSAND AND 00/100 ($10,500,000.00) DOLLARS**, to be evidenced by a promissory note in the original principal amount of $10,500,000.00 (the "Note") and secured by a mortgage (the "Mortgage"), which Mortgage will encumber certain premises owned by Tuckahoe Project, LLC known as 65 Marbledale Road, Tuckahoe, New York (the "Mortgaged Premises"), and such other additional documents as Lender may require pursuant to the terms of said Commitment (which Note, Mortgage and additional documents are collectively hereinafter referred to as "Loan Documents"). Tuckahoe Project, LLC as borrower shall hereinafter be referred to as the "Borrower"; and

**WHEREAS,** the Commitment provides that as a condition to Lender making its Loan to Borrower, Guarantors shall guaranty the payment of the Loan, subject to certain limitations as set forth below; and

**NOW, THEREFORE,** in order to induce Lender to make the Loan evidenced by the Note and secured by the Mortgage and in consideration thereof, Guarantor agrees as follows:

1.     **Guaranty:**  Guarantor unconditionally, absolutely and jointly and severally guarantees the due and punctual payment of the outstanding principal of the Note, the interest thereon, and any other monies due or that may become due thereon or on the Mortgage or any of the Loan Documents, and the due and punctual performance and observance by Borrower of all of the other terms, covenants, and conditions of the Note, Mortgage and Loan Documents, whether according to the present terms thereof, at any earlier or accelerated date or dates as provided therein, or pursuant to any extension of time or to any change or changes in the terms, covenants, and conditions thereof now or at anytime hereafter made or granted, together with all reasonable attorneys' fees, court costs and other costs and reasonable expenses as shall be paid or incurred by Lender in connection with the collection of the Note or any of the other obligations referred to therein, or paid or incurred by Lender in connection with the defense by Lender of any

action, suit or claim by any third party with respect to any of same, or paid or incurred by Lender in connection with the enforcement of this Guaranty. All debts, duties, liabilities and obligations hereinabove described and covered by this Guaranty, or intended so to be, are hereinafter collectively called the "Indebtedness". Notwithstanding any other provision of this Guaranty to the contrary, the Guarantor's liability to the Lender under this Guaranty for the repayment of the Indebtedness shall be limited in amount to the sum of:

(a)   ten (10%) percent of all sums due under the Note plus an amount equal to the sum of all fees, costs and expenses (including attorneys' fees) incurred by the Lender in seeking to enforce this Guaranty or otherwise in dealing with Guarantor.

(b)   All costs, expenses, damages or losses incurred by the Lender and directly or indirectly resulting from any of the following:

(i)   the presence of hazardous waste or asbestos on the Mortgaged Premises as set forth in a separate environmental indemnity to be signed by the Guarantor;

(ii)   any security deposits of tenants or prepayments of rents received by the Borrower or the then owner of the Property and not turned over to the Lender upon foreclosure of the Lender's Mortgage, sale pursuant to any power of sale, or the exercise by the Bank of its assignment of rents;

(iii)   insurance proceeds or condemnation awards received by Borrower (or the then owner of the Mortgaged Premises) and not turned over to the Bank or used to restore or repair the Mortgaged Premises pursuant to the applicable provisions of the Mortgage;

(iv)   the commission of waste to the Mortgaged Premises caused or permitted by Borrower or any affiliate thereof; and

(v)   to the extent that Borrower has retained (or distributed to members) rents or other income from the Mortgaged Premises during the term of the loan, prior to applying the rents or other income from the Mortgaged Premises to the Loan or operating expenses directly attributable to the Mortgaged Premises (including but not limited to real estate taxes, insurance charges and utilities).

(c)   In addition to the foregoing, the Guarantor shall be unconditionally jointly and severally responsible and liable for all obligations of the Borrower under the Note and pursuant to the Loan Documents upon the occurrence of any of the following events:

2

(i)    the commission of any fraud or material misrepresentation by the Borrower or its representatives in connection with the real estate securing this loan, the documents executed in connection herewith or any aspect of the Loan transaction;

(ii)    the Mortgaged Premises or any part thereof or interest therein shall be encumbered by a voluntary lien in voluntary violation of the terms of the Loan Documents;

(iii)    any voluntary breach or violation of the due on sale provisions or transfer of Borrower's ownership interest contained in the Loan Documents; or

(iv)    if the Mortgaged Premises or any part thereof shall become an asset in (a) a voluntary bankruptcy filing or insolvency proceeding, (b) an involuntary bankruptcy proceeding which is commenced by Guarantor or any other guarantor or anyone related to the Guarantor or any other guarantor or an entity owned or controlled by any guarantor and/or any relatives of guarantor (collectively "Related Party") or (c) any Related Party objects to a motion for relief from stay or injunction following a voluntary or involuntary bankruptcy or insolvency proceeding.

2.    **Subordination**: Subject to the other provisions hereof, Guarantor agrees that all indebtedness of Borrower to Guarantor whether now existing or hereafter contracted, whether direct or indirect, contingent or determined, as well as all rights, liens, claims and securities existing or to exist in connection therewith or as security therefor, are declared, recognized and made subordinate to the Indebtedness and to all rights, titles, interest, liens, and claims of Lender hereunder. With respect to any such indebtedness of Borrower to Guarantor, Guarantor further agrees to make no claim therefor until all obligations of Borrower to Lender shall have been discharged in full, and Guarantor further covenants and agrees not to assign all or any part of such indebtedness while this Guaranty remains in effect except upon prior notice to Lender and upon the condition that any such assignment or transfer shall expressly be made subject to the terms of this Guaranty.

3.    **No Discharge by Modification**: Guarantor agrees that the liability of Guarantor hereunder shall not in any way be released, diminished, impaired, reduced or affected by:

(a)    The taking or accepting of any other security or guaranty for any or all of the Indebtedness;

3

(b)     Any release, withdrawal, surrender, exchange, substitution, subordination, or loss of any security or other guaranty at any time existing in connection with any or all of the Indebtedness; any partial release of the liability of any other Guarantor or Guarantors hereunder or under any other instrument had, or to be had, in connection with, or as security for, the Indebtedness, or the release from this Guaranty of any one or more of the other Guarantors, or the death, corporate dissolution, insolvency, bankruptcy, disability, or lack of authority of Borrower, Guarantor, or any other Guarantor or any party at any time liable for the payment of any or all of the Indebtedness, whether now existing or hereafter occurring;

(c)     Any renewal, extension, modification, and/or rearrangement of the payment of any or all of the Indebtedness, or the performance of any covenant contained in any instrument had, or to be had, in connection with, or as security for, the Indebtedness, either with or without notice to, or consent of, such Guarantor or any adjustment, indulgence, forbearance, or compromise that may be granted or given by Lender to any party, including, but without limiting the generality of the foregoing, changes in the terms of disbursement of the loan proceeds or repayment thereof, modifications, extensions or renewals of payment dates, releases of security in whole or in part, changes in interest rate or times of payment thereof or the advancement of additional funds by Lender under the Commitment and/or Mortgage or for purposes related to the purposes set forth therein; or

(d)     Any neglect, delay, omission, failure, or refusal of Lender to take or prosecute any action for the collection of any of the Indebtedness or to foreclose or take or prosecute any action in connection with any lien, right, or security existing or to exist in connection with any lien, right, or security existing, or to exist, in connection with, or as security for, any of the Indebtedness; or to take any action hereunder; it being the intention hereof that Guarantor shall remain liable as principal until the full amount of the Indebtedness, together with interest, and any other sums due or to become due upon or in connection with any of the same, shall have been fully paid, performed, and observed by Borrower.

