) NORWALK TWIN TOWERS, INC. )
c/o THE CHASE MANHATTAN BANK, N.A.
101 PARK AVENUE
NEW YORK, NEW YORK 10178



November 9, 1989

Mr. Carlos A. Arredondo
Arredondo & Co.
Two Greenwich Plaza
Greenwich, CT 06830

Dear Carlos:

I enjoyed meeting with you on Tuesday, and learning about your company and your new directions.

We encourage you to closely examine 535 Connecticut Avenue, both as a combined and a land purchase. To that end I have enclosed a copy of the survey, the preliminary title report and the back up documents. We are still seeking a copy of the easement running in our favor. No soils work has been done on the Phase II site to the best of our knowledge.

I look forward to continuing our negotiation in the near future. With best regards,

Yours sincerely,

Richard M. Davis

RD/js
encl.



RECEIVED
NOV 1 0 1989
Arredondo

December 20, 1989

**Arredondo**
MAJOR OWNER OF CORPORATE REAL ESTATE

Mr. Richard Davis
Vice President
Chase Manhattan Bank
101 Park Avenue
New York, New York   10178

                         RE:  Norwalk Land –
                              Towers Phase II

PROPOSED TENETS OF DEAL

BUYER:

   Arredondo Properties Limited Partnership (the trust owned by our children, grandchildren and great grandchildren - same entity that owns our Port Chester facility.

PURCHASE PRICE:

   $1,750,000 payable $52,500 at contract signing, $52,500 ninety days thereafter and $1,645,000 ninety days thereafter. Proposed dates: January 15, April 15, July 15, 1990. Buyer can cancel contract at any time; no refund of any money. If desired, Buyer can accelerate the purchase to any date prior to July 15, 1990.

COMPACTION TESTS:

   Shortly after contract signing, these will be performed by Buyer's engineering consultants.

### STATE HIGHWAY DEPARTMENT APPROVAL:

As soon as practical, Buyer will prepare sufficient architectuals and model to request approval of a 167,000 square foot building. It clearly being understood that it is in the interest of both Buyer and Seller that the building be as large as possible. Buyer shall be responsible for any payments or fees required for State Highway Department approval of this site only.

### ARCHITECTURAL EXTERIOR:

Buyer's proposed building must have an exterior of glass and pre-cast concrete panels, similar in design and quality to Buyer's Port Chester facility.

### ADDITIONAL PAYMENT:

If prior to January 15, 1991, Buyer obtains a building permit on this site for more than 135,000 square feet of building; it shall, within 5 days, pay the Seller $13.00 per square foot for each additional square foot of building permit approved over 135,000 square feet.

### EXPENSES:

No broker brought about this transaction. Cost of title insurance and any transfer taxes are to be divided equally by Buyer and Seller.

### HAZARDOUS WASTE:

As you know, this item is of our utmost concern. We understand you are having a soils test done and, hopefully, some results will be available by early January (at least borings by that time).

### ALLOCATIONS:

All real estate taxes will be allocated as per the closing date of July 15, 1990 or sooner.

Mr. Richard Davis - Page 3                               December 20, 1989

### TITLE:

Seller will provide a warranty deed with clear title subject only to those easements shown on plan provided to Buyer.

### CROSSEASEMENT AGREEMENT:

A cross-easement agreement satisfactory to Buyer and Seller for access and egress to the site and the adjacent property will be entered into.

### DEVELOPMENT USE:

It is clearly understood that Buyer agrees not to build an office building on this site for a period of 5-years from closing. Buyer must request city and state approvals of a high quality self-storage facility. It may have the capacity at some future time (but no less than 5 years), of being converted into an office building. If Buyer has purchased the property and is subsequently turned down by either the state or city on its request for a self-storage facility, it is free to attempt to develop any use on the property.