IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

CARLOS A. ARREDONDO, in his capacity as
Trustee of The 2000 Trust for the Grandchildren of Carlos
A. Arredondo and Mari V. Arredondo, General Partner of
Arredondo Properties Limited Partnership,

        Plaintiff,

v.

CAESAR A. ARREDONDO, individually and in his
capacity as Trustee of The 2000 Trust for the
Grandchildren of Caesar A. Arredondo and Carolyn Abad
Arredondo; THE 2000 TRUST FOR THE
GRANDCHILDREN OF CAESAR A. ARREDONDO
AND CAROLYN ABAD ARREDONDO, in its capacity
as General Partner of Arredondo Properties Limited
Partnership; and ARREDONDO & CO., LLC,

        Defendants.

CIVIL ACTION NO.:
3:02 CV 02200 (CFD)

JANUARY 28, 2005

**DEFENDANTS' MEMORANDUM OF LAW
IN RESPONSE TO PLAINTIFF'S MOTION TO STRIKE OR,
IN THE ALTERNATIVE, MOTION FOR LEAVE TO FILE A SUR-RESPONSE BRIEF**

## I.    INTRODUCTION

On January 12, 2005, the plaintiff, Carlos A. Arredondo ("Carlos"), filed his Motion to

Strike Or, In The Alternative, Motion For Leave To File A Sur-Response Brief, along with a

supporting Memorandum of Law ("Carlos' Memorandum" or "Carlos Mem.") and a proposed,

undated Sur-Response Brief In Opposition To Defendants' Motion For Summary Judgment ("Sur-

Response"). Carlos seeks to either strike the ten exhibits that were attached to the Defendants'

December 21, 2004 Reply Memorandum in support of their Motion for Summary Judgment

("Reply") or obtain the Court's permission to file his proposed Sur-Response addressing those

exhibits.

Carlos' Motion to Strike continues the pattern of misdirection and backtracking begun in Carlos' own summary judgment motion and in his opposition to Caesar's motion. As explained in Caesar's Reply, Carlos' position on the merits in this case rests on the untenable and unsupported notice that the passive investment trust APLP, not Carlos and Caesar, actively controlled the WESTY business and trademarks. Based on this belated "revelation," Carlos tries to repudiate the factual and legal premise on which he and Caesar founded the WESTY business – that their active and actual control over the day-to-day operations justified and permitted their placing ownership of the WESTY marks in WCI and A&Co.

Undaunted by his own admissions and actions for nearly a decade (during which he continuously asserted his personal interest in the WESTY marks through companies he and Caesar jointly owned), Carlos now insists that he and Carlos were little more than bystanders to the creation and growth of the WESTY business. For example, Carlos makes unsubstantiated claims that the brothers did not risk or invest their personal assets in the WESTY business, that they never envisioned a chain of WESTY facilities, and they never considered building a Southern Connecticut WESTY facility until late 1990. Carlos advanced these claims for the express purpose of supporting his "first use" theory, i.e., APLP by itself decided in 1989 to enter the self-storage business and to limit the business to only one WESTY facility in Port Chester, New York. Each of these claims is supported by nothing more than Carlos' self-serving declaration. In choosing to present a declaration filled with naked assertions rather than tangible evidence, Carlos opened the door for Caesar to search for and reply upon evidence that disproves or undermines Carlos' revisionist version of events -- a version that Carlos had not espoused before summary judgment briefing.

The bulk of the documents Carlos now seeks to strike fall into the category of impeachment materials – neither called for nor responsive to Carlos' discovery requests, but now made highly relevant by Carlos' new, unsubstantiated allegations that the documents at issue impugn. There can be no question concerning the adequacy and thoroughness of Caesar's document production during the course of discovery. Before encountering Carlos' declaration, Caesar had already produced over 28,000 pages of documents at a cost of more than $100,000 in response to Carlos' discovery requests. The volume and burden of Caesar's production, in fact, dwarfs Carlos' meager production of 23 pages, which ironically were not produced to Caesar until well after the close of discovery.

Now confronted with the declaration from Carlos inflated with inaccuracies and outright misstatements, Caesar has every right to puncture Carlos' fragile contentions with additional materials at his disposal that contradict or impeach Carlos' groundless assertions. It is not surprising given the blow that these documents strike to the heart of Carlos' case, that Carlos would like to suppress them. Documents showing Carlos and Caesar personally guaranteeing loans and putting up cash collateral for WESTY facilities plainly refute Carlos' new claim that the brothers had no stake in the success or failure of the WESTY business. Other documents, many penned by Carlos and all known to him, showing that Carlos and Caesar at the outset considered a chain of WESTY facilities, including Connecticut facilities on property that APLP did not own, belie Carlos' new claims that APLP developed and founded the WESTY business with the intent to have only one WESTY facility in New York on property that APLP owned and no WESTY facilities in Connecticut.

Carlos cannot feign surprise regarding these documents. He wrote many of them, and is a signatory on others. As explained below, two of the documents at issue are responsive and

inadvertently were not produced earlier. But both of those documents are memos authorized by

**Carlos**. Carlos should not be permitted to claim prejudice in having to confront damaging

documents from his own hand or familiar to him that he knew or should have known would

contradict his unsubstantiated statements made in the hope of defeating Caesar's motion for

summary judgment.

