Exhibit A

# ROBINSON & COLE LLP

EDWARD J. HEATH

280 Trumbull Street
Hartford, CT 06103-3597
Main (860) 275-8200
Fax (860) 275-8299
eheath@rc.com
Direct (860) 275-8297

October 22, 2004

***Via Facsimile***

David J. Stewart, Esq.
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

Re:  **Carlos A. Arredondo, et al., v. Caesar A. Arredondo, et al.**

Dear David:

Enclosed please find:

  1. Defendant Arredondo & Co. LLC's Second Supplemental Responses to Plaintiff's Second Request for Production of Documents and Things, and

  2. Defendant Caesar A. Arredondo's Supplemental Responses to Plaintiff's Second Request for Production of Documents and Things.

There are fifteen boxes of responsive documents.  The majority of the documents concern Second Request No. 16, which seeks, "All documents that refer, reflect or relate in any way to the WESTY Store located in Port Chester, New York that were created prior to April 1, 1991."  Additional documents concerning the Milford project and the Lake Success WESTY facility are also included as a part of this supplement. Kindly provide me with your Federal Express account information and I will have all fifteen boxes delivered to your office.



*Law Offices*

BOSTON

HARTFORD

NEW LONDON

STAMFORD

GREENWICH

NEW YORK

SARASOTA

*www.rc.com*

# ROBINSON & COLE LLP

David J. Stewart, Esq.
October 22, 2004
Page 2

We have not yet received documents responsive to the Defendants' Request for Production of Documents Directed to Carlos A. Arredondo, dated June 30, 3004.  I once again request that you advise me of the status of this production.

Very truly yours,

Edward J. Heath

EJH/lrg
Enclosures
cc:      Caesar Arredondo (via facsimile)
         John Arredondo (via facsimile)
         David M. Kelly, Esq. (via facsimile)
         Craig A. Raabe, Esq.



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

CARLOS A. ARREDONDO, in his capacity as
Trustee of The 2000 Trust for the Grandchildren of
Carlos A. Arredondo and Mari V. Arredondo, General
Partner of Arredondo Properties Limited Partnership,

        Plaintiff,

v.

CAESAR A. ARREDONDO, individually and in his
capacity as Trustee of The 2000 Trust for the
Grandchildren of Caesar A. Arredondo and Carolyn
Abad Arredondo; THE 2000 TRUST FOR THE
GRANDCHILDREN OF CAESAR A. ARREDONDO
AND CAROLYN ABAD ARREDONDO, in its
capacity as General Partner of Arredondo Properties
Limited Partnership; and ARREDONDO & CO., LLC,

        Defendants.

CIVIL ACTION NO.:
3:02 CV 02200 (CFD)

OCTOBER 22, 2004

## DEFENDANT ARREDONDO & CO., LLC'S SECOND
## SUPPLEMENTAL RESPONSES TO PLAINTIFF'S
## SECOND REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, the Defendant

Arredondo & Company, LLC ("A&Co.") hereby supplements his response to the plaintiff's

Second Request for Production of Documents and Things.

## REQUESTS FOR PRODUCTION

10.    All contracts between any of the WESTY Stores and Arredondo & Co., LLC

from 1991 to the present.

**RESPONSE:**  Pursuant to A&Co's previously asserted objections and responses,

please see attached documents bearing identification numbers A&Co 04797 – A&Co 04811.

11.    All contracts between any of the WESTY Stores and Arredondo Properties

Limited Partnership from 1991 to the present.

**RESPONSE:**  Pursuant to A&Co's previously asserted objections and responses,

please see attached documents bearing identification numbers A&Co 04797 – A&Co 04811.

16.    All documents that refer, reflect or relate in any way to the WESTY store

located in Port Chester, New York that were created prior to April 1, 1991.

**RESPONSE:**  Pursuant to A&Co's previously asserted objections and responses, and

the correspondence of counsel for the parties, please see attached documents bearing

identification numbers A&Co 04812 – A&Co 28205; A&Co 28538 – A&Co 28703.

17.    All documents that refer, reflect or relate to the Milford project referred to by

Defendants in their Reply Brief in support of their Motion for Summary Judgment, filed with

the Court on July 18, 2003.

**RESPONSE:**  Pursuant to A&Co's previously asserted objections and responses,

please see attached documents bearing identification numbers A&Co 28206 – A&Co 28537.

**DEFENDANT,**
**ARREDONDO & CO., LLC**

By _____

Craig A. Raabe (ct 04116)
E-mail: craabe@rc.com
Edward J. Heath (ct20992)
E-mail: eheath@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103
Tel.: (860) 275-8200
Fax: (860) 275-8299

## <u>CERTIFICATION</u>

This is to certify that a copy of the foregoing was sent via first-class mail, postage

prepaid, on this 22nd day of October, 2004, to:

      Robert P. Dolian, Esq.
      Cummings & Lockwood, LLC
      107 Elm Street
      Stamford, Connecticut 06902

      Martin J. Elgison, Esq.
      David J. Stewart, Esq.
      Dana Marty Haas, Esq.
      Alston & Bird LLP
      One Atlantic Center
      1201 West Peachtree Street
      Atlanta, Georgia 30309-3424

      David Kelly, Esq.
      Finnegan Henderson
      1300 I Street, NW
      Washington, DC 20005-3315

                             Edward J. Heath

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CARLOS A. ARREDONDO, in his capacity as Trustee of The 2000 Trust for the Grandchildren of Carlos A. Arredondo and Mari V. Arredondo, General Partner of Arredondo Properties Limited Partnership, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO.: 3:02 CV 02200 (CFD) |
| CAESAR A. ARREDONDO, individually and in his capacity as Trustee of The 2000 Trust for the Grandchildren of Caesar A. Arredondo and Carolyn Abad Arredondo; THE 2000 TRUST FOR THE GRANDCHILDREN OF CAESAR A. ARREDONDO AND CAROLYN ABAD ARREDONDO, in its capacity as General Partner of Arredondo Properties Limited Partnership; and ARREDONDO & CO., LLC, | |
| Defendants. | OCTOBER 22, 2004 |

## DEFENDANT CAESAR A. ARREDONDO'S SECOND SUPPLEMENTAL RESPONSES TO PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, the Defendant

Caesar A. Arredondo ("Defendant") hereby supplements his response to the plaintiff's

Second Request for Production of Documents and Things.

## REQUESTS FOR PRODUCTION

10.    All contracts between any of the WESTY Stores and Arredondo & Co., LLC from 1991 to the present.

**RESPONSE:** Pursuant to Caesar A. Arredondo's previously asserted objections and responses, please see attached documents bearing identification numbers A&Co 04797 – A&Co 04811.

