IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CARLOS A. ARREDONDO, in his capacity as Trustee of The 2000 Trust for the Grandchildren of Carlos A. Arredondo and Mari V. Arredondo, General Partner of Arredondo Properties Limited Partnership,<br><br>Plaintiff,<br><br>v.<br><br>CAESAR A. ARREDONDO, individually and in his capacity as Trustee of The 2000 Trust for the Grandchildren of Caesar A. Arredondo and Carolyn Abad Arredondo; THE 2000 TRUST FOR THE GRANDCHILDREN OF CAESAR A. ARREDONDO AND CAROLYN ABAD ARREDONDO, in its capacity as General Partner of Arredondo Properties Limited Partnership; and ARREDONDO & CO., LLC,<br><br>Defendants. | CIVIL ACTION FILE<br><br>NO. 3:02 CV 2200 (CFD)<br><br>Filed: December 16, 2005 |

**PLAINTIFF'S MOTION IN LIMINE AND
MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiff moves to preclude Defendants from presenting evidence or arguments concerning the following three topics:

1) Plans to develop a self storage facility in Milford, Connecticut in 1991 and 1992.

2) The events, circumstances, and reasons that caused Carlos Arredondo to sell his shares in Arredondo & Co., LLC ("A&Co.") in December of 1999 and January of 2000.

3) The standing of Carlos Arredondo to bring a declaratory judgment suit regarding the ownership of the disputed marks based upon Plaintiff's alleged failure to

ATL01/12073572v1

comply with the terms and conditions of the Arredondo Properties Limited Partnership ("APLP") Partnership Agreement.

As discussed in detail herein, each of the first two foregoing topics presents significant risks of undue prejudice or waste of the Court's time and resources, and each have no bearing whatsoever on the on any fact of consequence in the determination of these actions. Accordingly, Plaintiff requests that each of these topics be excluded from trial and that pursuant to Fed. R. of Civ. P. 401, 403, and the other authorities cited herein, Defendants be precluded from offering evidence tendin'g to prove these matters or offering arguments on these points.

The Court should preclude the Defendants from introducing any evidence regarding the third topic because the Defendants did not plead this defense in their Answer and Affirmative Defenses to First Amended Complaint filed on August 5, 2003.

Plaintiff also moves to exclude certain documents listed on Defendant's Exhibit List for their failure to meet the criteria set forth by the Federal Rules of Evidence. The following exhibits on Defendant's Exhibit List are objected to: 5, 14, 15, 16, 28, 37, 38, 39, 40, 41, 42, 43, 45, 47, 48, 49, 50, 53, 54, 58, 59, 60, 61, 62, 65, 67, 68, 74, 76, 77, 84, 92, 93, 94, 95, 118, 122, 132, 133, 134, 153, 154, 163, 164, 165, 181, 182, 191, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 220, 221, 223, 224, 231, 232, 234, 235, 236, 244, 255, 280, 308, 312, 327, 334, 350, 352, 365, 366, 367, 371, 389, 391, 398, 410, 418, 420, 421, 422, 423, 425, 428, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 451, 451, 452, 453, 454, 455, 456, 457, and 458. Plaintiff also objects to document Bates Numbered 02928, which was not given an exhibit number by the Defendant. The above objections do not include Plaintiff's objections on grounds of relevance for any of the documents placed on

Defendants' exhibit list. Plaintiff hereby reserves its right to object to any documents on Defendants' exhibit list on grounds of relevance.

## ARGUMENT AND CITATION OF AUTHORITY

Irrelevant evidence is generally inadmissible at trial. Fed. R. Evid. 402. Although the Federal Rules of Evidence do not specifically define what constitutes "irrelevant evidence," the Federal Rules do define "'relevant evidence,'" as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). Evidence is not, however, admissible simply because it is relevant. The Court must balance the probative value of even relevant evidence against the danger of unfair prejudice, confusion of the issues, or wasting time. In instances where those risks substantially outweigh the probative value of the proffered evidence, the evidence should be excluded. Fed. R. Evid. 403.

Each of the topics that Plaintiff seeks to exclude is discussed below:

**A.     Defendants Should Be Precluded From Introducing Evidence Regarding Plans to Develop a Self Storage Facility in Milford, Connecticut in 1991 or 1992.**

Rights in a trademark are created by the use of the mark. A future intent to use a mark does not create any protectable rights in a trademark unless the mark is used commercially or an application is filed with the U.S. Trademark Office based on an intent to use. In this case, neither of these two events occurred with respect to any use of the mark in Milford. Indeed, the first use of the Westy's mark was in connection with the Westy's self-storage center in Port Chester, New York. Based upon previous motions in this case, Plaintiff expects Defendants to try to introduce evidence regarding plans that never came to fruition to build a proposed self storage center in Milford, Connecticut. Evidence regarding the proposed creation of this store, however, contains no probative value to the court and should be excluded.

