Not Reported in F.Supp.2d                                                                                                      Page 6

Not Reported in F.Supp.2d, 2005 WL 3018701 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

that Home Depot would bear the responsibility for extraordinary repairs; thus, the Court limits the scope of paragraph 9.1 and 9.2 to ordinary repairs. The Court also finds, and the parties do not dispute, that the repairs necessary for Home Depot to continue to occupy the store safely are in the nature of extraordinary or major structural repairs. Where, as here, there is no clear evidence that the parties intended that the tenant would be responsible for extraordinary repairs, the Court is constrained to find that, as a matter of law, Home Depot does not bear the responsibility for the cost of the extraordinary repairs to the foundation and earthen pad.

*6 In so finding, the Court is guided by other decisions in this State and Circuit, which in reaching the same conclusion, have considered such factors as the nature and extent of the repairs, which party will receive the greatest benefit from the repairs, and whether the repair was within the contemplation of the parties at the time they entered into the lease. *See e.g., Cohen v. E. & J. Bass,* 246 N.Y. 270, 277, 158 N.E. 618 (1927); *Second United Cities Realty Corp. v. Price & Schumacher Co., Inc.,* 242 N.Y. 120, 123-24, 151 N.E. 150 (1926); *Mayfair Merch.,* 415 F.2d 23, 25 (2d Cir.1969).

As noted above, the repairs to the foundation and earthen pad were clearly substantial and costly repairs. Home Depot claims to have expended $750,000 just to put on a band-aid and temporarily remain in business in a facility that would be safe for its customers and employees. As for which party would receive the greatest benefit from the repairs, Home Depot was compensated by G & S for constructing the building. If Home Depot were required to bear the costs of essentially reconstructing the building, certainly G & S would receive the greatest benefit, despite the twenty year term of the Lease. In addition, it appears from the Lease terms that repairs to the foundation, and consequently the earthen pad, were contemplated by the parties at the time of drafting. Paragraph 9.1 refers to repairs that are "insurable, insured or required to be insured for *hereunder or as otherwise may be set forth herein."* Paragraph 10.2 of the lease, which sets forth **Home Depot's** insurance obligations, explicitly excludes any requirement that Home Depot insure the foundation [FN6]-an indication that Home Depot did not intend to bear any responsibility for the land beneath the building. A balancing of the equities herein is further support for attributing the duty to make extraordinary repairs to the landlord.

> FN6. G & S's arguments concerning Home Depot's insurance coverage miss the mark. The Lease should not be construed against Home Depot simply because it chose to protect its interests in the property and take out an "All-Risk" insurance policy even though it was not required to do so by the terms of the Lease.

In sum, because the Court finds that Home Depot bore no responsibility for making extraordinary repairs nor for making repairs to the foundation and earthen pad, G & S's second counterclaim must fail, and Home Depot's motion for partial summary judgment is granted. The Court need not address G & S's claim that Home Depot failed to properly construct the building at issue. G & S's own negligence in compacting the earthen pad precludes any claim against Home Depot for negligently constructing the building. For the same reasons, G & S's motion for summary judgment is denied.

B. *ReliaStar's Motion for Summary Judgment and Home Depot's Cross-Motion for Partial Summary Judgment*

ReliaStar moves for summary judgment against Home Depot for the rent monies that it alleges Home Depot owes it from September 1999 to the present. According to ReliaStar, paragraph 7(a) of the Recognition Agreement clearly establishes Home Depot's "unconditional and absolute" obligation to pay rent to ReliaStar "without reduction, offset, abatement, or diminution whatever." Para. 7(a) of the Recognition Agreement states:
*7 Tenant agrees that notwithstanding anything in the Lease or this Agreement contained to the contrary, until Mortgagee notify [sic] Tenant that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 7
Not Reported in F.Supp.2d, 2005 WL 3018701 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

the Assignment has been released, Tenant shall be unconditionally and absolutely obligated to pay to Mortgagee in accordance with the Assignment all rents, purchase payments and other payments of whatever kind described in the Lease without any reduction, set off, abatement, or diminution whatever.
(ReliaStar Ex. F).

ReliaStar claims that this so-called "hell or high water" clause requires that Home Depot pay rent regardless of any breach by G & S or purported constructive eviction by Home Depot. Further, ReliaStar claims that Home Depot is estopped from asserting any defense based on G & S Investors' failure to properly construct the pad because of its absolute and unconditional obligation to pay rent. (ReliaStar Mem. Sum. J. at 13-17).

Home Depot cross moves for summary judgment that it is not estopped from raising the defense of constructive eviction against ReliaStar because at the time it signed the Recognition Agreement, it did not know that the Store was going to settle. Home Depot points to paragraph 8 of the Recognition Agreement which requires that Home Depot certify to ReliaStar only as to conditions it was aware of when signing the Recognition Agreement. Thus, it argues it may not default on its rent payments as to conditions, such as the defective building pad, later discovered by Home Depot. It also moves on the grounds that Judge Kyle in the Minnesota case already ruled that Home Depot could assert a constructive eviction defense when it granted Home Depot's transfer motion. Finally, Home Depot asserts that the Recognition Agreement is void because it was not supported by consideration by Home Depot. Whereas, G & S received a $13 million loan from ReliaStar, Home Depot received nothing.

First, paragraph 7(a) is unambiguous on its face and requires that Home Depot pay rent to ReliaStar without any "reduction, set off, abatement, or diminution whatever." Though Home Depot argues that it intended otherwise, the Court may not disturb the clear language of an agreement like this one that was negotiated between " 'sophisticated, counseled business people negotiating at arm's length." ' *Vermont Teddy Bear,* 1 N.Y.3d at 475, 775 N.Y.S.2d 765, 807 N.E.2d 876 (citation omitted). Though not watertight, these "hell or highwater" clauses are generally enforceable. *Rhythm & Hues. Inc. v. The Terminal Marketing Co., Inc.,* 2002 WL 1343759, at *5 (S.D.N.Y. Jan.19, 2002). Moreover, this Court notes that courts have found that a party is estopped from asserting any defenses against the clear obligations outlined in such clauses. *See, e.g., Wells Fargo Bank Minn., N.A. v. Nassau,* 2003 WL 22339299, * 7 (S.D.N.Y. October 10, 2003); *Citibank, N.A. v. Plapinger,* 66 N.Y.2d 90, 94-5, 495 N.Y.S.2d 309, 485 N.E.2d 974 (N.Y.1985); *Eaton v. Laurel Delicatessen Corp.,* 5 A.D.2d 590, 173 N.Y.S.2d 868 (1st Dep't 1958), aff'd, 5 N.Y.2d 1029, 185 N.Y.S.2d 551, 158 N.E.2d 251 (1959). Since the Court finds that paragraph 7(a) constitutes a valid "hell or highwater" clause and that Home Depot is estopped from asserting its defense of constructive eviction (or any other defense for that matter) against ReliaStar, summary judgment is granted for ReliaStar on this claim.

*8 Second, summary judgment is denied as to Home Depot's cross motion asserting that the Recognition Agreement was not supported by consideration. It is axiomatic that a "benefit flowing to a third person or legal entity constitutes a sufficient consideration for the promise of another." *Mencher v. Weiss,* 306 N.Y. 1, 8, 114 N.E.2d 177 (1953). Thus, summary judgment is denied as to this claim.

