IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **CARLOS A. ARREDONDO, in his capacity as Trustee of The 2000 Trust for the Grandchildren of Carlos A. Arredondo and Mari V. Arredondo, General Partner of Arredondo Properties Limited Partnership,**<br><br>**Plaintiff,**<br><br>v.<br><br>**CAESAR A. ARREDONDO and ARREDONDO & CO., LLC,**<br><br>**Defendants.** | CIVIL ACTION FILE<br><br>NO. 3:02 CV 2200 (CFD)<br><br><br><br>JULY 12, 2007 |

**PLAINTIFF'S REPLY MEMORANDUM
IN SUPPORT OF ITS AMENDED MOTION *IN LIMINE***

Plaintiff Carlos A. Arredondo ("Plaintiff") hereby files its Reply to the Memorandum of Law in Opposition to Plaintiff's Amended Motion in Limine ("Opp. Mem.") filed by Defendants Caesar A. Arredondo and Arredondo & Co., LLC (collectively "Defendants"). For the reasons set forth below, Defendants' arguments in opposition to Plaintiff's motion are unfounded and Plaintiff's Motion should be granted in full.

**A.     The Proposed Milford Project Has No Relevance To Any Fact At Issue**

Defendants have never squarely taken a position before their Response brief as to who they contend first owned the WESTY Marks, despite the fact that this is the seminal issue in the case. Only by answering this question, then tracing ownership of the mark through to the separation of the brother's interests in Arredondo & Co. in 1999, can the issue of trademark ownership be resolved.

- 2 -

Defendants now contend that Carlos and Caesar Arredondo, individually, owned the marks under "leading lights", "control" and "related companies" theories. (Opp. Mem. at 6). All of these theories are variations of a single argument: because the brothers controlled the business, they allegedly own the WESTY marks. Defendants then argue that evidence of the abandoned Milford project is relevant because it shows that the brothers' controlled the business of APLP. Defendants' arguments are legally and factually flawed for the reasons set forth below. Moreover, it is undisputed that Carlos and Caesar (in their capacity as trustees of the trusts that are the general partners of APLP) made the day-to-day decisions regarding the running of the Westy business until their separation in 1999. Evidence regarding Milford is thus irrelevant, unnecessary, cumulative, and will do nothing but waste the time, energy and money of the Court and the parties.

**1.     Defendants' "Leading Lights" Theory Is Inapplicable.**

Defendants rehash the "leading lights" arguments made – and rejected – by the Court on summary judgment. In brief, Defendants contend that issues of first use do not apply in the context of allegedly related parties like APLP, WCI I, and Carlos and Caesar.[1] In support, Defendants cite only *Airport Canteen Servs., Inc. v. Farmer's Daughter, Inc.*, 184 U.S.P.Q. (BNA) 622 (T.T.A.B. 1974). As discussed at length in the summary judgment briefing (*see, e.g.*, Plt's Resp. to Def's Mot. Summ. J., Dkt. #75 (manually filed) at 8-11), this argument is unsupportable. It is black-letter law that trademark rights in the United States arise *only* from use of a mark in commerce. *United Drug. Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918) ("[T]he right to a particular mark grows out of its use, not its mere adoption."); *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271 (2d cir. 1974).

---

[1]     As discussed *infra*, these parties are not "related companies" under the Lanham Act.

*Airport Canteen* is inapposite because all of the corporations at issue had the same owner. (See Plt's Resp. to Def's Mot. Summ. J., Dkt. #75 at 8-11.) That is not the case here, where it is undisputed that Carlos and Caesar have no ownership interest in APLP. All actions the brothers undertook on behalf of APLP were undertaken as trustees of trusts that are the general partners of APLP. Because they were acting as trustees, by law, their actions inured not to their own benefit but to the benefit of the trusts and ultimately to APLP. These facts are starkly in contrast to the facts of the *Airport Canteen* case and demonstrate that, even under that case, Defendants have no rights in the WESTY Marks.

Regardless, Defendants' argument in no way demonstrates how evidence regarding the abandoned Milford project is relevant to this case. That project never got past the preliminary planning stage. Thus, evidence related to the project cannot show that Carlos and Caesar controlled the actual use of, or rights in, the mark, which were not established until APLP's Port Chester facility opened. To the extent the evidence is offered to show that the brothers somehow controlled the day-to-day operations of APLP's business, it is undisputed that they did so through their roles as trustees. Thus, any evidence related to Milford cannot establish that Carlos and Caesar owned the marks or that use by APLP inured to the brothers' benefit, and the evidence is duplicative of other more probative evidence.

