

Not Reported in F.Supp.2d                                                                                                Page 1

Not Reported in F.Supp.2d, 2004 WL 2049321 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

C
The Cadle Co. v. Jones
D.Conn.,2004.
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
THE CADLE COMPANY, Plaintiff,
v.
Grace JONES, Defendant,
v.
THE CADLE COMPANY, Plaintiff,
v.
Dorothy MURREN Defendant.
No. 3:00CV316WWELEAD, 3:00CV317(WWE).

Aug. 20, 2004.

Paul Nicholas Gilmore, Robert A. Morgan, Kate Kotsaftis Simon, Updike, Kelly & Spellacy, P.C., Stephen Daniel Oppenheim, Cohn, Birnbaum & Shea, Hartford, CT, for Plaintiff.
Bernard Green, Marni Smith Katz, Jeffrey W. Keim, Paul A. Sobel, Green & Gross, P.C., Bridgeport, CT, for Defendant.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW*
EGINTON, Senior J.
*1 Plaintiff Cadle Company filed this action on February 17, 2000, alleging causes of action pursuant to the Connecticut Fraudulent Transfer Act ("CUFTA"), Connecticut General Statutes (" Conn.Gen.Stat.") § 52-552a *et seq.* In addition, plaintiff seeks imposition of a constructive trust on certain assets.[FN1]

> FN1. The Court construes this count as a cause of action for imposition of a constructive trust, or in the alternative, as a cause of action based on unjust enrichment, seeking the remedy of a constructive trust.

Specifically, Cadle seeks recovery against defendant Grace Jones pursuant to Section 52-552e(a)(1) (intentional fraud), Section 52-552f (constructive fraud), and imposition of a constructive trust; Cadle seeks recovery against defendant Dorothy Murren pursuant to imposition of a constructive trust.

Upon completion of supplemental briefing requested by the Court, Cadle proposed to amend its complaint to plead two additional counts alleging that defendants may be held liable under an alternative theory pursuant to CUFTA.

This case was tried to the Court on October 8, 2003, and is now fully briefed on the findings of fact and conclusions of law. The pending motion to amend the complaint and the motion for reconsideration of the court's rulings denying the defendants' motions to dismiss and granting the plaintiff's motion to strike are also fully briefed. The court makes the following findings of fact, conclusions of law, and rulings on the pending motions to amend and for reconsideration.

*FINDINGS OF FACT*

In accordance with the extensive stipulation of facts filed by the parties and the evidence presented at trial, the Court makes the following findings of facts.

The plaintiff, Cadle Company, is an Ohio corporation with its principal place of business in Newton Falls, Ohio. The defendant, Grace Jones, is a Connecticut resident who resides with her husband, William Jones. Defendant Dorothy Murren is a Connecticut resident who resides with her husband, Thomas Murren.

In 1990, William Jones and Thomas Murren were both indebted to their creditors in excess of $2,000,000, which included a commercial promissory note to Great Country Bank. This

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 2

Not Reported in F.Supp.2d, 2004 WL 2049321 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

indebtedness was substantially greater than the individual and collective value of their respective assets. In 1991, Great Country Bank commenced a civil action against Jones and Murren to foreclose the mortgage that secured a debt on the Murren/Jones promissory note. On February 3, 1992, a deficiency judgment was entered in favor of Great Country Bank in the amount of $109,407.35.

Cadle is now the judgment creditor of Messrs. Murren and Jones pursuant to the terms of an assignment of that judgment in the amount of $109,407.35. To date, the judgment remains unsatisfied. In June, 2000, Messrs. Murren and Jones filed bankruptcy and received discharges in October, 2000.

Messrs. Jones and Murren were insolvent, as that term is defined by Section 52-552c, from February 3, 1992 through July 14, 2000. The sole source for payment of household expenses, including mortgage and real estate tax payments, for both the Jones and the Murrens was the regular weekly salary that Messrs. Jones and Murren earned from the Murphy & Murphy insurance business.

*Jones' Banking and Financial Transactions*

*2 The Jones purchased their home in 1987 for $500,000. Title to the Jones' home was held in the names of both Mr. and Mrs. Jones, as joint tenants with right of survivorship until 1990, when Mr. Jones quitclaimed his interest to defendant Jones. Mr. Jones received no consideration for the transfer of his interest.