**4.      Warranties:** Guarantor further hereby covenants, represents and warrants that:

(a)     The most recent financial statements heretofore delivered by Guarantor to Lender are true and correct in all material respects, and fairly present its financial condition as of the respective dates thereof, and no material adverse change has occurred in said financial condition reflected therein since the respective dates thereof;

(b)     There are no actions, suits or proceedings pending or, so far as Guarantor is advised, threatened against Guarantor which might result in any material adverse change in the financial condition of Guarantor;

4

(c)    Neither execution or delivery of this Guaranty, nor compliance with the terms hereof, will conflict with or result in the breach of any law or statute, or will constitute a breach or default under any agreement or instrument to which Guarantor may be a party, or result in the creation or imposition of any charge or lien upon any property or assets of the Guarantor;

(d)    If Borrower shall at any time or times be or become obligated to Lender for payment of any indebtedness other than the Note for which Guarantor is liable under the provisions hereof, Lender (without in anyway impairing its right hereunder or diminishing said Guarantor's liability) shall be at liberty at any time or times to apply to said indebtedness other than the Note any amounts paid to or received by or coming into the hands of Lender from or attributable to Borrower or any other person or party liable for any said indebtedness or from or attributable to or representing proceeds of any property or security held by Lender securing payment of any of said indebtedness or any credits, deposits, or offsets due Borrower or other party liable on any of said indebtedness (whether or not the Note or such other indebtedness are then due). It is being intended to give Lender the right to apply all payments, credits, and offsets and amounts becoming available for application on or credit against the indebtedness of Borrower to Lender (now or hereafter existing) first toward payment and satisfaction of Borrower's indebtedness not hereby guaranteed, before making application thereof on or against the Note for which Guarantor is and shall be liable hereunder.

(e)    Guarantor hereby agrees to indemnify Lender against loss, cost, or expense by reason of the assertion by Borrower or Guarantor of any defense to its obligations under the Note, Mortgage, or other Loan Documents, or hereunder (other than successful defenses based upon wrongful acts or omissions committed by Lender), or the assertion by Guarantor of any defense to Guarantor's obligations hereunder based upon any action or inaction of the Borrower;

(f)    It is agreed that the liability of Guarantor for the payment and performance of the Note, and the outstanding Indebtedness shall be primary and not secondary, and that suit may be brought against any one or more guarantors, without impairing or releasing the rights of Lender against the other guarantors and either with or without making Borrower a party to such suit (as Lender may elect), and that Lender may compound or compromise or settle with any one or more of the guarantors of such sum or sums, if any, as it may see fit and may in its discretion release any one or more of the guarantors from any and all further liability to Lender for the Note (with or without receiving payment of any part of the said Note or other consideration incident to such release) without impairing, affecting, or releasing the right of Lender to demand and collect the entire unpaid balance of

5

the Note, up to the full amount thereof from any one or more of the guarantors not so released; and

(g)   Guarantor agrees that in the event that this Guaranty is placed in the hands of attorneys for enforcement, Guarantor will reimburse Lender for all expenses incurred, including attorneys' fees.

**5.   Notification of Adverse Changes:**  Guarantor shall promptly advise Lender in writing of:

(a)   All substantial actions, suits or proceedings pending or to its knowledge threatened, at law or in equity, or before any federal, state municipal or other court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, involving the possibility of judgments, or penalties against Guarantor which are not covered adequately by insurance; and

(b)   Any material adverse change in the financial condition of Guarantor.

**6.   Guarantor's Obligations Independent:**  The obligations of Guarantor hereunder are independent of the obligations of Borrower; a separate action or actions may be brought against Guarantor hereon, whether or not action is brought against Borrower or Borrower be joined in any such action or actions. Guarantor waives the benefit of any statute of limitations affecting its liability hereunder or the enforcement hereof.

**7.   Waiver of Defenses:**  Guarantor waives any right it may have to require Lender to:

(a)   Proceed against Borrower to recover upon any Indebtedness hereby secured;

(b)   Proceed against or exhaust any security held from Borrower;

(c)   Pursue any remedy in Lender's power whatsoever. Guarantor waives any defense arising by reason of any disability or other defense of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower other than payment of the Indebtedness.

**8.   Waiver of Subrogation:**  Guarantor agrees that Guarantor shall have no right of subrogation whatsoever with respect to the aforesaid Indebtedness, or to any monies due or unpaid thereon or any collateral security for the same (unless and until Lender shall have received payment in full of all sums at any time secured by the Note, Mortgage and Loan Documents).

**9.   No Waiver:**  No failure on the part of Lender to pursue any remedy hereunder shall constitute a waiver on its part of the right to pursue the remedy on the basis of the same or subsequent breach.

6

**10.    Acceleration Upon Default:** Guarantor acknowledges that the entire outstanding Indebtedness may become immediately due and payable at the option of Lender, pursuant to the Note and/or Mortgage Deed, upon failure of condition hereunder or failure on the part of Guarantor to perform any obligation on its part to be performed hereunder.

**11.    Enforcement:** This Guaranty may be enforced by Lender without first resorting to or exhausting any other security or collateral, or without first having recourse to the Note, or to the personal liability of any maker or endorser thereof, or to the assets or estate of Borrower or of any other party liable for the Note, or to any of the property covered by the Mortgage, or any other Loan Document, through foreclosure proceedings or otherwise, or without first having recourse to any of the Loan Documents; provided, however, that nothing herein contained shall prevent the Lender from suing on the Note or foreclosing the Mortgage or from exercising any other rights hereunder or under any of the Loan Documents, and if such foreclosure or other remedy is availed of, only the net proceeds therefrom, after deduction of all charges and expenses of every kind and nature whatsoever, shall be applied in reduction of the amount due on the Note, Mortgage and the Loan Documents, and the Lender shall not be required to institute or prosecute proceedings to recover any deficiency as a condition of payment hereunder or enforcement hereof. At any sale of the security or collateral for the Indebtedness or any part hereof whether by foreclosure or otherwise, Lender may at its discretion purchase all or any part of such collateral so sold or offered for sale for its own account and may apply against the amount bid therefor the balance due it pursuant to the terms of the Note, the Mortgage or any of the Loan Documents.

**12.    Successors and Assigns:** This Guaranty shall inure to the benefit of Lender and its successors and assigns and shall be binding upon and enforceable against Guarantor and her successors, assigns, heirs, executors, and administrators.

**13.    Governing Law:** This Guaranty shall be governed by and construed in accordance with the laws of the State of Connecticut. GUARANTOR ACKNOWLEDGES THAT THE TRANSACTIONS TO WHICH THIS GUARANTY RELATES ARE COMMERCIAL TRANSACTIONS. GUARANTOR HEREBY VOLUNTARILY AND KNOWINGLY WAIVES HIS RIGHTS TO NOTICE AND HEARING UNDER CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES, AS AMENDED AND IN EFFECT ON THE DATE HEREOF, OR AS OTHERWISE ALLOWED BY ANY STATE OR FEDERAL LAW WITH RESPECT TO ANY PREJUDGMENT REMEDY OR OTHER RIGHT OR REMEDY THAT THE BANK MAY ELECT TO USE OR OF WHICH IT MAY AVAIL ITSELF. GUARANTOR FURTHER WAIVES, TO THE GREATEST EXTENT PERMITTED BY LAW, THE BENEFITS OF ALL PRESENT AND FUTURE VALUATION, APPRAISEMENT, EXEMPTION, STAY, REDEMPTION AND MORATORIUM LAWS.