Simply put, Carlos' present Motion to Strike is as baseless as the declaration Carlos seeks to

salvage by suppressing the documents at issue. The law does not support Carlos' claim that the

documents should be stricken. The Court therefore should deny Carlos' Motion to Strike.

Allowing Carlos to file the sur-reply brief that accompanies his present motion, while unwarranted

under these circumstances, would more than adequately address Carlos' concerns. Caesar

accordingly does not object to Carlos' request to submit its proposed Sur-Response brief.

## II.    FACTUAL BACKGROUND

A brief summary of the procedural history concerning recent discovery and summary

judgment filings is necessary to put Carlos' Motion to Strike in proper context.

On April 21, 2004, the parties filed their joint motion to modify the scheduling order to

have, among other things, discovery close on June 30, 2004. The Court granted that motion. On or

about May 31, 2004, Carlos served his second set of production requests on the defendants,

Arredondo &Co., LLC ("A&Co.") and Caesar Arredondo (collectively with the other Defendants,

"Caesar").[1]  One request, Number 17, sought all documents concerning the Milford WESTY

Project.

---

[1] Carlos' first set of discovery was served on or about May 2, 2003.

Knowing that the Defendants' responses would not be due until June 30, 2004 (and possibly later if motions for extension of time were filed), Carlos nonetheless scheduled Caesar's deposition for June 24, 2004. Thus, Carlos was fully aware that he was to conduct Caesar's deposition without documents responsive to his second requests, including documents related to the Milford WESTY project subject to production under Request Number 17, which includes the documents at Exhibits 4, 5, 6, and 7 of Carlos' motion to strike. Caesar was deposed on June 24, 2004 and Carlos was deposed on June 23.

On June 30, 2004—the modified discovery conclusion date—the parties filed a number of discovery-related motions. On that date, Carlos filed an uncontested motion to extend the close of discovery until August 13, 2004 to resolve outstanding discovery issues. That motion additionally sought to have the deadline to file dispositive motions extended until September 13, 2004. On that same day, the Defendants sought 30-day extensions of time to respond to Carlos' second set of requests. The Defendants also served a second production request on Carlos on June 30, 2004.

Thereafter, the parties communicated concerning responses to each side's second production requests. Although both sides were due to exchange documents in July 2004, neither side's document gathering efforts were completed during that month. In particular, the Defendants were engaged in a substantial and costly effort to respond to Carlos' broad discovery. The Defendants therefore advised Carlos that a large production would be forthcoming and expressed a willingness to jointly move for an extension of time to file summary judgment motions and memoranda to allow Carlos to have time to review these documents. Carlos did not seek an extension on his own on that basis or any other basis. On September 2, 2004, the Defendants filed their own motion seeking enlargement of time to file Motions for Summary Judgment up to November 12, 2004. In that

motion, the Defendants represented that the parties were still engaged in the process of exchanging discovery documents. Carlos did not oppose this motion.

In September and October, the parties continued to search for responsive documents. In October, the Defendants advised that their upcoming production would consist of approximately 14 boxes of documents and sought to determine whether Carlos wished to review the large production or have a copy set made. On October 22, 2004, counsel for the Defendants sent a letter enclosing the supplemental response coversheets and indicating that the documents were ready for review and/or copying. (A true and correct copy of Attorney Edward J. Heath's October 22, 2004 letter is attached as **Exhibit A.**) The production included many documents responsive to Request No. 17, which sought documents concerning the Milford WESTY project. As Carlos concedes, one of the ten exhibits attached to the Reply, Exhibit 7, a sketch by Caesar of a possible Milford WESTY project facility, was included in that production. All totaled, the Defendants' production October 22 ultimately consisted over 23,000 pages of documents, bringing the total number of documents produced to that time to over 28,000 pages. Most importantly, at no point in the two months that passed between the October 2004 production and the filing of the Motion to Strike, did Carlos claim that he needed to conduct additional discovery as a result. All during that time, Carlos was on notice that the Defendants maintained, and Exhibit 7 supported, that Caesar and Carlos contemplated constructing a WESTY facility in Milford in 1989. See also Carlos' Declaration dated January 12, 2005, ¶¶ 21-27 (Carlos admitting that he worked to rezone property in Milford for a WESTY facility in 1989).

On October 25, 2004, after Caesar produced his documents, Carlos indicated that he was still copying and bates-labeling his own responsive documents. On or about November 1, 2004,

Carlos produced his responsive documents.  The production consisted of only 23 pages.[2]  Absent

from Carlos' Motion to Strike papers is any mention of the fact his own production occurred well

past the close of discovery and occurred after Defendants' production of which Carlos now

complains.

On November 12, 2004, the parties filed cross-motions for summary judgment.  Opposition

papers were filed on December 3, 2004 (the Defendants) and December 7, 2004 (Carlos).  In his

opposition papers, Carlos made a number of new, specific factual assertions that were demonstrably

inaccurate.  One such assertion was:

> The Defendants' statement at p. 28 of their brief that "the WESTY Trademarks [were]
> created and developed solely by Caesar and Carlos at their substantial expense, time, effort,
> and risk ..." is patently false.  None of the expenses were borne by them individually and
> none of their **personal capital** was ever at risk.

(Carlos' December 7, 2004 Response In Opposition to Defendants' [Second] Motion for Summary

Judgment, at p. 24.)  Another of Carlos' inaccurate assertions was:

> When the brothers first conceived of the WESTY business, they did not envision opening
> more than one facility nor did they envision that they would own the facility individually.
> They planned at that time **only to open a single storage center to be located in Port
> Chester,** New York and owned by APLP.