11.    All contracts between any of the WESTY Stores and Arredondo Properties Limited Partnership from 1991 to the present.

**RESPONSE:** Pursuant to Caesar A. Arredondo's previously asserted objections and responses, please see attached documents bearing identification numbers A&Co 04797 – A&Co 04811.

16.    All documents that refer, reflect or relate in any way to the WESTY store located in Port Chester, New York that were created prior to April 1, 1991.

**RESPONSE:** Pursuant to Caesar A. Arredondo's previously asserted objections and responses, and the correspondence of counsel for the parties, please see attached documents bearing identification numbers A&Co 04812 – A&Co 28205; A&Co 28538 – A&Co 28703.

17.    All documents that refer, reflect or relate to the Milford project referred to by Defendants in their Reply Brief in support of their Motion for Summary Judgment, filed with the Court on July 18, 2003.

**RESPONSE:** Pursuant to Caesar A. Arredondo's previously asserted objections and responses, please see attached documents bearing identification numbers A&Co 28206 – A&Co 28537.

DEFENDANT,
**CAESAR A. ARREDONDO**

By _____

    Craig A. Raabe (ct 04116)
    E-mail: craabe@rc.com
    Edward J. Heath (ct20992)
    E-mail: eheath@rc.com
    Robinson & Cole LLP
    280 Trumbull Street
    Hartford, CT 06103
    Tel.: (860) 275-8200
    Fax: (860) 275-8299

## **CERTIFICATION**

This is to certify that a copy of the foregoing was sent via first-class mail, postage

prepaid on this 22nd day of October, 2004, to:

Robert P. Dolian, Esq.
Cummings & Lockwood, LLC
107 Elm Street
Stamford, Connecticut 06902

Martin J. Elgison, Esq.
David J. Stewart, Esq.
Dana Marty Haas, Esq.
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

David Kelly, Esq.
Finnegan Henderson
1300 I Street, NW
Washington, DC 20005-3315

_____

Edward J. Heath

Exhibit B

# ROBINSON & COLE LLP

EDWARD J. HEATH

280 Trumbull Street
Hartford, CT 06103-3597
Main (860) 275-8200
Fax (860) 275-8299
eheath@rc.com
Direct (860) 275-8297

December 21, 2004

**VIA FEDERAL EXPRESS**

David J. Stewart, Esq.
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

Re:   **Arredondo v. Arredondo**

Dear David:

Enclosed please find the Defendants' Summary Judgment Reply, which was filed today. The Reply Affidavit and its exhibits are also enclosed.

Certain of the Reply exhibits were not responsive to the plaintiff's discovery requests and thus were not previously produced in discovery. These documents were designated as exhibits to address the plaintiff's contention that he and Caesar were not personally at risk in connection with the Westy business.

A few other exhibits are responsive to the plaintiff's discovery but were not previously produced because the Defendants were unaware of the existence of these documents until preparing the Reply (except as to the two memoranda relating to Milford, which I incorrectly believed had been produced in response to the plaintiff's Second Production Request). Finally, in the course of preparing the Reply, the Defendants located a small number of additional documents that are responsive to the plaintiff's discovery requests and not subject to any objections. As a result, supplemental discovery responses to the plaintiffs First and Second Production Requests directed to Arredondo & Co., LLC and Caesar A. Arredondo are enclosed with this letter.

Please contact me with any questions.

Very truly yours,

Edward J. Heath

Enclosures
cc:    Caesar Arredondo
       David M. Kelly, Esq.
       Craig A. Raabe, Esq.

*Law Offices*

BOSTON

HARTFORD

NEW LONDON

STAMFORD

GREENWICH

NEW YORK

SARASOTA

*www.rc.com*

Exhibit C



Exhibit D

Westlaw.

1990 WL 164859                                                    Page 1
1990 WL 164859 (S.D.N.Y.)
**(Cite as: 1990 WL 164859 (S.D.N.Y.))**

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.


United States District Court, S.D. New York.

SOFTEL, INC., Plaintiff,
v.
DRAGON MEDICAL AND SCIENTIFIC
COMMUNICATIONS, INC., Dragon Group Ltd.,
a/k/a
Dragon Medical and Scientific Communications Ltd.,
John R. Darsee, H. Eugene
Hodge, Nina Romanoff, Pfizer, Inc. and Pfizer
Pharmaceuticals, Inc.,
Defendants.

**No. 87 CIV. 0167 (JMC).**

Oct. 24, 1990.


*MEMORANDUM AND ORDER*

CANNELLA, District Judge,

**\*1** Plaintiff's motion to set aside certain rulings made by Magistrate Nina Gershon is denied. 28 U.S.C. § 636(b)(1)(A) (1988).

*BACKGROUND*

Plaintiff Softel, Inc. ["Softel"] is a computer software development company. Defendant Dragon Medical and Scientific Communications ["Dragon"] is a medical marketing company. Defendants Dragon, John R. Darsee, H. Eugene Hodge and Nina Romanoff [collectively the "Dragon defendants"] are in the business of creating computer-based interactive programs for educational use in the medical field. On January 9, 1987, Softel commenced the instant action, alleging that the Dragon defendants had infringed a copyrighted computer program which Softel uses to store, retrieve and display graphic images drawn with its computer drawing software.

In early 1987, the case was referred to Magistrate Nina Gershon to supervise discovery. On February 18, 1987, Magistrate Gershon ordered that discovery proceed on an expedited basis. Since plaintiff's complaint did not specify which computer code routines were allegedly similar, the primary function of discovery was to identify the technical issues in dispute. To achieve this goal, Magistrate Gershon directed Softel's expert to serve on the Dragon defendants his report particularizing the asserted similarities, and after receipt of the report the Dragon defendants were directed to have their expert respond to the contentions made by Softel's expert. Depositions of fact witnesses were held in abeyance pending the exchange of the experts' reports. Both the parties and the Magistrate believed that organizing discovery around the exchange of the experts' reports was the most effective method to narrow the issues in dispute.

In furtherance of the Magistrate's order, in March 1987, Softel served on the Dragon defendants a report by its expert, Aaron Grosky. In June 1987, the Dragon defendants served a report by its expert, John Cain, responding to the points raised by Grosky. Following the first exchange of the experts' reports, the Dragon defendants produced additional computer programs which Softel claimed copied the "structure and logic" of Softel's work. Softel's allegation necessitated another exchange of experts reports addressing the alleged similarity in the additional programs. At Magistrate Gershon's direction, Softel's expert, Grosky, delivered his second report to the Dragon defendants in May 1989. In July 1989, Cain served his second report, responding to the claims in Grosky's report.