The reason that the evidence has no probative value is that the Westy's mark was never "used" in connection with any facility in Milton. Trademarks are symbols that serve in the minds of the consuming public to identify the goodwill of a product or service. *See, e.g., Mishawanka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203 (1942) ("[Use of a mark is] to convey through the mark, in the minds of potential customers, the desirability of the commodity upon which it appears. Once this is attained, the trademark owner has something of value."); *Berni v. Intn'l Gourmet Rests. of Am., Inc.*, 838 F.2d 642, 646 (2d Cir. 1988). Trademark rights may be acquired in the United States only through use of a mark in commerce to identify goods or services sold under the mark, not by registration of the mark with the USPTO or any other registration body. *See, e.g., Berni*, 838 F.2d at 646 ("The extent of any trademark right is defined by its actual use in the marketplace"); *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 572 (6th Cir. 2001) ("Federal registration of a trademark or service mark cannot create rights and priority over others who have previously used the mark in commerce . . . "). The owner of a mark is the party that first uses the mark in commerce to identify a product or service. *See, e.g., Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 412 (1916); 15 U.S.C. § 1127.

Thus, any evidence of <u>proposed</u> or <u>contemplated</u> use of the Westy's mark in Milford is completely irrelevant to this case because there is no evidence that shows that the mark was ever actually used in connection with the Milford location before the use by the first store located in Port Chester. As such, any evidence regarding any planning to construct a store in Milford serves no purpose in determining the rights in the mark, and it wastes the Court's time with irrelevant testimony and documents.

**B.   Defendants Should Be Precluded From Introducing Evidence Regarding events, circumstances, and reasons that caused Carlos Arredondo to sell his shares in Arredondo & Co., LLC.**

Plaintiffs do not dispute the fact that Carlos Arredondo sold his interest in Arredondo & Co., LLC to Caesar Arredondo on December 31, 1999. Although the events and circumstances that caused Carlos Arredondo to divest his stake in A&Co. are in dispute, they are not relevant to the Court's determination of ownership of the Westy marks. If the Westy marks were owned by A&Co. at the time of the 1999 sale, Plaintiff does not dispute that it owns no rights in the marks. However, if Arredondo Properties Limited Partnership ("APLP") owned the rights in the mark at the time of the 1999 sale, that sale had no effect on the ownership of the Westy marks. Thus, evidence regarding the circumstances pursuant to which Carlos Arredondo sold his interest in A&Co. has no bearing on the determination of which entity owned the marks at the time of the 1999 sale.

The sale from Carlos to Caesar was made in their personal capacities as shareholders in A&Co. Carlos Arredondo is not bringing this action in his own capacity; rather, he is bringing this suit in his role as Trustee of The 2000 Trust for the Grandchildren of Carlos A. Arredondo and Mari V. Arredondo, a general partner of APLP. Carlos Arredondo stands to gain nothing personally from a favorable outcome. Instead, the Court's validation of APLP's ownership of the marks will simply guarantee the future of the Westy's business for the children and grandchildren of both Carlos and Caesar Arredondo. The evidence regarding the reasons behind the sale of Carlos's stake in A&Co. is entirely grounded in the personal dispute between the brothers, and it is unrelated to their actions as trustees of APLP or as officers of the other corporations involved in the operation of the WESTY business.

ATL01/12073572v1

The facts and circumstances surrounding the 1999 sale have torn apart two brothers who had been in business together for the previous twenty-five years. In addition, the animosity has spread to the families and children of each of the brothers. Carlos Arredondo, in his personal capacity, would relish the opportunity to air his grievances regarding the 1999 sale before a court of law. However, allowing testimony and evidence on this wholly irrelevant matter would only cause more damage to both families without advancing the cause of justice.

Accordingly, Plaintiff asks that the Court exclude any evidence of the reasons that Carlos Arredondo sold his shares in A&Co. and requests that the Court focus on relevant facts, those regarding who properly owns the disputed marks.

**C.     Defendants Should Be Precluded From Asserting a Defense that Plaintiff Is Barred From Bringing Count One Based an Alleged Breach of the APLP Partnership Agreement Because Defendant Failed to Plead this Defense in Its Answer**

In the Joint Trial Memorandum, the Defendants allege that the Plaintiff is barred from bringing the asserted claims because they are in breach of the APLP Partnership Agreement. This allegation is being raised for the first time by the Defendants in regards to Count I of the Plaintiff's Complaint. Count I is the claim for Declaratory Judgment by the Plaintiff regarding the ownership of WESTY marks. In the Defendants' Answer and Affirmative Defenses to First Amended Complaint filed on August 5, 2003, the Defendants did not assert this affirmative defense. The only related affirmative defense was labeled "SIXTH AFFIRMATIVE DEFENSE TO COUNTS TWO AND THREE". This defense was that "The plaintiff's claims are barred by the plaintiff's failure to comply with the terms and conditions of the APLP Partnership Agreement." The defense was not directed to Count One.