*C. Melick-Tully's Motion for Summary Judgment and Motion to Dismiss for Failure to State a Claim*

Melick-Tully moves to dismiss for failure to state a claim on the ground that Melick-Tully's contractual obligations extended only to G & S as Melick-Tully and Home Depot never entered into a contractual relationship. Thus, Melick-Tully asserts that Home Depot's claims against it alleging negligence and engineering malpractice in breach of contractual duties lie in tort, and not in contract, and therefore must fail.[FN7] Home Depot replies that it relied upon Melick-Tully's reports and professional advice and was a third-party beneficiary to the contract

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://web2.westlaw.com/print/printstream.aspx?prft=HTMLE&destination=atp&sv=Split...    6/21/2007

Not Reported in F.Supp.2d                                                                                                      Page 8
Not Reported in F.Supp.2d, 2005 WL 3018701 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

between Melick-Tully and G & S.

> FN7. As Melick-Tully's motion to dismiss for failure to state a claim presents to the Court matters outside of the pleadings, the Court shall treat this motion as one for summary judgment under Rule 56.

As counsel for Melick-Tully correctly points out in its Memorandum of Law, a duty of care to non-contracting third parties may arise out of a contractual obligation or the performance thereof in three limited circumstances. (Melick-Tully Mem. Sum. J. at 6-7). Such a duty may arise where: (i) the promsior, while performing a contractual obligation, creates an unreasonable risk of harm to others or increases that risk; (ii) the plaintiff reasonably relied upon the promisor's continuing performance of a contractual obligation; and (iii) the promisor assumed the promisee's safety responsibilities. *Church v. Callanan Indus., Inc.*, 99 N.Y.2d 104, 111-12, 752 N.Y.S.2d 254, 782 N.E.2d 50 (2002) (citations omitted)(holding that subcontractor's liability arose only from its contractual obligation to the general contractor and plaintiff could not recover in tort for the breach of contract). The exceptions to the general rule stated above raise material issues of fact-specifically whether Home Depot reasonably relied upon Melick-Tully's performance and whether Melick-Tully assumed G & S's safety responsibilities such that Home Depot was a third party beneficiary of the agreement between Melick-Tully and G & S. Thus, summary judgment is denied.

Melick-Tully also moves for summary judgment on the assertion that Home Depot's negligence and engineering malpractice causes of action against Melick-Tully should be dismissed as time-barred. (Melick-Tully Mem. Sum. J. at 4-6) According to Melick-Tully, these causes of action accrued prior to May 9, 1990 and thus are now time-barred by the three (3) year statute of limitations under C.P.L.R. § 214.

Home Depot argues that the statute of limitations did not begin to run until December 9, 1990 when the construction project was complete; and thus, it is well within the statute of limitations here. Melick-Tully and Home Depot had entered into a tolling agreement on November 19, 1996 which stopped all federal and state statute of limitations from running. Under this calculation, Home Depot would not have been out of time until December 9, 1996 which was after the toll.

*9 A claim for professional malpractice against engineers and architects "generally accrues upon completion of the construction of the entire project." *See, e.g., Bd. Of Managers of the Ocean Club v. Mandel*, 235 A.D.2d 382, 383, 652 N.Y.S.2d 301 (2d Dep't 1997); 75 Am.Jur.2d, *Limitations and Laches*, § 248 (2003) (stating that "[i]t is well settled that an owner's claim against an architect [and engineer] arising out of the alleged defective construction of a building, however denominated, accrues for purposes of the statute of limitations upon the completion of the construction"). Melick-Tully's contention that Home Depot's claim against it accrued before May 9, 1990 raises a material issue of fact as to when the Farmingdale store construction project was finished; thus, Melick-Tully's cross-motion for summary judgment is denied.

II. *Motions* In Limine

A. *Home Depot's Motion* in Limine *to Exclude Statements by Greg Wasser Regarding the Lease and G & S's Cross Motion* in Limine *to Preclude Parol Evidence Regarding the Lease*

Home Depot moves to exclude certain testimony of Greg Wasser, a G & S principal, concerning the meaning of the repair obligations of the Lease under paragraph 9.1. Alleging that the terms of paragraph 9.1 are unambiguous, Home Depot argues that extrinsic evidence, such as Wasser's testimony, should not be allowed to provide an alternate explanation concerning G & S's intent during the contract negotiations. (**Home Depot** Mot. Lim. at 5-10). G & S cross moves *in limine* to preclude **Home Depot** from offering any parol evidence with respect to the Lease and replies that paragraph 9.1

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 9
Not Reported in F.Supp.2d, 2005 WL 3018701 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

is ambiguous [FN8] and that even if it were unambiguous, the parole evidence rule would not bar testimony such as Wasser's.

> FN8. It argues this despite the fact that it also files a motion for summary judgment as to the purported clarity of this paragraph.

As a preliminary matter, at this early stage of the case, the parties' attempt to exclude whole items of evidence that may or may not be introduced at trial is an inappropriate use of the motion *in limine* device. The purpose of an *in limine* motion is to enable the trial court to rule on disputes over the admissibility of discrete items of evidence. *TVT Records v. Island Def Jams Music Group,* 250 F.Supp.2d 341, 344 (S.D.N.Y.2003). It is common for courts to reserve judgment on a motion *in limine* until trial so that the motion can be placed in the appropriate factual context. *United States v. Chan,* 184 F.Supp.2d 337, 340 (S.D.N.Y.2002) (citations omitted). Indeed, many Courts have found that it is the better practice to deal with questions of admissibility as they arise. *Sperberg v. Goodyear Tire & Rubber, Co.,* 519 F.2d 708, 712 (6th Cir.1975); *TVT Records,* 250 F.Supp.2d at 344 (noting with dismay that the "parties seek to employ their *in limine* motions as preemptive weapons with which they endeavor to strike in shotgun fashion at whole topics and sources of prospective evidence" that may or may not ever be introduced as evidence at trial).

Here, Home Depot seeks to exclude the Wasser affidavit *in toto,* or in the alternative those portions of the affidavit that describe conversations during the negotiation process of the Lease. G & S seeks to preclude Home Depot from introducing any parol evidence with respect to the Lease and argues that the parol evidence rule is equally applicable to both parties. There are numerous purposes for which Wasser's affidavit and/or potential testimony on this topic could be used that do not include the intent behind the wording of paragraph 9.1. Home Depot's suggestion that the affidavit should be stricken wholesale or even in part is thus denied at this juncture. Similarly, G & S's efforts to preclude parol evidence are premature, and G & S's cross-motion *in limine* is also denied.

### B. *Home Depot's Motion* in Limine *to Preclude Testimony Regarding Home Depot's Actual Insurance Coverage*

*10 Home Depot has moved *in limine* to preclude G & S from introducing at trial any evidence concerning Home Depot's actual insurance coverage of the Farmingdale store and any payments received from its insurers because of this coverage. As stated above in section II.A., it is common for courts to reserve judgment on a motion *in limine* until trial so that the motion can be placed in the appropriate factual context. *United States v. Chan,* 184 F.Supp.2d 337, 340 (S.D.N.Y.2002) (citations omitted). There may be a variety of reasons for excluding or permitting at trial potential testimony concerning Home Depot's insurance coverage. The Court, however, refuses to make such a blanket ruling at this juncture; and thus, Home Depot's motion *in limine* is denied.