    **2.**    **APLP is Not a "Related Company" of WCI I or Caesar and Carlos.**

Defendants next contend that APLP is a "related company of Caesar and Carlos and their companies" and that, under Section 5 of the Lanham Act, APLP's use of the WESTY Marks inured to the brothers' benefit. (Opp. Mem. at 6). The basis for Defendants' argument is not entirely clear, however, it appears that Defendants are arguing that Carlos and Caesar own the mark individually either because: (i) they control APLP; (ii) the business of APLP is run by companies that Carlos and Caesar own, or (ii) both. Regardless, evidence regarding the Milford

project is unrelated to Defendants' arguments. It is undisputed that APLP had nothing to do with the Milford project and that Carlos and Caesar have no ownership interest in APLP. Accordingly, evidence about the project cannot show that "APLP is … a related company of Caesar and Carlos and their companies." (*Id.*) Moreover, it is undisputed that the WESTY Marks were never used in connection with the Milford project because the project was abandoned. Thus, nothing about that project can shed any light on ownership or control of the marks. The evidence is irrelevant, unnecessary, and should not be admitted at trial.[2]

### 3. Defendants' Music Group Cases Offer No Support for Their Position

Defendants next cite to three cases involving musical groups as alleged support for their "control" theory of trademark ownership. However, these cases offer no support for Defendants' contention that evidence regarding the abandoned Milford project is relevant to the trial of this case. Instead, they appear to simply be attempting to argue the merits of their case again.

As set forth above, because the Milford project was abandoned, there were no trademark rights that arose out of the project. Accordingly, nothing about the project can show who exercised actual control over the use of the mark. In fact, all three cases support Plaintiff's theory that the "first use" of a mark is the critical inquiry and offer no legal support for the argument that anyone other than the first user of a mark owns the mark.

In *Bell v. Streetwise*, the first two sentences of the Court's legal analysis read as follows: "[i]t is settled law that ownership of a mark is established by priority of appropriation. Priority is

---

[2] Defendants' related company argument is also factually and legally flawed. The brothers could not have acquired rights through their "control" of APLP because they only controlled it as trustees. As to being a related party through companies they control, Defendants appear to contend that APLP's use of the mark was licensed or controlled by WCI I. That cannot be the case because WCI I was not in existence at the time APLP was formed nor when the WESTY Marks were first used. Moreover, it is undisputed that WCI I had no employees or income and never engaged in any business operations of any kind. For that reason, the company was intentionally dissolved. The brothers thus could not have gained ownership of the marks through their ownership of WCI I as a matter of undisputed fact and law. These facts are addressed in further detail in Plaintiff's response to Defendant's Second Motion for Summary Judgment.

established not by conception but by bona fide usage." *Bell v. Streetwise*, 640 F. Supp. 575, 579-80 (D. Mass. 1986) (citations omitted). The Court principally held that because it was the members of the band, not their producer, who had first used the NEW EDITION mark in commerce, the band owned the mark. Id. at 580 ("on this basis alone, plaintiffs own the mark"). Defendants are correct that the *Streetwise* court went on to note in dicta that when "prior ownership by one of several claimants cannot be established, the legal task is to determine which party controls or determines the nature and quality of the goods which have been marketed under the mark in question." *Id*. In *Streetwise*, the first users of the mark – the band members – also controlled the nature and quality of the goods. In this case, APLP first used the mark and controlled the use of the mark. Because the brothers acted on APLP's behalf only as trustees of trusts that are limited partners of the partnership, no actions by them on behalf of the partnership can give rise to any rights of any kind in them individually as a matter of law.[3]

Defendants' other musical group cases likewise offer no support for their position and in fact contradict it. In *Rick v. Buchansky*, 609 F. Supp 1522 (S.D.N.Y. 1985), the plaintiff conceived of and controlled a revolving-door group of musicians for decades under the mark VITO AND THE SALUTATIONS. *Id*. at 1526-28. Notwithstanding Defendants' statement to the contrary (Opp. Mem. at 7), the *Buchansky* court did *not* hold that "technical first use" does not determine trademark ownership. In fact, the *Buchansky* court held that "it goes without saying that rights in a trademark or service mark are acquired through appropriation and use of the mark in commerce." *Id*. at 1531 (citation omitted). The Ninth Circuit reached a similar result in *Robi v. Reed*, 173 F.3d 736 (9th Cir. 1999). In that case, the wife of a deceased former

---

[3] Any claim by Defendants that they "controlled" APLP's use of the WESTY Marks through WCI I would be unavailing for the same reasons addressed in footnote 2 above. WCI I engaged in no business and was dissolved on August 13, 1992. (Plaintiff's Local Rule 56(a)(1) Statement, Dkt. No. 69). It thus could not have controlled the use of the mark by APLP.

member of The Platters brought suit so that she might use the name to the exclusion of the founding member of the band who had conceived of and performed with the group under that name at least a year before the deceased member even joined. *Id*. at 738. The Ninth Circuit easily determined that the plaintiff had no right to use "The Platters" mark because it unquestionably was not the first user. *Id*. at 740. None of the three cases Defendants cite offer any support for Defendants' manufactured "control" theory.