Prior to February, 1997, Mr. and Mrs. Jones maintained a joint bank account. Mr. Jones' weekly salary check was deposited into that account. On February 26, 1997, Mr. Jones' paycheck was deposited into a checking account that belonged solely to defendant Jones. On March 27, 1997, the sum of $4,015.39, representing the balance of the Jones' joint account, was transferred into defendant Jones' checking account.

On January 1, 1999, the Jones set up a joint checking account at First Federal Credit Union. From January 1, 1999 through July 14, 2000, Mr. Jones had his weekly salary directly deposited into that joint account. Upon the crediting of the direct deposit of the weekly salary, defendant Jones would draw a check on the joint account, payable to her order, in the full amount of the weekly salary. She would deposit the check into her own checking account, and use the money to pay the household expenses.

On February 12, 1999, the Jones refinanced their home. After that refinancing, the home was encumbered by a single mortgage loan in the amount of $245,000.

*Murrens' Banking and Financial Transactions*

The Murrens' home was acquired in 1977 for $82,000, with title held by Dorothy Murren. The purchase price was paid for by a purchase money mortgage loan in the approximate amount of $35,000, and cash in the approximate amount of $47,000. The cash portion of the purchase price for the home was obtained from the sale proceeds of a home owned by Dorothy Murren during a prior marriage. Mr. Murren co-signed the $35,000 note for the loan to purchase the property.

In 1985, the property was refinanced with a mortgage in the amount of $110,000, which yielded approximately $83,000 over and above the money needed to pay off the existing first mortgage. Mr. Murren was also a co-signatory on the 1985 mortgage.

The proceeds from the 1985 refinance of the property were used to purchase a second home for the Murrens in Vermont.

Title to the Vermont property was initially held in the name of Mr. and Mrs. Murren as joint tenants with the right of survivorship. In June, 1991, Mr. Murren quitclaimed his interest in the Vermont property to Dorothy Murren. Mr. Murren received no consideration of money or property for the quitclaim of his interest in the Vermont property.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 3
Not Reported in F.Supp.2d, 2004 WL 2049321 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

### Murphy & Murphy

Murphy & Murphy was a corporation that conducted an insurance brokerage business. After working at Murphy & Murphy for a long period of time, Mr. Jones acquired all of the stock in the company. Mr. Murren, who had started working at the company in the 1980s, became a 50% shareholder. Messrs. Jones and Murren were the sole stockholders, directors, and officers of Murphy & Murphy until 1994. In 1994, Messrs. Jones and Murren transferred their stock in Murphy & Murphy to their wives. However, Messrs. Jones and Murren continued to serve as the sole directors and officers of the company after the stock transfers.

*3 Subsequently, William Cornelius of J.M. Layton, approached Messrs. Jones and Murren, about entering into an agreement whereby J.M. Layton would acquire the Murphy & Murphy assets and Messrs. Jones' and Murren's "book of business." In 2001, Murphy & Murphy sold its assets to J.M. Layton & Co. According to the sales contract, Messrs. Jones and Murren continued working for J.M. Layton, and the Jones and Murrens agreed not to compete with J.M. Layton. Upon the closing of that transaction, defendants Murren and Jones received a distribution from Murphy & Murphy in the amount of $100,000 each from the sale proceeds paid by J.M. Layton. In connection with the agreement not to compete, J.M. Layton agreed to pay $360,000 to the Murrens, and $360,000 to the Jones over a period of 72 months.

### Van Zant Street Condominium

Until August, 2000, Murphy & Murphy conducted its business from an office condominium on Van Zant Street in Norwalk, Connecticut. As of 1986, the Van Zant Street condominium was owned by a general partnership named J & M Associates, whose sole partners were Messrs. Jones and Murren.

As of October 28, 1987, the Van Zant Street condominium was encumbered by a mortgage to Mechanics and Farmers Savings Bank in the amount of $600,000 as security for the debt evidenced by a note in the same amount on which Messrs. Jones and Murren were personally liable.

In June, 1992, a foreclosure on the mortgage was commenced by the FDIC as Receiver of Mechanics & Farmers Savings Bank. Subsequently, the mortgage was sold and assigned by the FDIC to MLQ Investors, L.P. In spring, 1994, while the foreclosure was pending, Messrs. Jones and Murren negotiated and entered into an agreement with MLQ whereby MLQ would accept $112,500 as payment in full for the mortgage.