**14.    WAIVER OF JURY TRIAL:** GUARANTOR WAIVES A TRIAL BY JURY IN ANY ACTION WITH RESPECT TO THIS GUARANTY AND AS TO ANY ISSUES ARISING RELATING TO THIS GUARANTY OR TO THE INSTRUMENTS SECURING THIS

7

GUARANTY. GUARANTOR ACKNOWLEDGES THAT THIS WAIVER MAY DEPRIVE GUARANTOR OF AN IMPORTANT RIGHT, AND THAT SUCH WAIVER HAS BEEN KNOWINGLY AND VOLUNTARILY MADE.

15.    **Miscellaneous:** Guarantor

(a)    Waives diligence, presentment, protest, notice of protest, notice of dishonor, demand for payment, or performance, notice of default or non-performance, extension of time of payment, notice of acceptance of this Guaranty, nonpayment at maturity, and indulgences and notices of every kind, and consents to any and all forbearances and extensions of the time of payment of the Note, the Mortgage or the Loan Documents, and to any and all changes in the terms, covenants, and conditions thereof hereafter made or granted and to any and all substitutions, exchanges, or releases of all or any part of the collateral therefor; waives any right to cause a marshalling of Borrower's assets or to cause Lender to proceed against any other guarantors in any particular order; waives any right to require Lender to apply upon the Note or any Indebtedness hereby guarantied any funds or other property at any time received by or paid to or in the possession of Lender; it being the intention hereof that Guarantor shall remain liable hereunder until the terms, covenants, and conditions of the Note, the Mortgage, and all of the Loan Documents shall have been fully performed and observed by the Borrower, notwithstanding any act, omission, or thing that might otherwise operate as a legal or equitable discharge of Guarantor.

(b)    Agrees that if any term, covenant, or condition of this Guaranty, the Note, the Mortgage, or any of the Loan Documents or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Guaranty, the Note, the Mortgage, or such Loan Documents or the application of such term, covenant, or condition to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term, covenant, or condition of this Guaranty, the Note, the Mortgage, and all Loan Documents shall be valid and be enforced to the fullest extent permitted by law.

(c)    Agrees that should Borrower execute in favor of Lender any further security agreement, the exercise by Lender of any right conferred upon it in such security agreement shall be wholly discretionary with Lender and such exercise of, or failure to exercise such right, shall in no wise impair or diminish the obligations of Guarantor hereunder. Lender may, without in any manner impairing or diminishing the obligations of Guarantor hereunder, elect to pursue any available remedy against Borrower, against any other party, or against any security held by Lender, whether or not the exercise by Lender of any such remedy shall result in

loss to Guarantor of any right of subrogation or right to proceed against Borrower for reimbursement.

(d)     Agrees that in the event of any bankruptcy, reorganization, winding up, or similar proceedings with respect to Borrower, no limitation on Borrower's liability under the Note, the Mortgage, or any of the Loan Documents that may now or hereafter be imposed by any federal, state, or other statute, law, regulation, or judicial or administrative determination applicable to such proceedings shall in any way limit the obligation hereunder of Guarantor, which obligation is coextensive with Borrower's liability as set forth in the Note, the Mortgage, and the Loan Documents without regard to any such limitation. In the event any payment by Borrower to Lender is held to constitute a preference under the bankruptcy laws, or if for any other reason Lender is required to refund such payment or pay the amount thereof to any other party, such payment by Lender to Borrower shall not constitute a release of Guarantor from any liability hereunder, and Guarantor agrees to pay such amount to Lender upon demand.

(e)     Agrees that this Guaranty shall be continuing and of full force and effect until the Indebtedness and all renewals or extensions thereof is fully paid.

(f)     Each Guarantor shall furnish to the Lender annually his financial statements and tax returns in the same manner as the Borrower according to the terms set forth in the Loan Agreement between Borrower and Lender of even date herewith.

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Agreement as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

JEFFREY S STEPHENS

EDWARD C. ARREDONDO

_____
Carlos A. Arredondo

JEFFREY S STEPHENS

EDWARD C. ARREDONDO

_____
Caesar A. Arredondo

9

STATE OF CONNECTICUT    )
                           ) ss: **Bridgeport**

COUNTY OF FAIRFIELD     )

On this the 3rd day of March, 1998, before me, the undersigned officer, personally appeared **Carlos A. Arredondo**, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

**IN WITNESS WHEREOF**, I hereunto set my hand.

                                                    _JEFFREY S STEPHENS_

Commissioner of the Superior Court
~~Notary Public~~
~~My Commission Expires:~~

STATE OF CONNECTICUT    )
                           ) ss: **Bridgeport**

COUNTY OF FAIRFIELD     )

On this the 3rd day of March, 1998, before me, the undersigned officer, personally appeared **Caesar A. Arredondo**, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained

**IN WITNESS WHEREOF**, I hereunto set my hand.

                                                    _JEFFREY S STEPHENS_

Commissioner of the Superior Court
~~Notary Public~~
~~My Commission Expires:~~

BPT1/39111.1350/MGP/210306.1

10

## LIMITED GUARANTY

**THIS GUARANTY** is made and entered into as of this 15th day of September, 1998, by **CARLOS A. ARREDONDO and CAESAR A. ARREDONDO**, individuals with a mailing address c/o Arredondo & Company, One Sound Shore Drive, Greenwich, Connecticut 06830 (the "Guarantor" whether one or more) to and for the benefit of **PEOPLE'S BANK**, a banking corporation organized and existing under the laws of the State of Connecticut and having its principal place of business at 850 Main Street, in the City of Bridgeport, County of Fairfield and State of Connecticut 06604 (hereinafter referred to as "Lender").

## W I T N E S S E T H:

**WHEREAS,** Lender has issued a certain commitment ("Commitment") to Greenburgh Project, LLC as the borrower, pursuant to the terms of which Commitment Lender has agreed to make a loan to Greenburgh Project, LLC (the "Loan") in the principal amount of **THIRTEEN MILLION FIVE HUNDRED THOUSAND AND 00/100 ($13,500,000.00) DOLLARS**, to be evidenced by a promissory note in the original principal amount of $13,500,000.00 (the "Note") and secured by a mortgage (the "Mortgage"), which Mortgage will encumber certain premises owned by Greenburgh Project, LLC known as 395 Saw Mill River Road, Greenburgh, New York (the "Mortgaged Premises"), and such other additional documents as Lender may require pursuant to the terms of said Commitment (which Note, Mortgage and additional documents are collectively hereinafter referred to as "Loan Documents"). Greenburgh Project, LLC as borrower shall hereinafter be referred to as the "Borrower"; and

**WHEREAS,** the Commitment provides that as a condition to Lender making its Loan to Borrower, Guarantors shall guaranty the payment of the Loan, subject to certain limitations as set forth below; and

**NOW, THEREFORE,** in order to induce Lender to make the Loan evidenced by the Note and secured by the Mortgage and in consideration thereof, Guarantor agrees as follows:

1. **Guaranty:** Guarantor unconditionally, absolutely and jointly and severally guarantees the due and punctual payment of the outstanding principal of the Note, the interest thereon, and any other monies due or that may become due thereon or on the Mortgage or any of the Loan Documents, and the due and punctual performance and observance by Borrower of all of the other terms, covenants, and conditions of the Note, Mortgage and Loan Documents, whether according to the present terms thereof, at any earlier or accelerated date or dates as provided therein, or pursuant to any extension of time or to any change or changes in the terms, covenants, and conditions thereof now or at anytime hereafter made or granted, together with all reasonable attorneys' fees, court costs and other costs and reasonable expenses as shall be paid or incurred by Lender in connection with the collection of the Note or any of the other obligations referred to therein, or paid or incurred by Lender in connection with the defense by Lender of any

action, suit or claim by any third party with respect to any of same, or paid or incurred by Lender in connection with the enforcement of this Guaranty. All debts, duties, liabilities and obligations hereinabove described and covered by this Guaranty, or intended so to be, are hereinafter collectively called the "Indebtedness". Notwithstanding any other provision of this Guaranty to the contrary, the Guarantor's liability to the Lender under this Guaranty for the repayment of the Indebtedness shall be limited in amount to the sum of:

(a)     ten (10%) percent of all sums due under the Note plus an amount equal to the sum of all fees, costs and expenses (including attorneys' fees) incurred by the Lender in seeking to enforce this Guaranty or otherwise in dealing with Guarantor.