(Carlos's December 7, 2004 Local Rule 56(a)(2) Statement, at p. 5 (No. 14) (emphasis added)).  As

to the brothers' intent **in 1989** to development WESTY facilities in Connecticut, Carlos added:

---

[2] In his papers, Carlos again cites the burden and expense that this lawsuit has imposed upon him.  (Carlos
Memorandum, n. 4.)  In fact, it is the Defendants who have suffered an undue burden.  As set forth in Caesar's
Summary Judgment motion, when Carlos sold his interest in A&Co. to Caesar, Carlos specifically sold his interest in
the trademarks and released both Caesar and A&Co. from "any claim, known or unknown, that [Carlos] may have
against either of both of them arising from his ownership of an interest in [A&Co.] or any actions relating to the
operation of [A&Co.]"  (See Defendants' Memorandum of Law In Support of Summary Judgment, dated November 12,
2004, (Caesar Aff. Ex. 16).)  Without basis, Carlos has brought this suit to reclaim the same marks that he sold.  As a
result, the Defendants have incurred substantial legal fees and costs, over $100,000 of which relates to the burden and
expense of responding to Carlos' broad discovery.

> The brothers did not consider any development of a self-storage facility in southern Connecticut **until late 1990**, when they considered building a second tier version of the Port Chester WESTY facility on property in Milford, Connecticut.

(Id. at p. 4 (No. 12) (emphasis added).) These assertions appear in various forms in different parts of Carlos' December 7, 2004 opposition papers.

The Defendants could not have anticipated that Carlos would assert these three baseless contentions or make them issues in this case. To rebut them, and to impeach Carlos, the Defendants included the ten exhibits to their Reply. Exhibits 1, 2 and 3, as explained more fully below, are financial documents that demonstrate beyond question that Caesar and Carlos put their personal assets at risk in developing the WESTY business. Exhibits 4, 5, 6, 7, 8, 9, and 10, also explained below, consist of memoranda, sketches, and letters that demonstrate that as early as 1989 and early 1990, the brothers were considering both having multiple WESTY facilities and developing some of them in Connecticut.

There is no dispute about the timing of production. Carlos concedes that Exhibit 7 was produced on October 22, 2004, and the Defendants acknowledge that none of the other nine exhibits were produced through discovery or otherwise in this action prior to December 7, 2004.[3] Indeed, in the two-week period that the Defendants had to prepare the Reply, the Defendants concluded that the documents planned as Exhibits 4, 5, and 6 were responsive to Carlos' discovery but were not

---

[3] Nonetheless, these documents were not unknown to Carlos. He was an author, signatory, or recipient of some documents and was familiar with all of them. He had access to all of the documents as a principal and co-owner of the WESTY business for more than a decade, including during the times in question.

previously produced.[4]  As is explained more fully below, Exhibits 4 and 5 were not produced in the fifteen-box October 22 production due to the inadvertence of counsel.  Exhibit 6, on the other hand, was not discovered until just before the Reply was filed.  The Defendants further concluded, as discussed below, that Exhibits 1, 2, 3, 8, 9 and 10 were not responsive to Carlos' discovery.  Indeed, their content was not at issue in the case until Carlos made them an issue by asserting the baseless claims to which they relate in his December 7 opposition papers.

In sum, as Carlos has done previously in this case, when faced with indisputable facts that are fatal to his manufactured claim of trademark ownership, Carlos in his December 7 opposition simply manufactured new facts.  The documents in question were offered to rebut conclusively Carlos' newly manufactured facts, which previously were not a part of this case.  Accordingly, the Defendants made a supplemental production of the responsive exhibits and other documents on December 21, 2004, the same day as the Reply brief was filed.[5]

---

[4] Exhibit 7 was produced for a second time on December 21, 2004.  At that time, the Defendants believed that they had already produced Exhibit 7 on October 22, 2004 but were unable to locate it in the over 28,000 pages of documents that had been produced to Carlos.  In an abundance of caution, the document was produced a second time.  Conceding the ease with which a document can be overlooked when it is part of such a voluminous production, the plaintiff, who had the document in his possession for two months, admits that he did not discover that he was in possession of the Exhibit 7 document until preparing his Motion to Strike.  (Carlos Mem., n.3.)

[5] In his Memorandum in Support of his Motion to Strike, Carlos represents to the Court that the "Defendants have offered no explanation as to why they did not produce, or could not have produced, the ten new sets of exhibits attached to their Reply Brief during discovery."  (Carlos' Memorandum, p. 5.)  In doing so, he ignores the cover letter from Caesar's counsel that accompanied the December 21, 2004 Reply and Supplemental Productions in which counsel notes the late disclosure of certain exhibits and explains that the exhibits were not previously produced due to counsel's inadvertence, recent discovery or non-responsiveness to pending discovery.  (A true and correct copy of that December 21, 2004 Letter of Attorney Edward J. Heath is attached hereto as **Exhibit B**.)

## III.    ARGUMENT

### A.    Preclusion Of Evidence Is A Rare And Harsh Remedy That Is Only Appropriate Where Unfair Prejudice Has Resulted From Bad Faith, Willful Misconduct Or Gross Negligence.