In early December 1989, discovery seemed to be drawing smoothly to a close. The discovery cutoff date was firmly set at January 30, 1990, after having been extended several times. The parties' experts' reports had been prepared and exchanged in a manner that delineated the disputed issues. Depositions of key fact witnesses were proceeding or were to commence shortly. Magistrate Gershon had scheduled a pretrial conference for December 6, 1989, and directed the parties to serve a pretrial order by February 21, 1990.

**\*2** The December 6 conference did not proceed as expected. At the conference, Softel advised the Magistrate that Grosky was no longer Softel's expert and that Softel had instead chosen a new expert to testify on its behalf at trial. After discussing the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1990 WL 164859
1990 WL 164859 (S.D.N.Y.)
(Cite as: 1990 WL 164859 (S.D.N.Y.))
Page 2

matter extensively with counsel, Magistrate Gershon granted Softel leave to serve a report by its new expert, Professor DeFanti. However, in order to allow the Dragon defendants' time to study the new report and to prevent any further delay in discovery, the Magistrate directed Softel to serve DeFanti's report by December 22. The depositions of witnesses whose testimony might be affected by the new report were adjourned and scheduled to recommence on January 15, 1990. The discovery cutoff date of January 30, 1990 remained in effect.

Although Magistrate Gershon granted Softel's request, Softel's counsel was dissatisfied with the Magistrate's ruling that it serve DeFanti's report by December 22. Plaintiff's counsel requested an indefinite adjournment, based on the fact that counsel no longer possessed the magnetic diskettes containing the Dragon defendants' confidential computer programs. Counsel had given the diskettes to Grosky to prepare his report, and he now refused to return them to Softel because of a fee dispute with Softel's counsel. Softel's counsel also advised the Magistrate that she was pursuing a replevin action against Grosky to recover the materials. Defendants' counsel then offered to duplicate the computer diskettes that had previously been produced if Softel agreed to pay for the duplication. Defendants' counsel, however, stated that he could not represent that each diskette that had previously been produced to Softel's counsel could be quickly located and duplicated. The offer was accepted by Softel's counsel and approved by the Magistrate. One hundred seventy-five diskettes were made available to Softel on December 11, 1989, and duplication of the remaining five diskettes was completed on December 18.

On December 21, 1989, one day prior to the deadline for serving DeFanti's report, Softel's counsel requested an extension of time for complying with Magistrate Gershon's order. Softel's counsel explained that DeFanti needed additional time to prepare his report. In the course of making the request, Softel's counsel revealed for the first time that the fee dispute with Grosky had arisen in August 1989.

On January 8, 1990, Magistrate Gershon denied Softel's application for additional time to file DeFanti's report [the "January 8 written order"]. Magistrate Gershon refused to grant the requested extension, finding that Softel had failed to offer a justifiable explanation for its inability to comply with the December 22 deadline. The Magistrate rejected

Softel's argument that DeFanti had not been given adequate time to prepare his report, since it was Softel's responsibility to provide DeFanti in a timely manner with the necessary materials to prepare his report. Furthermore, the Magistrate observed that Softel's counsel was unwarranted in seeking an extension based on the Dragon defendants' alleged failure to completely produce the diskettes to Softel a second time, when defendants undertook such production solely as a convenience to Softel and, moreover, with the understanding that such production may be incomplete.

*3 On January 12, 1990, Softel deposed Grosky pursuant to a subpoena *duces tecum* to compel Grosky to relinquish the computer materials. Grosky refused to do so because of a lien that he asserted in connection with a fee dispute with Softel. At a conference before Magistrate Gershon on January 12 to resolve the dispute, the Magistrate accepted Grosky's offer to sign a confidentiality agreement regarding the use of the diskettes and to make them available to Softel for purposes other than duplication. In addition, Magistrate Gershon directed Grosky to make the diskettes available to the court at time of trial, regardless of whether the fee dispute had been resolved.

Also at the conference, the Magistrate orally clarified the earlier January 8 written order, denying Softel an extension of time to serve DeFanti's report. Magistrate Gershon stated that in furtherance of Softel's failure to comply with the December 22 deadline, Softel was precluded from offering expert testimony at trial of any witness other than Grosky.

Softel now objects pursuant to Rule 72(a) of the Federal Rules of Civil Procedure to (1) Magistrate Gershon's written order of January 8, 1990, denying Softel's request for additional time to serve DeFanti's report and (2) Magistrate Gershon's oral ruling of January 12, 1990, precluding DeFanti from testifying at trial as Softel's expert.

*DISCUSSION*

I. *Standard of Review*

Pursuant to 28 U.S.C. § 636(b), magistrates are empowered to hear and determine pretrial matters pending before the court, except for certain specified dispositive motions. *See* 28 U.S.C. § 636(b) (1988). While magistrates may hear dispositive motions, they may only make proposed findings of fact and recommendations for resolution of the matter. *See id.* § 636(b)(1)(B). Objections to the magistrate's

1990 WL 164859
1990 WL 164859 (S.D.N.Y.)
(Cite as: 1990 WL 164859 (S.D.N.Y.))

Page 3

findings or recommendations are reviewed by the district court under a *de novo* standard of review. *See id.;* Fed.R.Civ.P. 72(b). However, a magistrate may issue orders as to non-dispositive pretrial matters. The district court reviews such order under a "clearly erroneous or contrary to law" standard of review. *See* 28 U.S.C. § 636(b)(1)(A) (1988); Fed.R.Civ.P. 72(a).

Pretrial matters regarding discovery are generally considered "non-dispositive," *see* Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir.1990), and thus "magistrates have general authority to order discovery sanctions." Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1462 (10th Cir.1988). Accordingly, district courts typically review such orders under the "clearly erroneous or contrary to law" standard of review. *See, e.g.,* Aries Ventures, Ltd. v. Axa Finance S.A., 696 F.Supp. 965, 966 (S.D.N.Y.1988); Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp., 95 F.R.D. 398, 399 (S.D.N.Y.1982). The Supreme Court explained that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 369 (1948). Pursuant to this highly deferential standard, a magistrate's order resolving discovery disputes and imposing sanctions for noncompliance is afforded broad discretion and will be overruled only if the discretion is abused.

## II. *The January 8 Written Order*

*4 It is well settled among the circuits that a court's refusal to extend a discovery deadline to allow a party's untimely designation of an expert witness is not an abuse of discretion where a review of the factual record indicates that the party requesting the extension unjustifiably failed to comply with the original deadline. *See, e.g.,* Geiserman v. MacDonald, 893 F.2d 787, 792 (5th Cir.1990); Sexton v. Gulf Oil Corp., 809 F.2d 167, 170 (1st Cir.1987); Sturgeon v. Airborne Freight Corp., 778 F.2d 1154, 1159 (5th Cir.1985); Port Terminal & Warehousing v. John S. James Co., 695 F.2d 1328, 1336 (11th Cir.1983). Similarly, a court's refusal to grant a deposition request of a known expert witness after the completion of discovery is not an abuse of discretion where the party fails to given an adequate explanation for its failure to timely schedule the deposition. *See* Sitts v. United States, 811 F.2d 736, 738 (2d Cir.1987).