Rule 8(c) of the Federal Rules of Civil Procedure states that a party "shall set forth" affirmative defenses in a responsive pleading. The Defendants did not assert this affirmative

defense with respect to claim one in their answers, nor did they move to amend their answers to add that affirmative defense. The "[f]ailure to plead an affirmative defense in the answer results in the waiver of that defense and its exclusion from the case." *United States for and on Behalf of Maritime Admin. v. Continental Illinois Nat. Bank and Trust Co. of Chicago*, 889 F.2d 1248, 1253 (2d Cir.1989) (citations and internal quotations omitted).

It was not until long after the conclusion of discovery and the preparation for trial that the Defendants raised the issue of breach of contract with respect to Claim I. Under these circumstances, the Court should find that the Defendants have waived any defense to claim one of the complaint grounded in an alleged breach of the APLP Partnership Agreement. See *Id.*; *Leybinsky v. Millich*, 2004 WL 2202577 at *2 (W.D.N.Y. 2004).

### D. Defendants Should Be Precluded From Introducing Documents Regarding Settlement Discussions.

Defendants' Exhibits 14, 396, and 397 should be precluded because the are documents that were created in the course of settlement negotiations regarding the benefits of the proposed settlement to APLP. Federal Rule of Evidence 408 precludes evidence of "(1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount." This information could only be introduced to provide evidence of APLP offering consideration in an attempt to settle this claim with the Defendant. As such, it should properly be excluded.

### E. Defendants Should Be Precluded From Introducing Documents Containing Hearsay.

Hearsay is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Federal Rule of Evidence 801(c). The following documents should be excluded because they contain hearsay.

1. **Defendants' Exhibit 15 is hearsay.**

Defendants' Exhibit 15 is described by the Defendants as "Handwritten notes re: Milford expenditures." The Defendants appear to be introducing these notes for the purpose of proving the contents of the letter itself, i.e. it is being offered in evidence to prove the truth of the matter asserted. As such, this document is hearsay and should be properly excluded under Fed. R. of Evid. 801. This document does not meet any of the established hearsay exceptions, thus it is properly excluded.

2. **Defendants' Exhibit 16 is hearsay.**

Defendants' Exhibit 16 is described by the Defendants as "Handwritten notes re: status of corporations and bank account information." The Defendants appear to be introducing these notes for the purpose of proving the contents of the letter itself, i.e. it is being offered in evidence to prove the truth of the matter asserted. As such, this document is hearsay and should be properly excluded under Fed. R. of Evid. 801. This document does not meet any of the established hearsay exceptions, thus it is properly excluded.

3. **Defendants' Exhibit 220 is hearsay.**

Defendants' Exhibit 220 is described by the Defendants as "Union Trust bank statement re: Westy's Milford Limited Partnership along with handwritten notes re: corporations" The Defendants appear to be introducing this statement and notes for the purpose of proving the contents of the statements and notes, i.e. it is being offered in evidence to prove the truth of the matter asserted. The handwritten notes on the statement is hearsay because, unlike the statement itself, the notes do not meet any of the established hearsay exceptions. As such, this document is hearsay and should be properly excluded under Fed. R. of Evid. 801.

4. **Defendants' Exhibits 308, 334, 366 is hearsay.**

Defendants' Exhibit 308, 334, 366, 391, are statements regarding Carlos Arredondo's financial information. The Defendants appear to be introducing this statement for the purpose of proving the contents of the statement itself, i.e. it is being offered in evidence to prove the truth of the matter asserted. As such, this document is hearsay and should be properly excluded under Fed. R. of Evid. 801. This document does not meet any of the established hearsay exceptions, thus it is properly excluded.

5. **Defendants' Exhibit 352 is hearsay.**

Defendants' Exhibit 220 is described by the Defendants as "Handwritten note re: listing various 'reasons'". The Defendants appear to be introducing this note for the purpose of proving the contents of the note and its "reasons", i.e. it is being offered in evidence to prove the truth of the matter asserted. The handwritten note is hearsay because it does not meet any of the established hearsay exceptions. As such, this document is hearsay and should be properly excluded under Fed. R. of Evid. 801.

6. **Defendants' Exhibit 372 - 374 is hearsay.**

Defendants' Exhibits 372 - 374 are letters to Arredondo & Co. regarding the trademark applications. The Defendants appear to be introducing this note for the purpose of proving the contents of the letter, i.e. it is being offered in evidence to prove the truth of the matter asserted. The letter is hearsay because it does not meet any of the established hearsay exceptions. As such, this document is hearsay and should be properly excluded under Fed. R. of Evid. 801.

7. **Defendants' Exhibit 389 is hearsay.**

Defendants' Exhibit 389 is described by the Defendants as "Memo from Caesar to Carlos re: agreement made at APLP general partners meeting on 3/9/02". The Defendants appear to be