### C. *ReliaStar's Motion* in Limine *to Exclude Kenneth Bave's Affidavit Regarding the Recognition Agreement*

ReliaStar claims that the parole evidence rule bars Home Depot from introducing at trial any evidence that it did not intend an absolute and unconditional obligation to pay rent under the Recognition Agreement. (ReliaStar Mot. Lim. at 7). Again, the pertinent provision of the Recognition Agreement states as follows:

Tenant agrees that notwithstanding anything in the Lease or this Agreement contained to the contrary, until Mortgagee notify [sic] Tenant that the Assignment has been released, Tenant shall be unconditionally and absolutely obligated to pay to Mortgagee in accordance with the Assignment all rents, purchase payments and other payments of whatever kind described in the Lease without any reduction, set off, abatement, or diminution whatever.

(ReliaStar Ex. F).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 10
Not Reported in F.Supp.2d, 2005 WL 3018701 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

ReliaStar argues that because paragraph 7(a) of the Recognition Agreement is unambiguous, the affidavit of Kenneth Baye's should be stricken. Mr. Baye, who was Home Depot's corporate counsel in 1993 and represented Home Depot in the Recognition Agreement negotiations, claims in his affidavit that paragraph 7(a) as it is written is ambiguous because it does not reflect the parties' intentions. Home Depot responds that paragraph 7(a) is not a draconian "hell or high water" clause as ReliaStar claims and that since it is ambiguous, Kenneth Baye's affidavit and ultimate testimony should be permitted under the parole evidence rule. (Home Depot's Opp. Mot. at 6-8).

As discussed above in section I.B., however, paragraph is 7(a) is clear on its face and thus parole evidence is not permitted to create an ambiguity. *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir.2002) (holding that it is "well established that a court may not admit extrinsic evidence in order to determine the meaning of an unambiguous contract"); *South Road Assocs.*, 4 N.Y.3d at 277-78, 793 N.Y.S.2d 835, 826 N.E.2d 806 (ruling that "whether a contract is ambiguous is a question of law and extrinsic evidence may not be considered unless the document itself is ambiguous"). Accordingly, the motion *in limine* is granted to the extent that the Baye affidavit and future testimony are provided to explain the circumstances surrounding paragraph 7(a) of the Recognition Agreement.

*CONCLUSION*

*11 For all the foregoing reasons:
1. G & S **Investors** Motion for Summary Judgment against **Home Depot** is DENIED. (pp. 8-15).
2. **Home Depot's** Cross-Motion for Partial Summary Judgment against G & S **Investors** is GRANTED. (pp. 8-15).
3. **Home Depot's** Motions *in Limine* against G & S **Investors** are DENIED. (pp. 20-22).
4. G & S **Investors'** Cross-Motion *in Limine* against **Home Depot** is DENIED. (pp. 20-22).
5. Reliastar's Motion *in Limine* and Motion for Summary Judgment against Home Depot are GRANTED. (pp. 15-17; 22-24).
6. Home Depot's Cross-Motion for Partial Summary Judgment against Reliastar is DENIED. (pp. 15-17).
7. Melick-Tully's Cross-Motion for Summary Judgment and Motion to Dismiss against Home Depot are DENIED. (pp. 18-20).

SO ORDERED.

E.D.N.Y.,2005.
Home Depot U.S.A., Inc. v. G & S Investors/Willow Park, L.P.
Not Reported in F.Supp.2d, 2005 WL 3018701 (E.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                                          Page 1
Not Reported in F.Supp.2d, 1998 WL 841641 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Messier v. Southbury Traning School
D.Conn.,1998.
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.
Richard MESSIER, et al.
v.
SOUTHBURY TRAINING SCHOOL, et al.
**No. 3:94-CV-1706 (EBB).**

Dec. 2, 1998.

RULING ON MOTION TO COMPEL RETURN
OF DOCUMENTS
BURNS, Senior J.
*1 This ruling presents the question of what remedy, if any, should be ordered based on plaintiffs' motion to compel the return of documents, when the defendants [FN1] returned the requested documents two weeks after the motion was filed. On July 31, 1998, plaintiffs moved pursuant to Federal Rule of Civil Procedure 37(a) for an order requiring the defendants to return documents provided to them by the plaintiffs. In the same motion, plaintiffs sought additional relief and sanctions to remedy the prejudice allegedly caused by the delay in the return of the documents. Approximately two weeks after plaintiffs filed this motion, the defendants returned the documents sought. The only remaining matter concerns whether the Court should grant the additional relief and sanctions requested by the plaintiffs. For the following reasons, plaintiffs' motion to compel [Doc. No. 413] is granted in part and denied in part.

> FN1. The defendants are the Commissioner of the Department of Mental Retardation, the Commissioner of the Department of Social Services, the Commissioner of the Department of Public Health, Southbury Training School ("STS"), and the Director of STS (collectively "defendants").

BACKGROUND

The Court summarizes only those facts necessary to reach a conclusion on this motion. On December 8, 1997, the defendants deposed Robert B. Kugel, M.D., plaintiffs' expert witness. At that time, defense counsel Thomas B. York, Esq. asked plaintiffs' counsel David C. Shaw, Esq. to provide the documents that Dr. Kugel relied upon to reach his opinion that the level of medical and health care at STS remains significantly below average. These documents include notes from Dr. Kugel's visits to STS, notes from his review of STS records, notes in preparation of his written report, and copies of internal documents and patient charts from STS. Plaintiffs gave the defendants these documents for the purpose of making copies. (Pls.' Mot. Compel ¶ 1.)

On February 20, 1998, defense experts Mark Hauser, M.D. and Theodore Kastner, M.D. issued two reports critiquing Dr. Kugel's conclusions. Plaintiffs' counsel showed Dr. Kugel these two reports to help prepare for the depositions of Dr. Hauser and Dr. Kastner scheduled on March 20, 1998 and April 2, 1998 respectively.[FN2] Dr. Kugel responded that he needed to review his notes to refresh his recollection regarding the original basis for his opinions. (Pls.' Reply Mem. at 5.) Attorney Shaw wrote Attorney York demanding the return of Dr. Kugel's notes and documents in a letter dated March 19, 1998 and sent by facsimile on March 23, 1998. (Letter from David C. Shaw, Esq. to Thomas B. York, Esq. of 3/23/98.) Defense counsel responded on March 24, 1998 by returning some documents, (Letter from Christina L. Smith to David C. Shaw, Esq. of 3/24/98), but they were not the specific documents that plaintiffs desired. (Defs' Mem. Opp. at 1-3; Pls.' Reply Mem. 1-3.)

> FN2. The parties dispute whether Dr.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 1998 WL 841641 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

Hauser and Dr. Kastner reviewed Dr. Kugel's notes and documents to prepare for their depositions by the plaintiffs. (Pls.' Mem. Supp. Mot. Compel at 2; Defs.' Mem. Opp. at 5-6.)

It appears that two sets of documents were utilized at Dr. Kugel's deposition. First, nine deposition exhibits were created which amounted to approximately 100 pages. Second, Dr. Kugel had examined 10,000 to 20,000 documents which formed the basis for his written report and deposition testimony. Plaintiffs had turned over each of these sets of documents to the defendants for copying after Dr. Kugel's deposition on December 8, 1997. Defendants returned the nine deposition exhibits, but the second set of documents were not turned over. (Pls.' Reply Mem. 1-3.)

*2 On April 1, 1998, Attorney Shaw faxed Attorney York a letter reiterating plaintiffs' request for the Kugel documents and specifically mentioning their difficulty in preparing for Dr. Kastner's upcoming deposition on April 2, 1998. (Letter from David C. Shaw, Esq. to Thomas B. York, Esq. of 4/1/98.) On this same day, Attorney York responded with a facsimile attaching the earlier letters, apparently believing that the documents he sent and plaintiffs' April 1 letter had crossed in the mail. (Defs.' Mem. Opp. at 3-4.) From this point forward, both parties vigorously dispute what transpired.