### 4. Summary

In sum, while the evidence may show that Carlos and Caesar *considered* developing a WESTY self-storage facility in Milford, Connecticut in the early 1990s, it is undisputed that: (i) the business never actually opened and (ii) no trademark rights were ever established in connection with that project. Evidence regarding the project thus cannot show control of the WESTY Marks by the brothers or anyone else, and evidence regarding the project cannot support a "leading lights" or related companies theory.

There are at least 57 trial exhibits on Defendants' exhibit list, and more on Plaintiff's list, that relate to Milford. Direct and cross examination of witnesses on these exhibits and the project itself will take substantial time at trial without advancing the merits of the case in any way. The evidence is thus irrelevant and, if relevant in any way, is merely cumulative, and should be excluded at trial.

### B. Carlos Arredondo's Reasons for Selling His Shares in Arredondo & Co. Are Irrelevant.

Defendants seek to offer evidence regarding Carlos Arredondo's reasons for selling his interest in A&Co. to "prove the logic and rationale for Carlos' express sale of the WESTY trademark and his prior understanding that APLP did not own the trademark." (Opp. Mem. at 14). Nothing more can be divined from Defendants' opposition as to the relevance of these facts.

Allowing this evidence, which could take substantial time to introduce, would be a colossal waste of time and money because Plaintiff has already *stipulated* to this fact. Carlos does not contest that he believed that Westy Connecticut, Inc. ("WCI II") owned the WESTY Marks when he his interest in Arredondo & Co. to Caesar in 1999 (although that belief was mistaken). Defendants are attempting to personalize a dispute that is, on its face, not personal: Carlos has brought this action for a declaratory judgment not in his individual capacity but in his capacity as trustee of a trust created for the benefit of his grandchildren, a trust which is in a partnership with a similar trust managed by Caesar. Carlos personally stands to gain nothing; any benefit to his grandchildren's trust mirrors the benefit to Caesar's grandchildren's trust.

Carlos would relish the opportunity to tell his side of this painful and unfortunate story. But he realizes that to do so would be a waste of time and resources for both parties, and more importantly for the Court. It simply makes no sense to spend multiple trial days presenting evidence which is not in dispute and is not relevant in any event, and much of which goes into the personal finances of Carlos and his wife, evidence which can have no legitimate bearing on any issue in this case. The additional evidence Defendants' seek to present is entirely unrelated to Carlos and Caesar's actions as trustees of APLP or as officers of the other corporations involved in the operation of the WESTY business. The Court should protect its, and the parties', scarce resources and exclude this evidence from the trial.

**C.    Defendants Should Be Precluded From Asserting a Defense that Plaintiff Is Barred From Bringing Count One Based On an Alleged Breach of the APLP Partnership Agreement Because Defendant Failed to Plead this Defense in Its Answer.**

As discussed in Plaintiff's opening brief, it was not until long after the conclusion of discovery and the preparation for trial that Defendants raised the issue of breach of contract with respect to Claim I. This failure to plead should result in the wavier of that defense and its exclusion from the case. *United States for and on Behalf of Maritime Admin. v. Continental*

*Illinois Nat. Bank and Trust Co. of Chicago*, 889 F.2d 1248, 1253 (2d Cir. 1989). Though they state in their opposition brief (Opp. Mem. at 15) that they have "filed contemporaneously with this Memorandum a Motion for Leave to Amend their August 2003 Answer" they do not appear to have done so. Thus, nearly four *years* after filing their answer the Defendants have still not properly pled this defense.

The Court has already considered, and denied, the parties' motions for summary judgment. Plaintiff has no ability to develop evidence in this regard or move for summary judgment on the defense, including deposing the limited partners on the issue of consent and support for the litigation.[4] The Court should not allow Defendants to amend their affirmative defenses so late in the game. *See Evans v. Syracuse City School District*, 704 F.2d 44, 46 (2d. Cir. 1983) (noting that "[a]s a practical matter . . . any delay in asserting an affirmative defense for a significant period of time will almost invariably result in some 'prejudice' to the nonmoving party" and holding that district court's permission to add affirmative defense two years and nine months after filing of answer was an abuse of discretion and reversible error).

### D. Plaintiff's Objections as to Specific Exhibits

Plaintiff has moved to exclude a number of exhibits. Because of the limited number of pages available for this Reply, Plaintiff cannot respond to all of Defendants' arguments. However, Plaintiff responds regarding a few categories of documents below.