Also that spring, a limited liability company named JoMur Associates was formed. Defendants Murren and Stacey Schlubach [FN2] became the sole members of the JoMur, with each holding a 50% interest. Thomas Murren was the sole manager of JoMur throughout its existence.

> FN2. Stacey Schlubach, who is the daughter of Jones, was an employee of Murphy & Murphy.

Messrs. Jones and Murren, as J & M Associates, and JoMur agreed that the Van Zant Street condominium would be transferred to JoMur in a transaction whereby 1) $100,000 of the funds needed to pay MLQ would be obtained by a mortgage loan from a third party named Cambridge Associates, with a note for $100,000 to be signed by JoMur Associates, William Jones and Thomas Murren (jointly and severally), and to be secured by a first mortgage to be given on the Van Zant Street condominium by JoMur; and 2) Title to the Van Zant Street condominium would be transferred to JoMur, subject to the mortgage on the property, which mortgage was to be discharged by the payment of $112,500 as per the agreement with MLQ. This transaction closed in June, 1994, rendering the Van Zant Street property subject only to a first mortgage in favor of Cambridge Associates in the amount of $100,000.

After June, 1994, Murphy & Murphy rented the Van Zant Street condominium from JoMur at a rental rate that covered the debt service on the property and provided additional income to JoMur that was distributed to the JoMur members, Dorothy

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 4
Not Reported in F.Supp.2d, 2004 WL 2049321 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

Murren and Stacy Schlubach, in the approximate amount of $4,000 per annum each.

*4 In March, 2000, Mr. Jones asked his daughter, Ms. Schlubach, to give or transfer three quarters of her 50% interest in JoMur to Grace Jones. Ms. Schlubach complied with her father's request. No monetary value was paid by or on behalf of defendant Jones to Ms. Schlubach in consideration of said transfer.

During spring, 2000, a third party named Winthrop Baum, Trustee, expressed an interest in purchasing the Van Zant condominium. In April, 2000, Winthrop Baum, Trustee, signed a contract with JoMur for the sale of the condominium for $480,000. The closing of the property sale took place on August 24, 2000. The net proceeds of the closing to JoMur was $396,641.56. The following sums were then distributed by JoMur to defendants Murren and Jones, and to Ms. Schlubach: $146,865.58 to defendant Jones; $195,820.78 to defendant Murren; and $48,955.26 to Ms. Schlubach.

### CONCLUSIONS OF LAW

#### Motion to Amend

The plaintiff has moved to amend the complaint with two counts alleging an alternative theory of liability pursuant to CUFTA. Plaintiff asserts that the gravamen of the two new counts is "the present and long-standing equitable ownership of the two companies by the judgment debtors, such that the receipt of payments and distributions (in late 2000 and 2001) by the defendants in connection with the sale of substantially all of the assets of the company may constitute indirect transfers of the assets of the equitable owners that is actionable under the Uniform Fraudulent Transfer Act." Plaintiff submitted its motion to amend upon submission of its supplemental brief requested by this Court. It represents that the addition of the two counts serves to conform the complaint to the evidence and relies on no additional facts.

Under FRCP 15(b), a party may move to amend the pleadings to reflect issues which were tried by express or implied consent of the parties. A court has discretion to allow a party to amend the pleadings under FRCP 15(b) to conform to the evidence presented at trial. *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94 (2d Cir.2000). However, such amendment of the pleadings should not be permitted where it would operate to cause prejudice to a party by requiring discovery to be reopened, delaying the proceedings or creating additional litigation expenses.

In this instance, if the proposed amendments were allowed, the defendants would need to provide additional briefing in their defense. Accordingly, the defendants would be prejudiced by the delay of the proceedings and the additional litigation expense. If plaintiff had proposed this amendment after the trial but prior to completion of the briefing on the findings of fact and conclusions of law, no delay or additional expense would have occurred. In light of the prejudice to the defendants, the Court will deny the motion to amend.

#### Count One

Plaintiff asserts its CUFTA claims against Grace Jones based upon the following conduct 1) Mr. Jones' transfer of his weekly paycheck to defendant Jones, which check was deposited into a checking account held solely by defendant between the period of February 26, 1997 and January 1, 1999; [FN3] and 2) defendant Jones' weekly deposit of funds representing the proceeds of her husband's paycheck from the joint checking account into her sole account between January 1, 1999 and July 14, 2000.[FN4]

> FN3. The aggregate sum of the paychecks transferred to defendant Jones during this period is $128,736.
>
> FN4. The aggregate sum of the paychecks transferred to defendant Jones during this period is $107,280.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 5
Not Reported in F.Supp.2d, 2004 WL 2049321 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

*5 The first count alleges a fraudulent transfer pursuant to Section 52-522e, which provides in relevant part:
A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor; ..