(b)     All costs, expenses, damages or losses incurred by the Lender and directly or indirectly resulting from any of the following:

(i)     the presence of hazardous waste or asbestos on the Mortgaged Premises as set forth in a separate environmental indemnity to be signed by the Guarantor;

(ii)     any security deposits of tenants or prepayments of rents received by the Borrower or the then owner of the Property and not turned over to the Lender upon foreclosure of the Lender's Mortgage, sale pursuant to any power of sale, or the exercise by the Bank of its assignment of rents;

(iii)     insurance proceeds or condemnation awards received by Borrower (or the then owner of the Mortgaged Premises) and not turned over to the Bank or used to restore or repair the Mortgaged Premises pursuant to the applicable provisions of the Mortgage;

(iv)     the commission of waste to the Mortgaged Premises caused or permitted by Borrower or any affiliate thereof; and

(v)     to the extent that Borrower has retained (or distributed to members) rents or other income from the Mortgaged Premises during the term of the loan, prior to applying the rents or other income from the Mortgaged Premises to the Loan or operating expenses directly attributable to the Mortgaged Premises (including but not limited to real estate taxes, insurance charges and utilities).

(c)     In addition to the foregoing, the Guarantor shall be unconditionally jointly and severally responsible and liable for all obligations of the Borrower under the Note and pursuant to the Loan Documents upon the occurrence of any of the following events:

2

(i)    the commission of any fraud or material misrepresentation by the Borrower or its representatives in connection with the real estate securing this loan, the documents executed in connection herewith or any aspect of the Loan transaction;

(ii)    the Mortgaged Premises or any part thereof or interest therein shall be encumbered by a voluntary lien in voluntary violation of the terms of the Loan Documents;

(iii)    any voluntary breach or violation of the due on sale provisions or transfer of Borrower's ownership interest contained in the Loan Documents; or

(iv)    if the Mortgaged Premises or any part thereof shall become an asset in (a) a voluntary bankruptcy filing or insolvency proceeding, (b) an involuntary bankruptcy proceeding which is commenced by Guarantor or any other guarantor or anyone related to the Guarantor or any other guarantor or an entity owned or controlled by any guarantor and/or any relatives of guarantor (collectively "Related Party") or (c) any Related Party objects to a motion for relief from stay or injunction following a voluntary or involuntary bankruptcy or insolvency proceeding.

2.    **Subordination:** Subject to the other provisions hereof, Guarantor agrees that all indebtedness of Borrower to Guarantor whether now existing or hereafter contracted, whether direct or indirect, contingent or determined, as well as all rights, liens, claims and securities existing or to exist in connection therewith or as security therefor, are declared, recognized and made subordinate to the Indebtedness and to all rights, titles, interest, liens, and claims of Lender hereunder. With respect to any such indebtedness of Borrower to Guarantor, Guarantor further agrees to make no claim therefor until all obligations of Borrower to Lender shall have been discharged in full, and Guarantor further covenants and agrees not to assign all or any part of such indebtedness while this Guaranty remains in effect except upon prior notice to Lender and upon the condition that any such assignment or transfer shall expressly be made subject to the terms of this Guaranty.

3.    **No Discharge by Modification:** Guarantor agrees that the liability of Guarantor hereunder shall not in any way be released, diminished, impaired, reduced or affected by:

(a)    The taking or accepting of any other security or guaranty for any or all of the Indebtedness; ·

3

(b)     Any release, withdrawal, surrender, exchange, substitution, subordination, or loss of any security or other guaranty at any time existing in connection with any or all of the Indebtedness; any partial release of the liability of any other Guarantor or Guarantors hereunder or under any other instrument had, or to be had, in connection with, or as security for, the Indebtedness, or the release from this Guaranty of any one or more of the other Guarantors, or the death, corporate dissolution, insolvency, bankruptcy, disability, or lack of authority of Borrower, Guarantor, or any other Guarantor or any party at any time liable for the payment of any or all of the Indebtedness, whether now existing or hereafter occurring;

(c)     Any renewal, extension, modification, and/or rearrangement of the payment of any or all of the Indebtedness, or the performance of any covenant contained in any instrument had, or to be had, in connection with, or as security for, the Indebtedness, either with or without notice to, or consent of, such Guarantor or any adjustment, indulgence, forbearance, or compromise that may be granted or given by Lender to any party, including, but without limiting the generality of the foregoing, changes in the terms of disbursement of the loan proceeds or repayment thereof, modifications, extensions or renewals of payment dates, releases of security in whole or in part, changes in interest rate or times of payment thereof or the advancement of additional funds by Lender under the Commitment and/or Mortgage or for purposes related to the purposes set forth therein; or

(d)     Any neglect, delay, omission, failure, or refusal of Lender to take or prosecute any action for the collection of any of the Indebtedness or to foreclose or take or prosecute any action in connection with any lien, right, or security existing or to exist in connection with any lien, right, or security existing, or to exist, in connection with, or as security for, any of the Indebtedness; or to take any action hereunder; it being the intention hereof that Guarantor shall remain liable as principal until the full amount of the Indebtedness, together with interest, and any other sums due or to become due upon or in connection with any of the same, shall have been fully paid, performed, and observed by Borrower.

**4.     Warranties:** Guarantor further hereby covenants, represents and warrants that:

(a)     The most recent financial statements heretofore delivered by Guarantor to Lender are true and correct in all material respects, and fairly present its financial condition as of the respective dates thereof, and no material adverse change has occurred in said financial condition reflected therein since the respective dates thereof;

(b)     There are no actions, suits or proceedings pending or, so far as Guarantor is advised, threatened against Guarantor which might result in any material adverse change in the financial condition of Guarantor;

4

(c)     Neither execution or delivery of this Guaranty, nor compliance with the terms hereof, will conflict with or result in the breach of any law or statute, or will constitute a breach or default under any agreement or instrument to which Guarantor may be a party, or result in the creation or imposition of any charge or lien upon any property or assets of the Guarantor;

(d)     If Borrower shall at any time or times be or become obligated to Lender for payment of any indebtedness other than the Note for which Guarantor is liable under the provisions hereof, Lender (without in anyway impairing its right hereunder or diminishing said Guarantor's liability) shall be at liberty at any time or times to apply to said indebtedness other than the Note any amounts paid to or received by or coming into the hands of Lender from or attributable to Borrower or any other person or party liable for any said indebtedness or from or attributable to or representing proceeds of any property or security held by Lender securing payment of any of said indebtedness or any credits, deposits, or offsets due Borrower or other party liable on any of said indebtedness (whether or not the Note or such other indebtedness are then due). It is being intended to give Lender the right to apply all payments, credits, and offsets and amounts becoming available for application on or credit against the indebtedness of Borrower to Lender (now or hereafter existing) first toward payment and satisfaction of Borrower's indebtedness not hereby guaranteed, before making application thereof on or against the Note for which Guarantor is and shall be liable hereunder.