When one party complains that another party has improperly produced documents responsive to discovery requests after the close of discovery, Rule 37(b)(2) of the Federal Rules of Civil Procedure gives courts "discretionary power to take the appropriate action that would correct the failure in light of the considerations of justice." Monaghan v. SZS 33 Assocs., L.P., 148 F.R.D 500, 508 (S.D.N.Y. 1993). Rule 37(b)(2) lists possible, but not exclusive, remedies that the Court may consider in that situation. Although the striking of documents is one possible remedy, "[t]here is no doubt that exclusion of evidence is a harsh sanction and should be imposed only in rare situations," as the district court held in Softel v. Dragon Medical & Scientific Communications, Inc., 1990 WL 164859, *6 (S.D.N.Y. October 24, 1990) (attached at **Exhibit D**). In Softel, the Second Circuit enumerated four factors that must be considered before a court orders the rare and harsh remedy of evidence preclusion: (1) the party's explanation for the failure to comply with the discovery order, (2) the importance of the precluded evidence, (3) the prejudice suffered by the opposing party, and (4) the possibility of a continuance. Softel, 118 F.3d 955, 961 (2d Cir. 1997). The prejudice factor is essential. Where the party seeking preclusion under Rule 37 cannot demonstrate prejudice, a court should not exclude the evidence. Land Ocean Logistics, Inc. v. Aqua Gulf Corp., 181 F.R.D. 229, 234 (W.D.N.Y. Sep. 2, 1998).

As another court within this District held in a case where the failure to timely comply with a discovery order was "an unintentional error,"

> Clearly, the imposition of the harshest sanctions under Rule 37(b)-(d), such as the preclusion of evidence or the dismissal of an action, requires willful misconduct or bad faith.

Considerations of fair play dictate that courts eschew the harshest sanctions where failure to comply is due to a mere oversight of counsel amounting to no more than simple negligence.

Messier v. Southbury Trng. Sch., No. 3:94-CV-1706 (EBB), 1998 WL 841641, * 4 (D.Conn. Dec. 2, 1998) (attached at **Exhibit D**).

Carlos erroneously argues that simple negligence is a sufficient basis to order the sanction of preclusion. (Carlos' Mem, p. 2.) In <u>Monaghan</u>, the case that Carlos cites predominantly, the court relied on the defendant's history of gross negligence and noncompliance and its resulting substantial prejudice to the plaintiff to order preclusion of a particular defense and the award of fees and costs. <u>Monaghan</u>, 148 F.R.D 508-511. In that case, the plaintiff sought Rule 37 sanctions against the defendant concerning the defendant's failure to produce documents. The court noted that an earlier opinion in the case indicated that the defendant's failure to produce documents "appeared to be a deliberate attempt on its part to avoid turning over various documents." <u>Id</u>. at 510. The court found that the defendant was, if not acting in bad faith, at the very least "grossly negligent with regard to locating, maintaining, and producing documents during the convoluted discovery phase of this action, extending from the inception of this action to the period after the present motion was brought by the Plaintiffs." <u>Id</u>. Indeed, the court concluded that the defendant's conduct was a "critical factor in the Plaintiffs' inability to successfully defend against [the defendant's]" motion for summary judgment and the appeal of the entry of that summary judgment. <u>Id.</u> at 511. As a result, the court entered an order precluding the defendant from asserting a particular defense relating to the documents and awarding the plaintiff fees and costs. <u>Id</u>. In awarding this specific relief, the court cited <u>Turner v. Hudson Transit Lines, Inc.</u>, 142 F.R.D. 68, 78 (S.D.N.Y. 1991), for the proposition that an "award of costs, including attorneys' fees, [is] appropriate when [the] defendant's reckless conduct resulted in [a] loss of records and [its] discovery responses misled the court and

opposing counsel." <u>Monaghan</u>, 148 F.R.D. at 511. Accordingly, <u>Monaghan</u> does not support a

proposition that simple negligence can support the sanctions of preclusion.

> **B.      The Ten Exhibits To The Defendants' Reply Should Not Be Stricken Under
> Rule 37(b)(2).**

As demonstrated in the following sections, the facts of this case do not support the rare and

harsh remedy of preclusion. Carlos has failed to make a showing of bad faith, willful misconduct,

recklessness, gross negligence, or that the Defendants misled the Court. <u>Monaghan</u>, 148 F.R.D at

508-511; <u>Softel</u>, 1990 WL 164859 at *6; <u>Messier</u>, 1998 WL 841641 at * 4; <u>Turner</u>, 142 F.R.D. at

78; <u>Land Ocean Logistics</u>, 181 F.R.D. at 234. Moreover, Carlos has failed to demonstrate that he

will be unfairly prejudiced by the documents at issue, particularly if the Court considers his Sur-

Response, to which consideration the Defendants do not object. As a result, the ten exhibits

appended to the Defendants' Reply should not be stricken.

> **1.      The Defendants' Explanations For The Timing Of Disclosure.**

>> **a.      Exhibit 7 Was Produced In October 2004 Pursuant To The
>> Understanding Of The Parties.**

Carlos admits that one of the ten exhibits at issue, Exhibit 7, a September 6, 1989 sketch that

Caesar drafted of a potential WESTY storage facility in Milford, was produced to him in discovery

before the filing of summary judgment motions. (Carlos Mem., p. 3.) Exhibit 7 was included in the

Defendants' October 22, 2004 production.