Discovery delays are, unfortunately, an endemic feature of today's trial practice. "They increase the cost of litigation to the detriment of the parties enmeshed in it ... [and] they are one factor causing disrespect for lawyers and the judicial process." *Geiserman,* 893 F.2d at 779. Thus, compliance with the court's discovery orders is essential to maintain the integrity of the judicial process. *See id.* at 792; Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 73 (2d Cir.1988). To encourage compliance and achieve the just and efficient administration of justice, discovery deadlines must be strictly enforced. *See Port Terminal & Warehousing,* 695 F.2d at 1335.

The early exchange of the parties experts' reports, with the specific direction that the Dragon defendants' expert address the points raised by plaintiff's expert, played a central role in the parties' pretrial discovery. The instant litigation has proceeded for more than two and one-half years based on the premise that Grosky was Softel's expert. Both the Magistrate, in devising the discovery schedule, and the Dragon defendants, in their trial preparations, have relied on Softel's identification of Grosky as its trial expert.

Viewed against this background, it is apparent that Magistrate Gershon acted reasonably on December 6 in directing Softel to serve DeFanti's report by December 22. Furthermore, the Magistrate did not abuse her discretion in refusing to grant Softel an extension of time to comply with the December 6 order, since Softel failed to provide a credible reason to justify an extension of the December 22 deadline. Softel's arguments in defense of its noncompliance are not persuasive in view of the fact that the Magistrate granted Softel's request to substitute DeFanti as its expert with the reasonable condition that Softel serve its report by December 22 to prevent further delay in discovery and prejudice to defendants. Softel must bear sole responsibility for its inability to meet the Magistrate's reasonable deadlines. Softel is not justified in claiming that Magistrate Gershon did not provide adequate time for DeFanti to prepare his report, as Softel was entirely in control of the procedure it utilized to provide Grosky with the diskettes produced by the Dragon defendants. [FN1] Nor is Softel warranted in complaining that the Dragon defendants failed to completely produce all diskettes since defendants had warned Softel that such production might be incomplete and, in any event, were not under any obligation to produce the diskettes to Softel for the second time.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1990 WL 164859
1990 WL 164859 (S.D.N.Y.)
(Cite as: 1990 WL 164859 (S.D.N.Y.))

Page 4

**\*5** The Court further notes that this is not a situation where Softel unexpectedly discovered the existence of an important witness. To the contrary, Softel may have been considering obtaining a new expert for several months. In Softel's letter to the Magistrate requesting an extension, Softel states that Grosky refused to return the materials in August 1989. In addition, Softel's replevin action against Grosky was commenced on October 2, 1989 in the Supreme Court of New York. These facts indicate that Softel may have been contemplating obtaining a new expert well before the December 6 pretrial conference when Softel advised the Magistrate of its desire to obtain a new expert witness.

In sum, the Court finds Magistrate Gershon's refusal to grant Softel an extension of time to serve DeFanti's report was not clearly erroneous or contrary to law. Accordingly, Softel's motion to set aside Magistrate Gershon's written order of January 8, 1990 is denied.

### III. Oral Ruling of January 12, 1990

Softel also objects to Magistrate Gershon's oral ruling of January 12, 1990, in which the Magistrate clarified the earlier January 8 written order denying Softel an extension of time to serve DeFanti's report. At the January 12 conference, Magistrate Gershon advised the parties that in furtherance of the January 8 written order, DeFanti was precluded from testifying at trial on Softel's behalf. Although the Magistrate did not characterize her ruling as a sanction, her order precluding DeFanti from testifying at trial was in effect a sanction for Softel's failure to comply with the December 6 discovery order. Thus, the central issue is whether the Magistrate abused her discretion in imposing the preclusion sanction.

Where a party fails to obey a scheduling order, Rule 16(f) of the Federal Rules of Civil Procedure authorizes the court on motion or sua sponte to impose "such orders ... as are just and among others any of the orders provided in Rule 37(b)(2)(B)(C)(D)." Fed.R.Civ.P. 16(f). Pursuant to Rule 37(b)(2)(B) the court may make an order "prohibiting ... [the disobedient party] from introducing designated matters in evidence." Fed.R.Civ.P. 37(b)(2)(B).

In determining which sanction is appropriate the court should consider the following three purposes which sanctions are designed to serve:

First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

_Update Art, Inc.,_ 843 F.2d at 71. Another relevant factor in choosing the proper sanction is the extent to which the other party's preparations for trial have been prejudiced. _See_ Black Panther Party v. Smith, 661 F.2d 1243, 1255 (D.C.Cir.1981), _vacated and remanded on other grounds,_ 458 U.S. 1118 (1982). The only limitation on the court's power to levy sanctions are the standards contained in Rule 37(b)(2), which require that the sanction is "just" and specifically relate to the particular claim at issue in discovery. _See_ Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694 (1982). Finally, it is well established that in achieving the above stated objectives, the court necessarily possesses broad inherent powers to levy sanctions in response to abusive litigation practices. _See, e.g.,_ National Hockey League v. Metropolitan Hockey Club, Inc. 427 U.S. 639, 642 (1976); Penthouse Int'l, Ltd. v. Playboy Enters., 663 F.2d 371, 386 (2d Cir.1981).

**\*6** There is no doubt that exclusion of evidence is a harsh sanction and should be imposed only in rare situations. Nevertheless, failure to comply with the court's scheduling order or local rules is clearly grounds for precluding certain expert testimony. _See_ _Geiserman,_ 873 F.2d at 792; Hagans v. Henry Weber Aircraft Distribs., Inc., 852 F.2d 60, 64-66 (3d Cir.1988); _Sexton,_ 809 F.2d at 170; Hull v. Eaton Corp., 825 F.2d 448, 452 (D.C.Cir.1987) (per curiam); DeMarines v. KLM Royal Dutch Airlines, 580 F.2d 1193, 1202 (3d Cir.1978).

The Second Circuit reviews a magistrate's preclusion sanction imposed for failure to comply with the magistrate's discovery order under the abuse of discretion standard. _See Update Art, Inc.,_ 843 F.2d at 72. In determining whether a preclusion sanction constitutes an abuse of discretion the court should consider the following four factors: (1) the explanation, if any, for failure to comply with the discovery order, (2) the importance of the testimony of the witness, (3) the resulting prejudice to the opposing party in having to prepare to meet the new testimony, and (4) the possibility of a continuance. _See_ Outley v. City of New York, 837 F.2d 587, 590 (2d Cir.1988); Bradley v. United States, 866 F.2d 120, 125 (5th Cir.1984).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1990 WL 164859
1990 WL 164859 (S.D.N.Y.)
(Cite as: 1990 WL 164859 (S.D.N.Y.))