Plaintiffs' counsel contends that he made numerous oral requests of defense counsel York between April 1998 and July 1998. (Pls.' Mot. Compel at 1; Pls.' Mem. Supp. Mot. Compel at 2.) On the other hand, Attorney York argues that Attorney Shaw mentioned the Kugel documents only once in a telephone call. (Defs.' Mem. Opp. at 4.) It suffices to say that the parties could not resolve the problem without court intervention. On July 31, 1998, plaintiffs made a motion to compel the defendants to return the documents pursuant to Federal Rule of Civil Procedure 37(a). Plaintiffs also requested the following additional remedies: (1) an order permitting Dr. Kugel to return to STS to collect data to reconstruct the basis for his opinions; (2) an order precluding Dr. Hauser and Dr. Kastner from offering rebuttal testimony at trial; and (3) an award of attorney's fees and costs associated with this motion. (Pls.' Mot. Compel at 4.) Approximately two weeks later, the defendants returned the specific documents sought. (Pls.' Reply Mem. at 1; Defs.' Mem. Opp. at 5.)

On September 18, 1998, plaintiffs filed their reply brief which modified the relief sought in light of the return of the Kugel documents. Plaintiffs now seek an order permitting them to depose Dr. Hauser and Dr. Kastner again at defendants' expense regarding their criticisms of Dr. Kugel's report and deposition testimony. (Pls.' Reply Mem. at 6.) In addition, they continue their request for an award of reasonable attorney's fees and costs associated with this motion. (*Id.*) Plaintiffs claim that the delay in returning Dr. Kugel's notes and documents prejudiced them in effectively addressing the opinions of Dr. Hauser and Dr. Kastner at their respective depositions. (Pls.' Mot. Compel ¶¶ 8-12.) Plaintiffs deposed Dr. Hauser on March 20, 1998 and Dr. Kastner on April 2, 1998. (Pls.' Reply Mem. at 5.) They complain that Dr. Kugel could not assist them in forming questions for the defense experts without his notes, and that they could not confront the experts with documents collected from STS by Dr. Kugel because the defendants possessed them at this time. As matters currently stand, discovery has been concluded and plaintiffs cannot further depose Dr. Hauser and Dr. Kastner again absent a court order to the contrary.

DISCUSSION

I. *Fed.R.Civ.P. 30(f)(1): Procedures to Copy Documents*

*3 Federal Rule of Civil Procedure 30(f)(1) provides that "[d]ocuments and things produced for inspection during the examination of a witness, shall, upon the request of a party, be marked for identification and annexed to the deposition and may be inspected and copied by any party." Rule 30(f)(1) also describes alternative procedures for the making of copies in the event that the party producing the documents wishes to retain them. Pursuant to this rule, plaintiffs gave the defendants

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                        Page 3
Not Reported in F.Supp.2d, 1998 WL 841641 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

Dr. Kugel's notes and copies of documents taken from STS for their inspection and to make copies. Rule 30(f)(1) does not specify the procedures governing the return of documents after copying has been completed by a party. However, the rule clearly contemplates that such documents will be returned in a timely fashion so as not to facilitate prejudice to the opposing party. The defendants do not dispute that there was a significant delay in returning the Kugel documents. (Defs.' Mem. Opp. at 9.)

II. *Fed.R.Civ.P. 37(a): Motions to Compel and Sanctions*

Federal Rule of Civil Procedure 37 provides district courts with the authority to oversee the discovery process by issuing orders compelling discovery and sanctions against noncomplying parties. Rule 37(a)(2)(B) allows parties to compel discovery under Rules 30, 31, 33, and 34. While Rule 37(a)(2)(B) permits litigants to compel the inspection of documents in connection with a deposition as provided by Rule 30, it does not mention a corresponding right to compel the return of documents borrowed for copying to their rightful owner. However, the Court finds that Rule 37(a)(2)(B) implicitly requires that all borrowed documents must be promptly returned.

A party making a motion to compel discovery under Rule 37(a) must certify "that the movant has in good faith conferred or attempted to confer" with the opposing party "in an effort to secure the information or material without court action." Fed.R.Civ.P. 37(a)(2)(B). Conclusory statements in an affidavit asserting that the movant fulfilled the good faith meet-and-confer requirement does not satisfy Rule 37(a). *See Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.,* 1998 WL 67672, at *2 (S.D.N.Y. Feb.18, 1998); *Tri-Star Pictures, Inc. v. Unger,* 171 F.R.D. 94, 99 (S.D.N.Y.1997). Instead, the meet-and-confer requirement mandates that:
[Parties must] meet, in person or by telephone, and make a genuine effort to resolve the dispute by determining ... what the requesting party is actually seeking; what the discovering party is reasonably capable of producing that is responsive to the request; and what specific genuine issues, if any, cannot be resolved without judicial intervention.

*Deckon v. Chidebere,* 1994 WL 494885, at *5 (S.D.N.Y. Sept.9, 1994). Movants must detail the efforts to confer and explain why they proved fruitless. *Ballou v. University of Kansas Med. Ctr.,* 159 F.R.D. 558, 559-60 (D.Kan.1994). Plaintiffs have complied with this requirement. As a result, the Court may order the defendants to allow the plaintiffs to take the depositions of Dr. Hauser and Dr. Kastner again if it finds that plaintiffs suffered prejudice by not having Dr. Kugel's notes and materials.

*4 Rule 37(a)(4)(A) also permits district courts to award attorney's fees and costs associated with a motion to compel discovery. The rule states the following:
If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or the deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(a)(4)(A). Under this provision, the Court must order reasonable costs and attorney's fees unless the movant failed to attempt to solve the problem in good faith without court action, the nonmovant's action or inaction was substantially justified, or other circumstances make an award of expenses unjust. Fed.R.Civ.P. 37 Advisory Comm. Notes to 1970 Amendments. The Supreme Court has clarified that a party's discovery conduct is " substantially justified" if it constitutes a response to a "genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citations

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 4
Not Reported in F.Supp.2d, 1998 WL 841641 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

omitted).

Disciplinary sanctions under Rule 37 should serve three functions. First, sanctions should ensure that a party will not benefit from its own failure to comply with the discovery rules. See *Update Art, Inc. v. Modiin Publ'g, Ltd.,* 843 F.2d 67, 71 (2d Cir.1988); *Cine Forty-Second St. Theatre v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1066 (2d Cir.1979). Second, sanctions constitute specific deterrents and seek to obtain compliance with either court orders or the ordinary standards of care appropriate for parties and their attorneys. See *Update Art,* 843 F.2d at 71; *Cine Forty-Second St.,* 602 F.2d at 1066; *Burnett v. Venturi,* 903 F.Supp. 304, 308 (N.D.N.Y.1995). Third, sanctions should serve as a general deterrent in the case at hand and in other litigation, provided that the party against whom they are imposed was in some sense at fault. See *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam); *Update Art,* 843 F.2d at 71.