#### 1. Hearsay Objections Bar the Admission of Documents

Defendants contend that Exhibits 15, 16, 307, 333, 366, 389, 391, 438, 418, 420-423, 425, 428, 434-436, 442-457 are statements by Carlos and thus admissions of a party opponent.

---

[4] Defendants' defense as asserted in response to the principal claim of the lawsuit is potentially different in nature and impact than it is as asserted in response to claims for fees or other claims in the case. Plaintiff therefore likely would have conducted additional discovery on this issue if it knew the defense was being asserted in response to Count I. Plaintiff had no opportunity to make this decision and conduct any discovery it deemed necessary, and is thus prejudiced by Defendants' attempt to add the new defense now.

Carlos A. Arredondo, individually, is not a party to this case. His appearance in this case is solely in his capacity as a trustee of a trust that is a limited partner of APLP. None of these documents were created by Carlos in his capacity as trustee of APLP. For example, Exhibit 15 relates to Milford, and Defendants concede that this does not relate to APLP. Exhibit 16 consists of handwritten notes about WCI I, Westy's Milford Limited Partnership, and Westy Self-Storage Campus, Inc. – not APLP – thus, Carlos was not writing these in his capacity as trustee of APLP. The same holds true for the other exhibits. Accordingly, the documents do not qualify for admission under F.R.E. 801(d)(2).[5]

### 2. Exhibit 398 is Inadmissible

This document is a memo from accountant Peter Formanek. Defendants offer no argument as to why it is not hearsay. It should therefore be excluded.

### 3. Exhibit 410 is Inadmissible

The document is a letter between counsel related to this case. It is not evidence of any fact in this case and is purely legal argument. It is not a business record because it is not part of the regular course of the business. The document is thus inadmissible and should be excluded.

### 4. Exhibits 418, 420-23, 425, 428, 434 and 442-457 are Inadmissible

Exs. 418, 420-21 are affidavits and declarations made by witnesses who will be at trial. These statements are inadmissible except for impeachment purposes. Ex. 422 is a declaration of counsel and is unnecessary and irrelevant to establish any fact in this case. Ex. 425 is not a pleading or deposition. It is a memo from an accountant and thus not admissible as a statement of a party opponent. Ex. 428 is declaration of Caesar and is not admissible as a statement of a party opponent or for any other reason. Ex. 434 is a transcript of a hearing and thus not an

---

[5] Exhibits 307, 333, 366 and 391 all relate to Carlos' personal finances. These documents certainly have nothing to do with APLP, let alone any legitimate issue in this case.

admission of a party opponent as Defendants suggest or otherwise admissible. Exs. 442 and 443 are deposition transcripts of Carlos and Caesar and are inadmissible except as impeachment evidence, if appropriate. Exs. 444-452, 454, 456-57 are discovery the Defendants served or affidavits of their witnesses or of Carlos. The witnesses are in the subpoena power of the court, and their affidavits are hearsay except for impeachment purposes. The discovery requests are both hearsay and inadmissible. Ex.s 453 and 455 were part of summary judgment filings, not pleadings, and are inadmissible hearsay.

### 5.     Exhibit 459

The production of this document was an inadvertent waiver of the privilege and Plaintiff does not waive the privilege. The statement in Plaintiff's opening brief that the document is an email to APLP from its counsel was a typo. The letter was from counsel for Carlos to Carlos in his capacity as trustee of one of the general partners of APLP.

          /s/Jason D. Rosenberg
ROBERT P. DOLIAN (ct04278)
CUMMINGS & LOCKWOOD LLC
Four Stamford Plaza, P.O. Box 120
Stamford, Connecticut 06904-0120
Ph  (203)327-1700; Fx  (203) 708-5647

MARTIN J. ELGISON (ct24759)
DAVID J. STEWART (ct24757)
JASON D. ROSENBERG (phv01770)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Ph (404) 881-7000; Fx (404) 881-7777

Counsel for Plaintiff

- 11 -

## **CERTIFICATE OF SERVICE**

      This is to certify that a copy of the foregoing PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS AMENDED MOTION IN LIMINE was served electronically via CM/ECF, on this 12th day of July, 2007, to the following counsel of record:


CRAIG A. RAABE (CT04116)
EDWARD J. HEATH (CT20292)
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-8200
Facsimile: (860) 275-8299
craabe@rc.com
eheath@rc.com

HUBERT J. SANTOS (CT00069)
Santos & Steeley, P.C.
51 Russ Street
Hartford, CT 06106
Phone: (860) 249-6548
hsantos@santos-seeley.net

DAVID M. KELLY, *pro hac vice*
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
1300 I Street, NW
Washington, DC 20005-3315
Phone: (202) 408-4000
David.kelly@finnegan.com


                                                        /s/   Jason D. Rosenberg
                                                       Jason D. Rosenberg