Subsection b of the statute directs the Court to determine "actual intent" by considering, among other factors, whether:
(1) The transfer or obligation was to an insider, (2) the debtor retained possession or control of the property transferred after the transfer, (3) the transfer or obligation was disclosed or concealed, (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit, (5) the transfer was of substantially all the debtor's assets, (6) the debtor absconded, (7) the debtor removed or concealed assets, (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred, (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred, (10) the transfer occurred shortly before or shortly after a substantial debt was incurred, and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Section 52-552b(12) defines a "transfer" as a direct or indirect disposition of an "asset," which is defined by Section 52-552b(2) as property of a debtor not including property that is exempt under non-bankruptcy law.

Pursuant to Section 52-522d, "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise in the ordinary course of the promisor's business to furnish support to the debtor or another person."

In this instance, plaintiff bears a burden of proving by clear and convincing evidence that (1) there has been a "transfer" of an "asset", which "asset" must consist of non-exempt property under non-bankruptcy state law; (2) the debt of the Great Country Debt arose before such transfer or transfers; and (3) transfer or transfers were made with "actual intent" to hinder, delay, or defraud one or more of Mr. Jones' creditors. *See Litchfield Asset Management Corp. v. Howell,* 70 Conn.App. 133, 143, 799 A.2d 298 (2002) (burden of proof is by clear and convincing evidence). In determining whether the parties had the requisite intent, the Court looks to certain indicia or badges of fraud as enumerated in Section 52-522e(b), including the circumstances of the transfer, the conduct and action of the defendants with respect to the possession, management or control of the property after the date of the conveyance. *See Citizens Bank of Clearwater v. Hunt,* 927 F.2d 707, 711 (2d Cir.1991) (discussing evidence of intent relative to fraudulent conveyance claim).

*6 Defendants argue that the salary checks are largely exempt from levy pursuant to Section 52-361a(f), and therefore do not meet the CUFTA's definition of asset. Plaintiff counters that Section 52-361a(f) is limited to instances of wage execution, where a creditor requires the employer to withhold, and pay over to it, a percentage of the judgment debtor's wages, and that the statute does not apply to proceeds of a judgment debtor's salary after the earnings have been paid to the judgment debtor, by check, direct deposit or otherwise.

The Court interprets Section 52-361a according to settled principles of statutory construction: The Court must first ascertain the meaning of a statute from the text of the statute and its relationship to other statutes, and if the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning should not be considered. *Del Toro v. Stamford,* 270 Conn. 532, 853 A.2d 95 (Conn.2004).

Section 52-361a(a) states, in relevant part:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 6

Not Reported in F.Supp.2d, 2004 WL 2049321 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

If a judgment debtor fails to comply with an installment payment order, the judgment creditor may apply to the court for a wage execution.

Subsection c directs that the "wage execution shall notify any employer of the manner prescribed by this section for complying with the execution ..." Subsection (f) delineates the amount of wages that " may be subject to levy or other withholding for payment of a judgment ..." Section 52-352b specifically addresses what qualifies as exempt property, and, with the exception of "wages earned by a public assistance recipient under an incentive earnings or similar program," wages or proceeds of wages are not listed therein. Accordingly, the statute's plain language makes clear that the provisions of Section 52-361a are limited to the circumstances of wage execution, and therefore 52-361a(f) does not render the money transferred to defendant Jones exempt. Thus, the Court concludes that the money transferred to defendant is not exempt under Connecticut statutory law.

Defendant next argues that the money was used for the benefit of Mr. Jones and his family, ensuring food, shelter, transportation and other such expenses, which constitutes reasonably equivalent value. However, in considering whether fraudulent intent exists, the relevant inquiry is not simply whether the debtor received some type of consideration, but whether that consideration was in the form available for execution by creditors. *The Cadle Company v. Ogalin*, 00-32944(ASD) (Bankr.D.Conn.2004).

The facts that the transfers were made to a close family member or insider, that Mr. Jones retained the use or control of the property, and that the debt occurred prior to the transfer are further indicators that an intentional fraud occurred pursuant to Section 52-552e.