(e)     Guarantor hereby agrees to indemnify Lender against loss, cost, or expense by reason of the assertion by Borrower or Guarantor of any defense to its obligations under the Note, Mortgage, or other Loan Documents, or hereunder (other than successful defenses based upon wrongful acts or omissions committed by Lender), or the assertion by Guarantor of any defense to Guarantor's obligations hereunder based upon any action or inaction of the Borrower;

(f)     It is agreed that the liability of Guarantor for the payment and performance of the Note, and the outstanding Indebtedness shall be primary and not secondary, and that suit may be brought against any one or more guarantors, without impairing or releasing the rights of Lender against the other guarantors and either with or without making Borrower a party to such suit (as Lender may elect), and that Lender may compound or compromise or settle with any one or more of the guarantors of such sum or sums, if any, as it may see fit and may in its discretion release any one or more of the guarantors from any and all further liability to Lender for the Note (with or without receiving payment of any part of the said Note or other consideration incident to such release) without impairing, affecting, or releasing the right of Lender to demand and collect the entire unpaid balance of

5

the Note, up to the full amount thereof from any one or more of the guarantors not so released; and

(g)      Guarantor agrees that in the event that this Guaranty is placed in the hands of attorneys for enforcement, Guarantor will reimburse Lender for all expenses incurred, including attorneys' fees.

**5.**      **Notification of Adverse Changes:** Guarantor shall promptly advise Lender in writing of:

(a)      All substantial actions, suits or proceedings pending or to its knowledge threatened, at law or in equity, or before any federal, state municipal or other court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, involving the possibility of judgments, or penalties against Guarantor which are not covered adequately by insurance; and

(b)      Any material adverse change in the financial condition of Guarantor.

**6.**      **Guarantor's Obligations Independent:** The obligations of Guarantor hereunder are independent of the obligations of Borrower; a separate action or actions may be brought against Guarantor hereon, whether or not action is brought against Borrower or Borrower be joined in any such action or actions. Guarantor waives the benefit of any statute of limitations affecting its liability hereunder or the enforcement hereof.

**7.**      **Waiver of Defenses:** Guarantor waives any right it may have to require Lender to:

(a)      Proceed against Borrower to recover upon any Indebtedness hereby secured;

(b)      Proceed against or exhaust any security held from Borrower;

(c)      Pursue any remedy in Lender's power whatsoever. Guarantor waives any defense arising by reason of any disability or other defense of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower other than payment of the Indebtedness.

**8.**      **Waiver of Subrogation:** Guarantor agrees that Guarantor shall have no right of subrogation whatsoever with respect to the aforesaid Indebtedness, or to any monies due or unpaid thereon or any collateral security for the same (unless and until Lender shall have received payment in full of all sums at any time secured by the Note, Mortgage and Loan Documents).

**9.**      **No Waiver:** No failure on the part of Lender to pursue any remedy hereunder shall constitute a waiver on its part of the right to pursue the remedy on the basis of the same or subsequent breach.

6

**10.    Acceleration Upon Default:** Guarantor acknowledges that the entire outstanding Indebtedness may become immediately due and payable at the option of Lender, pursuant to the Note and/or Mortgage Deed, upon failure of condition hereunder or failure on the part of Guarantor to perform any obligation on its part to be performed hereunder.

**11.    Enforcement:** This Guaranty may be enforced by Lender without first resorting to or exhausting any other security or collateral, or without first having recourse to the Note, or to the personal liability of any maker or endorser thereof, or to the assets or estate of Borrower or of any other party liable for the Note, or to any of the property covered by the Mortgage, or any other Loan Document, through foreclosure proceedings or otherwise, or without first having recourse to any of the Loan Documents; provided, however, that nothing herein contained shall prevent the Lender from suing on the Note or foreclosing the Mortgage or from exercising any other rights hereunder or under any of the Loan Documents, and if such foreclosure or other remedy is availed of, only the net proceeds therefrom, after deduction of all charges and expenses of every kind and nature whatsoever, shall be applied in reduction of the amount due on the Note, Mortgage and the Loan Documents, and the Lender shall not be required to institute or prosecute proceedings to recover any deficiency as a condition of payment hereunder or enforcement hereof. At any sale of the security or collateral for the Indebtedness or any part hereof whether by foreclosure or otherwise, Lender may at its discretion purchase all or any part of such collateral so sold or offered for sale for its own account and may apply against the amount bid therefor the balance due it pursuant to the terms of the Note, the Mortgage or any of the Loan Documents.

**12.    Successors and Assigns:** This Guaranty shall inure to the benefit of Lender and its successors and assigns and shall be binding upon and enforceable against Guarantor and her successors, assigns, heirs, executors, and administrators.

**13.    Governing Law:** This Guaranty shall be governed by and construed in accordance with the laws of the State of Connecticut. GUARANTOR ACKNOWLEDGES THAT THE TRANSACTIONS TO WHICH THIS GUARANTY RELATES ARE COMMERCIAL TRANSACTIONS. GUARANTOR HEREBY VOLUNTARILY AND KNOWINGLY WAIVES HIS RIGHTS TO NOTICE AND HEARING UNDER CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES, AS AMENDED AND IN EFFECT ON THE DATE HEREOF, OR AS OTHERWISE ALLOWED BY ANY STATE OR FEDERAL LAW WITH RESPECT TO ANY PREJUDGMENT REMEDY OR OTHER RIGHT OR REMEDY THAT THE BANK MAY ELECT TO USE OR OF WHICH IT MAY AVAIL ITSELF. GUARANTOR FURTHER WAIVES, TO THE GREATEST EXTENT PERMITTED BY LAW, THE BENEFITS OF ALL PRESENT AND FUTURE VALUATION, APPRAISEMENT, EXEMPTION, STAY, REDEMPTION AND MORATORIUM LAWS.

**14.    WAIVER OF JURY TRIAL:** GUARANTOR WAIVES A TRIAL BY JURY IN ANY ACTION WITH RESPECT TO THIS GUARANTY AND AS TO ANY ISSUES ARISING RELATING TO THIS GUARANTY OR TO THE INSTRUMENTS SECURING THIS

GUARANTY. GUARANTOR ACKNOWLEDGES THAT THIS WAIVER MAY DEPRIVE GUARANTOR OF AN IMPORTANT RIGHT, AND THAT SUCH WAIVER HAS BEEN KNOWINGLY AND VOLUNTARILY MADE.

15.    **Miscellaneous**: Guarantor

(a)    Waives diligence, presentment, protest, notice of protest, notice of dishonor, demand for payment, or performance, notice of default or non-performance, extension of time of payment, notice of acceptance of this Guaranty, nonpayment at maturity, and indulgences and notices of every kind, and consents to any and all forbearances and extensions of the time of payment of the Note, the Mortgage or the Loan Documents, and to any and all changes in the terms, covenants, and conditions thereof hereafter made or granted and to any and all substitutions, exchanges, or releases of all or any part of the collateral therefor; waives any right to cause a marshalling of Borrower's assets or to cause Lender to proceed against any other guarantors in any particular order; waives any right to require Lender to apply upon the Note or any Indebtedness hereby guarantied any funds or other property at any time received by or paid to or in the possession of Lender; it being the intention hereof that Guarantor shall remain liable hereunder until the terms, covenants, and conditions of the Note, the Mortgage, and all of the Loan Documents shall have been fully performed and observed by the Borrower, notwithstanding any act, omission, or thing that might otherwise operate as a legal or equitable discharge of Guarantor.