Carlos apparently now takes issue with the fact that the production that included Exhibit 7

was made after the close of discovery. (Carlos Mem., pp. 3, 5 and n.1; Sur-Response, n.2) While

this production was made after the close of discovery, Carlos fails to advise the Court that the

timing of this production was pursuant to the understanding of the parties, as explained above.

Carlos also omits that he, too, produced his responsive documents after the close of discovery and, in fact, produced them after Caesar produced his documents. At no point in the over two months between the October 22 production and the filing of the Motion to Strike did Carlos object to the timing of this discovery production or claim that he needed to conduct additional discovery to address it. In light of these facts, Carlos is not in a position to object, let alone claim prejudice, to the Defendants' October 22, 2004 production.

> **b.    Exhibits 1, 2, 3, 8, 9, and 10 Rebut Inaccurate Factual Assertions Raised By Carlos For The First Time In His Opposition, And Were Not Responsive To Carlos' Discovery.**

The Defendants did not produce Exhibits 1, 2, 3, 8, 9 and 10 in discovery because they were not responsive to Carlos' discovery requests. These documents were made exhibits solely to rebut and conclusively impeach certain inaccurate factual assertions made by Carlos for the first time in his December 7, 2004 filings. The documents were not relevant to the issues in this case until that time.

Exhibits 1, 2, and 3 were designated as exhibits to address Carlos' contention in opposition to summary judgment that he and Caesar could not own the WESTY marks because "none of [Caesar and Carlos'] personal capital was ever at risk." (Carlos Opp. Br. at p. 24.) That contention is not accurate and Carlos had not previously made it in this case. The Defendants could not have anticipated that Carlos would assert such a baseless contention or make it an issue in this case. Exhibits 1, 2, and 3 demonstrate that Caesar and Carlos put millions of dollars of their personal assets at risk in guaranteeing APLP's loans for WESTY facilities, and they continue to have millions of their own dollars at risk. (See Defendants' Reply, pp. 4-5.) Contrary to Carlos' claim that the brothers acted solely as fiduciaries of APLP, these guarantees illustrate that Caesar and

-13-

Carlos had a substantial personal stake in the success or failure of the WESTY business consistent

with trademark ownership, and that they were not acting solely as trustees for APLP as they

developed and managed the WESTY business on a day-to-day basis, including controlling the

WESTY Trademarks.

Exhibits 8, 9, and 10 rebut and conclusively impeach Carlos' contentions in opposition to

the Defendants' Motion for Summary Judgment that at the time that they purchased the Port Chester

land in late 1989, and

> [w]hen the brothers first conceived of the WESTY business, they did not envision opening
> more than one facility nor did they envision that they would own the facility individually.
> They planned at that time only to open a single storage center to be located in Port Chester,
> New York and owned by APLP.

(Plaintiff's December 7, 2004 Local Rule 56(a)(2) Statement, ¶14.)   Exhibit 8 is a sketch by Caesar

from May 1989 regarding a possible WESTY facility in Trumbull, Connecticut.[6]  (Reply, pp. 5-6.)

Exhibit 9 is a November 9, 1989 letter from Chase Manhattan Bank to Carlos reflecting their pursuit

of a property in Norwalk for a possible WESTY storage center.  (Id.)  Finally, Exhibit 10 is a letter,

dated December 21, 1989, from the law firm of Day, Berry & Howard to Caesar at Arredondo &

Co. indicating the firm's agreement to represent Arredondo & Co., a company owned jointly by

Carlos and Caesar, in connection with the development of storage facilities in "the Northeast."  (Id.)

Again, the Defendants could not have expected Carlos to assert the demonstrably baseless

---

[6] Carlos correctly notes that the exhibit copy has no visible date.  The original document has a date but because
it was near the margin, the date did not get copied when the document was sent to a copying service.  Another copy of
the sketch at Exhibit 8 with the date visible is attached hereto as **Exhibit C** and was produced to Carlos on January 25,
2005.

contention that in late 1989 and early 1990 the brothers had not considered that the WESTY

business would have multiple facilities in places other than Port Chester, including Connecticut.[7]

Carlos claims that these documents are responsive to his First Production Request No. 2 and

should have been produced earlier.[8]   That request, however, seeks documents that evidence or relate

to ownership of the WESTY trademarks.  First, Exhibits 1, 2, 3, 8, 9, and 10 do not address

trademark ownership.  Second, even if an exceptionally liberal interpretation of Request No. 2 is

used such that these documents could be considered responsive, they became responsive only when

Carlos made his baseless assertion that the brothers had not considered development beyond Port

Chester in support of his derivatively baseless claim that APLP, as owner of the Port Chester real

estate, owns the WESTY Trademarks.  Within two weeks of learning of Carlos' newly

manufactured contentions and discovering the relevance of the documents at Exhibits 1, 2, 3, 8, 9

and 10 to rebut and impeach those baseless contentions, the Defendants discovered and provided

those documents to Carlos.

While the Defendants acknowledge that these documents were not previously exchanged in

this case, it is important to note that Carlos was a signatory to or specifically identified as a recipient

of six of the ten exhibits and, in his role as a principal of the WESTY business for more than a

decade before selling his interest to Caesar, he had to familiar with most if not all of the remaining

four documents.  Any implication that Carlos is now being blind-sided or prejudiced by the

---

[7] Exhibit 7, the 1989 sketch that Caesar drafted of a possible Milford storage facility, similarly rebuts these contentions that Carlos has asserted.