The first relevant factor involves plaintiff's explanation for its failure to comply with the Magistrate's discovery order. The Court has previously examined Softel's reasons for its failure to comply with the December 22 deadline and found them to be unpersuasive. The Magistrate's refusal to extend the deadline was not clearly erroneous, as Softel failed to present any credible excuse for its failure to comply with the December 22 order. In addition, the record indicates that Softel may have been contemplating obtaining a new expert several months before Softel chose to advise Magistrate Gershon of its request.

The testimony of Defanti is undoubtedly important to Softel's claims of copyright infringement regarding certain computer code routines. In view of the highly technical nature of the litigation, both parties intend to rely extensively on expert testimony to establish their contentions. However, the importance of the proposed testimony without more is insufficient to prevent enforcement of a court's scheduling order. _See Geiserman_, 893 F.2d at 792. Furthermore, the importance of DeFanti's testimony pales in comparison to situations where the testimony of important _fact_ witnesses are excluded. _See Outley_, 837 F.2d at 590; _Port Terminal & Warehousing_, 695 F.2d at 1336. For example, in _Outley_ the court noted that the testimony of the excluded witnesses would provide the only independent evidence of the disputed incident and would also serve to bolster plaintiff's credibility. _See 837 F.2d at 591._ Since the effect of the preclusion sanction was particularly harsh, the _Outley_ court demanded a greater showing of misconduct by plaintiff or prejudice suffered by defendant than ordinarily would be required. _See id._

*7 The third factor, the need for time to prepare the testimony, requires the court to consider the prejudice suffered by the opposing party. _See id._ The Dragon defendants justifiably argue that for two and one-half years they have prepared their case based on Grosky's particularization of Softel's claims. By requiring Softel to promptly serve DeFanti's report, Magistrate Gershon provided defendants with sufficient time to consult with their own expert, thereby minimizing any potential prejudice to defendants. The Court finds that allowing DeFanti to testify at trial would not only unfairly inconvenience defendants, but would also greatly disrupt defendants' trial preparations. Defendants reasonably relied on the January 30, 1990 discovery deadline and they should not be made to bear the burden of Softel's failure to comply with the date set for serving DeFanti's report.

The final factor to consider is the possibility of a continuance, which involves an analysis of the administrative difficulty placed on the court. _See id._ at 590. Softel correctly points out that the instant situation is distinguishable from other cases where witnesses were identified on the eve of trial. _See, e.g., Hagans_, 852 F.2d at 64. However, while a trial date had not yet been set, this fact does not diminish the burdens placed on the court where the nature of the litigation requires the early designation of experts to enable discovery to proceed in a timely and efficient manner. Allowing DeFanti as an expert at this late stage would require retaking depositions previously based on Grosky's expert report and would necessitate setting new dates for completion of discovery and for filing a pretrial order.

Thus, the Court finds that a consideration of the four factors establishes that Magistrate Gershon did not abuse her discretion in precluding Softel from offering DeFanti's testimony at trial. The Court's decision is in accord with the policy in this Circuit recognizing the importance of a party's compliance with discovery orders. In affirming a magistrate's decision precluding the introduction of evidence due to a party's noncompliance with a discovery order, the Second Circuit has emphasized that "[t]he essential question presented by this appeal is whether this United States Court intends strictly to enforce sanctions provided for noncompliance with discovery orders. The opinion that follows is a stern warning that we do." _Update Art, Inc._, 843 F.2d at 68.

Lastly, the Court addresses Softel's contention that the preclusion sanction is tantamount to dismissal. The Supreme Court has recognized "constitutional limitations upon the power of the courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 209 (1958). In certain instances, preclusion of testimony may be tantamount to dismissal. _See_ United States v. Sumitomo Marine & Fire Ins. Co., 617 F.2d 1365, 1369 (9th Cir.1980); Cine Forty-Second St. Theatre Corp. v. Allied Artists, 602 F.2d 1062, 1067 (2d Cir.1979). In such cases, the court may order dismissal or preclusion tantamount to dismissal, provided failure to comply with the pretrial discovery order is due to "willfulness, bad faith or ... fault" by the party. _Societe Internationale_, 357 U.S. at 212. In the Second Circuit, "fault" includes total

1990 WL 164859
1990 WL 164859 (S.D.N.Y.)
(Cite as: 1990 WL 164859 (S.D.N.Y.))

dereliction of professional responsibility amounting to gross negligence. *See Cine Forty-Second St. Theatre Corp., 602 F.2d at 1067.* In addition, the court may not preclude evidence that is tantamount to dismissal if the disobedient party's failure to comply is due to circumstances beyond his control. *See* Gordon v. State of Idaho, 778 F.2d 1397, 1399 (9th Cir.1985); *Sumitomo Marine & Fire Ins. Co.,* 617 F.2d at 1369. However, if a party will still have his day in court, then the court is not required to consider whether the conduct of the party was willful or in bad faith. *See Societe Internationale,* 357 U.S. at 208; *Hagans,* 852 F.2d at 66.

*8 In copyright infringement cases, expert testimony is admissible to aid the trier of fact in determining whether there is "sufficient similarity between the two works in question to conclude that the alleged infringer used the copyrighted work in making his own." Whelan Assocs. v. Jaslow Dental Lab., 797 F.2d 1222, 1232 (3d Cir.1986). Although expert testimony in a copyright infringement case is clearly advantageous with regard to the substantial similarity inquiry, the court need not determine whether expert testimony is required due to the complexity of the issues presented since Softel has not been precluded from presenting testimony by its original expert, Grosky. Consequently, it was not necessary for the Magistrate to find that Softel acted in willful disregard of the discovery order before imposing the preclusion sanction.

Nevertheless, Softel argues that Grosky is no longer available to testify because of his fee dispute with Softel. Although Softel undoubtedly prefers not to utilize Grosky because of the fee dispute, it is clear that Grosky is available to testify on Softel's behalf. Grosky's deposition testimony indicates that his inability to testify on Softel's behalf is due to Softel's reluctance to employ Grosky as its expert, and not from any refusal by Grosky to testify. *See* Deposition of Aaron Grosky, at 230-32, 87 Civ. 0167 (JMC) (S.D.N.Y. Jan. 22, 1990). Moreover, even if Grosky refused to testify at trial, Softel could subpoena Grosky to testify pursuant to Rule 45(e)(1) of the Federal Rules of Civil Procedure.