Defendants have attempted to explain their failure to return the Kugel documents as an unintentional error, partly caused by the plaintiffs. Clearly, the imposition of the harshest sanctions under Rule 37(b)-(d), such as the preclusion of evidence or the dismissal of an action, requires willful misconduct or bad faith. *See, Societe Int'l v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); *United States v. Certain Real Property Located at Route 1, Bryant, Ala.,* 126 F.3d 1314, 1317 (11th Cir.1997); *Update Art,* 843 F.2d at 71; *cf. Taylor v. Illinois,* 484 U.S. 400, 415-17, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (discussing the preclusion of witness testimony for willful discovery misconduct in a criminal case). Considerations of fair play dictate that courts eschew the harshest sanctions where failure to comply is due to a mere oversight of counsel amounting to no more than simple negligence. See *Cine Forty-Second St.,* 602 F.2d at 1068; *Affanato v. Merrill Bros.,* 547 F.2d 138, 141 (1st Cir.1977). Courts must inquire into the actual difficulties which the violation causes and must consider less drastic responses when litigants seek severe sanctions. See *Outley v. City of New York,* 837 F.2d 587, 591 (2d Cir.1988).

*5 In this case, the Court need not find bad faith or willful misconduct because plaintiffs filed their motion to compel pursuant to Rule 37(a), not Rule 37(b)-(d). Plaintiffs do not seek Rule 37(b)-(d)'s harshest remedies, but rather make a Rule 37(a) motion for leave to depose defendants' experts again and an award of attorney's fees and costs. Rule 37(a) does not require courts to make a finding of bad faith before ordering discovery or awarding attorney's fees as a sanction. See *Merritt v. International Bhd. of Boilermakers,* 649 F.2d 1013, 1019 (5th Cir.1981); *Devaney v. Continental Am. Ins. Co.,* 1154, 1162-63 (11th Cir.1993); Fed.R.Civ.P. 37 Advisory Comm. Notes to 1970 Amendments. As such, it proves unnecessary to determine whether defendants' failure to return the documents was willful or in bad faith. The Court may order the requested relief to remedy any prejudice that plaintiffs may have suffered so long as Rule 37(a)'s requirements have been satisfied.

III. *Additional Relief Requested by Plaintiffs*

A. Depositions of Defense Experts

The Court first denies plaintiffs' request to depose Dr. Hauser again because they likely suffered little prejudice in not having the Kugel documents when they deposed Dr. Hauser on March 20, 1998. Plaintiffs possessed advance notice of this date. However, the facts show that plaintiffs' counsel made his first written demand for the Kugel documents three days *after* the deposition took place. Plaintiffs faxed their letter dated March 19, 1998 on March 23, 1998. (Pls.' Reply Mem. at 3 n. 2; Shaw Aff. ¶ 6.) Furthermore, plaintiffs never requested a continuance of Dr. Hauser's deposition at that time. (Defs.' Mem. Opp. at 6.) Given these circumstances, the Court has little undisputed evidence that plaintiffs were prejudiced in preparing for Dr. Hauser's deposition without the Kugel documents. Therefore, the Court denies plaintiffs' petition to depose Dr. Hauser again at this juncture in the case.

At the same time, the Court grants plaintiffs leave to depose Dr. Kastner again because there exists

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:02-cv-02200-CFD    Document 112-3    Filed 06/22/2007    Page 10 of 17    Page 6 of 6

Not Reported in F.Supp.2d                                                                                      Page 5
Not Reported in F.Supp.2d, 1998 WL 841641 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

undisputed written evidence validating their need for the Kugel documents prior to Dr. Kastner's first deposition on April 2, 1998. Plaintiffs' letters faxed on March 23, 1998 and April 1, 1998 strongly indicate the necessity of the Kugel documents. Moreover, plaintiffs' counsel requested the Kugel documents again at Dr. Kastner's fourth deposition on June 28, 1998. (Kastner Dep. at 256-57.) Without reaching a conclusion regarding whether the defendants' conduct was willful, the Court finds that plaintiffs suffered prejudice in being deprived of the Kugel documents during their depositions of Dr. Kastner. Therefore, the Court grants plaintiffs' request to depose Dr. Kastner again. In this regard, defendants shall allow the plaintiffs to depose Dr. Kastner on a date no later than December 24, 1998. The only matters that plaintiffs may address at this deposition are Dr. Kastner's criticisms of Dr. Kugel's written report and deposition testimony. The deposition shall last no longer than one day.

### B. Attorney's Fees and Costs

*6 Under Federal Rule of Civil Procedure 37(a)(4)(A), the Court may order reasonable costs and attorney's fees unless the movant failed to attempt to solve the problem in good faith without court action, "the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust." The circumstances underlying this motion render an award of attorney's fees and costs "unjust. " First, most of the relevant factual evidence in connection with this motion remains vigorously disputed by the parties. Second, discovery has been closed. Third, plaintiffs were provided with the Kugel documents in August 1998, and thus have had almost four months to review them to prepare for trial in January 1999. Finally, the remedy of leave to depose Dr. Kastner appropriately compensates for any prejudice plaintiffs suffered. As a result, the Court denies plaintiffs' petition for an award of attorney's fees and costs associated with this motion.

### CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel [Doc. No. 413] is granted in part and denied in part. The Court's ruling may be summarized as follows: (1) the Court denies plaintiffs' request for attorney's fees and costs associated with this motion; (2) the Court denies plaintiffs' application to depose Dr. Hauser again; and (3) the Court grants plaintiffs' leave to depose Dr. Kastner again. In this regard, defendants shall allow the plaintiffs to depose Dr. Kastner on a date no later than December 24, 1998. The only matters that plaintiffs may address at this deposition are Dr. Kastner's criticisms of Dr. Kugel's written report and deposition testimony. This deposition shall last no longer than one day.

SO ORDERED.

D.Conn.,1998.
Messier v. Southbury Training School
Not Reported in F.Supp.2d, 1998 WL 841641 (D.Conn.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.                                                                                                                                   Page 1

Not Reported in F.Supp., 1990 WL 164859 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

▷
Softel, Inc. v. Dragon Medical and Scientific Communications, Inc.
S.D.N.Y.,1990.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
SOFTEL, INC., Plaintiff,
v.
DRAGON MEDICAL AND SCIENTIFIC COMMUNICATIONS, INC., Dragon Group Ltd., a/k/a Dragon Medical and Scientific Communications Ltd., John R. Darsee, H. Eugene Hodge, Nina Romanoff, Pfizer, Inc. and Pfizer Pharmaceuticals, Inc., Defendants.
**No. 87 CIV. 0167 (JMC).**

Oct. 24, 1990.

*MEMORANDUM AND ORDER*
CANNELLA, District Judge,
*1 Plaintiff's motion to set aside certain rulings made by Magistrate Nina Gershon is denied. 28 U.S.C. § 636(b)(1)(A) (1988).

*BACKGROUND*

Plaintiff Softel, Inc. ["Softel"] is a computer software development company. Defendant Dragon Medical and Scientific Communications [" Dragon"] is a medical marketing company. Defendants Dragon, John R. Darsee, H. Eugene Hodge and Nina Romanoff [collectively the " Dragon defendants"] are in the business of creating computer-based interactive programs for educational use in the medical field. On January 9, 1987, Softel commenced the instant action, alleging that the Dragon defendants had infringed a copyrighted computer program which Softel uses to store, retrieve and display graphic images drawn with its computer drawing software.