Thus, the Court finds, pursuant to the clear and convincing evidence, that the transfers were made with "actual intent" to hinder, delay, or defraud Mr. Jones' creditors. This finding is based on the aforementioned facts indicative of an intentional fraud, and the circumstances surrounding the

closure of the joint account, the opening of the account in defendant Jones' name only wherein Mr. Jones' paycheck was deposited, the subsequent opening of a joint account wherein Mr. Jones' paycheck was deposited, and defendant Jones' transfer of the proceeds of Mr. Jones' paychecks to her own account, which events all occurred during a period of Mr. Jones' insolvency. Accordingly, the Court will find in favor of the plaintiff on count one.

Count Three

*7 In its third count, plaintiff alleges constructive fraud pursuant to Section 52-522f based on the same facts as alleged in count one.

Section 52-522f requires plaintiff to prove by clear and convincing evidence that 1) there has been a transfer of an asset, which asset must consist of non-exempt property under non-bankruptcy state law; 2) the Great Country debt arose before such transfer or transfers; 3) the transfer was made without receiving reasonably equivalent value in exchange for the transfer; and 4) the husband transferor was insolvent at the time of such transfer. Section 52-552d specifies that "a person gives reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale, or execution of a power of sale for the acquisition or disposition or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust or security agreement."

Defendant Jones counters that count three fails for largely the same reasons that she argued on count one. However, in accordance with the analysis discussed above relevant to count one, the Court finds that the clear and convincing evidence shows that no reasonably equivalent value was given for the transfers, and that the transferor was continuously insolvent during the relevant period. *See also In re Kennedy,* 279 B.R. 455 (D.Conn.2002) (for purposes of constructive trust claim, household and other marital services do not constitute "reasonably equivalent value" in exchange for property transfers by the debtor,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                                Page 7
Not Reported in F.Supp.2d, 2004 WL 2049321 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

where no accounting of such services was provided, and where such services were of the nature to be traditionally exchanged between spouses without consideration). Accordingly, the transfers are constructively fraudulent. The Court will find in favor of the plaintiff on count three.

### Count Four and Motion for Reconsideration

In count four, plaintiff alleges that the debtors, Messrs. Jones and Murren, are the equitable owners of Murphy & Murphy, the Van Zant Street property, and the residential real estate owned by both defendants Jones and Murren, and therefore, the Court should impose a constructive trust upon such assets.

The defendants request reconsideration of whether Connecticut's tort statute of limitations, Section 53-577, or CUFTA's statute of repose, Section 52-552j, are applicable to plaintiff's equitable constructive trust claim.

The Court reconsiders its prior rulings that the constructive trust claims are viable. Defendants argument is based upon the principle that where "a party seeks equitable relief pursuant to a cause of action that would also allow that party to seek legal relief, concurrent legal and equitable jurisdiction exists, and the statute of limitations that would bar the legal claim also applies to bar the equitable claim." *Dowling v. Finley,* 49 Conn.App. 330, 335, 714 A.2d 694 (1998), *rev'd. on other grounds,* 248 Conn. 364, 727 A.2d 1245 (1999).

*8 Plaintiff counters that the defendants' 2002 depositions revealed the basis of the constructive trust claims, and that prior to that time, the debtors had misrepresented that they owned the Murphy & Murphy stock, and that the Van Zant Street property was lost in foreclosure but had been re-purchased from the lender post-foreclosure. Plaintiff argues that the facts underlying the constructive trust claims do not "satisfy the essential elements for claims" under CUFTA, and therefore, equity jurisprudence fashioned an equitable constructive trust claim based on the doctrine of unjust enrichment. Plaintiff elaborates that the constructive trust claim is not a suit about fraudulent transfer. Instead, it asks the Court to look beyond the bare legal title of property to find that the debtors are equitable owners of property that can satisfy the judgment debt at issue. Accordingly, this Court must determine whether plaintiff could have brought a prior CUFTA claim or common law fraudulent conveyance claim relative to any of the assets underlying the constructive trust claim.

### *Murphy & Murphy*

Plaintiff seeks to impose a constructive trust on the proceeds of the Murphy & Murphy stock distribution to the defendants from J.M. Layton, and the payments made to the husbands and wives on the covenant not to compete contract. Plaintiff maintains that defendants are the equitable owners of the Murphy & Murphy asset distribution and the covenant not to compete payments, which plaintiff characterizes as deferred compensation from the Murphy & Murphy asset sale.