(b)    Agrees that if any term, covenant, or condition of this Guaranty, the Note, the Mortgage, or any of the Loan Documents or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Guaranty, the Note, the Mortgage, or such Loan Documents or the application of such term, covenant, or condition to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term, covenant, or condition of this Guaranty, the Note, the Mortgage, and all Loan Documents shall be valid and be enforced to the fullest extent permitted by law.

(c)    Agrees that should Borrower execute in favor of Lender any further security agreement, the exercise by Lender of any right conferred upon it in such security agreement shall be wholly discretionary with Lender and such exercise of, or failure to exercise such right, shall in no wise impair or diminish the obligations of Guarantor hereunder. Lender may, without in any manner impairing or diminishing the obligations of Guarantor hereunder, elect to pursue any available remedy against Borrower, against any other party, or against any security held by Lender, whether or not the exercise by Lender of any such remedy shall result in

8

loss to Guarantor of any right of subrogation or right to proceed against Borrower for reimbursement.

(d)     Agrees that in the event of any bankruptcy, reorganization, winding up, or similar proceedings with respect to Borrower, no limitation on Borrower's liability under the Note, the Mortgage, or any of the Loan Documents that may now or hereafter be imposed by any federal, state, or other statute, law, regulation, or judicial or administrative determination applicable to such proceedings shall in any way limit the obligation hereunder of Guarantor, which obligation is coextensive with Borrower's liability as set forth in the Note, the Mortgage, and the Loan Documents without regard to any such limitation. In the event any payment by Borrower to Lender is held to constitute a preference under the bankruptcy laws, or if for any other reason Lender is required to refund such payment or pay the amount thereof to any other party, such payment by Lender to Borrower shall not constitute a release of Guarantor from any liability hereunder, and Guarantor agrees to pay such amount to Lender upon demand.

(e)     Agrees that this Guaranty shall be continuing and of full force and effect until the Indebtedness and all renewals or extensions thereof is fully paid.

(f)     Each Guarantor shall furnish to the Lender annually his financial statements and tax returns in the same manner as the Borrower according to the terms set forth in the Loan Agreement between Borrower and Lender of even date herewith.

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Agreement as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____

_____


_____
Carlos A. Arredondo

_____
Caesar A. Arredondo

9

STATE OF CONNECTICUT      )
                                ) ss: **Bridgeport**

COUNTY OF FAIRFIELD      )

On this the 15th day of September, 1998, before me, the undersigned officer, personally appeared **Carlos A. Arredondo**, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

**IN WITNESS WHEREOF,** I hereunto set my hand.

Commissioner of the Superior Court
Notary Public
My Commission Expires:

STATE OF CONNECTICUT      )
                                ) ss: **Bridgeport**

COUNTY OF FAIRFIELD      )

On this the 15th day of September, 1998, before me, the undersigned officer, personally appeared **Caesar A. Arredondo**, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained

**IN WITNESS WHEREOF,** I hereunto set my hand.

Commissioner of the Superior Court
Notary Public
My Commission Expires:

BPT1/39111.1362/MGP/237531.1

10

## LIMITED GUARANTY

**THIS GUARANTY** is made and entered into as of this 14th day of April, 1999, by **CARLOS A. ARREDONDO and CAESAR A. ARREDONDO,** individuals with a mailing address c/o Arredondo & Company, One Sound Shore Drive, Greenwich, Connecticut 06830 (the "Guarantor" whether one or more) to and for the benefit of **PEOPLE'S BANK,** a banking corporation organized and existing under the laws of the State of Connecticut and having its principal place of business at 850 Main Street, in the City of Bridgeport, County of Fairfield and State of Connecticut 06604 (hereinafter referred to as "Lender").

## W I T N E S S E T H:

**WHEREAS,** Lender has issued a certain commitment ("Commitment") to Danbury Project, LLC as the borrower, pursuant to the terms of which Commitment Lender has agreed to make a loan to Danbury Project, LLC (the "Loan") in the principal amount of **NINE MILLION AND 00/100 ($9,000,000.00) DOLLARS,** to be evidenced by a promissory note in the original principal amount of $9,000,000.00 (the "Note") and secured by a mortgage (the "Mortgage"), which Mortgage will encumber certain premises owned by Danbury Project, LLC known as 15 Kenosia Avenue, Danbury, Connecticut (the "Mortgaged Premises"), and such other additional documents as Lender may require pursuant to the terms of said Commitment (which Note, Mortgage and additional documents are collectively hereinafter referred to as "Loan Documents"). Danbury Project, LLC as borrower shall hereinafter be referred to as the "Borrower"; and

**WHEREAS,** the Commitment provides that as a condition to Lender making its Loan to Borrower, Guarantors shall guaranty the payment of the Loan, subject to certain limitations as set forth below; and

**NOW, THEREFORE,** in order to induce Lender to make the Loan evidenced by the Note and secured by the Mortgage and in consideration thereof, Guarantor agrees as follows:

1.    **Guaranty:**    Guarantor unconditionally, absolutely and jointly and severally guarantees the due and punctual payment of the outstanding principal of the Note, the interest thereon, and any other monies due or that may become due thereon or on the Mortgage or any of the Loan Documents, and the due and punctual performance and observance by Borrower of all of the other terms, covenants, and conditions of the Note, Mortgage and Loan Documents, whether according to the present terms thereof, at any earlier or accelerated date or dates as provided therein, or pursuant to any extension of time or to any change or changes in the terms, covenants, and conditions thereof now or at anytime hereafter made or granted, together with all reasonable attorneys' fees, court costs and other costs and reasonable expenses as shall be paid or incurred by Lender in connection with the collection of the Note or any of the other obligations referred to therein, or paid or incurred by Lender in connection with the defense by Lender of any action, suit or claim by any third party with respect to any of same, or paid or incurred by Lender

in connection with the enforcement of this Guaranty. All debts, duties, liabilities and obligations hereinabove described and covered by this Guaranty, or intended so to be, are hereinafter collectively called the "Indebtedness". Notwithstanding any other provision of this Guaranty to the contrary, the Guarantor's liability to the Lender under this Guaranty for the repayment of the Indebtedness shall be limited in amount to the sum of:

(a)    ten (10%) percent of all sums due under the Note plus an amount equal to the sum of all fees, costs and expenses (including attorneys' fees) incurred by the Lender in seeking to enforce this Guaranty or otherwise in dealing with Guarantor.

(b)    All costs, expenses, damages or losses incurred by the Lender and directly or indirectly resulting from any of the following:

(i)     the presence of hazardous waste or asbestos on the Mortgaged Premises as set forth in a separate environmental indemnity to be signed by the Guarantor;

(ii)    any security deposits of tenants or prepayments of rents received by the Borrower or the then owner of the Property and not turned over to the Lender upon foreclosure of the Lender's Mortgage, sale pursuant to any power of sale, or the exercise by the Bank of its assignment of rents;

(iii)   insurance proceeds or condemnation awards received by Borrower (or the then owner of the Mortgaged Premises) and not turned over to the Bank or used to restore or repair the Mortgaged Premises pursuant to the applicable provisions of the Mortgage;

(iv)    the commission of waste to the Mortgaged Premises caused or permitted by Borrower or any affiliate thereof; and

(v)     to the extent that Borrower has retained (or distributed to members) rents or other income from the Mortgaged Premises during the term of the loan, prior to applying the rents or other income from the Mortgaged Premises to the Loan or operating expenses directly attributable to the Mortgaged Premises (including but not limited to real estate taxes, insurance charges and utilities).