[8] Carlos also claims that Exhibit 10, a letter from Day, Berry & Howard to Caesar, is responsive to his First Request No. 3, which seeks communications between counsel for the Defendants and third parties that refer, reflect or relate to ownership of the WESTY marks.  Even if the document can be considered to refer, reflect or relate to trademark ownership, it is not between counsel and a third party.

production of documents from the closely-held business that he and his brother operated and controlled is dubious at best. Nonetheless, because the documents were not previously produced in this case, the Defendants do not object to the Court's consideration of Carlos' Sur-Response in which he unsuccessfully attempts to minimize the fatal effect of these documents to his newly constructed claims.

### c.    Exhibits 4 And 5 Were Not Previously Produced Due To The Inadvertence Of Counsel.

The Defendants do not dispute that Exhibits 4 and 5 are responsive to Carlos' Second Request No. 17, which, again, sought all documents concerning the Milford Project. Exhibit 4 is a memorandum from Carlos, dated May 10, 1989, regarding a site visit that he made to a storage facility in Milford Connecticut. Similarly, Exhibit 5 is a memorandum from Carlos, dated August 9, 1989, regarding rezoning of a potential Milford storage facility site. These documents, referenced at pages 5 and 6 of the Defendants' Reply, also rebut Carlos' inaccurate factual assertions in his opposition to summary judgment that in 1989 the brothers were not considering developing multiple WESTY facilities or conducting WESTY operations in Connecticut.[9]

Although Carlos states that the Defendants "waited" until the final summary judgment brief to produce these documents, thereby claiming that the Defendants engaged in willful misconduct, that is simply not the case. (Carlos Mem., p. 4.) Exhibits 4 and 5 were not previously produced due to the inadvertence of counsel for the Defendants. In the course of gathering, organizing, reviewing

---

[9] Once again, any claim of surprise of prejudice relating to these Milford WESTY documents would be baseless. More precisely, the documents relating to the Milford WESTY facility were of Carlos' own creation while operating the closely held business with Caesar. For Carlos to assert to the Court, under oath, that Port Chester was the only planned WESTY facility at the inception of the business, when he himself obtained a zoning change to construct a WESTY facility in Milford at the inception, see Carlos Declaration, ¶¶ 21-27, is dubious at best and certainly cannot support a claim of prejudice when Carlos' own documents are produced to refute his baseless claim.

and preparing the over 23,000 pages of documents to be produced in October 2004, counsel for the Defendants mistakenly believed that these two documents had been included in the original set when it was sent out for copying. As the Reply was being assembled for filing on December 21, counsel realized that the documents had been inadvertently omitted from production and promptly produced them. The Defendants can confirm that no other documents intended for production on October 22, 2004 were omitted from that production. In light of the voluminous number of documents being reviewed and produced, the mistake was a reasonable and understandable one that was corrected immediately upon its discovery.

### d.    Exhibit 6 Was Not Previously Produced Because It Was Only Recently Discovered.

Exhibit 6 is a June 1989 sketch by Caesar of a possible Milford, Connecticut storage facility. Again, it was made an exhibit to the Reply to rebut Carlos's assertions in his opposition to summary judgment that in 1989 the brothers were not considering developing multiple WESTY facilities or conducting WESTY operations in Connecticut. The document was discovered by the Defendants while looking for other documents to rebut Carlos' new assertions made in his December opposition brief. Thereafter, the document was promptly produced on December 21, 2004.

### 2.    The Importance Of The Evidence.

While Carlos claims that these exhibits "are not critical to Defendants' case," he has submitted a twelve-page proposed Sur-Response in which he attempts to minimize their significance.[10] As demonstrated above and more fully in the Defendants' Reply, these exhibits are

---

[10] If, as Carlos claims, the documents do not support the Defendants' position, he necessarily could not have been prejudiced by their late production.

important because they rebut and conclusively impeach certain of Carlos' factual contentions central to his "first use" theory.

For example, even if the Court were to consider Carlos' conclusory sworn assertion that a Milford WESTY facility was not considered until 1990, it does not create a material disputed fact in light of Exhibits 4, 5, 6, and 7, which are (1) undisputed, (2) of Carlos' own creation, and (3) clearly show the brothers' consideration of a WESTY facility in Milford in 1989.

Indeed, in addition to the exhibits themselves, Carlos' latest, contradictory declaration in support of his motion to strike, which he created after these exhibits were produced to him, supports Caesar's position and eliminates any dispute. In paragraphs 21 and 22 of his declaration, Carlos tries to create the impression that he rejected in 1989 the notion of a WESTY facility in Milford. In paragraphs 23 and 24, however, and consistent with the Defendants' exhibits, Carlos acknowledges that he and Caesar discussed building a WESTY facility in Milford, although Carlos categorizes it as "second-class or lower end." Additionally, Carlos admits in paragraphs 24 through 27 of his declaration that in 1989, not 1990, Carlos himself then hired the lawyer referenced in Exhibit 5 and had the Milford property rezoned so they could build the WESTY facility—although they ultimately abandoned the plan. Regardless of whether Carlos now wants to categorize the Milford project as "second-class or lower end," through his affidavit he acknowledged that he and Caesar, as individuals and without any relation to APLP, acquired land and pursued a ***WESTY*** facility in Milford in 1989, before Port Chester opened. Accordingly, by his own admission, Carlos' claim

that in 1989 the brothers did not contemplate any WESTY self-storage facilities other than by APLP in Port Chester is indisputably baseless.[11]