While Softel has the privilege of choosing the expert of its choice, the imposition of discovery deadlines requires that Softel exercise its preference in a manner that affords the Dragon defendants an adequate opportunity to conduct their discovery and allow the court to manage pretrial discovery in a timely and orderly fashion. When a party is deprived of the expert of its choice due to its failure

to comply with a discovery order, such a deprivation is not tantamount to dismissal of its case, particularly where another expert is available to testify. *See* Wilson v. Johns-Manville Sales Corp., 810 F.2d 1358, 1363 (5th Cir.1987).

Thus, Softel's motion to set aside Magistrate Gershon's oral ruling of January 12, 1990 precluding Softel from presenting DeFanti's testimony at trial is without merit. The Court finds that Magistrate Gershon did not abuse her discretion in imposing the preclusion sanction due to plaintiff's unjustified failure to comply with the December 6, 1990 discovery order, nor does the Court find anything in the Magistrate's decision "clearly erroneous or contrary to law."

*CONCLUSION*

Plaintiff's motion to set aside Magistrate Gershon's written order of January 8, 1990 and oral ruling of January 12, 1990 is denied.

SO ORDERED.

> FN1. Softel's claim that it provided its only copy of the diskettes to Grosky because of the confidentiality order is unpersuasive, since the confidentiality order does not prohibit duplication of confidential materials for the purpose of disclosure to retained expert witnesses.

1990 WL 164859 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**
• 1:87CV00167 (Docket)
(Jan. 09, 1987)

END OF DOCUMENT

Westlaw.

Not Reported in F.Supp.2d
1998 WL 841641 (D.Conn.)
(Cite as: 1998 WL 841641 (D.Conn.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Richard MESSIER, et al.
v.
SOUTHBURY TRAINING SCHOOL, et al.

**No. 3:94-CV-1706 (EBB).**

Dec. 2, 1998.

RULING ON MOTION TO COMPEL RETURN OF
DOCUMENTS

BURNS, Senior J.

*1 This ruling presents the question of what remedy, if any, should be ordered based on plaintiffs' motion to compel the return of documents, when the defendants [FN1] returned the requested documents two weeks after the motion was filed. On July 31, 1998, plaintiffs moved pursuant to Federal Rule of Civil Procedure 37(a) for an order requiring the defendants to return documents provided to them by the plaintiffs. In the same motion, plaintiffs sought additional relief and sanctions to remedy the prejudice allegedly caused by the delay in the return of the documents. Approximately two weeks after plaintiffs filed this motion, the defendants returned the documents sought. The only remaining matter concerns whether the Court should grant the additional relief and sanctions requested by the plaintiffs. For the following reasons, plaintiffs' motion to compel [Doc. No. 413] is granted in part and denied in part.

> FN1. The defendants are the Commissioner of the Department of Mental Retardation, the Commissioner of the Department of Social Services, the Commissioner of the Department of Public Health, Southbury Training School ("STS"), and the Director of STS (collectively "defendants").

BACKGROUND

The Court summarizes only those facts necessary to reach a conclusion on this motion. On December 8, 1997, the defendants deposed Robert B. Kugel, M.D., plaintiffs' expert witness. At that time, defense counsel Thomas B. York, Esq. asked plaintiffs' counsel David C. Shaw, Esq. to provide the documents that Dr. Kugel relied upon to reach his opinion that the level of medical and health care at STS remains significantly below average. These documents include notes from Dr. Kugel's visits to STS, notes from his review of STS records, notes in preparation of his written report, and copies of internal documents and patient charts from STS. Plaintiffs gave the defendants these documents for the purpose of making copies. (Pls.' Mot. Compel ¶ 1.)

On February 20, 1998, defense experts Mark Hauser, M.D. and Theodore Kastner, M.D. issued two reports critiquing Dr. Kugel's conclusions. Plaintiffs' counsel showed Dr. Kugel these two reports to help prepare for the depositions of Dr. Hauser and Dr. Kastner scheduled on March 20, 1998 and April 2, 1998 respectively. [FN2] Dr. Kugel responded that he needed to review his notes to refresh his recollection regarding the original basis for his opinions. (Pls.' Reply Mem. at 5.) Attorney Shaw wrote Attorney York demanding the return of Dr. Kugel's notes and documents in a letter dated March 19, 1998 and sent by facsimile on March 23, 1998. (Letter from David C. Shaw, Esq. to Thomas B. York, Esq. of 3/23/98.) Defense counsel responded on March 24, 1998 by returning some documents, (Letter from Christina L. Smith to David C. Shaw, Esq. of 3/24/98), but they were not the specific documents that plaintiffs desired. (Defs' Mem. Opp. at 1-3; Pls.' Reply Mem. 1-3.)

> FN2. The parties dispute whether Dr. Hauser and Dr. Kastner reviewed Dr. Kugel's notes and documents to prepare for their depositions by the plaintiffs. (Pls.' Mem. Supp. Mot. Compel at 2; Defs.' Mem. Opp. at 5-6.)

It appears that two sets of documents were utilized at Dr. Kugel's deposition. First, nine deposition exhibits were created which amounted to approximately 100 pages. Second, Dr. Kugel had examined 10,000 to 20,000 documents which formed

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1998 WL 841641 (D.Conn.)
(Cite as: 1998 WL 841641 (D.Conn.))

Page 2

the basis for his written report and deposition testimony. Plaintiffs had turned over each of these sets of documents to the defendants for copying after Dr. Kugel's deposition on December 8, 1997. Defendants returned the nine deposition exhibits, but the second set of documents were not turned over. (Pls.' Reply Mem. 1-3.)

*2 On April 1, 1998, Attorney Shaw faxed Attorney York a letter reiterating plaintiffs' request for the Kugel documents and specifically mentioning their difficulty in preparing for Dr. Kastner's upcoming deposition on April 2, 1998. (Letter from David C. Shaw, Esq. to Thomas B. York, Esq. of 4/1/98.) On this same day, Attorney York responded with a facsimile attaching the earlier letters, apparently believing that the documents he sent and plaintiffs' April 1 letter had crossed in the mail. (Defs.' Mem. Opp. at 3-4.) From this point forward, both parties vigorously dispute what transpired.

Plaintiffs' counsel contends that he made numerous oral requests of defense counsel York between April 1998 and July 1998. (Pls.' Mot. Compel at 1; Pls.' Mem. Supp. Mot. Compel at 2.) On the other hand, Attorney York argues that Attorney Shaw mentioned the Kugel documents only once in a telephone call. (Defs.' Mem. Opp. at 4.) It suffices to say that the parties could not resolve the problem without court intervention. On July 31, 1998, plaintiffs made a motion to compel the defendants to return the documents pursuant to Federal Rule of Civil Procedure 37(a). Plaintiffs also requested the following additional remedies: (1) an order permitting Dr. Kugel to return to STS to collect data to reconstruct the basis for his opinions; (2) an order precluding Dr. Hauser and Dr. Kastner from offering rebuttal testimony at trial; and (3) an award of attorney's fees and costs associated with this motion. (Pls.' Mot. Compel at 4.) Approximately two weeks later, the defendants returned the specific documents sought. (Pls.' Reply Mem. at 1; Defs.' Mem. Opp. at 5.)