In early 1987, the case was referred to Magistrate Nina Gershon to supervise discovery. On February 18, 1987, Magistrate Gershon ordered that discovery proceed on an expedited basis. Since plaintiff's complaint did not specify which computer code routines were allegedly similar, the primary function of discovery was to identify the technical issues in dispute. To achieve this goal, Magistrate Gershon directed Softel's expert to serve on the Dragon defendants his report particularizing the asserted similarities, and after receipt of the report the Dragon defendants were directed to have their expert respond to the contentions made by Softel's expert. Depositions of fact witnesses were held in abeyance pending the exchange of the experts' reports. Both the parties and the Magistrate believed that organizing discovery around the exchange of the experts' reports was the most effective method to narrow the issues in dispute.

In furtherance of the Magistrate's order, in March 1987, Softel served on the Dragon defendants a report by its expert, Aaron Grosky. In June 1987, the Dragon defendants served a report by its expert, John Cain, responding to the points raised by Grosky. Following the first exchange of the experts' reports, the Dragon defendants produced additional computer programs which Softel claimed copied the "structure and logic" of Softel's work. Softel's allegation necessitated another exchange of experts reports addressing the alleged similarity in the additional programs. At Magistrate Gershon's direction, Softel's expert, Grosky, delivered his second report to the Dragon defendants in May 1989. In July 1989, Cain served his second report, responding to the claims in Grosky's report.

In early December 1989, discovery seemed to be drawing smoothly to a close. The discovery cutoff date was firmly set at January 30, 1990, after having been extended several times. The parties' experts' reports had been prepared and exchanged in a manner that delineated the disputed issues. Depositions of key fact witnesses were proceeding or were to commence shortly. Magistrate Gershon

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                              Page 2
Not Reported in F.Supp., 1990 WL 164859 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

had scheduled a pretrial conference for December 6, 1989, and directed the parties to serve a pretrial order by February 21, 1990.

**\*2** The December 6 conference did not proceed as expected. At the conference, Softel advised the Magistrate that Grosky was no longer Softel's expert and that Softel had instead chosen a new expert to testify on its behalf at trial. After discussing the matter extensively with counsel, Magistrate Gershon granted Softel leave to serve a report by its new expert, Professor DeFanti. However, in order to allow the Dragon defendants time to study the new report and to prevent any further delay in discovery, the Magistrate directed Softel to serve DeFanti's report by December 22. The depositions of witnesses whose testimony might be affected by the new report were adjourned and scheduled to recommence on January 15, 1990. The discovery cutoff date of January 30, 1990 remained in effect.

Although Magistrate Gershon granted Softel's request, Softel's counsel was dissatisfied with the Magistrate's ruling that it serve DeFanti's report by December 22. Plaintiff's counsel requested an indefinite adjournment, based on the fact that counsel no longer possessed the magnetic diskettes containing the Dragon defendants' confidential computer programs. Counsel had given the diskettes to Grosky to prepare his report, and he now refused to return them to Softel because of a fee dispute with Softel's counsel. Softel's counsel also advised the Magistrate that she was pursuing a replevin action against Grosky to recover the materials. Defendants' counsel then offered to duplicate the computer diskettes that had previously been produced if Softel agreed to pay for the duplication. Defendants' counsel, however, stated that he could not represent that each diskette that had previously been produced to Softel's counsel could be quickly located and duplicated. The offer was accepted by Softel's counsel and approved by the Magistrate. One hundred seventy-five diskettes were made available to Softel on December 11, 1989, and duplication of the remaining five diskettes was completed on December 18.

On December 21, 1989, one day prior to the deadline for serving DeFanti's report, Softel's counsel requested an extension of time for complying with Magistrate Gershon's order. Softel's counsel explained that DeFanti needed additional time to prepare his report. In the course of making the request, Softel's counsel revealed for the first time that the fee dispute with Grosky had arisen in August 1989.

On January 8, 1990, Magistrate Gershon denied Softel's application for additional time to file DeFanti's report [the "January 8 written order"]. Magistrate Gershon refused to grant the requested extension, finding that Softel had failed to offer a justifiable explanation for its inability to comply with the December 22 deadline. The Magistrate rejected Softel's argument that DeFanti had not been given adequate time to prepare his report, since it was Softel's responsibility to provide DeFanti in a timely manner with the necessary materials to prepare his report. Furthermore, the Magistrate observed that Softel's counsel was unwarranted in seeking an extension based on the Dragon defendants' alleged failure to completely produce the diskettes to Softel a second time, when defendants undertook such production solely as a convenience to Softel and, moreover, with the understanding that such production may be incomplete.

**\*3** On January 12, 1990, Softel deposed Grosky pursuant to a subpoena *duces tecum* to compel Grosky to relinquish the computer materials. Grosky refused to do so because of a lien that he asserted in connection with a fee dispute with Softel. At a conference before Magistrate Gershon on January 12 to resolve the dispute, the Magistrate accepted Grosky's offer to sign a confidentiality agreement regarding the use of the diskettes and to make them available to Softel for purposes other than duplication. In addition, Magistrate Gershon directed Grosky to make the diskettes available to the court at time of trial, regardless of whether the fee dispute had been resolved.

Also at the conference, the Magistrate orally clarified the earlier January 8 written order, denying Softel an extension of time to serve DeFanti's report. Magistrate Gershon stated that in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                  Page 3
Not Reported in F.Supp., 1990 WL 164859 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

furtherance of Softel's failure to comply with the December 22 deadline, Softel was precluded from offering expert testimony at trial of any witness other than Grosky.

Softel now objects pursuant to Rule 72(a) of the Federal Rules of Civil Procedure to (1) Magistrate Gershon's written order of January 8, 1990, denying Softel's request for additional time to serve DeFanti's report and (2) Magistrate Gershon's oral ruling of January 12, 1990, precluding DeFanti from testifying at trial as Softel's expert.

DISCUSSION

I. *Standard of Review*

Pursuant to 28 U.S.C. § 636(b), magistrates are empowered to hear and determine pretrial matters pending before the court, except for certain specified dispositive motions. *See* 28 U.S.C. § 636(b) (1988). While magistrates may hear dispositive motions, they may only make proposed findings of fact and recommendations for resolution of the matter. *See id.* § 636(b)(1)(B). Objections to the magistrate's findings or recommendations are reviewed by the district court under a *de novo* standard of review. *See id.;* Fed.R.Civ.P. 72(b).
However, a magistrate may issue orders as to non-dispositive pretrial matters. The district court reviews such order under a "clearly erroneous or contrary to law" standard of review. *See* 28 U.S.C. § 636(b)(1)(A) (1988); Fed.R.Civ.P. 72(a).

Pretrial matters regarding discovery are generally considered "non-dispositive," *see* Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir.1990), and thus "magistrates have general authority to order discovery sanctions." Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1462 (10th Cir.1988). Accordingly, district courts typically review such orders under the "clearly erroneous or contrary to law" standard of review. *See, e.g.,* Aries Ventures, Ltd. v. Axa Finance S.A., 696 F.Supp. 965, 966 (S.D.N.Y.1988); Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp., 95 F.R.D. 398, 399 (S.D.N.Y.1982). The Supreme Court explained that "[a] finding is ' clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 369 (1948). Pursuant to this highly deferential standard, a magistrate's order resolving discovery disputes and imposing sanctions for noncompliance is afforded broad discretion and will be overruled only if the discretion is abused.