The transfers of these funds do not fall within CUFTA's requirement that a transfer be made by a debtor. Murphy & Murphy and J.M. Layton, as opposed to the debtors, acted as the transferor of the stock distribution and the payments on the covenant not to compete, respectively.

Defendants counter that the plaintiff's claim for a constructive trust on the proceeds related to the Murphy & Murphy asset sale derives from the 1994 transfers of the stock by the debtors to their wives, which transfers could have formed the basis of prior fraudulent transfer claims.

Here, the constructive trust is not sought relevant to the Murphy & Murphy stock transferred in 1994, but relevant to the proceeds obtained from the transactions made with J.M. Layton in 2001. Plaintiff cannot obtain these proceeds through CUFTA, and accordingly no concurrent legal and equitable jurisdiction exists. The statute of limitations/repose does not apply to these allegations.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 8
Not Reported in F.Supp.2d, 2004 WL 2049321 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

*Van Zant Street Condominium*

Plaintiff seeks to impose a constructive trust on the proceeds of the Van Zant Street property sale that were distributed by JoMur Associates to defendants as record holders of the membership interests in JoMur. Plaintiff claims that the debtors were equitable members of JoMur and therefore are the equitable owners of the proceeds from the sale.

The transfer at issue was not made by the judgment debtors but by JoMur Associates. Further, the 1994 transfer of the Van Zant Street property does not fall within CUFTA, since J & M Associates, not the debtors, transferred the Van Zant property to JoMur Associates; and the condominium was not an "asset" as defined by CUFTA, since it was encumbered at time of the conveyance by a mortgage in the amount of $600,000.

*9 The claim at issue concerns the distribution of the proceeds, which cannot be reached by CUFTA. Accordingly, the statute of limitations/repose does not apply to this claim.

*Residential Properties*

Plaintiff seeks to impose an equitable trust on the equity interest in the Murren residences gained through payment of the mortgage with money from Mr. Murren's personal bank account; and on the equity interest in the Jones' residence gained through payment of the mortgage with money written on a check from Mr. and Mrs. Jones' joint bank account prior to February 26, 1997. [FN5]

> FN5. After February 26, 1997, Mr. Jones had his paycheck deposited into the Grace Jones account.

Defendants argue that a fraudulent transfer or conveyance claim could have been asserted as to the Jones' residence in 1990, and as to the Murren Vermont residence in 1991.

Here, the constructive trust claims are not sought to be imposed on the entire value of the residences.

The Court construes the complaint as seeking a constructive trust on only the equity equal to the amount that Messrs. Murren and Jones paid on the mortgages during the relevant period. In the case of the Murren residences, the Court limits this period to the time after Mr. Murren became insolvent in 1992 in accordance with the stipulated facts.

These payments do not represent potential CUFTA claims since both Messrs. Jones and Murren received reasonably equivalent value in the form of the reduction of their personal obligations on the mortgage. Conn. Gen.Stat. § 52-552d (value is given if property is transferred to secure or satisfy an antecedent debt). The statute of limitations/repose does not apply to this claim.

*Merits of the Constructive Trust Claims*

The Court now turns to disposition of the constructive trust claims on the merits. The Connecticut Supreme Court has set forth that a constructive trust "arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy." *Wendell Corporation Trustee v. Thurston,* 239 Conn. 109, 113, 680 A.2d 1314 (1996). A constructive trust arises whenever another's property has been wrongfully appropriated and converted into a different form. *Cadle Co. v. Gabel,* 69 Conn.App. 279, 288, 794 A.2d 1029 (2002). The imposition of a constructive trust is designed to prevent unjust enrichment, and therefore, "a constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Giulietti v. Giulietti,* 65 Conn.App. 813, 856, 784 A.2d 905 (2001).

Defendants assert that plaintiff must prove its claim by clear and convincing evidence. Plaintiff

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                       Page 9
Not Reported in F.Supp.2d, 2004 WL 2049321 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

maintains that the standard civil burden of a preponderance of the evidence is the appropriate standard on a constructive trust claim, which standard is also applied to an unjust enrichment claim.