(c)    In addition to the foregoing, the Guarantor shall be unconditionally jointly and severally responsible and liable for all obligations of the Borrower under the Note and pursuant to the Loan Documents upon the occurrence of any of the following events:

2

(i)    the commission of any fraud or material misrepresentation by the Borrower or its representatives in connection with the real estate securing this loan, the documents executed in connection herewith or any aspect of the Loan transaction;

(ii)    the Mortgaged Premises or any part thereof or interest therein shall be encumbered by a voluntary lien in voluntary violation of the terms of the Loan Documents;

(iii)    any voluntary breach or violation of the due on sale provisions or transfer of Borrower's ownership interest contained in the Loan Documents; or

(iv)    if the Mortgaged Premises or any part thereof shall become an asset in (a) a voluntary bankruptcy filing or insolvency proceeding, (b) an involuntary bankruptcy proceeding which is commenced by Guarantor or any other guarantor or anyone related to the Guarantor or any other guarantor or an entity owned or controlled by any guarantor and/or any relatives of guarantor (collectively "Related Party") or (c) any Related Party objects to a motion for relief from stay or injunction following a voluntary or involuntary bankruptcy or insolvency proceeding.

2.    <u>Subordination</u>:  Subject to the other provisions hereof, Guarantor agrees that all indebtedness of Borrower to Guarantor whether now existing or hereafter contracted, whether direct or indirect, contingent or determined, as well as all rights, liens, claims and securities existing or to exist in connection therewith or as security therefor, are declared, recognized and made subordinate to the Indebtedness and to all rights, titles, interest, liens, and claims of Lender hereunder. With respect to any such indebtedness of Borrower to Guarantor, Guarantor further agrees to make no claim therefor until all obligations of Borrower to Lender shall have been discharged in full, and Guarantor further covenants and agrees not to assign all or any part of such indebtedness while this Guaranty remains in effect except upon prior notice to Lender and upon the condition that any such assignment or transfer shall expressly be made subject to the terms of this Guaranty.

3.    <u>No Discharge by Modification</u>:  Guarantor agrees that the liability of Guarantor hereunder shall not in any way be released, diminished, impaired, reduced or affected by:

(a)    The taking or accepting of any other security or guaranty for any or all of the Indebtedness;

(b)    Any release, withdrawal, surrender, exchange, substitution, subordination, or loss of any security or other guaranty at any time existing in connection with any or all

3

(c)     Neither execution or delivery of this Guaranty, nor compliance with the terms hereof, will conflict with or result in the breach of any law or statute, or will constitute a breach or default under any agreement or instrument to which Guarantor may be a party, or result in the creation or imposition of any charge or lien upon any property or assets of the Guarantor;

(d)     If Borrower shall at any time or times be or become obligated to Lender for payment of any indebtedness other than the Note for which Guarantor is liable under the provisions hereof, Lender (without in anyway impairing its right hereunder or diminishing said Guarantor's liability) shall be at liberty at any time or times to apply to said indebtedness other than the Note any amounts paid to or received by or coming into the hands of Lender from or attributable to Borrower or any other person or party liable for any said indebtedness or from or attributable to or representing proceeds of any property or security held by Lender securing payment of any of said indebtedness or any credits, deposits, or offsets due Borrower or other party liable on any of said indebtedness (whether or not the Note or such other indebtedness are then due). It is being intended to give Lender the right to apply all payments, credits, and offsets and amounts becoming available for application on or credit against the indebtedness of Borrower to Lender (now or hereafter existing) first toward payment and satisfaction of Borrower's indebtedness not hereby guaranteed, before making application thereof on or against the Note for which Guarantor is and shall be liable hereunder.

(e)     Guarantor hereby agrees to indemnify Lender against loss, cost, or expense by reason of the assertion by Borrower or Guarantor of any defense to its obligations under the Note, Mortgage, or other Loan Documents, or hereunder (other than successful defenses based upon wrongful acts or omissions committed by Lender), or the assertion by Guarantor of any defense to Guarantor's obligations hereunder based upon any action or inaction of the Borrower;

(f)     It is agreed that the liability of Guarantor for the payment and performance of the Note, and the outstanding Indebtedness shall be primary and not secondary, and that suit may be brought against any one or more guarantors, without impairing or releasing the rights of Lender against the other guarantors and either with or without making Borrower a party to such suit (as Lender may elect), and that Lender may compound or compromise or settle with any one or more of the guarantors of such sum or sums, if any, as it may see fit and may in its discretion release any one or more of the guarantors from any and all further liability to Lender for the Note (with or without receiving payment of any part of the said Note or other consideration incident to such release) without impairing, affecting, or releasing the right of Lender to demand and collect the entire unpaid balance of the Note, up to the full amount thereof from any one or more of the guarantors not so released; and

5

(g)     Guarantor agrees that in the event that this Guaranty is placed in the hands of attorneys for enforcement, Guarantor will reimburse Lender for all expenses incurred, including attorneys' fees.

**5.     Notification of Adverse Changes:**  Guarantor shall promptly advise Lender in writing of:

(a)     All substantial actions, suits or proceedings pending or to its knowledge threatened, at law or in equity, or before any federal, state municipal or other court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, involving the possibility of judgments, or penalties against Guarantor which are not covered adequately by insurance; and

(b)     Any material adverse change in the financial condition of Guarantor.

**6.     Guarantor's Obligations Independent:**  The obligations of Guarantor hereunder are independent of the obligations of Borrower; a separate action or actions may be brought against Guarantor hereon, whether or not action is brought against Borrower or Borrower be joined in any such action or actions.  Guarantor waives the benefit of any statute of limitations affecting its liability hereunder or the enforcement hereof.

**7.     Waiver of Defenses:**  Guarantor waives any right it may have to require Lender to:

(a)     Proceed against Borrower to recover upon any Indebtedness hereby secured;

(b)     Proceed against or exhaust any security held from Borrower;

(c)     Pursue any remedy in Lender's power whatsoever.  Guarantor waives any defense arising by reason of any disability or other defense of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower other than payment of the Indebtedness.

**8.     Waiver of Subrogation:**  Guarantor agrees that Guarantor shall have no right of subrogation whatsoever with respect to the aforesaid Indebtedness, or to any monies due or unpaid thereon or any collateral security for the same (unless and until Lender shall have received payment in full of all sums at any time secured by the Note, Mortgage and Loan Documents).

**9.     No Waiver:**  No failure on the part of Lender to pursue any remedy hereunder shall constitute a waiver on its part of the right to pursue the remedy on the basis of the same or subsequent breach.

10.  **Acceleration Upon Default**: Guarantor acknowledges that the entire outstanding Indebtedness may become immediately due and payable at the option of Lender, pursuant to the Note and/or Mortgage Deed, upon failure of condition hereunder or failure on the part of Guarantor to perform any obligation on its part to be performed hereunder.