Additionally, in response to Exhibit 10, the December 1989 letter from Day, Berry & Howard, Carlos now concedes that "[a]t the time they retained DBH, the brothers . . . hoped that the business would be a success, and they envisioned that there could be additional facilities in New York and Connecticut (although not other states) if the business was successful." (Sur-Response, p. 10.)  Exhibit 9, a 1989 letter involving a possible Norwalk facility has similarly triggered another alteration of Carlos' previously sworn position.  Now, having reviewed the ten exhibits, Carlos states that he "*agrees* that there is a *typo*" and that his Statement that "the brothers did not consider any development of a self-storage facility in Southern Connecticut until late 1990 . . . ." should have said "late 1989." (Proposed Sur-Response, p. 4 (emphasis added).)  The Defendants never claimed that this was a "typo" – the defendants maintained that Carlos was wrong in his sworn statement. (Reply, pp. 5-6.)  Accordingly, it is inaccurate for Carlos to suggest that there could be an agreement that his earlier sworn position was simply a clerical error.  Carlos' statement was not a "typo"; it was yet another inaccurate, self-serving, sworn statement that has been conclusively rebutted by the evidence that Carlos is trying so hard to strike.

---

[11] Carlos' manufactured assertions seem to have no end.  As to the Milford site, in his Third Declaration submitted in support of his Motion to Strike, Carlos states:  "At the time [of the Milford property acquisition in 1989] I had been involved in buying real estate for approximately thirty years. . . . I had **never purchased any property that would require rezoning** to use the property for the purpose for which I was purchasing it . . . . Moreover, because rezoning is difficult to achieve is most communities, **buying property that requires rezoning makes no sense to me**. . . . If Caesar and I intended to build a Westy facility on the Milford property at the time we contracted to buy it, we certainly **would have made the purchase contingent on the rezoning request being approved and implemented** . . . ." (Carlos' Third Declaration, filed January 12, 2005, at ¶¶ 28, 29.)  The very first exhibit to that Third Declaration, however, contradicts Carlos' sworn testimony on this point.  Exhibit 1, the acquisition contract for the Milford property, provides that Carlos and Caesar "**shall expeditiously, following closing of title, apply for a change of zoning** to LI-30, for the [Milford property]." (Third Declaration, Exhibit 1 at page entitled "Exhibit 'J' PRORATIONS.")  Simply put, while Carlos claims he never acquired property that required rezoning, he and Caesar together purchased the property at issue specifically intending that it would be rezoned for their use.

### 3.    The Absence Of Prejudice To Carlos.

Carlos claims that he will be unfairly prejudiced if the Court does not strike the exhibits or permit him to file the proposed Sur-Response.

#### a.    There Is No Prejudice.

Preliminarily, these ten exhibits are not new to Carlos. He was an author, signatory or recipient of six of the exhibits. Carlos was also familiar with or, at a minimum, had access to the documents for many years as a principal and co-owner of the WESTY business. Moreover, Carlos was not prejudiced by the delayed production because the documents do not support his case—indeed, they undermine his case. Carlos thus could not have used the documents to support his summary judgment motion nor to defeat Caesar's motion.

Regardless, in the Sur-Response, Carlos attempts at length to minimize the legal significance of the ten exhibits. For example, as to Exhibit 6, he has submitted a supplemental declaration in which he states that the document does not relate to a proposed Milford WESTY storage facility. While the Defendants disagree with this and the other substantive arguments made in the proposed Sur-Response, the Defendants have no objection to the Court's consideration of that brief.[12] As a result, if the Sur-Response is considered, Carlos' claim of unfair prejudice is resolved.

#### b.    There Is No Need For Further Discovery.

Carlos also contends that he will be unfairly prejudiced if he cannot conduct new discovery as to these exhibits. He claims that he needs to re-depose Caesar and "relevant third party witnesses." (Carlos Mem., pp. 7-8.) Despite seeking the extraordinary relief of re-opening

---

[12] As discussed above, Carlos' sworn assertion that Exhibit 6 does not relate to Milford is meaningless in light of the numerous other undisputed documents from 1989 relating to Milford and Carlos' sworn acknowledgement regarding the Milford efforts in 1989. See Exhibits 4, 5, 6 and 7 and Carlos' Third Declaration, ¶¶ 21-27.

discovery to conduct multiple depositions, Carlos can point to only two issues on which he claims

to need discovery. Neither claim for discovery is credible.

First, he wants to conduct another deposition of Caesar to inquire whether Exhibit 6 is

actually a drawing of a proposed Milford facility, as the Defendants' Reply states. In light of the

undisputed documents and Carlos' admission that the brothers, as individuals, explored a WESTY

facility in Milford in 1989 and even obtained a zoning change to do so (Carlos' Third Declaration,

¶¶ 21-27) Carlos' claimed need for further testimony regarding Exhibit 6 is baseless.

Second, Carlos claims that the timing of production deprived him of the opportunity to

examine Caesar about the document in Caesar's deposition. Carlos again conveniently ignores the

procedural history of this case, which completely undermines his position on this point. Carlos

served a request seeking documents regarding the Milford Project on or about May 31, 2004, such

that the Defendants' objections and responses would have been due on June 30, 2004. Carlos then

scheduled and conducted Caesar's deposition on June 24, 2004, before any responsive Milford

documents were due. Thus, Carlos was prepared to, and did in fact, conduct Caesar's deposition

without those documents.