On September 18, 1998, plaintiffs filed their reply brief which modified the relief sought in light of the return of the Kugel documents. Plaintiffs now seek an order permitting them to depose Dr. Hauser and Dr. Kastner again at defendants' expense regarding their criticisms of Dr. Kugel's report and deposition testimony. (Pls.' Reply Mem. at 6.) In addition, they continue their request for an award of reasonable attorney's fees and costs associated with this motion. (*Id.*) Plaintiffs claim that the delay in returning Dr. Kugel's notes and documents prejudiced them in

effectively addressing the opinions of Dr. Hauser and Dr. Kastner at their respective depositions. (Pls.' Mot. Compel ¶¶ 8-12.) Plaintiffs deposed Dr. Hauser on March 20, 1998 and Dr. Kastner on April 2, 1998. (Pls.' Reply Mem. at 5.) They complain that Dr. Kugel could not assist them in forming questions for the defense experts without his notes, and that they could not confront the experts with documents collected from STS by Dr. Kugel because the defendants possessed them at this time. As matters currently stand, discovery has been concluded and plaintiffs cannot further depose Dr. Hauser and Dr. Kastner again absent a court order to the contrary.

DISCUSSION

I.  *Fed.R.Civ.P. 30(f)(1):* Procedures to Copy Documents

*3 Federal Rule of Civil Procedure 30(f)(1) provides that "[d]ocuments and things produced for inspection during the examination of a witness, shall, upon the request of a party, be marked for identification and annexed to the deposition and may be inspected and copied by any party." Rule 30(f)(1) also describes alternative procedures for the making of copies in the event that the party producing the documents wishes to retain them. Pursuant to this rule, plaintiffs gave the defendants Dr. Kugel's notes and copies of documents taken from STS for their inspection and to make copies. Rule 30(f)(1) does not specify the procedures governing the return of documents after copying has been completed by a party. However, the rule clearly contemplates that such documents will be returned in a timely fashion so as not to facilitate prejudice to the opposing party. The defendants do not dispute that there was a significant delay in returning the Kugel documents. (Defs.' Mem. Opp. at 9.)

II.  *Fed.R.Civ.P. 37(a):* Motions to Compel and Sanctions

Federal Rule of Civil Procedure 37 provides district courts with the authority to oversee the discovery process by issuing orders compelling discovery and sanctions against noncomplying parties. Rule 37(a)(2)(B) allows parties to compel discovery under Rules 30, 31, 33, and 34. While Rule 37(a)(2)(B) permits litigants to compel the inspection of documents in connection with a deposition as provided by Rule 30, it does not mention a corresponding right to compel the return of documents borrowed for copying to their rightful owner. However, the Court finds that Rule 37(a)(2)(B) implicitly requires that all borrowed

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 3
1998 WL 841641 (D.Conn.)
**(Cite as: 1998 WL 841641 (D.Conn.))**

documents must be promptly returned.

A party making a motion to compel discovery under
Rule 37(a) must certify "that the movant has in good
faith conferred or attempted to confer" with the
opposing party "in an effort to secure the information
or material without court action." Fed.R.Civ.P.
37(a)(2)(B). Conclusory statements in an affidavit
asserting that the movant fulfilled the good faith
meet-and-confer requirement does not satisfy Rule
37(a). *See Prescient Partners, L.P. v. Fieldcrest
Cannon, Inc.,* 1998 WL 67672, at *2 (S.D.N.Y.
Feb.18, 1998); *Tri-Star Pictures, Inc. v. Unger,* 171
F.R.D. 94, 99 (S.D.N.Y.1997). Instead, the meet-and-
confer requirement mandates that:

> [Parties must] meet, in person or by telephone, and
> make a genuine effort to resolve the dispute by
> determining ... what the requesting party is actually
> seeking; what the discovering party is reasonably
> capable of producing that is responsive to the
> request; and what specific genuine issues, if any,
> cannot be resolved without judicial intervention.

*Deckon v. Chidebere,* 1994 WL 494885, at *5
(S.D.N.Y. Sept.9, 1994). Movants must detail the
efforts to confer and explain why they proved
fruitless. *Ballou v. University of Kansas Med. Ctr.,*
159 F.R.D. 558, 559-60 (D.Kan.1994). Plaintiffs
have complied with this requirement. As a result, the
Court may order the defendants to allow the plaintiffs
to take the depositions of Dr. Hauser and Dr. Kastner
again if it finds that plaintiffs suffered prejudice by
not having Dr. Kugel's notes and materials.

**\*4** Rule 37(a)(4)(A) also permits district courts to
award attorney's fees and costs associated with a
motion to compel discovery. The rule states the
following:

> If the motion is granted or if the disclosure or
> requested discovery is provided after the motion
> was filed, the court shall, after affording an
> opportunity to be heard, require the party or the
> deponent whose conduct necessitated the motion or
> the party or attorney advising such conduct or both
> of them to pay to the moving party the reasonable
> expenses incurred in making the motion, including
> attorney's fees, unless the court finds that the
> motion was filed without the movant's first making
> a good faith effort to obtain the disclosure or
> discovery without court action, or that the opposing
> party's nondisclosure, response, or objection was
> substantially justified, or that other circumstances
> make an award of expenses unjust.

Fed.R.Civ.P. 37(a)(4)(A). Under this provision, the
Court must order reasonable costs and attorney's fees
unless the movant failed to attempt to solve the

problem in good faith without court action, the
nonmovant's action or inaction was substantially
justified, or other circumstances make an award of
expenses unjust. Fed.R.Civ.P. 37 Advisory Comm.
Notes to 1970 Amendments. The Supreme Court has
clarified that a party's discovery conduct is
"substantially justified" if it constitutes a response to
a "genuine dispute, or if reasonable people could
differ as to the appropriateness of the contested
action." *Pierce v. Underwood,* 487 U.S. 552, 565,
108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citations
omitted).