II. *The January 8 Written Order*

*4 It is well settled among the circuits that a court's refusal to extend a discovery deadline to allow a party's untimely designation of an expert witness is not an abuse of discretion where a review of the factual record indicates that the party requesting the extension unjustifiably failed to comply with the original deadline. *See, e.g.,* Geiserman v. MacDonald, 893 F.2d 787, 792 (5th Cir.1990); Sexton v. Gulf Oil Corp., 809 F.2d 167, 170 (1st Cir.1987); Sturgeon v. Airborne Freight Corp., 778 F.2d 1154, 1159 (5th Cir.1985); Port Terminal & Warehousing v. John S. James Co., 695 F.2d 1328, 1336 (11th Cir.1983). Similarly, a court's refusal to grant a deposition request of a known expert witness after the completion of discovery is not an abuse of discretion where the party fails to given an adequate explanation for its failure to timely schedule the deposition. *See* Sitts v. United States, 811 F.2d 736, 738 (2d Cir.1987).

Discovery delays are, unfortunately, an endemic feature of today's trial practice. "They increase the cost of litigation to the detriment of the parties enmeshed in it ... [and] they are one factor causing disrespect for lawyers and the judicial process." *Geiserman,* 893 F.2d at 779. Thus, compliance with the court's discovery orders is essential to maintain the integrity of the judicial process. *See id.* at 792; Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 73 (2d Cir.1988). To encourage compliance and achieve the just and efficient administration of justice, discovery deadlines must be strictly enforced. *See Port Terminal & Warehousing,* 695 F.2d at 1335.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                                    Page 4
Not Reported in F.Supp., 1990 WL 164859 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

The early exchange of the parties experts' reports, with the specific direction that the Dragon defendants' expert address the points raised by plaintiff's expert, played a central role in the parties' pretrial discovery. The instant litigation has proceeded for more than two and one-half years based on the premise that Grosky was Softel's expert. Both the Magistrate, in devising the discovery schedule, and the Dragon defendants, in their trial preparations, have relied on Softel's identification of Grosky as its trial expert.

Viewed against this background, it is apparent that Magistrate Gershon acted reasonably on December 6 in directing Softel to serve DeFanti's report by December 22. Furthermore, the Magistrate did not abuse her discretion in refusing to grant Softel an extension of time to comply with the December 6 order, since Softel failed to provide a credible reason to justify an extension of the December 22 deadline. Softel's arguments in defense of its noncompliance are not persuasive in view of the fact that the Magistrate granted Softel's request to substitute DeFanti as its expert with the reasonable condition that Softel serve its report by December 22 to prevent further delay in discovery and prejudice to defendants. Softel must bear sole responsibility for its inability to meet the Magistrate's reasonable deadlines. Softel is not justified in claiming that Magistrate Gershon did not provide adequate time for DeFanti to prepare his report, as Softel was entirely in control of the procedure it utilized to provide Grosky with the diskettes produced by the Dragon defendants.[FN1] Nor is Softel warranted in complaining that the Dragon defendants failed to completely produce all diskettes since defendants had warned Softel that such production might be incomplete and, in any event, were not under any obligation to produce the diskettes to Softel for the second time.

*5 The Court further notes that this is not a situation where Softel unexpectedly discovered the existence of an important witness. To the contrary, Softel may have been considering obtaining a new expert for several months. In Softel's letter to the Magistrate requesting an extension, Softel states that Grosky refused to return the materials in August 1989. In addition, Softel's replevin action against Grosky was commenced on October 2, 1989 in the Supreme Court of New York. These facts indicate that Softel may have been contemplating obtaining a new expert well before the December 6 pretrial conference when Softel advised the Magistrate of its desire to obtain a new expert witness.

In sum, the Court finds Magistrate Gershon's refusal to grant Softel an extension of time to serve DeFanti's report was not clearly erroneous or contrary to law. Accordingly, Softel's motion to set aside Magistrate Gershon's written order of January 8, 1990 is denied.

### III. *Oral Ruling of January 12, 1990*

Softel also objects to Magistrate Gershon's oral ruling of January 12, 1990, in which the Magistrate clarified the earlier January 8 written order denying Softel an extension of time to serve DeFanti's report. At the January 12 conference, Magistrate Gershon advised the parties that in furtherance of the January 8 written order, DeFanti was precluded from testifying at trial on Softel's behalf. Although the Magistrate did not characterize her ruling as a sanction, her order precluding DeFanti from testifying at trial was in effect a sanction for Softel's failure to comply with the December 6 discovery order. Thus, the central issue is whether the Magistrate abused her discretion in imposing the preclusion sanction.

Where a party fails to obey a scheduling order, Rule 16(f) of the Federal Rules of Civil Procedure authorizes the court on motion or sua sponte to impose "such orders ... as are just and among others any of the orders provided in Rule 37(b)(2)(B)(C)(D)." Fed.R.Civ.P. 16(f). Pursuant to Rule 37(b)(2)(B) the court may make an order " prohibiting ... [the disobedient party] from introducing designated matters in evidence." Fed.R.Civ.P. 37(b)(2)(B).

In determining which sanction is appropriate the court should consider the following three purposes which sanctions are designed to serve:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1990 WL 164859 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

*Update Art, Inc.,* 843 F.2d at 71. Another relevant factor in choosing the proper sanction is the extent to which the other party's preparations for trial have been prejudiced. *See* Black Panther Party v. Smith, 661 F.2d 1243, 1255 (D.C.Cir.1981), *vacated and remanded on other grounds,* 458 U.S. 1118 (1982). The only limitation on the court's power to levy sanctions are the standards contained in Rule 37(b)(2), which require that the sanction is "just" and specifically relate to the particular claim at issue in discovery. *See* Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694 (1982). Finally, it is well established that in achieving the above stated objectives, the court necessarily possesses broad inherent powers to levy sanctions in response to abusive litigation practices. *See, e.g.,* National Hockey League v. Metropolitan Hockey Club, Inc. 427 U.S. 639, 642 (1976); Penthouse Int'l, Ltd. v. Playboy Enters., 663 F.2d 371, 386 (2d Cir.1981).

*6 There is no doubt that exclusion of evidence is a harsh sanction and should be imposed only in rare situations. Nevertheless, failure to comply with the court's scheduling order or local rules is clearly grounds for precluding certain expert testimony. *See Geiserman,* 873 F.2d at 792; Hagans v. Henry Weber Aircraft Distribs., Inc., 852 F.2d 60, 64-66 (3d Cir.1988); *Sexton,* 809 F.2d at 170; Hull v. Eaton Corp., 825 F.2d 448, 452 (D.C.Cir.1987) (per curiam); DeMarines v. KLM Royal Dutch Airlines, 580 F.2d 1193, 1202 (3d Cir.1978).

The Second Circuit reviews a magistrate's preclusion sanction imposed for failure to comply with the magistrate's discovery order under the abuse of discretion standard. *See Update Art, Inc.,* 843 F.2d at 72. In determining whether a preclusion sanction constitutes an abuse of discretion the court should consider the following four factors: (1) the explanation, if any, for failure to comply with the discovery order, (2) the importance of the testimony of the witness, (3) the resulting prejudice to the opposing party in having to prepare to meet the new testimony, and (4) the possibility of a continuance. *See* Outley v. City of New York, 837 F.2d 587, 590 (2d Cir.1988); Bradley v. United States, 866 F.2d 120, 125 (5th Cir.1984).

The first relevant factor involves plaintiff's explanation for its failure to comply with the Magistrate's discovery order. The Court has previously examined Softel's reasons for its failure to comply with the December 22 deadline and found them to be unpersuasive. The Magistrate's refusal to extend the deadline was not clearly erroneous, as Softel failed to present any credible excuse for its failure to comply with the December 22 order. In addition, the record indicates that Softel may have been contemplating obtaining a new expert several months before Softel chose to advise Magistrate Gershon of its request.