*10 In *Starzec v. Kida,* a case brought by aggrieved heirs, the Connecticut Supreme Court held that " before a court imposes a constructive trust upon real property on the ground that one deceased failed to fulfill a promise to another, the facts from which such trust may be implied, should be clearly and satisfactorily established." 183 Conn. 41, 45, 438 A.2d 1157 (1981). However, the Court ultimately declined to resolve whether a heightened standard of proof was necessary where the tranferee or transferor survives. In *Cooper v. Cavallaro,* 2 Conn.App. 622, 481 A.2d 101 (1984), the plaintiff sought to impose a constructive trust over assets in a joint bank account with a right of survivorship. The Connecticut Appellate Court applied the clear and convincing standard in accordance with Connecticut General Statutes Section 36-3, which expressly requires proof by clear and convincing evidence to displace the survivor of a joint account as the owner.

However, in *Cohen v. Cohen,* the Connecticut Supreme Court held as proper a trial court's instruction on the preponderance of the evidence standard for a claim seeking imposition of a constructive trust. 182 Conn. 193, 200, 438 A.2d 55 (1980). Superior courts have also applied the preponderance of the evidence standard to constructive trust claims. *See Anderson v. Anderson,* 2000WL33983847 (Conn.Super.2000) (constructive trust imposed on insurance policy proceeds); *Gurn v. Oldaker,* 2000WL1022758 (Conn.Super.2000) (constructive trust on rental payments not proved by a preponderance of the evidence). The Court need not determine the correct standard of proof for this constructive trust claim, since the clear and convincing evidence demonstrates that a constructive trust should be imposed on the assets, with the exception of the Murren's residence.

Here, defendants enjoy and retain unfettered ownership of the proceeds of the sale of the assets of Murphy & Murphy, the remuneration on the covenant not to compete, and the proceeds from the sale of the Van Zant Street condominium, which assets represent the fruits of Messrs. Murren's and Jones' labors in the insurance business. At the same time, Messrs. Jones and Murren maintain no meaningful assets in their names and have been discharged in bankruptcy.

The clear and convincing evidence demonstrates that, as to these assets, defendants and their husbands have structured their finances and property holdings so as to evade payment of the debt owed to the plaintiff.

Further, after Messrs. Jones and Murren became indebted for in excess of $2,000,000, which amount was substantially greater than their individual and collective value, Mr. Jones quitclaimed his interest in the Jones' residence to defendant Jones in 1990, and Mr. Murren quitclaimed his interest in the Vermont home in 1991. These acts ensured that the creditors could not reach the property to satisfy the debt. Defendants have now gained equity in these respective residences through payments made with the proceeds of the husbands' paychecks from Murphy & Murphy. Accordingly, it is against equity and good conscience that defendants have gained the equity in the Jones' Connecticut residence and the Murrens' Vermont residence, respectively, during the period of Messrs. Jones' and Murren's insolvency, and after their bankruptcy discharges.

*11 However, there is no evidence that defendant Murren enjoys equity in the Murren's Connecticut residence as a result of unconscionable conduct. Defendant Murren has continuously held title to the Murren's Connecticut residence, and the Murrens never altered their payment arrangement relative to that property after Mr. Murren became insolvent.

In light of the foregoing, defendants' conduct has harmed the plaintiff, and defendants are unjustly enriched to the detriment of the plaintiff. Accordingly, it is proper to impose a constructive trust on the assets as alleged, with the exception of the equity interest in the Murren's Connecticut residence, to the extent of the outstanding balance of plaintiff's judgment against Messrs. Jones and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2049321 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 10

Murren.

## CONCLUSION

For the foregoing reasons, motion for reconsideration [# 76] is GRANTED. However, the Court adheres to its previous decision allowing the constructive trust claims to proceed to the merits. The Motion to Amend [# 91] is DENIED. The Court finds in favor of the plaintiff on Counts One, Three, and Four against defendant Jones; and in favor of the plaintiff on Count Four against defendant Murren, with the exception of defendant Murren's equity interest in the Connecticut residence.

Accordingly, the clerk is instructed to enter judgment in favor of the plaintiff against defendants Jones and Murren, jointly and severally, for the full amount of the outstanding judgment against the judgment debtors, the sum of $240,179.23 as of February 12, 2004, plus interest thereon at $30.39 per diem.

The clerk is also instructed to close the above captioned cases.

SO ORDERED.

D.Conn.,2004.
The Cadle Co. v. Jones
Not Reported in F.Supp.2d, 2004 WL 2049321 (D.Conn.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.