11.  **Enforcement**: This Guaranty may be enforced by Lender without first resorting to or exhausting any other security or collateral, or without first having recourse to the Note, or to the personal liability of any maker or endorser thereof, or to the assets or estate of Borrower or of any other party liable for the Note, or to any of the property covered by the Mortgage, or any other Loan Document, through foreclosure proceedings or otherwise, or without first having recourse to any of the Loan Documents; provided, however, that nothing herein contained shall prevent the Lender from suing on the Note or foreclosing the Mortgage or from exercising any other rights hereunder or under any of the Loan Documents, and if such foreclosure or other remedy is availed of, only the net proceeds therefrom, after deduction of all charges and expenses of every kind and nature whatsoever, shall be applied in reduction of the amount due on the Note, Mortgage and the Loan Documents, and the Lender shall not be required to institute or prosecute proceedings to recover any deficiency as a condition of payment hereunder or enforcement hereof. At any sale of the security or collateral for the Indebtedness or any part hereof whether by foreclosure or otherwise, Lender may at its discretion purchase all or any part of such collateral so sold or offered for sale for its own account and may apply against the amount bid therefor the balance due it pursuant to the terms of the Note, the Mortgage or any of the Loan Documents.

12.  **Successors and Assigns**: This Guaranty shall inure to the benefit of Lender and its successors and assigns and shall be binding upon and enforceable against Guarantor and her successors, assigns, heirs, executors, and administrators.

13.  **Governing Law**: This Guaranty shall be governed by and construed in accordance with the laws of the State of Connecticut. GUARANTOR ACKNOWLEDGES THAT THE TRANSACTIONS TO WHICH THIS GUARANTY RELATES ARE COMMERCIAL TRANSACTIONS. GUARANTOR HEREBY VOLUNTARILY AND KNOWINGLY WAIVES HIS RIGHTS TO NOTICE AND HEARING UNDER CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES, AS AMENDED AND IN EFFECT ON THE DATE HEREOF, OR AS OTHERWISE ALLOWED BY ANY STATE OR FEDERAL LAW WITH RESPECT TO ANY PREJUDGMENT REMEDY OR OTHER RIGHT OR REMEDY THAT THE BANK MAY ELECT TO USE OR OF WHICH IT MAY AVAIL ITSELF. GUARANTOR FURTHER WAIVES, TO THE GREATEST EXTENT PERMITTED BY LAW, THE BENEFITS OF ALL PRESENT AND FUTURE VALUATION, APPRAISEMENT, EXEMPTION, STAY, REDEMPTION AND MORATORIUM LAWS.

14.  **WAIVER OF JURY TRIAL**: GUARANTOR WAIVES A TRIAL BY JURY IN ANY ACTION WITH RESPECT TO THIS GUARANTY AND AS TO ANY ISSUES ARISING RELATING TO THIS GUARANTY OR TO THE INSTRUMENTS SECURING THIS GUARANTY. GUARANTOR ACKNOWLEDGES THAT THIS WAIVER MAY DEPRIVE

7

GUARANTOR OF AN IMPORTANT RIGHT, AND THAT SUCH WAIVER HAS BEEN
KNOWINGLY AND VOLUNTARILY MADE.

**15.    Miscellaneous:** Guarantor

(a)    Waives diligence, presentment, protest, notice of protest, notice of dishonor,
demand for payment, or performance, notice of default or non-performance,
extension of time of payment, notice of acceptance of this Guaranty, nonpayment
at maturity, and indulgences and notices of every kind, and consents to any and all
forbearances and extensions of the time of payment of the Note, the Mortgage or
the Loan Documents, and to any and all changes in the terms, covenants, and
conditions thereof hereafter made or granted and to any and all substitutions,
exchanges, or releases of all or any part of the collateral therefor; waives any right
to cause a marshalling of Borrower's assets or to cause Lender to proceed against
any other guarantors in any particular order; waives any right to require Lender
to apply upon the Note or any Indebtedness hereby guarantied any funds or other
property at any time received by or paid to or in the possession of Lender; it being
the intention hereof that Guarantor shall remain liable hereunder until the terms,
covenants, and conditions of the Note, the Mortgage, and all of the Loan
Documents shall have been fully performed and observed by the Borrower,
notwithstanding any act, omission, or thing that might otherwise operate as a legal
or equitable discharge of Guarantor.

(b)    Agrees that if any term, covenant, or condition of this Guaranty, the Note, the
Mortgage, or any of the Loan Documents or the application thereof to any person
or circumstances shall, to any extent, be invalid or unenforceable, the remainder
of this Guaranty, the Note, the Mortgage, or such Loan Documents or the
application of such term, covenant, or condition to persons or circumstances other
than those as to which it is held invalid or unenforceable, shall not be affected
thereby and each term, covenant, or condition of this Guaranty, the Note, the
Mortgage, and all Loan Documents shall be valid and be enforced to the fullest
extent permitted by law.

(c)    Agrees that should Borrower execute in favor of Lender any further security
agreement, the exercise by Lender of any right conferred upon it in such security
agreement shall be wholly discretionary with Lender and such exercise of, or
failure to exercise such right, shall in no wise impair or diminish the obligations
of Guarantor hereunder. Lender may, without in any manner impairing or
diminishing the obligations of Guarantor hereunder, elect to pursue any available
remedy against Borrower, against any other party, or against any security held by
Lender, whether or not the exercise by Lender of any such remedy shall result in
loss to Guarantor of any right of subrogation or right to proceed against Borrower
for reimbursement.

8

(d)    Agrees that in the event of any bankruptcy, reorganization, winding up, or similar proceedings with respect to Borrower, no limitation on Borrower's liability under the Note, the Mortgage, or any of the Loan Documents that may now or hereafter be imposed by any federal, state, or other statute, law, regulation, or judicial or administrative determination applicable to such proceedings shall in any way limit the obligation hereunder of Guarantor, which obligation is coextensive with Borrower's liability as set forth in the Note, the Mortgage, and the Loan Documents without regard to any such limitation. In the event any payment by Borrower to Lender is held to constitute a preference under the bankruptcy laws, or if for any other reason Lender is required to refund such payment or pay the amount thereof to any other party, such payment by Lender to Borrower shall not constitute a release of Guarantor from any liability hereunder, and Guarantor agrees to pay such amount to Lender upon demand.

(e)    Agrees that this Guaranty shall be continuing and of full force and effect until the Indebtedness and all renewals or extensions thereof is fully paid.

(f)    Each Guarantor shall furnish to the Lender annually his financial statements and tax returns in the same manner as the Borrower according to the terms set forth in the Loan Agreement between Borrower and Lender of even date herewith.

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Agreement as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

JEFFREY S STEPHENS

EDWARD C. ARREDONDO

JEFFREY S STEPHENS

EDWARD C. ARREDONDO

_____
Carlos A. Arredondo

_____
Caesar A. Arredondo

9

STATE OF CONNECTICUT    )
                        ) ss: Bridgeport
COUNTY OF FAIRFIELD     )

On this the 14th day of April, 1999, before me, the undersigned officer, personally appeared **Carlos A. Arredondo,** known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

**IN WITNESS WHEREOF,** I hereunto set my hand.

_____
Commissioner of the Superior Court
Notary Public.
My Commission Expires:


STATE OF CONNECTICUT    )
                        ) ss: Bridgeport
COUNTY OF FAIRFIELD     )

On this the 14th day of April, 1999, before me, the undersigned officer, personally appeared **Caesar A. Arredondo,** known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained

**IN WITNESS WHEREOF,** I hereunto set my hand.

_____
Commissioner of the Superior Court
Notary Public
My Commission Expires:

BPT1/39111.1375/MGP/267203.1

10