Third, in the weeks after the deposition, Carlos' counsel was advised that a large number of

responsive documents would be produced, including Milford-related documents. At no point did

Carlos indicate that he might need to re-open Caesar's deposition after receiving these documents.

Indeed, after Caesar produced numerous Milford-related documents (including sketches bearing

dates in 1990 such as April 5, 1990 (A&Co28524), April 21, 1990 (A&Co28526), May 12, 1990

(A&Co28525), and November 6, 1990 (A&Co28529)) to Carlos in October, Carlos neither

objected to the timing nor sought to re-depose Caesar or depose anyone else. Now, facing Caesar's

-21-

summary judgment motion, including Caesar's Reply that exposes the many flaws in Carlos' opposition, Carlos suddenly claims that he needs to conduct additional discovery of Caesar and unnamed third parties as to this single, additional sketch that is cumulative with the other Milford materials that already were produced. Again, Carlos is not entitled to the discovery he professes to need.

The second area of new discovery concerns Exhibit 8, which is a May 1989 sketch relating to a possible Trumbull facility. Carlos wants to conduct discovery to "establish[] the date of the Trumbull property," which he says was not considered until 1994 or 1995. This issue has been resolved by the Defendants' review of Exhibit 8 and their realization that the copied and appended exhibit did not contain the May 1989 date that was on the original document. The plaintiff has been given a new copy with the May 1989 date that was on the original, which puts to rest Carlos' new claim that the brothers did not consider Trumbull for a possible WESTY site until 1994 or 1995.

Additionally, in demanding more discovery, Carlos ignores the point for which the evidence was initially offered, that is, to rebut and conclusively impeach his inaccurate contention in opposition to the Defendants' Motion for Summary Judgment that when the Port Chester land was purchased in late 1989, "the brothers did not consider the [WESTY self-storage] concept to be a program that would include multiple facilities," and that "the brothers did not consider any development of a self-storage facility in Southern Connecticut until late 1990, when they considered building a . . . WESTY facility . . . in Milford, Connecticut." (Plaintiff's Local Rule 56(a)(2) Statement, ¶12.) Rebutting and impeaching those false contentions is the purpose of Exhibit 8. Indeed, Carlos finally begins to concede the inaccuracy of his contentions in his proposed Sur-Response, when, for example, he "admits that the brothers did consider Norwalk in

November 1989 for a WESTY facility" and that in December 1989 the brothers "hoped that the business would be success and they envisioned that there could be additional facilities in New York and Connecticut . . . ." (Proposed Sur-Response, p. 10.) In light of Carlos' admissions that in 1989 the brothers considered additional facilities in Connecticut, specifically Milford and Norwalk, the issue is resolved and there is no need to conduct discovery related to the Trumbull project.

The superficial nature of Carlos' demand for discovery on these two points and the fact that Carlos articulates no other needed discovery reveals the frailty of his position. This is not the first time that Carlos has sought to forestall summary judgment by demanding more discovery. Carlos sought denial of the Defendants' initial motion for summary judgment, filed on June 2, 2003, claiming that he needed to conduct significant discovery. In the year that followed, he deposed only Caesar and, on information a belief, after speaking informally with potential third-party witnesses, Carlos declined to question any of them under oath. Simply put, there is no need for further discovery in this matter.[13] Moreover, as stated above, Carlos was an integral player in the WESTY business for more than a decade. His claimed need for discovery on issues in which he was deeply involved is meritless.

### 4.    The Possibility Of A Continuance

As to the fourth factor, Carlos claims his needed discovery will delay consideration of the pending motions for summary judgment. Because there is no need for further discovery, there will

---

[13] The Court should reject Carlos' demand that if he is permitted to conduct his additional unspecified discovery, the Defendants should pay the costs of that discovery. Had the exhibits been produced earlier in the case and had Carlos actually sought to conduct discovery as to them, he would have been responsible for those costs. The fact that the discovery would now occur months later has no effect on the costs of that discovery. Moreover, the implication that the Defendants bear the costs of that discovery "as a sanction" completely ignores the case law that provides the remedy under Rule 37 should be tailored to correct the prejudice. A punitive fine, which is exactly what Carlos seeks, would not accomplish that.

be no need for a continuance or imposition of a delay. With the submission of Carlos' Sur-Response, the motions for summary judgment are fully briefed.

## III.    **CONCLUSION**

For the foregoing reasons, the plaintiff's motion should be denied as to his request that the Court strike the ten exhibits appended to the Defendant's Reply. The Defendants do not oppose that portion of the plaintiff's Motion that seeks permission to file his proposed Sur-Response.

DEFENDANTS,
CAESAR A. ARREDONDO, et al.

By _____
　　Craig A. Raabe (ct 04116)
　　E-mail: craabe@rc.com
　　Edward J. Heath (ct20992)
　　E-mail: eheath@rc.com
　　Robinson & Cole LLP
　　280 Trumbull Street
　　Hartford, CT 06103
　　Tel.:  (860) 275-8200
　　Fax:  (860) 275-8299

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed via federal express, on this 28th day of January, 2005, to the following counsel of record:

Robert P. Dolian, Esq.
Cummings & Lockwood LLC
Four Stamford Plaza
P.O. Box 120
Stamford, CT  06904-0120

Martin J. Elgison, Esq.
David J. Stewart, Esq.
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424



_____
Edward J. Heath