Disciplinary sanctions under Rule 37 should serve
three functions. First, sanctions should ensure that a
party will not benefit from its own failure to comply
with the discovery rules. *See Update Art, Inc. v.
Modiin Publ'g, Ltd.,* 843 F.2d 67, 71 (2d Cir.1988);
*Cine Forty-Second St. Theatre v. Allied Artists
Pictures Corp.,* 602 F.2d 1062, 1066 (2d Cir.1979).
Second, sanctions constitute specific deterrents and
seek to obtain compliance with either court orders or
the ordinary standards of care appropriate for parties
and their attorneys. *See Update Art,* 843 F.2d at 71;
*Cine Forty-Second St.,* 602 F.2d at 1066; *Burnett v.
Venturi,* 903 F.Supp. 304, 308 (N.D.N.Y.1995).
Third, sanctions should serve as a general deterrent in
the case at hand and in other litigation, provided that
the party against whom they are imposed was in
some sense at fault. *See National Hockey League v.
Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643,
96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam);
*Update Art,* 843 F.2d at 71.

Defendants have attempted to explain their failure to
return the Kugel documents as an unintentional error,
partly caused by the plaintiffs. Clearly, the imposition
of the harshest sanctions under Rule 37(b)-(d), such
as the preclusion of evidence or the dismissal of an
action, requires willful misconduct or bad faith. *See,
Societe Int'l v. Rogers,* 357 U.S. 197, 212, 78 S.Ct.
1087, 2 L.Ed.2d 1255 (1958); *United States v.
Certain Real Property Located at Route 1, Bryant,
Ala.,* 126 F.3d 1314, 1317 (11th Cir.1997); *Update
Art,* 843 F.2d at 71; *cf. Taylor v. Illinois,* 484 U.S.
400, 415-17, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988)
(discussing the preclusion of witness testimony for
willful discovery misconduct in a criminal case).
Considerations of fair play dictate that courts eschew
the harshest sanctions where failure to comply is due
to a mere oversight of counsel amounting to no more
than simple negligence. *See Cine Forty-Second St.,*
602 F.2d at 1068; *Affanato v. Merrill Bros.,* 547 F.2d
138, 141 (1st Cir.1977). Courts must inquire into the
actual difficulties which the violation causes and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1998 WL 841641 (D.Conn.)
(Cite as: 1998 WL 841641 (D.Conn.))

Page 4

must consider less drastic responses when litigants seek severe sanctions. *See Outley v. City of New York,* 837 F.2d 587, 591 (2d Cir.1988).

*\*5* In this case, the Court need not find bad faith or willful misconduct because plaintiffs filed their motion to compel pursuant to Rule 37(a), not Rule 37(b)-(d). Plaintiffs do not seek Rule 37(b)-(d)'s harshest remedies, but rather make a Rule 37(a) motion for leave to depose defendants' experts again and an award of attorney's fees and costs. Rule 37(a) does not require courts to make a finding of bad faith before ordering discovery or awarding attorney's fees as a sanction. *See Merritt v. International Bhd. of Boilermakers,* 649 F.2d 1013, 1019 (5th Cir.1981); *Devaney v. Continental Am. Ins. Co.,* 1154, 1162-63 (11th Cir.1993); Fed.R.Civ.P. 37 Advisory Comm. Notes to 1970 Amendments. As such, it proves unnecessary to determine whether defendants' failure to return the documents was willful or in bad faith. The Court may order the requested relief to remedy any prejudice that plaintiffs may have suffered so long as Rule 37(a)'s requirements have been satisfied.

III. *Additional Relief Requested by Plaintiffs*

A. Depositions of Defense Experts

The Court first denies plaintiffs' request to depose Dr. Hauser again because they likely suffered little prejudice in not having the Kugel documents when they deposed Dr. Hauser on March 20, 1998. Plaintiffs possessed advance notice of this date. However, the facts show that plaintiffs' counsel made his first written demand for the Kugel documents three days *after* the deposition took place. Plaintiffs faxed their letter dated March 19, 1998 on March 23, 1998. (Pls.' Reply Mem. at 3 n. 2; Shaw Aff. ¶ 6.) Furthermore, plaintiffs never requested a continuance of Dr. Hauser's deposition at that time. (Defs.' Mem. Opp. at 6.) Given these circumstances, the Court has little undisputed evidence that plaintiffs were prejudiced in preparing for Dr. Hauser's deposition without the Kugel documents. Therefore, the Court denies plaintiffs' petition to depose Dr. Hauser again at this juncture in the case.

At the same time, the Court grants plaintiffs leave to depose Dr. Kastner again because there exists undisputed written evidence validating their need for the Kugel documents prior to Dr. Kastner's first deposition on April 2, 1998. Plaintiffs' letters faxed on March 23, 1998 and April 1, 1998 strongly indicate the necessity of the Kugel documents. Moreover, plaintiffs' counsel requested the Kugel

documents again at Dr. Kastner's fourth deposition on June 28, 1998. (Kastner Dep. at 256-57.) Without reaching a conclusion regarding whether the defendants' conduct was willful, the Court finds that plaintiffs suffered prejudice in being deprived of the Kugel documents during their depositions of Dr. Kastner. Therefore, the Court grants plaintiffs' request to depose Dr. Kastner again. In this regard, defendants shall allow the plaintiffs to depose Dr. Kastner on a date no later than December 24, 1998. The only matters that plaintiffs may address at this deposition are Dr. Kastner's criticisms of Dr. Kugel's written report and deposition testimony. The deposition shall last no longer than one day.

B. Attorney's Fees and Costs

*\*6* Under Federal Rule of Civil Procedure 37(a)(4)(A), the Court may order reasonable costs and attorney's fees unless the movant failed to attempt to solve the problem in good faith without court action, "the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust." The circumstances underlying this motion render an award of attorney's fees and costs "unjust." First, most of the relevant factual evidence in connection with this motion remains vigorously disputed by the parties. Second, discovery has been closed. Third, plaintiffs were provided with the Kugel documents in August 1998, and thus have had almost four months to review them to prepare for trial in January 1999. Finally, the remedy of leave to depose Dr. Kastner appropriately compensates for any prejudice plaintiffs suffered. As a result, the Court denies plaintiffs' petition for an award of attorney's fees and costs associated with this motion.

CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel [Doc. No. 413] is granted in part and denied in part. The Court's ruling may be summarized as follows: (1) the Court denies plaintiffs' request for attorney's fees and costs associated with this motion; (2) the Court denies plaintiffs' application to depose Dr. Hauser again; and (3) the Court grants plaintiffs' leave to depose Dr. Kastner again. In this regard, defendants shall allow the plaintiffs to depose Dr. Kastner on a date no later than December 24, 1998. The only matters that plaintiffs may address at this deposition are Dr. Kastner's criticisms of Dr. Kugel's written report and deposition testimony. This deposition shall last no longer than one day.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1998 WL 841641 (D.Conn.)
**(Cite as: 1998 WL 841641 (D.Conn.))**

 SO ORDERED.

 1998 WL 841641 (D.Conn.)

    **Motions, Pleadings and Filings (Back to top)**
•        3:94CV01706        (Docket)
(Oct. 06, 1994)

 END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.