The testimony of Defanti is undoubtedly important to Softel's claims of copyright infringement regarding certain computer code routines. In view of the highly technical nature of the litigation, both parties intend to rely extensively on expert testimony to establish their contentions. However, the importance of the proposed testimony without more is insufficient to prevent enforcement of a court's scheduling order. *See Geiserman,* 893 F.2d at 792. Furthermore, the importance of DeFanti's testimony pales in comparison to situations where the testimony of important *fact* witnesses are excluded. *See Outley,* 837 F.2d at 590; *Port Terminal & Warehousing,* 695 F.2d at 1336. For example, in *Outley* the court noted that the testimony of the excluded witnesses would provide the only independent evidence of the disputed incident and would also serve to bolster plaintiff's credibility. *See* 837 F.2d at 591. Since the effect of the preclusion sanction was particularly harsh, the *Outley* court demanded a greater showing of misconduct by plaintiff or prejudice suffered by defendant than ordinarily would be required. *See id.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 6

Not Reported in F.Supp., 1990 WL 164859 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

*7 The third factor, the need for time to prepare the testimony, requires the court to consider the prejudice suffered by the opposing party. *See id.* The Dragon defendants justifiably argue that for two and one-half years they have prepared their case based on Grosky's particularization of Softel's claims. By requiring Softel to promptly serve DeFanti's report, Magistrate Gershon provided defendants with sufficient time to consult with their own expert, thereby minimizing any potential prejudice to defendants. The Court finds that allowing DeFanti to testify at trial would not only unfairly inconvenience defendants, but would also greatly disrupt defendants' trial preparations. Defendants reasonably relied on the January 30, 1990 discovery deadline and they should not be made to bear the burden of Softel's failure to comply with the date set for serving DeFanti's report.

The final factor to consider is the possibility of a continuance, which involves an analysis of the administrative difficulty placed on the court. *See id.* at 590. Softel correctly points out that the instant situation is distinguishable from other cases where witnesses were identified on the eve of trial. *See, e.g., Hagans,* 852 F.2d at 64. However, while a trial date had not yet been set, this fact does not diminish the burdens placed on the court where the nature of the litigation requires the early designation of experts to enable discovery to proceed in a timely and efficient manner. Allowing DeFanti as an expert at this late stage would require retaking depositions previously based on Grosky's expert report and would necessitate setting new dates for completion of discovery and for filing a pretrial order.

Thus, the Court finds that a consideration of the four factors establishes that Magistrate Gershon did not abuse her discretion in precluding Softel from offering DeFanti's testimony at trial. The Court's decision is in accord with the policy in this Circuit recognizing the importance of a party's compliance with discovery orders. In affirming a magistrate's decision precluding the introduction of evidence due to a party's noncompliance with a discovery order, the Second Circuit has emphasized that "[t]he essential question presented by this appeal is whether this United States Court intends strictly to enforce sanctions provided for noncompliance with discovery orders. The opinion that follows is a stern warning that we do." *Update Art, Inc.,* 843 F.2d at 68.

Lastly, the Court addresses Softel's contention that the preclusion sanction is tantamount to dismissal. The Supreme Court has recognized "constitutional limitations upon the power of the courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 209 (1958). In certain instances, preclusion of testimony may be tantamount to dismissal. *See* United States v. Sumitomo Marine & Fire Ins. Co., 617 F.2d 1365, 1369 (9th Cir.1980); Cine Forty-Second St. Theatre Corp. v. Allied Artists, 602 F.2d 1062, 1067 (2d Cir.1979). In such cases, the court may order dismissal or preclusion tantamount to dismissal, provided failure to comply with the pretrial discovery order is due to " willfulness, bad faith or ... fault" by the party. *Societe Internationale,* 357 U.S. at 212. In the Second Circuit, "fault" includes total dereliction of professional responsibility amounting to gross negligence. *See Cine Forty-Second St. Theatre Corp.,* 602 F.2d at 1067. In addition, the court may not preclude evidence that is tantamount to dismissal if the disobedient party's failure to comply is due to circumstances beyond his control. *See* Gordon v. State of Idaho, 778 F.2d 1397, 1399 (9th Cir.1985); *Sumitomo Marine & Fire Ins. Co.,* 617 F.2d at 1369. However, if a party will still have his day in court, then the court is not required to consider whether the conduct of the party was willful or in bad faith. *See Societe Internationale,* 357 U.S. at 208; *Hagans,* 852 F.2d at 66.

*8 In copyright infringement cases, expert testimony is admissible to aid the trier of fact in determining whether there is "sufficient similarity between the two works in question to conclude that the alleged infringer used the copyrighted work in making his own." Whelan Assocs. v. Jaslow Dental Lab., 797 F.2d 1222, 1232 (3d Cir.1986). Although expert testimony in a copyright

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 7

Not Reported in F.Supp., 1990 WL 164859 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

infringement case is clearly advantageous with regard to the substantial similarity inquiry, the court need not determine whether expert testimony is required due to the complexity of the issues presented since Softel has not been precluded from presenting testimony by its original expert, Grosky. Consequently, it was not necessary for the Magistrate to find that Softel acted in willful disregard of the discovery order before imposing the preclusion sanction.

Nevertheless, Softel argues that Grosky is no longer available to testify because of his fee dispute with Softel. Although Softel undoubtedly prefers not to utilize Grosky because of the fee dispute, it is clear that Grosky is available to testify on Softel's behalf. Grosky's deposition testimony indicates that his inability to testify on Softel's behalf is due to Softel's reluctance to employ Grosky as its expert, and not from any refusal by Grosky to testify. *See* Deposition of Aaron Grosky, at 230-32, 87 Civ. 0167 (JMC) (S.D.N.Y. Jan. 22, 1990). Moreover, even if Grosky refused to testify at trial, Softel could subpoena Grosky to testify pursuant to Rule 45(e)(1) of the Federal Rules of Civil Procedure.

While Softel has the privilege of choosing the expert of its choice, the imposition of discovery deadlines requires that Softel exercise its preference in a manner that affords the Dragon defendants an adequate opportunity to conduct their discovery and allow the court to manage pretrial discovery in a timely and orderly fashion. When a party is deprived of the expert of its choice due to its failure to comply with a discovery order, such a deprivation is not tantamount to dismissal of its case, particularly where another expert is available to testify. *See* Wilson v. Johns-Manville Sales Corp., 810 F.2d 1358, 1363 (5th Cir.1987).

Thus, Softel's motion to set aside Magistrate Gershon's oral ruling of January 12, 1990 precluding Softel from presenting DeFanti's testimony at trial is without merit. The Court finds that Magistrate Gershon did not abuse her discretion in imposing the preclusion sanction due to plaintiff's unjustified failure to comply with the December 6, 1990 discovery order, nor does the Court find anything in the Magistrate's decision "

clearly erroneous or contrary to law."

*CONCLUSION*

Plaintiff's motion to set aside Magistrate Gershon's written order of January 8, 1990 and oral ruling of January 12, 1990 is denied.

SO ORDERED.

> FN1. Softel's claim that it provided its only copy of the diskettes to Grosky because of the confidentiality order is unpersuasive, since the confidentiality order does not prohibit duplication of confidential materials for the purpose of disclosure to retained expert witnesses.

S.D.N.Y.,1990.
Softel, Inc. v. Dragon Medical and Scientific Communications, Inc.
Not Reported in F.Supp., 1990 WL 164859 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.